# EXHIBIT A

PERLMAN-DEPETRIS CONSUMER LAW
Paul DePetris
Attorney ID No. 005821996
Email: info@newjerseylemons.com
Lee M. Perlman
Attorney ID No. 019171994
Email: lperlman@newjerseylemons.com
1926 Greentree Road, Suite 100
Cherry Hill, New Jersey 08003
(856) 751-4224
Co-counsel for Plaintiff
LAW OFFICES OF LEWIS G. ADLER
Attorney ID No. 023211985
Email: lewisadler@verizon.net
26 Newton Avenue
Woodbury, New Jersey  08096
(856) 845-1968
Co-Counsel for Plaintiff

DULY SERVED
DATE 7.3.21
John A. Kemler, Sheriff
BY _____
Special Deputy

| | |
|---|---|
| *Plaintiffs* | : SUPERIOR COURT OF NEW JERSEY |
| | : CAMDEN COUNTY |
| Candace Nejat and ILU.Lily Designs, LLC individually and on behalf of all others others similarly situated | : LAW DIVISION : : : |
| *vs.* | : |
| *Defendant* | : Docket No. L-1836-21 :        Civil Action : : : : |
| Jaguar Land Rover North America, LLC and John Does 1-10 | : : |
| | :        *SUMMONS* |

*From The State of New Jersey To The Defendant(s) Named Above:  Jaguar Land Rover North America, LLC*

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for the lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the [Clerk of the Superior Court]

Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.   You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.   A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.   If judgment is entered against you, the Sheriff may seize your money, wages or property all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.   A list of these offices is provided.   If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.   A list of these numbers is also provided.

Dated: 4/20/2 5

/s/ Michelle M. Smith
CLERK, SUPERIOR COURT OF NEW JERSEY

*Name of defendant to be served:*
*Address for Service:*

*Corporation Service Company*
d.b.a. Jaguar Land Rover North America, LLC
Princeton South Corporate Center
100 Charles Ewing Blvd., Suite 160
Ewing, New Jersey 08628

**Case Details | Case Number: CAM-L-001836-21**

Case Caption: NEJAT CANDACE  VS JAGUAR LAND ROVER NO RTH AMERI

| | | |
|---|---|---|
| Court: Civil Part | Venue: CAMDEN | Case Initiation: 06/21/2021 |
| Case Track: 4 | Case Status: Active | Jury Demand: YES - 6 JURORS |
| Case Type: COMPLEX COMMERCIAL | Judge: POLANSKY, STEVEN, J | Team: 101 |
| Law Firm Case ID: | | |

**Transaction Information**

Transaction ID: LCV20211478782        Received by eCourts On: 06/21/2021        Total Payment Amount: $250.00

Documents Received:
**COMPLAINT**
**Exhibit**
**Case Information Statement**

# Civil Case Information Statement

## Case Details: CAMDEN | Civil Part Docket# L-001836-21

**Case Caption:** NEJAT CANDACE  VS JAGUAR LAND
ROVER NO RTH AMERI
**Case Initiation Date:** 06/21/2021
**Attorney Name:** LEWIS G ADLER
**Firm Name:** LEWIS G. ADLER
**Address:** 26 NEWTON AVENUE
WOODBURY NJ 08096
**Phone:** 8568451968
**Name of Party:** PLAINTIFF : Nejat, Candace
**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** COMPLEX COMMERCIAL
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?**  NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Candace Nejat?** NO

**Are sexual abuse claims alleged by: Ilu Lily Designes, LLC?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/21/2021
Dated

/s/ LEWIS G ADLER
Signed

<table>
<tr><td>

**LEWIS G. ADLER, ATTORNEY AT LAW**
Attorney ID#: 023211985
26 Newton Ave.
Woodbury, NJ 08096
Tel. #: 856-845-1968
Fax #: 856-848-9504
Email: lewisadler@verizon.net
Counsel for plaintiffs

**PERLMAN-DEPETRIS CONSUMER LAW**
Paul DePetris
Attorney ID #: 005821996
Email: info@newjerseylemons.com
Lee M. Perlman
Attorney ID #: 019171994
Email: lperlman@newjerseylemons.com
1926 Greentree Road, Suite 100
Cherry Hill, New Jersey 08003
Tel.#: 856-446-9797
Fax#: 888-635-5933
Counsel for plaintiffs

</td></tr>
</table>

| | |
|---|---|
| CANDACE NEJAT AND ILU.LILY DESIGNS, LLC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                          PLAINTIFFS[1],<br>              V.<br>JAGUAR LAND ROVER NORTH AMERICA, LLC AND JOHN DOES 1-10,<br>                         DEFENDANTS. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, CIVIL PART CAMDEN COUNTY<br>CIVIL ACTION<br>DOCKET NO. CAM-L- *1836 – 21*<br><br>**COMPLAINT** |

Plaintiffs plead as follows:

## ABBREVIATIONS USED IN THIS DOCUMENT

1. For brevity's sake, hereafter the following abbreviated terms are used in this

   document:

   A. This civil action - this case or the case.

---

[1] As used in this document, use of the plural includes the singular, where applicable.  The
parties are referred to in the plural regardless of their actual number.

B. Plaintiffs CANDACE NEJAT AND ILU.LILY DESIGNS, LLC - plaintiffs.

C. Plaintiffs CANDACE NEJAT individually - Candace

D. Plaintiff ILU.LILY DESIGNS, LLC individually - ILU

E. Defendants JAGUAR LAND ROVER NORTH AMERICA, LLC - the manufacturer or defendants.

F. Plaintiffs and defendants collectively - the parties.

G. JOHN DOES 1-10 – the Does.

H. The 2017 Land Rover Range Rover Sport that is the subject of this case - the vehicle.

I. The sales or lease transaction that is the subject of this case - the sale or the transaction.

J. Land Rover Cherry Hill, 1100 Haddonfield Road, Cherry Hill, NJ 08002 - the selling dealer.

K. The contract for the sale or lease of the vehicle to plaintiffs - the contract.

L. The various new vehicle limited warranties that defendants issued plaintiffs with the vehicle collectively - the warranty.

M. The automotive repair attempts that defendants' authorized dealerships performed to the vehicle under the vehicle's warranty - the repairs or repair attempts.

N. The automotive dealerships that performed the repair attempts collectively - the servicing dealers or the dealers.

O. The problems or nonconformities that plaintiffs' experienced with the vehicle and/or when using the vehicle - the problems or the defect.

P. The New Jersey Truth-In-Consumer Contract, Warranty And Notice Act, N.J.S.A. 56:12-14 To -18 – TCCWNA.

Q. New Jersey Uniform Commercial Code, N.J.S.A. 12A:1-101, et seq. – UCC.

R. Magnuson-Moss Warranty- Federal Trade Improvement Act, 15 U.S.C. § 2301, et seq. – MMWA.

S. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, Et Seq. – CFA.

T. New Jersey Used Car Lemon Law, N.J.S.A. 56:8-67, et seq. – UCLL.

U. N.J.S.A. 56:8-2 – section 2.

V. New Jersey Division Of Consumer Affairs – DCA.

W. An act concerning new motor vehicle warranties and repealing P.L. 1983, c. 215 and making an appropriation, N.J.S.A. 56:12-29, et seq. a-k-a the New Jersey New Car Lemon Law – NCLL.

X. New Jersey Automotive Sales Practices Regulations, N.J.A.C. 13:45A-26B.1, et seq. – ASP.

Y. New Jersey Automotive Advertising Practices Regulations a-k-a New Jersey Motor Vehicle Advertising Practices, N.J.A.C. 13:45A-26A.1, et seq. – MVAP.

Z. Motor Vehicle Cost Information Act, 49 U.S.C. § 32701, et seq. a-k-a federal odometer law – FOL.

AA. An Act Concerning Service Contracts And Supplementing And Amending P.L.1980, C.125; the Service Contracts Act, N.J.S.A. 56:12-87, et seq. – SCA.

BB. National Highway Transportation Authority – NHTSA.

CC. Richard Roth of RSJ Auto LLC – the expert.

DD. The expert report of Richard Roth of RSJ Auto LLC – the report.

EE. The vehicle's Monroney label – the label required pursuant to be
displayed in all new automobiles pursuant to 15 U.S.C. 1232 of the
Automobile Information Disclosure Act of 1958 – the label.

FF. The Energy Policy Conservation Act of 1975, 49 U.S.C § 32901, et seq.
– the EPCA.

GG. United States Environmental Protection Agency – EPA.

HH. Better Business Bureau – BBB.

II. Federal Trade Commission – FTC.

JJ. The diesel exhaust filter of the vehicle known as a Diesel Particulate Filter
- DPF.

KK. Defendants' Dispute Settlement Resolution booklet furnished at time of
sale with the vehicle – DSR.

## EXHIBITS TO COMPLAINT

2. The allegations contained in the previous paragraphs are repeated as if fully set
forth herein.

3. Attached hereto as complaint exhibit A is the motor vehicle retail order reflecting
the sale and/or lease of the vehicle.

4. Attached hereto as complaint exhibit B are pages from the vehicle's warranty
booklet, owner's manual, Diesel Technology booklet and Dispute Resolution
Settlement booklet.

5. Attached hereto as complaint exhibit C is a repair history summary for the vehicle.

6. Attached hereto as complaint exhibit D are repair records for the vehicle.

7. Attached hereto as complaint exhibit E is the report of article titled The Warranty Process Flow Within The Automotive Industry:  An Investigation Of Automotive Warranty Processes And Issues (Center For Automotive Research, August 2005).

8. Attached hereto as complaint exhibit F is the expert report of Richard Roth of RSJ Auto LLC and the enclosures to the report, consisting of: (1) curriculum vitae for Richard Roth; (2) technical bulletin # LTB00968NAS2 dated 5-26-17; (3) special service message # SSM72861 dated 5-17-18; (4) technical bulletin # N241NAS2 dated 2-21-19; and (5) Aftersales bulletin NAS19.01.001 dated 2-21-19.

9. Attached hereto as complaint exhibit G is the complaint in *Shaaya v. Land Rover Jaguar North America, LLC*, Case 2:20-cv-05679.

10. Attached hereto as complaint exhibit H are pages from the Division of Consumer Affairs' publication "Vehicles Branded Under The New Jersey Lemon Law As of April 1, 2021."

11. Attached hereto as complaint exhibit I is a revocation of acceptance letter from plaintiffs' counsel to defendants.

12. Attached hereto as complaint exhibit J are documents exchanged between plaintiffs' counsel and the Better Business Bureau.

## PARTIES

13. The allegations contained in the previous paragraphs are repeated as if fully set forth herein.

14. Plaintiffs CANDACE NEJAT AND ILU.LILY DESIGNS, LLC are respectively an individual and a limited liability company with an address of 1879 Old Cuthbert Road, Suite 25, Cherry Hill, New Jersey 08034.

15. Defendants JAGUAR LAND ROVER NORTH AMERICA, LLC is a business with address of 100 Jaguar Land Rover Way, Mahwah, New Jersey 07495 with its registered agent as Corporation Service Company, Princeton South Corporate Center, Suite 160, 100 Charles Ewing Blvd, Ewing, NJ 08628.

16. John Does 1-10 are fictitious entities and/or individuals, including but not limited to those who have yet to be identified by plaintiffs but whose identity may be revealed during the period of discovery that shall occur in future relative to this action and who may be liable for plaintiffs' damages as referenced herein or who are known but not presently considered to be indispensable parties relative to this matter.  Such individuals-entities may include but are not necessarily limited to automotive manufacturers, automotive distributors, automotive parts manufacturers, automotive parts distributors, automotive transporters, automotive dealerships, contractors, subcontractors, independent contractors, companies, corporations, businesses, partnerships, agents, officers, directors, managing members, employees, salespeople, technicians, staff, workmen or representatives of the other defendants named herein.

17. Unless otherwise noted below, all allegations set forth below are directed against all defendants named herein and all references to "defendants" shall be to all defendants named herein.

## FACTUAL ALLEGATIONS

18. The allegations contained in the previous paragraphs are repeated as if fully set forth herein.

19. This case is a putative class action against the manufacturer of a vehicle that knew that the vehicle suffered from defects long before plaintiffs had problems with the vehicle.

20. The defect involves the vehicle's fuel system and decreased performance caused by the known defect with the system.

21. The vehicle is one of a line of 2017 Land Rover Range Rover Sport make and model of vehicles manufactured by the manufacturer, which issued a limited written warranty with those vehicles to purchasers or lessees of said vehicles. Exhibit B.

22. Despite foreknowledge that the vehicle suffered the aforesaid defect, the manufacturer failed to disclose the existence of that defect to plaintiffs and failed to pay for repairs under the unexpired warranty after the vehicle suffered a catastrophic engine failure and was brought to the servicing dealer for warranty repairs.

23. Moreover, plaintiffs purchased the vehicle for "city" driving – for driving in the suburbs of the Delaware Valley – as well as for "highway" driving instead of simply for "highway" driving.

24. However, after purchasing the vehicle, the servicing dealer advised plaintiffs that the vehicle must be driven on the highway to assure that it will perform properly. Exhibits C-D.

25. Otherwise, the vehicle's diesel fuel filter will become clogged and the vehicle's performance shall suffer. Exhibits C-D.

26. Accordingly, defendants committed a fraud, false pretense and/or deception in the marketing and sale of the vehicle to plaintiffs.

27. At all times relevant to this case, the selling dealer was a dealership authorized by defendants to sell the vehicle, issue manufacturer warranties associated therewith, service the vehicle and perform warranty repairs to the vehicle under the warranty.

28. At all times relevant to this case, the selling dealer was a "dealer", meaning a person who is actively engaged in the business of buying, selling or exchanging motor vehicles at retail and who has an established place of business.[2]

29. At all times relevant to this case, the vehicle was a "motor vehicle", meaning a passenger automobile, authorized emergency vehicle, or motorcycle as defined in N.J.S.A. 39:1-1 which is purchased or leased in the State of New Jersey or which is registered by the New Jersey Motor Vehicle Commission, except the living facilities of motor homes.[3]

30. At all times relevant to this case, the vehicle was a "consumer product", which means any tangible personal property which is distributed in commerce and

---

[2] N.J.S.A. 56:12-30; N.J.S.A. 56:12-31
[3] N.J.S.A. 56:12-30.

which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed).[4]

31. Defendants manufactured and/or assembled and/or distributed and/or advertised the vehicle, prepared the warranty and via the selling dealer, issued plaintiffs the warranty.  Exhibit B.

32. At all times relevant to this case, the manufacturer was a "manufacturer", meaning a person engaged in the business of manufacturing, assembling or distributing motor vehicles, who will, under normal business conditions during the year, manufacture, assemble or distribute to dealers at least 10 new motor vehicles.[5]

33. At all times relevant to this case, the manufacturer was a "supplier", which means any person engaged in the business of making a consumer product directly or indirectly available to consumers.[6]

34. At all times relevant to this case, the manufacturer was a "warrantor", which means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty. [7]

35. At all times relevant to this case, plaintiffs were "consumers", meaning a buyer or lessee, other than for purposes of resale or sublease, of a motor vehicle; a person to whom a motor vehicle is transferred during the duration of a warranty

---

[4] 15 U.S.C. § 2301(1).
[5] N.J.S.A. 56:12-30.
[6] 15 U.S.C. § 2301(4).
[7] 15 U.S.C. § 2301(5).

applicable to the motor vehicle; or any other person entitled by the terms of the warranty to enforce the obligations of the warranty.[8]

36. At all times relevant to this case, plaintiffs were "consumers", meaning a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).[9]

37. The vehicle is a motor vehicle as defined by the New Jersey motor vehicle code, N.J.S.A. 39:1-1, et seq., which defines "motor vehicle" as follows:  "Motor vehicle" includes all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles." N.J.S.A. 39:1-1.

38. Here is a chronology of events relevant to this case.

39. On or about December, 2017, plaintiffs were looking for a Range Rover to purchase.

40. At that time, plaintiffs wanted a vehicle with better gas mileage and that was safe, as Candace was expecting her first child.

41. The vehicle was primarily purchased so that Candace could use it for family chores and also, to drive it between her home in Voorhees, New Jersey to and

_____

[8] N.J.S.A. 56:12-30.
[9] 15 U.S.C. § 2301(3).

from her work location in Cherry Hill, New Jersey.

42. Aside from being used as an everyday vehicle for her family's routine use in their everyday lives – e.g., transportation for shopping and for their family (including at first one and now two children), Candace uses the vehicle to go to the post office, to pick up/drop off employees of ILU, pick up products, go to shows, etc.

43. Candace's husband, Kris, also sometimes uses the vehicle to travel to and from work.

44. The uses described above were the uses to which the vehicle was intended to be put when purchased and to which the vehicle is now being put by plaintiffs.

45. The vehicle was marketed to Candace by the salesman of the selling dealer as a vehicle that would offer a savings in fuel costs because the vehicle was equipped with a diesel engine.

46. Upon information and belief, at no time before the sale did anyone at the selling dealer or any representative of the manufacturer explain to Candace that the vehicle could not be used for driving on roadways other than highways (i.e., "city driving") or that any problems would arise with the vehicle's operation if the vehicle was used primarily for city driving – the use to which plaintiffs intended to put the vehicle at the time of the sale.

47. Upon information and belief, at time of sale, the vehicle was displayed at the selling dealer with a federal Monroney label which was affixed to the vehicle's window or in close proximity to the vehicle.

48. Upon information and belief, the label advertised certain information about the vehicle's fuel economy, such as the anticipated miles per gallon of fuel for "city driving", for "highway driving" and/or for "combined city/highway driving".

49. Under the UCC "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."[10]

50. Pursuant to the EPCA, the EPA promulgated regulations requiring automobile manufacturers to attach a label, known as a "Monroney label" or "window sticker" listing fuel economy estimates developed by the EPA to the windshield or side window of each new automobile manufactured in a model year.  49 U.S.C § 32901, et seq.

51. The EPA establishes the test methods and calculations for determining fuel economy estimates under the EPCA.   49 U.S.C § 32904.

52. Each year, the EPA releases a city estimate, a highway estimate and a combined city and highway estimate for all models of new vehicles that manufacturers plan to sell.   49 U.S.C. §32901; 40 C.F.R. § 600.209-85.

53. In the basic information article, the EPA explained the stated purpose of the window sticker as follows: "Fuel Economy and Environment Labels Every new car and light-duty truck sold in the United States is required to have a fuel economy label. The label (or "window sticker") contains the miles-per-gallon estimates that are designed to help consumers compare and shop for vehicles.

---

[10] *N.J.S.A.* 12A:2–313(1)(a).

EPA, in conjunction with the National Highway Traffic Safety Administration, has updated the label to incorporate new information required by the Energy Independence and Security Act of 2007, such as new ratings on fuel economy, greenhouse gas emissions, and other air pollutant emissions. The goal of the updated label is to enable easy and well-informed comparisons across all vehicles and vehicle technologies, including electric vehicles, plug-in hybrid electric vehicles, and gasoline/diesel vehicles. The new label will appear on 2013 model year vehicles. For more information on the fuel economy label see: <u>Fuel Economy and Environment Labels</u>"

54. Further, the labels article states, in pertinent part: "In May 2011, the U.S. Environmental Protection Agency and the National Highway Traffic Safety Administration (NHTSA) unveiled the most dramatic overhaul to fuel economy labels since they were introduced 35 years ago. When the new labels start to appear in showrooms and online, shoppers will have more information at their fingertips than ever before. The redesigned label will provide the public with new information on vehicles' fuel economy, energy use, fuel costs, and environmental impacts.  For the first time, for instance, comparable fuel economy and environmental ratings will be available for all new vehicles, including advanced technology vehicles like electric cars. Consumers will be able to make comparisons – car by car – to ensure they have the best information to help save on fuel costs and reduce emissions."

55. Fuel economy estimates are calculated pursuant to a methodology developed by the EPA, but each individual car manufacturer typically conducts the actual

test.

56. The complaint does not challenge the EPA methodology for establishing fuel
economy estimates or testing guidelines for automobiles but rather challenges
the misrepresentations and/or omissions defendants committed when
advertising the vehicle for sale by claiming that the vehicle was fit for city driving
when in fact the manufacturer knew that the vehicle was instead suited for
highway driving.

57. The label is a form of warranty that the vehicle was fit for city driving because,
under the UCC "[a]ny affirmation of fact or promise made by the seller to the
buyer which relates to the goods and becomes part of the basis of the bargain
creates an express warranty that the goods shall conform to the affirmation or
promise."[11]

58. On or about 12-22-17, plaintiffs purchased the vehicle in new condition at the
selling dealer in Cherry Hill, New Jersey for the sum of approximately
$75,669.75. Exhibit A.

59. At that time, the vehicle's odometer registered approximately 22 miles. Exhibit A.

60. At time of sale, the selling dealer issued plaintiffs the warranty with various
coverage periods for various components, including but not limited to the
following: "New Vehicle Limited Warranty Bumper to bumper 4 years/ 50,000
miles (whichever occurs first)." Exhibit B.

61. At all times relevant to this case, the warranty was a "warranty", which means
any warranty, whether express or implied of the manufacturer of a new motor

---

[11] *N.J.S.A.* 12A:2–313(1)(a).

vehicle, or, in the case of a new motor vehicle that is an authorized emergency vehicle, of the manufacturer, co-manufacturer or post-manufacturing modifier, of the vehicle's condition and fitness for use, including any terms or conditions precedent to the enforcement of obligations under the warranty. [12]

62. At all times relevant to this case, the warranty was a "written warranty", which means — (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product. [13]

63. At all times relevant to this case, the warranty was a warranty which pertained to a consumer product actually costing plaintiffs more than $5 (i.e., the vehicle). [14]

64. As time of sale, one or more implied warranties covering the vehicle arose as a matter of law in plaintiffs' favor, with the term "implied warranty" meaning an implied warranty arising under State law (as modified by 15

---

[12] N.J.S.A. 56:12-30.
[13] 15 U.S.C. § 2301(6).
[14] 15 U.S.C. § 2302(2)(e).

U.S.C. 2308 and 2304(a)) in connection with the sale by a supplier of a consumer product.[15]

65. At all times relevant to this case, plaintiffs were entitled to seek repair attempts to the vehicle under the warranty for problems that plaintiffs experienced with the operation of the vehicle.

66. Following purchase, plaintiffs regularly had the vehicle serviced at the selling dealer per the manufacturer's guidelines for service for the vehicle.

67. At no time did plaintiffs abuse, misuse, fail to maintain or modify the vehicle to cause the voiding of the warranty.

68. Upon information and belief, unknown to plaintiffs at the time of the sale was the fact that, beginning on or about 2009 and therefore, years prior to the sale and to meet stringent emissions requirements, defendants equipped all its diesel vehicles (including the vehicle) with an exhaust filter known as a Diesel Particulate Filter ("DPF"). Exhibit G.

69. Following purchase, plaintiffs experienced problems with the vehicle's operation and pursuant to the manufacturer's new vehicle limited warranty, took the vehicle to the servicing dealer in Cherry Hill, New Jersey.

70. The problems are detailed in the repair history summary and repair invoices/orders attached hereto. Exhibits C-D.

71. Specifically, plaintiffs experienced problems with the vehicle's diesel fuel system and in particular, the vehicle's DPF.

72. Beginning on or about 2-18-20 and when the vehicle's odometer registered

---

[15] 15 U.S.C. § 2301(7).

approximately 37,312 miles, the vehicle's check engine light was illuminated and the vehicle's warning light came on saying that the vehicle's diesel exhaust fuel filter was full. Exhibits C-D.

73. Plaintiffs had the vehicle taken to the dealer to get serviced for the problems and the selling dealer diagnosed the problem as being caused by the DPF being too full. Exhibits C-D.

74. In this repair attempt to the problem, upon information and belief, the selling dealer performed a dynamic regeneration and cleared codes stored in the vehicle's computer. Exhibits C-D.

75. Thereafter, on or about 3-3-20, when the vehicle's odometer registered approximately 37,929 miles, the vehicle's fuel filter would again become clogged as reflected by the DPF light on the vehicle's dash illuminating. Exhibits C-D.

76. During that repair attempt, the selling dealer's service department found that the "diesel particulate filter beyond regeneration capabilities" and therefore, proceeded to "remove and replace particulate filter" (sic). Exhibits C-D.

77. In all, the vehicle has undergone at least 5 repair attempts performed upon vehicle since delivery for diesel exhaust full problems and has been at the selling dealer for those repairs approximately 22 days. Exhibits B-C.

78. At all relevant times hereto and for purposes of the warranty and repair attempts to the vehicle or diagnosis of the vehicle offered thereunder, the servicing dealer acted as the agent of the manufacturer and was at all times acting within the purpose and scope of said agency and the manufacturer ratified and approved the acts of such agent.

79. At no time were the problems caused by any actions violating the warranty as shown by the selling dealer's attempts to fix the vehicle under the warranty. Exhibits B-C.

80. Vehicles equipped with a DPF allegedly have more efficient emissions because DPFs efficiently capture and store soot particles from exhaust gases, helping to lower tailpipe emissions.

81. These soot particles must be burnt to keep the filter clean, through a combustion process known as regeneration.

82. For regeneration to occur, a vehicle must be driven on a regular basis at highway speeds for prolonged periods of time.

83. Consequently, the DPF in defendants' diesel vehicles is prone to become clogged under many normal operating conditions including, but not limited to, frequent stop-and-go traffic.

84. To make matters worse, Defendants' DPF warning light system often activates only after it is too late for regeneration to occur, necessitating costly replacement of the DPF.

85. Upon information and belief, the defect poses an extreme and unreasonable safety hazard to drivers, passengers, and pedestrians alike.

86. This is because a clogged DPF can cause sudden and unexpected loss of power that can severely inhibit vehicle performance and even complete shutdown.

87. Upon information and belief, the defect thus increases the risk of an accident as well as the risk that drivers will become stranded with an inoperable vehicle.

88. Upon information and belief, although defendants equipped its vehicles with

warning lights to alert drivers when regeneration is necessary, this system is ineffective. Exhibit G.

89. Defendants' DPF warning system has three lights that may appear on the display panel.

90. An amber light indicates regeneration is required and instructs the driver to drive at highway speeds for approximately twenty minutes.

91. A red light indicates that the DPF is full and instructs the driver to contact a service center.

92. A green light will display when regeneration is complete.

93. However, by the time the amber light appears the filter is often already substantially clogged and requires replacement or will require replacement in an extremely short period of time.

94. Consequently, if regeneration is even possible by the time of an amber light warning, the time to regenerate the filter is far too short.

95. As one article explained: "There can be as little as a minute between the car alerting you to a problem and it going into limp home mode ... In that time, and assuming you're on a clear road, you must start the regen process, which involves driving the car at no less than 37 mph for 10 minutes with the engine turning at over 2000 rpm."[16]

96. By the time the warning light comes on, it is often essentially too late.

97. Upon information and belief, the DPF system in all Jaguar Land Rover diesel

---

[16] Getting cleaned out: diesel particulate filters 10 years on, AutoCar, https://www.autocar.co.uk/car-news/features/getting-cleaned-out-diesel-particulate-filters-10-years (Feb. 3, 2019).

vehicles in the United States and Europe is the same or substantially similar. Exhibit G.

98. Upon information and belief, the DPF of the class vehicles is prone to clog under normal driving conditions for much of the country, such as driving frequently in congested urban traffic or even cold weather. Exhibit G.

99. A DPF equipped vehicle must be driven at highway speeds on a regular basis for the DPF for the process of passive regeneration to clean the DPF automatically.

100. Upon information and belief, since defendants' introduction of diesel engine vehicles equipped with DPFs, defendants became aware of the defect through sources not available to plaintiff and class members, including, but not limited to pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to defendants' network of dealers and directly to defendants, aggregate warranty data compiled from defendants network of dealers, testing conducted by defendants in response to consumer complaints and repair order and parts data received by defendants from defendants' network of dealers.

101. Defendants were necessarily aware of this at the time that defendants distributed the class vehicles to defendants' franchise dealerships and sold same to them but failed to inform plaintiffs and class members and in fact, deceptively and fraudulently marketed and distributed the vehicles to plaintiffs and the class members as if they were suitable for city driving.

102. The fact that the class vehicles incorporate a DPF warning system (albeit an ineffective system) evidences defendants' presale knowledge of the problem.

103. The very materials given to plaintiffs and other consumers following the sale and lease of Land Rover vehicles – but not given before such sale or lease - confirms defendants' foreknowledge of the defect.

104. As explained by defendants in defendants' Diesel Technology brochure provided to plaintiffs after contracts were signed for the sale and when the vehicle was delivered to plaintiffs: "Diesel engines also need to conform to strict legislative emission requirements. To allow them to do this, a number of technologies are employed. These include a Diesel Particulate Filter (DPF) fitted in the vehicle's exhaust system, and an additive called Diesel Exhaust Fluid (DEF).... Diesel Exhaust Fluid, or DEF, is a non-toxic liquid containing urea and demineralized water. It is drawn into the exhaust system of your vehicle from a reservoir.... A Diesel Particulate Filter, or DPF, is an engine exhaust filter. A diesel engine produces emissions that may cause problems for people who suffer from breathing difficulties. The DPF reduces these emissions to a minimum.... Under normal circumstances, you don't need to do anything. Occasionally however, a series of warning lamps and messages may appear in the message center. These will advise you of the status of the DPF. If this happens, follow the instructions given.... A series of messages will be displayed in the message center to advise you when your DEF level is low. The messages start by advising that a DEF top-up is advised. If no action is taken, the messages escalate to amber warnings. We recommend that you don't ignore these messages and that you book your vehicle into a Land Rover retailer for a full DEF refill. If the level becomes critically low, a red warning will be displayed.

At this point, no further engine restarts will be possible until the DEF reservoir is refilled…. "

105. As further explained by defendants in defendants' owner's manual provided to plaintiffs after contracts were signed for the sale and when the vehicle was delivered to plaintiffs: "The owner's manual for the vehicle, likewise The Diesel Exhaust Fluid (DEF) warning lamp illuminates to warn the driver that the level of DEF is starting to run low. The warning lamp also illuminates if incorrect fluid has been added to the system, or if there is a fault with the system. The lamp is accompanied by messages in the message center. Follow the on-screen messages, if safe to do so. The Diesel Particulate Filter (DPF) warning lamp illuminates when the DPF is full, or there is a fault with the DPF system. Depending on severity, the lamp may be accompanied by a chime and a message in the message center. Seek qualified assistance at the earliest opportunity."

106. Moreover, upon information and belief, on 1-11-15, Land Rover issued a press release touting the fuel efficient diesel powertrains in the 2016 model year Land Rover.[17]

107. The article describes, inter alia, how the exhaust gas recirculation ("EGR") system of the Land Rover takes low pressure gasses—after the DPF filter in the exhaust pipe—and feeds them back into the turbocharger inlet, resulting in a

---

[17] *See* Land Rover Brings Two-Luxury Diesel SUV models North America Market available at
https://media.landrover.com/en-us/news/2015/01/land-rover-brings-two-luxury-diesel-suvmodels-north-america-market.

lower level of NOx emissions. In a section titled "Tested and Proven in the USA" the article discusses the extensive diesel engine testing performed by Defendant in the United States: Land Rover engineers embarked on US testing schedule to ensure the new diesel engine could handle all US climate and terrain conditions. By the time US sales have begun, the test fleet will have completed one million test miles. The test fleet has targeted the most extreme climates and diverse terrain imaginable across the US. The new Range Rover and Range Rover Sport diesel have navigated from sea level to altitudes of 14,000 feet during the grueling test program. To meet unique demands of the North American climate, engineers have undertaken testing year round, from the coldest winter days in Minnesota, to summertime in the deserts of the Southwest. Surely such testing would have alerted defendants to the fact that it's DPF's are prone to clog under various driving conditions, and that the DPF's warning light system is inadequate.[18]

108. In an August 2016 article, Jaguar boasts that "Throughout each stage of design, development and production, every component of a Jaguar goes through thousands of tests and checks for safety, durability and quality, ensuring that the finished product is the most reliable, dependable and safest car you can drive."[19]

109. The article details the grueling physical testing to which vehicles are subjected: Although virtual engineering is a powerful tool, there's no substitute for physical

---

[18] *See* Land Rover Brings Two-Luxury Diesel SUV models North America Market available at
https://media.landrover.com/en-us/news/2015/01/land-rover-brings-two-luxury-diesel-suvmodels-north-america-market.
[19] *See* https://www.jaguar.com/about-jaguar/reliability/testing-process.html.

testing in a laboratory environment as the ultimate proof of concept for reliability

testing in a laboratory environment as the ultimate proof of concept for reliability

and durability. We have doubled the size of our structural test facilities in recent

years, with a £22m investment to further enhance our state-of-the-art labs. New

transmission designs go through a continuous 12-week rig test, simulating a 10-

year 240,000 kilometre cycle that includes town driving, high-speed highway

driving and track driving. This is repeated six times for different engine and

transmission variants, meaning that every new gearbox is tested for 72 weeks

and 1.45 million kilometres – the equivalent of driving to the moon and back.

There are also shift cycle tests that put the clutch through a grueling series of

highspeed shifts, and steady-state tests where the transmission is run at high

levels of torque for long periods. Our engines have their own comprehensive

suite of static rig and dynamometer tests, with the new generation of Ingenium

engines having gone through 72,000 hours of durability testing – equivalent to

eight years of real-world tests – before they hit the road for two million kilometres

of final validation testing. Individual components can be tested in the

Environmental Robotic Durability Cell, which uses four robots, which can be used

to test everything from seatbelt activation and release, door opening and closing,

and key turns. Vehicle noise, vibration and harshness qualities are also refined in

advanced anechoic sound chambers. Climate Chambers replicate the world's

toughest weather conditions, freezing cars to -40ºC in hurricane-strength winds,

or replicating the sort of +50ºC temperatures and solar loads of up to 1,200W/m2

that you'd expect in the Sahara desert – all without vehicles ever having to leave

the UK. Water-tightness is proven with monsoon soak tests, drizzle tests that last up to 16 hours, and freeze tests. Physical laboratory testing even extends to interior features such as the rotary Jaguar Drive Selector, which was subject to every abuse imaginable during its development. "A bottle of cola is a tough test, as the sugar turns to treacle in hot climates," says Julian Jones, User Controls Manager. "Sand can also be bad if it gets in the Drive Selector's gears." Each test takes a month to run, with the Drive Selector having to cycle 60,000 times without fault. Surely such testing would similarly have placed defendants on notice of the defect. [20]

110. Defendants also would have known about the defect because of the higher than expected number of replacement exhaust filters ordered from defendants, which should have alerted defendants that the DPF system was defective.

111. Defendants' service centers use defendants' replacement parts that they order directly from defendants.

112. Therefore, defendants would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement exhaust filters.

113. The ongoing high sales of replacement exhaust filters was known to defendants and would have alerted defendants that its DPF system was defective and posed a safety risk early on.

114. Further evidence that defendants had knowledge of the defect before the sale may be revealed by defendants' own warranty repair reimbursement records.

---

[20] *See* https://www.jaguar.com/about-jaguar/reliability/testing-process.html.

115. In furtherance of pursuing repairs under their vehicles' warranties, the owners and lessees of Land Rovers equipped with diesel systems would have brought the vehicle to defendants' franchise dealerships for the performance of warranty repairs to address the symptoms of the defect such as the illumination of the aforesaid indicator lights.

116. Defendants process warranty reimbursement claims submitted by its franchise dealerships servicing Land Rover vehicles under their warranties and via those submissions, defendants should have been informed of the defect.

117. Moreover, upon information and belief, defendants maintain a computerized database of all of the warranty repairs and resources for defendants' franchise dealerships to use to attempt to repair vehicle issues or nonconformities complained of by vehicle purchasers to said dealerships.  Exhibit E.

118. Therefore, defendants provide technical support to franchise dealerships performing repair attempts under the warranty such as the selling dealer.  Exhibit E, p. 3.

119. Defendants require defendants' franchise dealerships to submit forms for reimbursement for warranty repairs, which include a description of the problem and the repairs being completed and those dealerships notify defendants of warranty issues.  Exhibit E, p. 4-5.

120. Further, under the NCLL, every time a vehicle is brought to defendants' franchise dealerships for repairs under the warranty during the first 2 years or 24,000 miles of operation following delivery to its first owner, said dealerships must notify defendants of the issues that are the subject of the repair attempts

and are frequently asked by said dealerships to authorize the performance of repair attempts (i.e., performance of labor and replacement of parts on the vehicle).

121. Accordingly, discovery of defendants' warranty records may reveal that, before plaintiffs purchased the vehicle, other purchasers of Land Rover diesel vehicles reported issues with their vehicles identical or substantially similar to the problems experienced by plaintiffs to defendants' franchise dealerships servicing those other vehicles.  Exhibits C-D & E.

122. Accordingly, upon information and belief, defendants: (1) had knowledge of the problems long before the failure occurred to the vehicle; and (2) were asked by other consumers purchasing 2017 and older Land Rover diesel vehicles to perform repair attempts to address the same or substantially similar problems as that experienced by the vehicle.

123. Moreover, the NCLL imposes various reporting requirements on manufacturers relative to vehicles with inherent design defects and on the manufacturer and DCA relative to vehicles repurchased by manufacturers as lemons.

124. Those reporting requirements shall make it easier for plaintiffs, during discovery in this case, to determine the class members' identities.

125. The NCLL requires manufacturers to "shall certify to the division, within one year of discovery, the existence of any inherent design defect common to all motor vehicles of a particular model or make."[21]

---

[21]. N.J.S.A. 56:12-44.

126. Under the NCLL, a manufacturer commits a per se CFA violation if they fail to perform that certification. [22]

127. Upon information and belief, in violation of the CFA, defendants failed to perform that certification process notwithstanding defendants having knowledge that the problems were an inherent design defect of the vehicle.

128. Pursuant to the NCLL regulations adopted by the DCA, the Division of Consumer Affairs shall maintain an index of all motor vehicle disputes by make and model and shall compile and maintain statistics indicating the record of manufacturer compliance with any settlement procedure decisions and the index and statistical record of compliance shall be made available to the public.[23]

129. Pursuant to the NCLL, "a. If a motor vehicle is returned to the manufacturer, or, in the case of an authorized emergency vehicle, to the manufacturer, co-manufacturer, or post-manufacturing modifier, under the provisions of this act or a similar statute of another state or as the result of a legal action or an informal dispute settlement procedure, it shall not be resold or re-leased in New Jersey unless: (1) The manufacturer, co-manufacturer, or post-manufacturing modifier provides to the dealer, distributor, or lessor, and the dealer, distributor or lessor provides to the consumer, the following written statement on a separate piece of paper, in 10-point bold-face type: "IMPORTANT: THIS VEHICLE WAS RETURNED TO THE MANUFACTURER OR OTHER RESPONSIBLE PARTY BECAUSE IT DID NOT CONFORM TO THE MANUFACTURER'S OR OTHER

---

[22]. N.J.S.A. 56:12-44.
[23] N.J.A.C. 13:45A-26.15.

PARTY'S WARRANTY FOR THE VEHICLE AND THE NONCONFORMITY WAS

NOT CORRECTED WITHIN A REASONABLE TIME AS PROVIDED BY LAW;"

(2) The dealer, distributor, or lessor obtains from the consumer a signed receipt

certifying, in a conspicuous and understandable manner, that the written

statement required under this subsection has been provided. The director shall

prescribe the form of the receipt. The dealer, distributor, or lessor may fulfill his

obligation to obtain a signed receipt under this paragraph by making such a

notation, in a conspicuous and understandable manner, on the vehicle buyer

order form accompanying the sale or lease of that vehicle; and (3) The dealer,

distributor, or lessor, in accordance with the provisions of section 1 of P.L.1993,

c.21 (C.39:10-9.3), notifies the Chief Administrator of the Motor Vehicle

Commission of the sale or transfer of ownership of the motor vehicle."[24]

130. Disclosure during discovery of the reasons for other Land Rover vehicles being

branded lemons could reveal that one or more of the reasons were issues similar

or identical to the problems.

131. The DCA maintains a database of vehicles repurchased by manufacturers

as lemons. Exhibit H.

132. That database reveals that dozens of 2017 Land Rover Range Rover

vehicles and dozens of earlier model year Range Rover vehicles have been

the subject of repurchases by defendants. Exhibit H.

133. Upon information and belief, discovery may reveal that, in violation of the

NCLL and therefore, in violation of the CFA, defendants failed to perform that

---

[24] N.J.S.A. 56:12-35.

certification process notwithstanding defendants having knowledge that the problems were an inherent design defect of the vehicle.

134. If discovery reveals the aforesaid, such NCLL and CFA violations will support: (1) the section 2 violations pled in this pleading; and (2) a per se CFA violation against defendants.[25]

135. Therefore, plaintiffs reserve the right to amend this pleading to add a CFA per se violation claim predicated on defendants' potential failure to follow the certification process of the NCLL.

136. Defendants also knew about the defect from a number of public complaints, and articles complaining of the defect, posted on the Internet and elsewhere.

137. By way of example on March 30, 2017, AOL published an article titled "Furious Range Rover owner vandalises his own car."[26]

138. The article explained that: "Dev Bath, 30, paid more than £70,000 for the black Range Rover Sport, and has threatened to burn it live on camera if manufacturer Land Rover fails to sort out its alleged issues. He ditched the SUV in a Mayfair street on Tuesday, and claims Land Rover has repeatedly asked him to remove the vehicle as it is 'damaging its brand'. One of the messages Bath left on the car reads: 'Be careful, don't buy from Range Rover. I got ripped off. They sold me this junk.'. . .'I've only had it for 10 months and we've had nothing but problems.

---

[25]. N.J.S.A. 56:12-44.
[26] https://www.aol.co.uk/cars/2017/03/30/furious-range-rover-owner-vandaliseshis-owncar/?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS88&guce_referrer_sig=AQAAAMGKzPXJAZKWcJEFQ7_yryLVEPmE0_Fkbsj9EKvfcvSGNDwOkE w8qE9GBe44vhI6ecbHTXHIaBa-HRgfS9vOoBKPndXzjByenvnqGCb40l2lTaPtDfkV6_rB94Ynbcuy68LCBMsSgXLymRE Hd8CS7n2wstvGFIWTXozi4dj9mN (Mar. 30, 2017).

We had had it for six weeks when the yellow light first came on saying I had to drive the car for thirty minutes at 50mph.' No-one told me this when I bought the car. Where can you do that in London? Range Rover haven't done anything to help me so I thought what better place to park it than on Berkley Street in Mayfair?'" [27]

139. The article concluded by a Land Rover spokeswoman commenting that: "The customer is complaining of a full DPF (Diesel Particulate Filter) owing to the urban cycle the vehicle has been used on, which would be the case in any diesel with a DPF. There is no fault with the vehicle. Land Rover is trying to work with the customer to bring the situation to a mutually satisfactory conclusion." [28]

140. Therefore, by March of 2017, Jaguar Land Rover was aware of the defect, but refused to acknowledge the defect or offer an adequate fix, instead blaming the customer's driving style.

141. That is similar to the experience of plaintiffs, who were told on or about 10-20-20 and tens of thousands of miles after purchasing the vehicle, that "vehicle must be driven at highway speeds for di stance (sic) in order to keep filter from getting

---

[27] https://www.aol.co.uk/cars/2017/03/30/furious-range-rover-owner-vandaliseshis-owncar/?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS88&guce_referrer_sig=AQAAAMGKzPXJAZKWcJEFQ7_yryLVEPmE0_Fkbsj9EKvfcvSGNDwOkEw8qE9GBe44vhI6ecbHTXHlaBa-HRgfS9vOoBKPndXzjByenvnqGCb40l2lTaPtDfkV6_rB94Ynbcuy68LCBMsSgXLymREHd8CS7n2wstvGFIWTXozi4dj9mN (Mar. 30, 2017).

[28] https://www.aol.co.uk/cars/2017/03/30/furious-range-rover-owner-vandaliseshis-owncar/?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS88&guce_referrer_sig=AQAAAMGKzPXJAZKWcJEFQ7_yryLVEPmE0_Fkbsj9EKvfcvSGNDwOkEw8qE9GBe44vhI6ecbHTXHlaBa-HRgfS9vOoBKPndXzjByenvnqGCb40l2lTaPtDfkV6_rB94Ynbcuy68LCBMsSgXLymREHd8CS7n2wstvGFIWTXozi4dj9mN (Mar. 30, 2017).

clo gged (sic)/ failure to perform this action will lead t o (sic) condition returning which may not be a matter of warranty at that time".  Exhibits C-D.

142. Upon information and belief, further evidence of defendants' knowledge of the defect would have been available to defendants during the pre-release process of designing, manufacturing, engineering, and testing the class vehicles which would necessarily have taken place prior to the sale of the class vehicles.

143. During that process, defendants, directly and/or through its agents or affiliated companies in the supply chain, necessarily would have gained comprehensive and exclusive knowledge about the class vehicle's DPF system: its capabilities including its ability to passively or actively regenerate and the conditions required to do so; the vehicle's ability to detect when active regeneration is needed; whether the warnings given to drivers were adequate and timely; how the DPF would experience performance problems or fail; and, the cumulative and specific impacts on the DPF caused by wear and use, the passage of time, driver habits, driving patterns, environmental factors, etc.

144. An adequate pre-release analysis of the design, engineering and manufacture of the DPF system used for the class vehicles would have revealed to defendants that the DPF system does not operate properly and is not fit for its intended use.

145. Thus, during the pre-release design stage of the class vehicles, defendants would have known that the DPF system in the class vehicles was defective and would pose a safety risk to owners/lessees and the motoring public and could cause a diminution in value of the class vehicles.

146. Before the sale of the vehicle and even before the distribution into the
marketplace of the class vehicles, defendants knew the vehicle was defective
and not fit for their intended purpose of providing consumers with safe and
reliable transportation at the time of the sale and thereafter.  Exhibit G.

147. Defendants knew of and concealed the defect that is contained in every class
vehicle, along with the attendant dangerous safety problems and associated
repair costs, from plaintiff and the other class members both at the time of sale
and repair and thereafter.

148. Despite notice of the defect from, among other things, pre-production testing,
warranty data, customer complaints at dealerships and dealership repair orders,
defendants failed to recall the class vehicles to repair the defect, has not offered
its customers a suitable repair or replacement free of charge and has not offered
to reimburse all class vehicle owners and leaseholders the diminution of value
incurred by the class members due to the repair history of their vehicles and the
stigma associated with the defects plaguing the vehicle.

149. Acting out of deceptive motives, defendants failed to recall the class vehicles to
repair the defect, failed to offer to its customers a suitable and timely repair or
replacement of parts related to the defect free of charge and has not reimbursed
all class vehicle owners and leaseholders who incurred costs for repairs related
to the defect.

150. Plaintiffs and the other class members were not reasonably able to discover the
defect despite their exercise of due diligence.

151. Despite their due diligence, plaintiffs and the other class members could not

reasonably have been expected to learn or discover that they were deceived and that material information concerning the class vehicles and their DPF systems was concealed from them.

152. In addition, even after class members contacted defendants and/or its authorized agents for vehicle repairs concerning the defective nature of the class vehicles and their DPFs, they were routinely told by defendants and/or through their authorized agents for vehicle repairs that the class vehicles are not defective or received assurances that the class vehicles could be repaired in a reasonable time or were blamed by defendants' franchise dealerships for supposedly improper driving habits.

153. Hence, any applicable statute of limitation, if any, has been tolled by defendants' knowledge, active concealment, and denial of the facts alleged herein.

## CLASS ACTION ALLEGATIONS

154. Plaintiffs bring this putative class action for damages, repurchases, refunds, equitable and injunctive relief on behalf of themselves and applicable New Jersey citizens.

155. More specifically and subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, plaintiffs propose the following classes and/or subclasses of persons: **(1) Nationwide Class: All persons who purchased or leased a diesel engine-powered 2017-2021 Land Rover Range Rover or other diesel engine-powered Jaguar Land Rover vehicle equipped with a substantially similar DPF system within the United States. (2) New**

**Jersey Subclass: All persons who purchased or leased a diesel engine powered 2017-2021 Land Rover Range Rover or other diesel engine-powered Jaguar Land Rover vehicle equipped with a substantially similar DPF system within the State of New Jersey.**

156. Excluded from the aforesaid classes/subclasses are: (a) defendants, any entity in which defendant has a controlling interest and its legal representatives, officers, directors, employees, assigns and successors; (b) the Judges to whom this case is assigned and any member of the Judges' staff or immediate family; and (c) class counsel.

157. Plaintiffs seek only damages and injunctive relief on behalf of themselves and the class members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by plaintiffs and/or the class members.

158. Defendants are in exclusive possession, custody and control of the list of persons who were class members in the prior case and any other cases.

159. While there may be other cases pending against defendants, upon information and belief, all of the proposed class members' claims in this matter don't entirely overlap with those other pending cases. G. For example, in this case, relief is specifically sought under New Jersey law.

160. It isn't the intent to have overlapping classes and any overlap will be ameliorated through amendment if facts show that they do overlap.

161. Defendants' actions are not isolated.

162. Defendants' actions have affected similarly situated individuals throughout the

State of New Jersey.

163. Defendants acted on grounds generally applicable to the class members, thereby justifying relief against defendants for the class members as whole.

164. Plaintiffs are members of the class that they seek to represent.

165. The class is believed to number at least hundreds, if not thousands, of persons and their joinder is impracticable, except by via a class action.

166. The disposition of the claims of the class in a class action will benefit both the parties and the Court.

167. There are questions of law and/or fact common to the class predominating over any question affecting only individual class members as to whether defendants are liable to plaintiffs for violation of applicable law. For instance, are defendants liable for the class action claims pled in the complaint?

168. Class certification is also appropriate because defendants acted on grounds generally applicable to the class, making appropriate equitable injunctive relief with respect to plaintiffs and the class members.

169. Specifically, plaintiffs seek injunctive relief via a court judgment or order requiring an end to the unlawful practices and/or the issuance of a corrective or explanatory notice to the class members.

170. Plaintiffs' claims are typical of the claims of the class insofar as named class representatives and the members of the class were similarly exposed to the statutory harms alleged herein and were similarly injured and/or face similar risks therefrom.

171. The proposed class representatives state a claim upon which relief can be

granted that is typical of the claims of absent class members. If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

172. Plaintiffs will fairly and adequately represent the interests of the class insofar that the plaintiffs' claims are typical of those of the class members.

173. Plaintiffs are committed to the vigorous representation of the class members.

174. Plaintiffs retained counsel experienced and skilled in consumer law and class action litigation.

175. Plaintiffs have no conflict of interest in the maintenance of this class action.

176. If the matter is maintained as a class action, it shall provide for a fair and efficient adjudication of this dispute.

177. The claims and remedial theories pursued by the named class representative are sufficiently aligned with the interests of absent class members to ensure that the individual claims of the class will be prosecuted with diligence and care by the individual plaintiffs as class representatives.

178. Contrawise, especially in view of the small dollar amounts in controversy relative to the individual plaintiffs' claims, it would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action.

179. Further, the maintenance of separate actions in lieu of the instant proposed class action would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications.

180. Contrawise, a single class action such as the instant proposed class action can determine the rights of all class members while economizing judicial resources.

181. Moreover, as plaintiffs invoked consumer protection statutes and have pled a prima facie case for the violation of same, the policy goals behind those consumer protection statutes provide further reason for permitting class action certification of the instant action.

182. The benefits of adjudicating this case via a class action far outweigh any difficulties in management of the case as a class action.

183. Class action treatment of this case is a superior method for the fair and efficient adjudication of this dispute because:

- individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake;

- as a result, there has been no other litigation over the controversies herein;

- individual members of the class have no interest in prosecuting and controlling separate actions; and

- the proposed class action is manageable.

- the proposed class is readily ascertainable.

184. Certification of the class under R. 4:32 or Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate because defendants acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

185. Certification of the class under R. 4:32 or Rule 23(b)(3) of the Federal Rules of

Civil Procedure is appropriate in that: (a) the questions of law or fact common to the members of the class predominate over any questions affecting an individual member; and (b) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

186. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual lawsuits would entail.

187. Absent a class action, many members of the class will likely not even obtain relief, whether because they are unaware of their right to relief from the harm caused by defendants' illegal practices, due to the prohibitive time and monetary cost inherent in individual litigation, or otherwise.

188. While the exact number of class members is unknown to plaintiffs at this time and can only be determined by appropriate discovery, membership in the class is ascertainable based upon the records maintained by defendants and governmental officials.

189. Upon information and belief, during the relevant time periods, over one hundred of the class vehicles, if not thousands of class vehicles, were sold, leased or registered in New Jersey.

190. Therefore, the class members are so numerous that individual joinder of all class members is impracticable under R. 4:32 or Fed. R. Civ. P. 23(a)(1).

191. Plaintiffs' claims are typical of the claims of the class members whom they seek to represent under R. 4:32 or Fed. R. Civ. P. 23(a)(3) because plaintiffs and each

class member have a vehicle with the same problems.

192. Plaintiffs will fairly and adequately represent and protect the interests of the class members as required by R. 4:32 or Fed. R. Civ. P. 23(a)(4).

193. Plaintiffs are adequate representatives because their interests do not conflict with the interests of the class members and intend to vigorously prosecute this case.

194. Further, plaintiffs retained counsel (i.e., Lewis Adler and Paul DePetris) competent and experienced in complex class action litigation, including putative automotive warranty class action litigation and New Jersey CFA litigation and who together certified at least eight (8) class actions and intend to vigorous prosecute this case.

195. Therefore, the interests of the class members will be fairly and adequately protected.

196. A class action is appropriate under R. 4:32 or Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to class members predominate over any questions affecting only individual members and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy.

197. The class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large merchants such as defendants.

198. Plaintiffs nor their counsel are aware of any pending litigation concerning this controversy already begun by any of the class members.

199. It is desirable to concentrate this litigation in this forum to avoid burdening the

courts with individual lawsuits.

200. As interpreted by New Jersey courts, New Jersey consumer statutes lend themselves to class action treatment, lest viable individualized consumer claims go unprosecuted due to the dubious utility of prosecuting them on individual bases.

201. Further, individualized litigation presents a potential for inconsistent or contradictory results and increases delay and expense to all parties and the court system presented by the legal and factual issues of this case.

202. The proposed class action has no management difficulties.

203. Defendants' records and the records available publicly will easily identify the class members.

204. As the problems are common to all the class vehicles, the same documents and testimony shall prove plaintiffs' and the class members' claims.

205. If the case proceeds as a class action, the parties and the court system shall benefit via a single adjudication, economies of scale and comprehensive supervision by a single court.

206. A class action is appropriate under R. 4:32 or Fed. R. Civ. P. 23(b)(2) because, as detailed above, defendants acted or refused to act on grounds applicable generally to the class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all class members.

## COUNT 1

## SECTION 2 CFA VIOLATIONS

## PLED BY PLAINTIFFS AND THE CLASS AGAINST DEFENDANTS

207. The allegations contained in the previous paragraphs are repeated as if fully set forth herein.

208. This count is plead by plaintiffs and the class against defendants.

209. The CFA is a statute that is to be applied broadly given the statute's remedial purpose.[29]

210. Under the CFA, "(d) The term "person" as used in this act shall include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof;" N.J.S.A. 56:8-1(d).

211. The parties meet the definition of "person" as set forth in N.J.S.A. 56:8-1(d).

212. Under the CFA, "[t]he term "advertisement" shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan;...." N.J.S.A. 56:8-1(a).

213. Under the CFA, "[t]he term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale;...." N.J.S.A. 56:8-1(c).

214. The vehicle is merchandise subject to the CFA.

215. Under the CFA, the term "sale" shall include any sale, rental or distribution,

---

[29] *Lemelledo v. Beneficial Management Corp. of Am.*, 150 N.J. 255, 264 (1997); *Blatterfein v. Larken Associates*, 323 N.J. Super. 167, 178 (App. Div. 1999).

offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute. N.J.S.A. 56:8-1(e).

216. The sale of the vehicle constitutes a "sale" under the CFA.

217. Further, N.J.S.A. 56:8-2 states, in pertinent part: "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…." N.J.S.A. 56:8-2.

218. The CFA is designed to protect the public even when a merchant acts in good faith.[30]

219. As to any individual defendants facing CFA violations pled in this pleading, under the CFA, there is no need to pierce any corporate or company veil; the Court instead focuses on individual defendants' misconduct supporting CFA violations.

220. Therefore, assuming for argument's sake that the individual defendants named to this case operated via one or more valid corporations or companies, the corporate veil does not insulate corporate officers or employees or company

---

[30] *Cox v. Sears*, 138 N.J. 2, 16 (1994).

managing members or employees from CFA liability.[31]

221. Defendants actively concealed the true nature and extent of the defect from plaintiffs and the other class members and failed to disclose it to them at the time of the sale or lease of their respective vehicles and thereafter.

222. Via their franchise dealerships, defendants distributed the vehicles and offered the vehicles for sale via the deception, fraud and false pretense that the vehicles were actually designed and fit for city driving conditions, when in fact defendants knew that the vehicles' DPF filters would routinely clog when so used and therefore, that the vehicles were in fact not fit for such use.

223. Therefore, while defendants were fully aware of the defect contained in the class vehicles, defendants actively concealed the existence and nature of the defect from plaintiffs and the other class members at the time of purchase or repair and thereafter.

224. Accordingly, before plaintiffs even purchased the vehicle or took the vehicle to the servicing dealer for warranty repairs, defendants had advanced knowledge, through the complaints of other consumers purchasing or leasing 2017 and earlier and older model year Land Rover diesel engine vehicles, that those vehicles had problems which defendants were unable to successfully repair in a reasonable time.

225. While no consumer may be entitled to a new vehicle that is entirely trouble free mechanically, no manufacturer should place into the stream of commerce a vehicle which it knows suffers from specific problems and that

---

[31] *Allen v. V & A Bros.*, 208 N.J. 114 (2011).

cannot be fixed after repeat repair efforts and that substantially impair the vehicle's use, value and/or safety.

226. No manufacturer should put a product into the steam of commerce with knowledge that the vehicle that is advertised as suitable for city driving but that contains a defect that makes it unsuitable for city driving and further, that cannot be repaired during the vehicles' warranty or in a reasonable time during the vehicles' warranty and that will require product purchasers and lesees to face out of pocket costs for repairs to address the defect once said warranties expire.

227. Further, no manufacturer should refuse to perform warranty repairs or threaten to refuse those repairs in future in bad faith when those repairs are covered under the warranty and become necessary because of a known defect in the vehicle that is covered under the warranty.

228. The vehicle's warranty is crucial to the purchasers of vehicles manufactured, assembled and distributed by defendants to which the warranty applies, as the warranty influences consumers' decisions to purchase vehicles covered by the warranty.

229. As the Appellate Division explained: [32] "[w]arranties developed in the law ... to protect the ordinary consumer who cannot be expected to have the knowledge or capacity ... to make adequate inspection of mechanical instrumentalities, like automobiles, and to decide for himself whether they are reasonably fit for the designed purpose." *Henningsen, supra,* 32 *N.J.* at 375, 161 *A.*2d 69. An express

---

[32] *Ford Motor Credit Co. v. Mendola*, 427 N.J. Super. 226 (App. Div. 2012).

warranty for a new automobile is not provided gratuitously by the manufacturer or

seller. The cost of the warranty is included in the cost of the product. The

consumer has purchased the warranty along with the car. It is "part of the benefit

of the bargain." *Thiedemann v. Mercedes–Benz USA, LLC,* 183 *N.J.* 234, 251,

872 *A.*2d 783 (2005).

230. Express warranties are used by manufacturers to increase the attractiveness of

their products to consumers. The inclusion of warranties is not a result of

corporate benevolence. Conversely, purchasers rely on warranties; they

reasonably expect them to have meaning beyond a mere promise of

replacement.[33]

231. A warranty is intended to give consumers peace of mind that any problems with

the vehicle arising during the applicable coverage periods of the warranty can

and shall be addressed in a reasonable period of time and if not, that consumers

shall have recourse to the law to seek damages.

232. Therefore, while a warranty is not a guarantee against all issues that may

arise in the operation of a vehicle, the warranty forms an important marketing

tool, providing a consumer peace of mind that problems with a warranted

vehicle's operation, brought to the manufacturer's attention during that

period, can and shall be fixed by the vehicle's manufacturer in a reasonable

time.

233. However, in this case, before plaintiffs purchased the vehicle, defendants:

(1) knew that the problems existed; (2) were unable to fix those problems in a

---

[33] *Gladden v. Cadillac Motor Car Div.,* 83 N.J. 320 (1980)(Pashman, J., concurring).

reasonable time – as shown from exhibits C-D; and (3) is prepared to deny responsibility for repairs to the vehicle for the problems. Exhibits C-D.

234. Therefore, since the class vehicles suffer from the known problems that should be covered under the warranty but the manufacturer refuses to honor the warranty by repairing the class vehicles in a reasonable time, the value of the class vehicles is suffering diminution.

235. Since defendants were aware of the problems before any of the vehicles were sold or leased, acting in bad faith, defendants lured plaintiffs and class members to purchase or lease the class vehicles without disclosure of the problems that were unable to be fixed in a reasonable time under the warranty.

236. Defendants: (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the class vehicles, including the defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the class vehicles and their DPFs were not in good working order, were defective, and were not fit for their intended purpose; and, (c) failed to disclose and/or actively concealed the fact that the class vehicles and their DPFs were defective, despite the fact that defendants learned of the defect prior to releasing its vehicles equipped with diesel engines and prior to plaintiff's purchase of the vehicle.

237. Defendants, via its franchise dealerships, engaged in section 2 affirmative acts of fraud – deception, fraud, false pretense or false promise - during the

subsequent performance[34] of the warranty as happened to plaintiffs, when the
selling dealership's service department falsely cast the blame for the problems
on plaintiffs and class members' alleged failure to "properly drive" the class
vehicles. Exhibits C-D.

238. For example, on or about 10-17-20, when plaintiffs took the vehicle to the
selling dealer for a repair attempt to the vehicle because of its fuel filter being
clogged per the indicator light for that issue, the service department of the selling
dealer warned plaintiffs on a repair invoice/order that: "vehicle must be driven at
highway speeds for di stance (sic) in order to keep filter from getting clo gged
(sic)/ failure to perform this action will lead t o (sic) condition returning which may
not be a matter of warranty at that time." Exhibits C-D.

239. In so doing, despite presale knowledge of the problems, defendants, via its
franchise dealerships, acknowledge that the class vehicles are not suitable for
city driving.

240. Defendants thereby deprived class members of the benefit of their bargain,
exposed them all to a dangerous safety defect and threatened them that they
shall in future have to expend money at its dealerships or other third-party repair
facilities and/or take other remedial measures related to the defect because of
plaintiffs' allegedly deficient driving habits. Exhibits C-D.

241. As detailed above, defendants' course of conduct in this dispute provides
evidence of a section 2 knowing omission violation of N.J.S.A. 56:8-2 (section 2)
via unlawful practices, both in the initial transaction and in subsequent

---

[34] N.J.S.A. 56:8-2; *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557 (2011).

performance.

242. By failing to alert or disclose presale to plaintiffs the existence of the defect, defendants engaged in an "omission" - the act of neglecting to do what the law requires and liability is imposed for such inaction because of the existence of a duty to act under the circumstances.[35]

243. Relative to the vehicle's problems, which were known to defendants before plaintiffs purchased the vehicle and which defendants failed to disclose to plaintiffs, defendants committed a knowing omission involving the following: (1) nondisclosure—"a fact existing at the time of the transaction was not disclosed"; (2) materiality of fact undisclosed—"the fact, if disclosed, would be important to the plaintiffs' decision to purchase or to the decision of any reasonable buyer"; (3) knowledge— defendants "knew the fact and its importance at the time of the transaction"; and (4) intentional concealment— defendants withheld the information intending for the buyer to make a decision without knowing the fact.

244. Defendants engaged in an "omission" - the act of neglecting to do what the law requires and liability is imposed for such inaction because of the existence of a duty to act under the circumstances.[36]

245. Vehicle purchasers such as plaintiffs have viable knowing omission claims where, as here, a manufacturer designs and distributes a vehicle with a problem not readily discoverable by customers but of which the manufacturer was aware

---

[35] New Jersey Model Civil Jury Charge 4:43.
[36] New Jersey Model Civil Jury Charge 4:43.

yet failed to disclose to those customers.[37]

246. Unlike the usual vehicle put into the steam of commerce with a warranty, the manufacturer was not in good faith insuring against a risk but actually knew *with certainty* that the product at issue or one of its components was going to fail.[38]

247. Plaintiffs need not prove their case on the pleadings but rather, must merely allege details showing that it is *plausible* that defendants knew of the problems before the sale and yet failed to disclose same to plaintiffs.[39]

248. Defendants knew of the defect – as clearly shown by the statement made during the course of subsequent performance of the warranty on one of the repair invoices/orders which attempts to cast blame on plaintiffs and to threaten that the warranty would not be honored in future.

249. As detailed above, this case also involves affirmative act section 2 violations by defendants, in the marketing the vehicle for sale and during the course of

---

[37.] *Robinson v. Kia Motors Am., Inc.*, No. 13-006, 2015 U.S. Dist. LEXIS 121755 (D.N.J. Sept. 11, 2015). The court explained: In addition to the allegations of knowledge described above, Plaintiffs further assert that Kia was aware of the defect based on (1) online customer complaints about the alleged problem, and (2) a technical service bulletin ("TSB") issued by Defendants . . . . Specifically, Plaintiffs direct the Court to specific websites that they allege contain complaints about the crankshaft pulley bolt problem. (*Id.*). They include detailed information regarding the names of the websites and the number and nature of the complaints. (*Id.*). In addition, Plaintiffs allege that a TSB issued in June 2007 that "identified the problem discussed in this complaint stating: '[t]he Crankshaft Pulley bolt may become loose, especially if improperly torqued during routine service . . . .'" At least one New Jersey Plaintiff, Robinson, purchased her vehicle after the June 2007 TSB was issued . . . . Its "publication adds further plausibility to [plaintiffs'] allegations that [d]efendants had knowledge of . . . the alleged defect."
[38.] *Coba v. Ford Motor Co.*, No. 12-1622 (KM) (MAH), 2017 U.S. Dist. LEXIS 123546 (D.N.J. Aug. 4, 2017).
[39] *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 472 (App. Div. 2001). See also *Printing Mart v. Sharp Elecs.Corp.*, 116 N.J. 739, 746 (1989)("...in determining whether dismissal under Rule 4:6-2(e) is warranted, the court should not concern itself with the plaintiffs' ability to prove its allegations.").

subsequent performance of the warranty as aforesaid.

250. Accordingly, defendants engaged in affirmative act section 2 CFA violations via unlawful practices, in subsequent performance of the warranty, as follows:

- Committing a deception - conduct or an advertisement, that is misleading to an average consumer to the extent that it is capable of, and likely to, mislead an average consumer. It is the capacity to mislead that is important. Therefore, it is irrelevant whether: (a) at a later time, the conduct or advertisement was capable of explanation to a more knowledgeable and inquisitive consumer; or (b) the conduct or advertisement actually misled or (c) the merchant acted in good faith.

- Committing a fraud - a perversion of the truth or misstatement or falsehood communicated to another and creating the possibility that the other party will be cheated.

- Committing a false pretense - an untruth, knowingly expressed by a wrongdoer.

- Committing a false promise - an untrue commitment or pledge, communicated to another person, to create the possibility that that other person will be misled.

251. As to all of the above misconduct, the CFA permits a finding that it was violated without any showing of knowledge of falsity of the misrepresentation, an intent to deceive or even negligence.[40]

---

[40] *Cox v. Sears*, 138 N.J. 2 (1994); *Byrne v. Weichert Realtors*, 290 N.J. Super. 126 (App. Div. 1996); N.J.S.A. 56:8-2; N.J.S.A. 56:8-19.

252. "The terms 'fraud,' 'false pretense,' 'false promise' and 'misrepresentation' have traditionally been defined in this State as requiring an awareness by the maker of the statement of its inaccuracy accompanied by an intent to mislead. However, in *Fenwick v. Kay Amer. Jeep, Inc.*, 72 *N.J.* 372, 377 (1977), the Supreme Court noted that 'the requirement that knowledge and intent be shown is limited to the concealment, suppression or omission of any material fact.' *See also*, *D'Ercole Sales, Inc. v. Fruehauf Corp.*, s*upra* at 22 (App. Div. 1985). Therefore, the definitions provided for these four terms do not require either intent or knowledge."[41]

253. In addition to the aforesaid misconduct referenced above, during the sale or during subsequent performance of obligations, defendants may have committed other types of CFA violations, such as failure to make other mandatory disclosures or the like – misconduct which may be uncovered during the course of discovery.

254. To the extent that substantial aggravating circumstances are necessary for any of the aforesaid CFA violations, all of the aforesaid misconduct amounted to substantial aggravating circumstances over and above a mere breach of contract and/or breach of warranty and therefore, said misconduct was sufficient to trigger one or more CFA violations.

255. Substantial aggravating circumstances may include, 'existence of bad faith or lack of fair dealing.'"[42]

---

[41] New Jersey Model Civil Jury Charge 4.43B.

[42] *JWQ Cabinetry Inc. v. Granada Wood & Cabinets Inc.*, No. 13-4110 (FLW), 2015 U.S. Dist. LEXIS 31730 (D.N.J. Mar. 16, 2015) (citing *Petri Paint Co., Inc. v. OMG Ams.*,

256. Substantial aggravating circumstances are present in this case because defendants, possessing knowledge of the vehicle's predelivery problems, acted in bad faith and failed to deal fairly with plaintiffs because defendants: (1) notwithstanding knowledge of the vehicle's presale defects, put the vehicle into the stream of commerce and continued to offer the vehicle for sale to consumers such as plaintiffs while failing to disclose the vehicle's problems; (2) were aware that the problems would manifest themselves within the warranty period and that the vehicle would fail yet failed to disclose that information to plaintiffs before the failure occurred and further, denied in bad faith the warranty repairs notwithstanding issuance of the recall before the failure; and (3) knew the vehicle, with its defect, was unfit for city driving but marketed and advertised the vehicle as being fit for such driving.[43]

257. Plaintiffs had the vehicle examined by a mechanic expert and that expert determined that the vehicle suffered a diminution in value of a specific dollar amount and that the defect therefore affects the vehicle's value. Exhibit F.

258. That diminution in the vehicle's value establishes the basis for an ascertainable

---

*Inc.*, 595 F. Supp. 2d 416, 420 (D.N.J. 2008)) (citing, in turn, *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994)).

[43] See, e.g., *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 443 (D.N.J. 2012) (citing *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 111-12 (App. Div. 2006); *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 501 (D.N.J. 2009); *Kuzian v. Electrolux Home Prods., Inc.*, No. 12-3341 (NLH/AMD), 2013 U.S. Dist. LEXIS 44050, at *29-30 (D.N.J. Mar. 27, 2013)(A putative class of plaintiffs alleged that defective ice makers failed to produce ice, leaked water into the refrigerators causing the electrical components to short out and malfunction, thereby caused the refrigerators to warm to unsafe temperatures and that the defective ice makers and resulting leaks caused food to spoil and caused damage to flooring, walls and other personal property beyond the refrigerator itself.).

loss of money or property proximately caused by the CFA violations detailed

above that is able to be ascertained within a reasonable degree of certainty.[44]

259. As a direct and proximate result of defendants' aforesaid misconduct, plaintiffs

paid out of pocket to defendants' franchise dealerships and/or automotive finance

lenders downpayments, finance purchase payments and/or lease payments

toward the purchase or lease of the class vehicles.

260. Had plaintiffs and prospective class members known about the defect, they

would not have purchased the class vehicles or would have paid less for them.

261. The price of the vehicle or payments made toward a vehicle may provide the

basis for calculating damages.[45]

262. For example, a merchant's sticker price for a product or service can provide

evidence of loss – even if that price is greater than fair market value.[46]

263. Therefore, the dealer's sales price for the vehicle provides a measure of loss.

264. Had plaintiffs received disclosure of the problems before purchasing the

vehicle, plaintiffs would have never paid out of pocket for the vehicle and that

purchase price establishes an out of pocket ascertainable loss of money that is

---

[44] *Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 U.S. Dist. LEXIS 166329 (D.N.J. Dec. 1, 2016). The court explained: Here, Plaintiffs have alleged injuries that have already occurred, as well as imminent future injury. Specifically, all Named Plaintiffs have alleged economic injury in the form of diminished resale value of their vehicles. In addition, Plaintiffs spent time taking their vehicles to BMW repair centers. Several Plaintiffs have also incurred out-of-pocket costs to purchase extra oil and replacement batteries. Accordingly, they have satisfied Article III's injury in fact requirement. *Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 U.S. Dist. LEXIS 166329 (D.N.J. Dec. 1, 2016).
[45] *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 13, 860 A.2d 435 (2004); *General Motors Acceptance Corp. v. Jankowitz*, 216 N.J. Super. 313 (App. Div. 1987).
[46] *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004).

able to be ascertained within a reasonable degree of certainty.[47]

265. Further, the cost of replacement goods such as the substitute vehicle and the cost of repairs to the vehicle are out of pocket damages reasonably foreseeable at the time of the vehicle's sale and when the warranty was issued to plaintiffs.

266. Plaintiffs and the class members are threatened with and may or have incurred the cost of diagnosing the problem, repairs to the vehicle, the purchase price and/or payments paid for the vehicle and the price paid for substitute transportation – all evidence actual or potential out of pocket ascertainable losses of money able to be ascertained within a reasonable degree of certainty.[48]

267. Where, as here, someone faces or expects to incur an out of pocket loss, such a loss equates with an ascertainable loss sufficient to support liability under the CFA.[49]

268. "[M]ere uncertainty as to the quantum of damages is an insufficient basis on which to deny the non-breaching party relief. Although it complicates the precise calculation of damages, our courts have long held that "[p]roof of damages need

---

[47] *BK Trucking Co. v. PACCAR, Inc.*, No. 15-2282 (JBS/AMD), 2016 U.S. Dist. LEXIS 85149 (D.N.J June 30, 2016)(Vehicle buyers claimed vehicles equipped with emission treatment system are defective and render plaintiffs' vehicles inoperable due to the engines' constant failure despite repeated warranty repair and the precise details of those systems are in the exclusive control of defendants. Plaintiffs have further alleged that, if defendants had disclosed to them the nature of the ATS and its impact on the engine, they would not have bought vehicles equipped with the engine or would not have paid over $100,000 for them).

[48] *T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. 14-4209 (WHW) (CLW), 2015 U.S. Dist. LEXIS 29678 (D.N.J. June 7, 2016).(one plaintiff incurred over $80,000 in post-warranty repair costs.).

[49] See *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994); *Thiedemann v. Mercedes-Benz USA*, 183 N.J. 234 (2005).  Under the CFA one does not need to actually incur the loss to sufficiently allege same in a pleading.  See *Thiedemann v. Mercedes-Benz USA*, 183 N.J. 234 (2005).

not be done with exactitude. ... It is therefore sufficient that the plaintiff prove

damages with such certainty as the nature of the case may permit, laying a

foundation which will enable the trier of the facts to make a fair and reasonable

estimate."[50]

269. As explained in the Restatement (Second) of Contracts: Alternative to Loss in

Value of Performance § 348 (Am. Law Inst. 1981), a small windfall to the injured

party based on an inability to prove exact damages should not defeat recovery.

270. Also, the injured party need not prove that he or she actually spent the money

to repair the defect in order to recover for the breach.[51]

271. The United States Supreme Court rejected the notion that a jury may not

estimate damages.[52]

272. Accordingly, due to defendants' omissions and affirmative act CFA violations,

owners and/or lessees of the class vehicles have suffered ascertainable loss of

money and/or property and/or loss in value of their class vehicles able to be

ascertained withing a reasonable degree of certainty.  Exhibit F.

273. Plaintiffs failed to receive the benefit of the bargain – the vehicle at the

promised price and free from the undisclosed problems of which defendants

were aware at time of sale. The vehicle's value is diminished as stated by the

---

[50] *Totaro, Duffy, Cannova and Co., LLC v. Lane, Middleton & Co., LLC*, 191 N.J. 1, 14, 921 A.2d 1100 (2007) (quoting *Lane v. Oil Delivery Inc.*, 216 N.J. Super. 413, 420, 524 A.2d 405 (App. Div. 1987) ).
[51] *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 22, 647 A.2d 454 (1994).
[52] *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 124, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969)("[a]lthough the factfinder is not entitled to base a judgment on speculation or guesswork, the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly"). See also *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. ——, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016).

expert report submitted herewith.  Exhibit F.

274. Class members have not received the value for which they bargained when they purchased or leased the class vehicles.

275. As a result of the defect, the value of the class vehicles has diminished, including without limitation, the resale value of the class vehicles.

276. Reasonable consumers like plaintiffs expect and assume that a vehicle's DPF and related components are not known to be defective prior to the sale of the vehicle and are not known to malfunction while operating the vehicle as it is intended.

277. Plaintiffs and the class members further expected and assumed that defendants will not sell or lease vehicles with known safety defects such as the defect and will fully disclose any such defect to consumers prior to purchase or offer a suitable repair or non-defective replacement.

278. The vehicle is worth less than its purchase price and plaintiffs and the class members didn't get their vehicles in the condition promised and therefore, have claims of ascertainable loss of money or property associated therewith.

279. Because plaintiffs suffered an ascertainable loss as aforesaid, treble damages are available for the CFA aforesaid CFA violations.[53]

280. Equitable relief is available in the form of a full refund and a judgment or order declaring the aforesaid misconduct as illegal.[54]

281. In addition, a statutory refund is sought – that is, relief pursuant to the CFA's

---

[53] N.J.S.A. 56:8-19.
[54] N.J.S.A. 56:8-19.

refund provision, which states: "Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful.[55]  The refund of moneys herein provided for may be recovered in a private action or by such persons authorized to initiate actions pursuant to P.L.1975, c. 376 (C. 40:23-6.47 et seq.).[56]"  The New Jersey Supreme Court explained the separate cause of action available for refunds as follows: "The CFA vests the Attorney General with jurisdiction to enforce its provisions through a variety of mechanisms, N.J.S.A. 56:8-3 to -8, -11, -15 to -18, & -20, but it also provides individual consumers with a cause of action to recover refunds, N.J.S.A. 56:8-2.11 to -2.12, and treble damages for violations, whether in good faith or otherwise, N.J.S.A. 56:8-19."[57]

282. Pursuant to the CFA, an award of counsel fees and litigation costs is also sought.[58]

283. One or more statutes pled herein provide for fee shifting for parties hiring counsel and prevailing under said statutes.

284. Accordingly, the counsel bringing this case serves as a private attorney general.[59]

285. Otherwise, consumers pursuing claims under fee shifting states might incur

---

[55] N.J.S.A. 56:8-2.11.

[56] N.J.S.A. 56:8-2.12.  The last reference in this provision to "P.L.1975, c. 376 (C. 40:23-6.47 et seq.)" refers to actions by the offices of the Department of Consumer Affairs.

[57] *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255 (1997).

[58].  *Artistic Lawn & Landscape Co., Inc. v. Smith*, 381 N.J. Super. 75, 89 (Law Div. 2005) (citing *BJM Insulation & Constr., Inc. v. Evans*, 287 N.J. Super. 513 (App. Div. 1996)).

[59] See *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 268 (1997).

potentially considerable expense for a potentially small recovery.[60]

## COUNT 2

## BREACH OF EXPRESS WARRANTY AND VIOLATION OF THE MMWA

## PLED BY PLAINTIFFS AND THE CLASS AGAINST DEFENDANTS

286. The allegations contained in the previous paragraphs are repeated as if fully set
forth.

287. This count is plead by plaintiffs and the class against defendants.

288. Since the vehicle are goods, the UCC applies to this dispute.[61]

289. At the time of sale and/or thereafter, defendants or their agents issued plaintiffs
the warranty, which was an express warranty in accordance with the UCC and/or
the MMWA.

290. Under the UCC "[a]ny affirmation of fact or promise made by the seller to the
buyer which relates to the goods and becomes part of the basis of the bargain
creates an express warranty that the goods shall conform to the affirmation or
promise."[62]

291. The warranty met the UCC's description of a warranty.

---

[60] See, e.g., *Skeer v. EMK Motors, Inc.*, 187 N.J. Super. 465, 470 (App. Div.
1982)(discussing fee shifting under the CFA); *Chattin v. Cape May Greene, Inc.*, 243
N.J. Super. 590, 610 (App. Div. 1990), aff'd o.b., 124 N.J. 520 (1992) (citing *Coleman v.
Fiore Bros.*, Inc., 113 N.J. 594, 598 (1989))(same); *Furst v. Einstein Moomjy*, 182 N.J. ,
21 (2004)(same).
[61] As explained by the Appellate Division: Article 2 of the UCC applies to transactions in
goods. N.J.S.A. 12A:2-102. "`Goods' mean all things (including specially manufactured
goods) which are movable at the time of identification to the contract for sale other than
the money in which the price is to be paid, investment securities and things in action."
N.J.S.A. 12A:2-105(1). *DiIorio v. Structural Stone & Brick*, 845 A.2d 658, 368 N.J.
Super. 134 (N.J. Super., 2004).
[62] *N.J.S.A.* 12A:2–313(1)(a).

292. Plaintiffs accepted the vehicle in the belief that the vehicle conformed to the warranty.

293. Defendants expressly warranted the labor that defendants performed or caused to be performed to the vehicle and/or parts that defendants replaced or caused to be replaced on the vehicle.

294. Plaintiffs relied on said warranty and/or representations and believed them to be true and would not have purchased the vehicle but for said warranty.

295. Plaintiffs accepted the vehicle in the belief that the vehicle conformed to the aforesaid warranty.

296. Defendants expressly warranted the labor that defendants performed or caused to be performed to the vehicle and/or parts that defendants replaced or caused to be replaced on the vehicle.

297. Plaintiffs relied on said warranty and/or representations and believed them to be true and would not have purchased the vehicle but for said warranty.

298. Following delivery of the vehicle to plaintiffs and problems arising therewith, plaintiffs learned that the vehicle wasn't as warranted.

299. For, the vehicle, as originally delivered and/or subsequent to repair, exhibited problems that substantially impair the vehicle's value to plaintiffs.

300. During the vehicle's warranty period, plaintiffs presented the vehicle to the dealerships for the dealerships, reported the problems to the dealerships and those dealerships performed repair attempts to the vehicle relative to the problems.

301. Plaintiffs performed plaintiffs' obligations under the aforesaid warranty,

including but not limited to plaintiffs' obligation to notify defendants of problems
that plaintiffs experienced with/exhibited by the vehicle and gave defendants a
reasonable time to correct and/or repair and/or address said problems and
defendants or their agents failed to correct and/or repair and/or address said
problems in a reasonable time.

302. As detailed above, while the warranty was in effect, defendants or their agents
the dealerships were unable to repair or correct the problems within a reasonable
time.

303. By failing to correct and/or repair and/or remedy the vehicle's problems within a
reasonable time, defendants breached their obligations under the aforesaid
warranty.

304. As reflected by the vehicle's repair history, before filing suit, plaintiffs gave
defendants a reasonable time to cure the problems but defendants failed to fix
the problems in a reasonable time.

305. Moreover, as explained above, since defendants knew about the problems at
the time of the failure (or even perhaps, at the time of the sale of the vehicle),
defendants had ample opportunity before the sale to cure the breach of warranty.

306. To the extent that via the vehicle's warranty booklet, defendants attempt to
disclaim liability for consequential damages and thereby limit the warranty to one
simply providing a repair remedy, such an effort is fruitless.

307. Such limitation language fails to negate plaintiffs' damages claims because
where a limited repair remedy fails of its essential purpose (i.e., failing to fix a
vehicle in a reasonable time), the repair remedy limitation is no impediment to the

consumer's recovering consequential damages.

308. This is because, to be effective, a repair remedy must be provided within a reasonable period of time.  Otherwise, the buyer loses the substantial benefit of the buyer's purchase and is thus entitled to seek damages against the offending party.[63]

309. "It is to be emphasized that we are here dealing with words of exclusion or limitation contained in a contract document that is not the product of mutual negotiation or cooperative draftsmanship. The purchaser of a mass-produced consumer article with a standard warranty form or booklet, as in this case, has no opportunity to bargain over its terms. Warranties are prepared unilaterally by the company and distributed automatically with the product on a mass basis. *Henningsen v. Bloomfield Motors, Inc.*, supra, 32 N.J. at 390.  The consumer must ordinarily place considerable reliance upon the fairness and good faith of the manufacturer and its dealers. It has therefore been recognized that the reliance which a consumer necessarily reposes in a seller engenders a corresponding responsibility on the seller. See id. at 399." [64]

310. Plaintiffs failed to receive the benefit of plaintiffs' bargain – e.g., a safe, reliable, usable, valuable vehicle warranted against yet discovered problems or problems that could be addressed under the warranty in a reasonable period of time.

---

[63] *G.M.A.C. v. Jankowitz*, 216 N.J. Super. 329, 330-331 (App. Div. 1987); *Chatlos Systems v. NCR Corp., Inc.*, 635 F.2d 1081, 1085-1086 (3rd Cir. 1980); N.J.S.A. 12A:2-719(2); *Smith v. Chrysler*, 1990 WL 65700 (E.D.Pa. 1990); *Beal v. General Motors Corporation*, 354 F. Supp. 423, 426, 427 (1973).
[64] *Gladden v. Cadillac Motor Car Div.*, 83 N.J. 320 (1980).

311. The vehicle is less valuable than if the vehicle didn't have the problems and the extensive repair history to attempt to repair the problems. Exhibits C-D & F.

312. The vehicle's repair history cannot be erased – instead, that history is a permanent blemish on the vehicle's value. Exhibit F.

313. Given the repeated failure of defendants, via the selling dealer, to fix the vehicle's problems in a reasonable time, plaintiffs believe the vehicle's value is substantially impaired and plaintiffs' confidence in the vehicle is shaken.

314. Therefore, plaintiffs believe that the vehicle's use, value and/or safety is substantially impaired by the problems and plaintiffs' confidence in the vehicle is totally shaken.

315. Under NCLL, the UCC and/or the MMWA, proof of the existence of a problem in the vehicle or of negligence on any defendants' part is not a prerequisite to a finding that the problems substantially impair the vehicle's use and/or value and/or safety. [65]

316. To establish the existence of a defect or nonconformity impairing the product's

---

[65]As stated by the court in *Ford Motor Credit Co. v. Mendola*, 427 N.J. Super. 226 (App. Div. 2012): "the plaintiff in a warranty action need not establish the existence of a defect; the failure of the goods to perform as warranted is sufficient." *Spring Motors, supra,* 98 *N.J.* at 586, 489 *A.*2d 660; *accord Gen. Motors Acceptance Corp. v. Jankowitz,* 216 *N.J. Super.* 313, 336, 523 *A.*2d 695 (App. Div.1987). Proof of causation must still be shown in a case based on breach of an express warranty, but "mere failure of promised performance is enough without proof of any defect." *Realmuto v. Straub Motors, Inc.,* 65 *N.J.* 336, 343, 322 *A.*2d 440 (1974) (citing *Collins v. Uniroyal, Inc.,* 64 *N.J.* 260, 262, 315 *A.*2d 16 (1974)). In *Jankowitz, supra,* 216 *N.J. Super.* at 320–22, 336–37, 523 *A.*2d 695, on facts that resemble those of this case, we held that the buyer of a new car was not required to produce expert evidence to prove that the manufacturer's and the seller's failure to repair the car was a breach of the express warranty they had provided. See also *Ventura v. Ford Motor Corp.,* 180 *N.J. Super.* 45, 53–54, 433 *A.*2d 801 (App. Div.1981).

vehicle's use or value, plaintiffs need only identify the effect of a defect rather than pinpointing its cause.[66]

317. Moreover, to establish a breach of warranty, plaintiffs need not show that defendants acted negligently or in bad faith.[67]

318. In addition to other remedies available to consumers under the UCC for a breach of warranty, a UCC remedy available to consumers when a manufacturer fails to fix a vehicle in a reasonable period of time is revocation of acceptance.[68]

319. After repeat repair attempts, pursuant to the UCC (N.J.S.A. 12A:2-608), plaintiffs provided defendants with a letter notifying defendants that plaintiffs revoked acceptance of the vehicle and demanded a refund from defendants pursuant to the UCC and/or MMWA.  Exhibit I.

320. However, to date, defendants refused to comply with said demand.

321. The Magnuson-Moss Warranty Act applies to transactions involving a "consumer product," defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes" and manufactured after July 4, 1975 and applies equally to new and used consumer products.[69]

---

[66] *Christelles v. Nissan Motor Corp.,* 305 N.J. Super. 222, 228-229 (App. Div. 1997).
[67] *Chatlos Systems v. NCR Corp., Inc.*, 635 F.2d 1081, 1085 (3rd Cir. 1980).
[68] *General Motors Acceptance Corp. v. Jankowitz*, 216 N.J. Super. 313 (App. Div. 1987); *Realmuto v. Straub Motors*, 65 N.J. 336 (1974); *Ford Motor Credit Co. v. Mendola*, 427 N.J. Super. 226, 242 (App. Div. 2012); See also Ventura v. Ford Motor Corp., 180 N.J. Super. 45, 53–54, 433 A.2d 801 (App. Div.1981).
[69] 15 U.S.C. § 2301(1); 15 U.S.C. § 2312(a).  See also *Avram v. Samsung Electronics Am., Inc.*, 81 U.C.C. Rep. Serv. 2d 48 (D.N.J. 2013) (refrigerator is consumer product); *McGinty v. Sunbird Boat Co.*, 1998 U.S. Dist. LEXIS 13242 (E.D. Pa. Aug. 26, 1998) (term "consumer product" is "broadly defined" and includes boats); *Goodman v.*

322. Any ambiguity as to whether a particular product is covered by the MMWA is resolved in favor of coverage.[70]

323. The MMWA applies to this case because, as detailed above, the vehicle was a product purchased new and manufactured after July, 4, 1975 for tens of thousands of dollars and is normally used for personal, family or household purposes.

324. As explained by the Appellate Division: The Magnuson–Moss Act was enacted in 1975 in response to infuriated motor vehicle owners complaining "automobile manufacturers and dealers were not performing in accordance with the warranties on their automobiles." *Ryan v. Am. Honda Motor Co.*, 186 N.J. 431, 433, 896 A.2d 454 (2006) (internal quotation marks omitted). Congress intended the legislation to aid consumers by ensuring significant guarantees of quality and performance of warranty provisions for purchased consumer goods, and "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products[.]" 15 U.S.C.A. § 2302(a). The statute imposes "[f]ederal minimum standards[,]" listing specific obligations applicable to all product warranties. Id. § 2304(a). See also *Poli v. DaimlerChrysler Corp.*, 349 N.J. Super. 169, 180, 793 A.2d 104 (App.Div.2002).

---

*Perlstein*, 1989 U.S. Dist. LEXIS 8420 (E.D. Pa. July 21, 1989) (jewelry); *Liberty Homes, Inc. v. Epperson*, 581 So. 2d 449 (Ala. 1991) (manufactured home).
[70] 16 C.F.R. § 700.1(a). *See States v. BFG Electroplating & Mfg. Co.*, 1989 U.S. Dist. LEXIS 16899 (W.D. Pa. Oct.
18, 1989); *Triad Charters, Inc. v. Viking Yacht Co.*, 1989-1 Trade Cas. (CCH) ¶ 68,550, 1989 U.S. Dist. LEXIS 2433 (D.N.J. Mar. 6, 1989) (sport-fishing vessel used occasionally for business-related entertainment); *Atkinson v. Elk Corp.*, 48 Cal. Rptr. 3d 247 (Cal. Ct. App. 2006); *Muchisky v. Frederic Roofing Co.*, 838 S.W.2d 74 (Mo. Ct. App 1992); *Wilson v. Semling-Menke Co.*, 766 N.W.2d 128 (Neb. 2009).

For example, suppliers who choose to issue an optional written warranty must provide the promised repairs within a reasonable time and without charge, replace the car, or provide a refund. 15 U.S.C.A. § 2304(a)(1), (4). Further, the Magnuson–Moss Act requires manufacturers warranting a product to "fully and conspicuously disclose" the terms of coverage "in simple and readily understood language." Id. § 2302(a). See also *Ryan*, supra, 186 N.J. at 433–34, 896 A.2d 454. The statute also provides a cause of action and legal remedy for consumers harmed by a warrantor's failure to comply with its warranty obligations. 15 U.S.C.A. § 2310(d). See also *Poli*, supra, 349 N.J. Super. at 180–81, 793 A.2d 104.[71]

325. Pursuant to the MMWA, via one or more repair attempts referenced in this pleading and before filing suit, plaintiffs afforded defendants a reasonable opportunity to cure defendants' failure to comply with the warranty but defendants failed to render such compliance.

326. The MMWA includes a private cause of action for consumers damaged by a breach of warranty as follows:[72] "(d) Civil action by consumer for damages, etc.; jurisdiction; recovery of costs and expenses; cognizable claims (1) Subject to subsections (a)(3) and (e), a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief— (A) in any court of

---

[71] *Fedor v. Nissan of N. Am., Inc.*, 432 N.J. Super. 303, 74 A.3d 977 (App. Div. 2013).
[72] 15 U.S.C. § 2310(d).

competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection. (2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

327. The MMWA is primarily an avenue for consumers to recover attorney's fees and court costs for breaches of warranty under the UCC or other authority rather than an avenue to recover monetary damages independent of the UCC or other authority.[73]

328. Accordingly, pursuant to the UCC, plaintiffs seek revocation of acceptance damages and relief pursuant to the MMWA – e.g., attorney's fees and litigation costs.

329. The MMWA envisions class action treatment of claims brought pursuant to the MMWA.[74]

330. In this case, since this pleading doesn't name over 100 putative class action representatives, this court and not any district court, has jurisdiction over the

---

[73]*Ventura v. Ford Motor Corp.*, 180 N.J. Super. 45, 433 A.2d 801 (App.Div.1981);
*G.M.A.C. v. Jankowitz*, 216 N.J. Super. 313 (App. Div. 1987).
[74] 15 U.S.C. § 2310.

dispute – an issue that cannot be circumvented by the Class Action Fairness Act (CAFA).[75]

331. Pursuant to 15 U.S.C. § 2310(e), plaintiffs are entitled to bring this class action and are not required to give defendants notice and an opportunity to cure until such time as the court determines the representative capacity of plaintiffs.

## COUNT 3

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## PLED BY PLAINTIFFS AND THE CLASS AGAINST THE MANUFACTURER

332. The allegations contained in the previous paragraphs are repeated as if fully set forth.

333. This count is pled by plaintiffs and the class against the manufacturer.

334. Every contract with a merchant for the sale of goods contains an implied warranty that the goods are fit for ordinary purposes for which the goods are used.  This warranty is known as the implied warranty of merchantability.[76]

335. At the time of sale and/or thereafter, in accordance with the UCC and/or the MMWA and/or defendants impliedly warranted that the vehicle was of merchantable quality and/or was reasonably fit and/or suitable for the purpose for which it was purchased and/or defendants failed to properly disclaim such

---

[75] 15 U.S.C. § 2310. As to class actions, MMWA's requirement to name one hundred plaintiffs must be met independently of CAFA's jurisdictional standard." *Floyd v. Am. Honda Motor Co.*, 2018 WL 6118582, at *3 (C.D. Cal. June 13, 2018) (Wilson, J.); *MacDougall v. Am. Honda Motor Co.*, 2017 WL 8236359, at *4 (C.D. Cal. Dec. 4, 2017) (Guilford, J.); *Cadena v. Am. Honda Motor Co.*, 2019 WL 3059931, at *11 (C.D. Cal. May 29, 2019) (Fitzgerald, J.). "CAFA—a basis for federal courts to exercise jurisdiction over state law disputes between diverse parties—doesn't fill in the gaps for missing substantive requirements of a federal law." *MacDougall*, 2017 WL 8236359, at *4.
[76] New Jersey Model Civil Jury Charge 4:22B.

implied warranty.

336. Plaintiffs accepted the vehicle in the belief that the vehicle conformed to the aforesaid warranty.

337. Plaintiffs relied on said warranty and/or representations and believed them to be true and would not have purchased the vehicle but for said warranty.

338. Following delivery of the vehicle to plaintiffs and problems arising therewith, plaintiffs learned that the vehicle was not as warranted.

339. Plaintiffs performed plaintiffs' obligations under the aforesaid warranty, including but not limited to plaintiffs' obligation to notify defendants of problems that plaintiffs experienced with/exhibited by the vehicle and gave defendants a reasonable time to correct and/or repair and/or address said problems and defendants or their agents failed to correct and/or repair and/or address said problems in a reasonable time.

340. By failing to correct and/or repair and/or remedy the vehicle's problems within a reasonable time, defendants breached their obligations under the aforesaid warranty.

341. Defendants' failure to correct and/or repair and/or remedy the vehicle's problems within a reasonable time or to replace it with conforming goods in a reasonable period of time constitute a breach of the implied warranty of merchantability.

342. Defendants breached the implied warranty of merchantability because the vehicle was unfit for the ordinary purpose for which such goods are used – i.e., city driving.

343. Therefore, defendants committed a breach of the implied warranty of merchantability under the UCC and/or under that of any other jurisdiction whose law the Court finds applies to the instant action.

344. The vehicle, as originally delivered and/or subsequent to repair, exhibited problems that substantially impair the vehicle's value to plaintiffs.

345. Defendants' breach of warranty caused plaintiffs to suffer a diminution of value in the vehicle.  Accordingly, plaintiffs suffered damages by defendants' failure to comply with defendants' obligations under the UCC.

346. Accordingly, pursuant to the UCC, plaintiffs seek revocation of acceptance damages and relief pursuant to the MMWA – e.g., attorney's fees and litigation costs.

## COUNT 4

## TCCWNA VIOLATIONS

## PLED BY PLAINTIFFS AND THE CLASS AGAINST DEFENDANTS

347. The allegations contained in the previous paragraphs are repeated as if fully set forth.

348. This count is pled by plaintiffs and the class against defendants.

349. As explained by the Appellate Division:  As we noted, under the Magnuson–Moss Act, Congress expressly "declare[d] it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C.A. § 2310(a)(1). The procedures for participation in an informal dispute settlement mechanism must be set forth in the written consumer warranty and

comply with requirements promulgated by the FTC. Id. § 2310(a)(2). We note Auto Line is an example of such a mechanism organized in compliance with these FTC procedures.  If a warrantor establishes an informal dispute settlement procedure, compliant with the FTC rules, and incorporates a written warranty provision mandating "the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty, then ... the consumer may not commence a civil action ... unless he initially resorts to such procedure[.]" Id. § 2310(a)(3)(C).[77]

350. At time of the sale, the selling dealer gave plaintiffs a series of booklets with the vehicle which included a booklet titled "Dispute Resolution Settlement" (DRS). Exhibit B.

351. Page 2 of the DRS states, in relevant part: "To the extent allowed by state law, it is required that you provide Jaguar Land Rover North America, LLC with written notif1cation of any defect or nonconformity covered by state laws prior to resorting to a legal remedy [this includes resorting to arbitration under either a state-run arbitration program or an in formal dispute resolution program).... The contents of this supplement represent the best effort by Jaguar Land Rover North America, LLC to provide the most current and accurate information. We recommend that you carefully review the information provided prior to resorting to a legal remedy."  Exhibit B.

352. Page 3 of the DRS states, in relevant part: "In the unlikely event that neither retailer personnel nor our Customer Relationship Centre are able to satisfy your

---

[77] *Fedor v. Nissan of N. Am., Inc.*, 432 N.J. Super. 303, 74 A.3d 977 (App. Div. 2013)

concerns or otherwise resolve any complaints to your satisfaction, please note that Land Rover participates in BBB AUTO LINE, a dispute resolution program administered by the Council of Better Business Bureaus through local Better Business Bureaus. Some states' Lemon Laws require you to use the BBB AUTO LINE arbitration program before filing a court action pursuant to that law. To determine whether your state 's Lemon Law requires prior use of BBB AUTO LINE, please see the appropriate page in this supplement. In addition, the federal Magnuson-Moss Consumer Warranty Act (15 U.S.C. 2310, et seq.) requires you to use this arbitration program before seeking any remedies in accordance with that law. BBB AUTO LINE is an out-of-court program administered by the Better Business Bureau system to settle disputes between consumers and automobile manufacturers." Exhibit B.

353. On or about 1-6-21 and pursuant to this directive and before filing suit, plaintiffs' counsel opened a claim with the BBB to participate in BBB Autoline relative to plaintiffs' warranty dispute with defendants about the vehicle. Exhibit J.

354. At that time, the mileage registered on the vehicle's odometer was estimated at approximately 40,000 miles. Exhibit J.

355. The BBB issued a claim form for plaintiffs to complete and accompanying literature which explained, in relevant part: Land Rover has agreed to arbitrate claims covered by the applicable state lemon law. Land Rover has also agreed to arbitrate certain warranty claims not covered by the lemon law…. **WARRANTY CLAIMS NOT COVERED BY THE LEMON LAW Time Period for Filing Claims** Claims seeking **repairs or reimbursement** for past repairs must be received by

BBB AUTO LINE within 2 years or 24,000 miles whichever comes first." Exhibit J.

356. This statement by the BBB expressly contradicts the language of the DRS, which falsely claims that "the federal Magnuson-Moss Consumer Warranty Act (15 U.S.C. 2310, et seq.) requires you to use this arbitration program before seeking any remedies in accordance with that law" when in fact warranty claims involving vehicles with over 24,000 miles registered on their odometer were ineligible for participation in the BBB Autoline program because Land Rover didn't agree to arbitrate those types of warranty claims. Exhibits B & J.

357. By letter dated 1-11-21, when the vehicle's odometer registered approximately 41,076 miles, plaintiffs' counsel submitted to the BBB documentation supporting plaintiffs' claim with the BBB. Exhibit J.

358. However, after doing so and waiting a significant time, by letter dated 1-28-21 plaintiffs' counsel finally received a letter from the BBB which stated that: "I would like to thank you for your interest in the BBB AUTO LINE program. Unfortunately, after carefully reviewing your claim and the program eligibility standards set out in the *Program Summary,* I have determined that your vehicle exceeds the age requirement for filing with the BBB AUTO LINE program. I regret we will not be able to help you." Exhibit J.

359. Therefore, contrary to the express statement in the DRS requiring consumers to submit claims to the BBB before bringing a claim under the MMWA, consumers with vehicles having over 24,000 miles registered on their odometers or that are over 2 years old cannot participate in Land Rover's BBB Autoline

Program but per the DRS, Land Rover falsely tells such consumers that they must resort to the BBB Autoline Program.  Exhibit B.

360. As explained above, submission of claims to BBB by consumers brining claims when their vehicles have over 24,000 miles registered on their odometers or that are over 2 years old is a fruitless exercise that delays those consumers from bringing suit by having to first submit claims to the BBB instead of simply filing suit in a court of law. In those situations, the BBB is totally unable to accept said consumers' claims because of Land Rover's BBB Autoline program guidelines – guidelines that are not disclosed in the DRS.  Exhibits B & J.

361. The TCCWNA is a cumulative statute rather than an exclusive one: "The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition."78

362. The TCCWNA states, in pertinent part:  "Consumer contract, warranty, notice or sign; violation of legal right of consumer or responsibility of seller, lessor, etc.; prohibition; exemptions[.]   No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any

---

78 N.J.S.A. 56:12-18; *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 427 (2013)(citing N.J.S.A. 56:12-18).

provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes...."79

363. TCCWNA defines "consumer" as follows: "[c]onsumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." 80

364. Merchants liable for TCCWNA violations include "a seller, lessor, creditor, lender or bailee". 81

365. The TCCWNA states, in pertinent part: "Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him."82

366. A TCCNWA claimant doesn't have to plead or prove that they suffered a loss of money or properly proximately caused by the harm; instead, they only need

---

79 N.J.S.A. 56:12-15.
80 N.J.S.A. 56:12-15.
81 N.J.S.A. 56:12-15.
82 N.J.S.A. 56:12-17; *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 427 (2013)(citing N.J.S.A. 56:12-17).

allege (and ultimately prove) that they suffered some form of harm: 83 "We do not, however, view that harm to be limited to injury compensable by monetary damages. The Legislature clearly envisioned that an 'aggrieved consumer' is not necessarily a consumer entitled to an award of damages; it provided for 'a civil penalty of not less than $100.00 or...actual damages, or both at the election of the consumer.' N.J.S.A. 56:12-17. The TCCWNA thus contemplates that a consumer may be entitled to a remedy notwithstanding the absence of proof of monetary damages…. a consumer may be "aggrieved" for purposes of N.J.S.A. 56:12-17 if he or she has suffered harm as a result of the defendant's inclusion of prohibited language in a contract or other writing even if that harm is not a basis for a damages award."

367. An aggrieved consumer might be one: 84 (1) whose legal rights are invaded by an act complained of; (2) whose pecuniary interest is directly affected by a degree or judgment. (3) suffering loss or injury of some kind; (4) injuriously affected; (5) having a grievance or cause of grief; (6) grieving or feeling grief or aggravated; (7) troubled or distressed in spirit; (8) showing grief, injury or offense; or (9) suffering from an infringement or denial of legal rights.

368. Plaintiffs were buyers who purchased the vehicle from defendants' franchise dealer which acted as the agent of defendants.

369. Plaintiffs purchased the vehicle primarily for personal, family or household purposes.

---

83 *Spade v. Select Comfort Corp.*, 232 N.J. 504, 523 (2018).
84 *Spade v. Select Comfort Corp.*, 232 N.J. 504, 522-523 (2018).

370. The vehicle are goods purchased primarily for personal, family or household purposes." N.J.S.A. 56:12:16.

371. Therefore, plaintiffs are "consumers" as defined by N.J.S.A. 56:12-15, defendants are sellers as defined by N.J.S.A. 56:12-15 and the warranty is a notice subject to the TCCWNA as defined by N.J.S.A. 56:12-15.

372. Given all of the above, the TCCWNA applies to the sale.[85]

373. Businesses can face liability for notices that affirmatively misstate obligations to consumers under state or federal law.[86]

374. As detailed above, the warranty falsely states that all consumers – even those with vehicles over 24,000 miles or that are over 2 years old - must first submit their case to the BBB before filing suit.  Exhibits B & J.

375. Accordingly, plaintiffs were forced to waste valuable time in bringing their claim by first submitting the claim to BBB, only to have BBB deny the claim as outside the mileage limits for participation in Land Rover's BBB Autoline program. Exhibit J.

376. That delay caused plaintiffs to suffer inconvenience and harm directly attributable to the fraudulent statements made in the DRS.  Exhibit B.

377. Had the DRS clearly explained the limits of Land Rover's BBB Autoline program – i.e., that it did not apply to vehicles that had odometers registering over 24,000 miles or that were over 2 years old or at the time a claim was to be

---

[85]"[T]he statute applies to more than merely contracts, but also to warranties, notices or signs."  *DeHart v. US Bank, N.A.*, 811 F.Supp.2d 1038 (D.N.J., 2011).
[86] *Spade v. Select Comfort Corp.*, 232 N.J. 504 (2018).

presented – plaintiffs would not have attempted to submit the claim to BBB but rather, would have proceed with suit directly.

378. Defendants, as sellers in the course of sellers' business offered to plaintiffs - a consumer – and entered into any written consumer contract (the warranty) and gave to plaintiffs a written contract (the warranty) or notice (the warranty) after the effective date of TCCWNA which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.  N.J.S.A. 56:12-15.

379. The basis for plaintiffs being "aggrieved" consumers is detailed above.

380. Accordingly, plaintiffs are consumers: (1) whose legal rights are invaded by an act complained of; or (2) whose pecuniary interest is directly affected by a degree or judgment; or (3) suffering loss or injury of some kind; (4) injuriously affected; (5) having a grievance or cause of grief;  or (6) grieving or feeling grief or aggravated; or (7) troubled or distressed in spirit; or (8) showing grief, injury or offense; or (9) suffering from an infringement or denial of legal rights. [87]

381. Therefore, defendants, while acting as a seller, lessor, creditor, lender or bailee in the course of defendants' business, offered to plaintiffs and entered into a written consumer contract and displayed a written consumer notice to plaintiffs after the effective date of the TCCWNA which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller,

---

[87] *Spade v. Select Comfort Corp.*, 232 N.J. 504, 522-523 (2018).

lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.88

382. Pursuant to TCCWNA, plaintiffs seek a statutory penalty of at least $100.00 for each TCCWNA violation. 89

## COUNT 5

### UNJUST ENRICHMENT

### PLED BY PLAINTIFFS AND THE CLASS AGAINST DEFENDANTS

383. The allegations contained in the previous paragraphs are repeated as if fully set forth.

384. This count is pled by plaintiffs and the class against defendants.

385. New Jersey recognizes the doctrine of unjust enrichment, which rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.90

386. As a direct and proximate result of defendants' failure to disclose known defects, defendants profited through the sale and lease of the class vehicles.

387. Although these vehicles are purchased through defendants' agents – i.e., franchise dealerships - the money from the vehicle sales flows directly back to defendants, which distributes the vehicles into the stream of commerce by selling same to defendant's agents.

---

88 N.J.S.A. 56:12-15.
89 N.J.S.A. 56:12-17
90 *Assocs. Commercial Corp. v. Wallia*, 211 N.J. Super. 231, 243 (App. Div. 1986) (quoting *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108 (App. Div. 1966)).

388. Additionally, as a direct and proximate result of defendants' failure to disclose the defect in the class vehicles, plaintiffs and class members have vehicles that have or will in future require repeated, high-cost repairs that can confer or have conferred an unjust substantial benefit upon defendants.

389. Defendants have been unjustly enriched due to the known defect in the class vehicles through the use money paid that earned interest or otherwise added to defendants' profits when said money should have remained with plaintiffs and class members.

390. Defendants received a benefit from plaintiffs and the class members and the retention of that benefit by defendants without payment would be unjust.

391. A value may be ascribed to the amount of the benefit whereby there occurred such unjust enrichment.

392. Remuneration was and is reasonably expected by plaintiffs and the class but that remuneration was never given by defendants to plaintiffs and the class.

393. The failure to give remuneration resulted in defendants receiving an unjust enrichment.

394. It would be unjust for the benefits so conferred to be retained by defendants without compensation being paid to plaintiffs and the class members.

395. As a result of defendants' unjust enrichment, plaintiffs and the class members have suffered damages.

## COUNT 6

## CLAIMS AGAINST THE DOES ONLY

396. The allegations contained in the previous paragraphs are repeated as if fully set

forth.

397. This count is pled against the Does.

398. All allegations pled in the above counts are pled against the Does and all relief
sought in said counts is sought against the Does.

### PRAYER FOR RELIEF COMMON TO ALL COUNTS

**WHEREFORE**, judgment is demanded for: (1) all applicable damages – including any
specific types of damages specifically pled in any of the above listed counts; (2) the
remedies provided for under the common law and/or any state and/or federal statutes
pled herein or applicable to this case including any mandated counsel fees and/or
costs/expenses and any applicable equitable relief; and (3) such other and further relief
as the court shall deem equitable and just.

### JURY DEMAND PURSUANT TO R. 4:35-1

Pursuant to R. 4:35-1, relative to all issues pled in the instant action that so triable, a
trial by six (6) jurors is demanded.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, **LEWIS G. ADLER, ESQ.** is designated as trial counsel in this
matter for the parties submitting this pleading for filing.

### NOTICE PURSUANT TO R. 1:5-1(a) AND R. 4:17-4(c)

Take notice that, pursuant to R. 1:5-1(a) and R. 4:17-4(c), each party named in the
complaint that serves or receives pleadings of any nature (including discovery requests)
to or from any other party to the action is requested to forward copies of same along
with any documents provided in answer or response thereto and take notice that this is
a continuing demand.

## NOTICE PURSUANT TO R. 1:7-1(b)

PLEASE TAKE NOTICE that to the extent applicable to this case, at the time of closing

argument it may be suggest to the trier of fact with the respect to any element of

damages, that unliquidated damages be calculated on a time-unit basis, without

reference to a specific sum.

## DEMAND PURSUANT TO RULE 4:10-2(B)

Pursuant to Rule 4:10-2(b), demand is made for the disclosure of whether or not there

are any insurance agreements or policies under which any person or firm carrying on an

insurance business may be liable to satisfy part or all of a judgment which may be

entered in this action or indemnify or reimburse for payments made to satisfy the

judgment.  Demand is made for true copies of those insurance agreements or policies,

including but not limited to any and all declaration sheets. This demand includes a

request for not only primary coverage insurance policies but also any and all excess,

catastrophe and umbrella insurance policies.

[REST OF PAGE INTENTIONALLY BLANK]

## CERTIFICATION PURSUANT TO R. 4:5-1(2) and (3)

Pursuant to R. 4:5-1(2) and (3), I hereby certify that:

1. I am an attorney at law of the State of New Jersey.

2. I am counsel for the party-parties offering this document for filing in this case and am personally familiar with the facts recited in this certification by my involvement in those facts.

3. Upon my initial review of this matter, the matters in controversy in this action are not the subject of any other action pending in any other court or of a pending arbitration proceeding, that no other action or arbitration proceeding is currently contemplated and that I am unaware of any other parties who currently should be joined to this action.

4. Confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

"I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment."

DATED:  June 21, 2021                          /S/ LEWIS G. ADLER

                                               LEWIS G. ADLER


[REST OF PAGE INTENTIONALLY BLANK]

## CERTIFICATION OF SERVICE PURSUANT TO

### N.J.S.A. 56:8-20 AND/OR N.J.A.C. 13:45A-26F.2 AND/OR N.J.S.A. 56:12-41

LEWIS G. ADLER hereby certifies to the Court as follows:

1. I am an attorney at law of the State of New Jersey.

2. I am counsel for the party-parties offering this document for filing in this case and am personally familiar with the facts recited in this certification by my involvement in those facts.

3. As required by N.J.S.A. 56:8-20 and/or N.J.S.A. 56:12-41 and/or N.J.A.C. 13:45A-26F.2, I hereby certify that I am causing a copy of the complaint to be served upon the following offices via first class United States Mail, postage prepaid:

| XX | Office of the Attorney General, Richard J. Hughes Justice Complex, P.O. Box 80, Trenton, NJ, 08625-0080 |
|----|----------------------------------------------------------------------------------------------------------|
|    | Division of Consumer Affairs, Used Car Lemon Law Unit, P.O. Box 45026, 124 Halsey St., Newark, NJ 07101-5026 |

"I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment."

DATED:  June 21, 2021                    /S/ LEWIS G. ADLER

                                         LEWIS G. ADLER

# COMPLAINT
# EXHIBIT A

MCAM-L-001836-21  06/21/2021 12:06:54 PM  Pg 86 of 143 Trans ID: LCV20211478792

**LAND ROVER CHERRY HILL**
1100 HADDONFIELD RD.
CHERRY HILL, NJ 08002
(P) 856-663-2800 • (F) 856-663-7090
800-98-ROVER
www.LRCH.com

**RANGE ROVER**

Retail Order:
☐ New
☐ Demo
☐ Used
☐ _____

STOCK NO. R9287

MILEAGE 22

LUCHTMAN, BRAD

15616                                    20086

CUSTOMER ILU-LILY DESIGNS LLC CANDACE NEJAT     DATE 12/22/17

ADDRESS 1879 OLD CUTHBERT ROAD #25 CHERRY HILL NJ 08034
Street          City          State          Zip

PHONE (H) _____  PHONE (W) _____  PHONE (C) _____

YEAR 2017  MAKE LAND ROVER  MODEL RANGE ROVER SPORT Td6

BODY TYPE SW  COLOR N BLACK  TRIM _____  SERIAL NO. SALWR2FKXHA693677

Email _____

**TRADE-IN DESCRIPTION AND ALLOWANCE**

Year _____  Make _____  Model _____
Serial No. _____
Trade-in Value _____  Mileage _____
Less Balance Owed _____
Net Trade-in Allowance _____
Balance Owed to: _____
Address: _____
Account No.: _____
Info. From _____ Good Thru _____

Customer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Customer certifies the above mileage of trade-in vehicle is accurate.

X _____
Customer's Signature          Date

**IF A NEW VEHICLE SALE OR LEASE . . .**
The only warranties applying to this vehicle are those offered by the manufacturer. Dealer sells/leases this vehicle "as is" and hereby disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks. The manufacturer's warranty is not affected by this disclaimer of warranties by dealer.

**IF USED VEHICLE SALE OR LEASE-CHECK APPROPRIATE BOX**
☐ This vehicle is sold/leased "as is" and dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks.

OR

☐ The only dealer warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

**ALL USED VEHICLE SALES-DEALER'S OBLIGATION**
The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price (if a sale) to the customer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the customer's own act. The undersigned, before entering into this contract, has been informed of dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the issuance of the permanent registration for such vehicle.

X _____
Date          Customer's Signature

**WAIVER OF DEALER'S OBLIGATION (USED VEHICLE SALE)**
The undersigned, has read and understood the above Dealer's Obligation, and does hereby WAIVE AND RELEASE the DEALER'S OBLIGATION to make repairs without charge or return the full purchase price (if a sale ) if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (P.L.1995, Chpt. 373).

X _____
Date          Customer's Signature

Prior to Delivery of the vehicle listed above, customer shall elect one of the following and so advise dealership:
• Cash Purchase     • Finance Purchase     • Lease
IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE A PART OF THIS ORDER.
IF A LEASE, COMPLETE DISCLOSURE OF ALL LEASE TERMS AND CONDITIONS IS CONTAINED ON A SEPARATE LEASE CONTRACT.

| | |
|---|---|
| Price of Unit  MSRP: | |
| Additional Equipment (options) | |
| | |
| | |
| | |
| DISCOUNT | |
| SALE PRICE: | 73400 00 |
| AFTERSALES: | |
| LUXURY PLAN | 1795 00 |
| | |
| | |
| TOTAL AFTERSALES | 1795 00 |
| TERM: 72  PAYMENT: 1202 74 | |
| APR: 2.94  TOT FIN: 79300 82 | |
| LEINHOLDER: BANK OF AMERICA, NA | |
| REBATE:2000.00 | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL PRICE OF VEHICLE | 75195.00 |
| Less Trade-in | |
| Documentary Fee  Clerical Fee $150.00  Documentary Delivery Fee $69.00 (SEE PARAGRAPH 16 ON REVERSE SIDE) | $219 00 |
| TOTAL TAXABLE AMOUNT | 75414.00 |
| State Sales Tax | 5184.72 |
| Motor Vehicle Tire Fee | 7.50 |
| NJ Supplemental Titling Fee | 293.60 |
| Registration/Title Fee - (Estimated) | 401.00 |
| (SEE PARAGRAPH 15 ON REVERSE SIDE) | 0.00 |
| NET PAY-OFF ON TRADE-IN | 0.00 |
| TOTAL | 81300.82 |
| Deposit  REBATE: | 2000.00 |
| BALANCE IN CASH, CERTIFIED CHECK OR OTHER ACCEPTABLE FORM OF PAYMENT TO BE PAID TO DEALER ON DELIVERY | |
| BALANCE DUE ON DELIVERY | |

Customer agrees that this Order on the face and on the reverse side and any attachments to it include all the terms and conditions, if a sale. Customer further agrees this Order cancels and supersedes any prior agreements and as of the date signed by Dealer or authorized agent comprises the complete and exclusive statement of the terms of the agreement between Customer and Dealer. If Customer, prior to delivery, elects to lease the vehicle described above, Customer and Dealer agree to execute a lease contract which shall contain full disclosure of all lease information. THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE. Customer by execution of this Order acknowledges that they have read the terms and conditions and have received a true copy of the Order. YOU HAVE A RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC PRE-DELIVERY SERVICE WHICH IS TO BE PERFORMED. THIS AUTOMOTIVE DEALER MAY NOT CHARGE FOR PRE-DELIVERY SERVICES FOR WHICH THE AUTOMOTIVE DEALER IS REIMBURSED BY THE MANUFACTURER. YOU HAVE A RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC DOCUMENTARY SERVICE WHICH IS TO BE PERFORMED. I am 18 years of age or older and of full legal capacity to enter into this contract.

Accepted By: X _____
Date          Dealer or Authorized Representative          Customer's Signature

NJ C411 Services, Inc. 17777 (4/17)

**THIS ORDER NOT SUBJECT TO CANCELLATION — DEPOSIT NON-REFUNDABLE**
**IMPORTANT: READ THE TERMS AND CONDITIONS ON THE BACK OF THIS ORDER BEFORE SIGNING.**

1. **DEFINITIONS.** "Selling Dealer" and "Dealer" mean the authorized Dealer to whom this Order is addressed, and who shall become a party on its acceptance. "Customer" means the party executing this Order as such on the face hereof. "Manufacturer" means the Division or Corporation that manufactured the vehicle or chassis, it being understood by Customer that Dealer is in no respect the agent of Manufacturer.

2. **RELATIONSHIP OF PARTIES TO AGREEMENT.** Dealer and Customer are the sole parties to this order. Any reference to Manufacturer is for the purpose of generally explaining certain contractual relationships existing between the Dealer and Manufacturer with respect to the new motor vehicles.

3. **MANUFACTURER'S PRICE INCREASES.** The Manufacturer has reserved the right to change the price to Dealer of new motor vehicles without notice. In the event the price to Dealer of the new motor vehicle ordered by Customer is changed by Manufacturer prior to its delivery to Customer Dealer reserves the right to change the cash delivery price to Customer. If the cash delivery price, or monthly lease payment, in the event Customer has advised Dealer of his election to lease, is increased by Customer may, if dissatisfied with the higher figure, cancel this Order. In the event a used motor vehicle ("trade-in") has been traded as part of the consideration for the new motor vehicle, the trade-in shall be returned to Customer upon payment of a reasonable charge for storage and repairs (if any). If the trade-in has been previously sold by Dealer, the amount received for it shall be returned to Customer less a selling commission of 15% and any expense incurred in storing, insuring, conditioning or advertising said trade-in for sale.

4. **TRADE-IN AND APPRAISAL.** Where Customer wishes to trade in a used motor vehicle ("trade-in") as part of the consideration for the motor vehicle ordered, Dealer may appraise the trade-in at the time of the execution of this Order by Customer. Dealer also reserves the right to reappraise the trade-in at the time of delivery.

   The Dealer shall not alter a trade-in appraisal from the time of the initial appraisal until the time of delivery unless:

   (1) intervening factors indicate an apparent decrease in the value of the trade-in over and above ordinary wear and tear; and/or

   (2) a change occurs in the mechanical performance of the vehicle.

   If such reappraised value is lower than the original allowance as shown on the front of this Order, Customer may, if dissatisfied, cancel this Order. Such right of cancellation must be exercised prior to actual delivery to the Customer of the motor vehicle ordered and the surrender of the used motor vehicle to Dealer.

   Customer certifies that the engine block is not cracked, the vehicle has not been flooded, there is no significant vehicle defect or damage, the vehicle has not been involved in any accident, and the emission control equipment, including catalytic converter has never been altered or removed.

5. **DELIVERY OF TITLE TO DEALER.** Customer agrees to deliver to Dealer satisfactory evidence of title to any trade-in vehicle used as part of this consideration for the motor vehicle ordered at the time of delivery of such used motor vehicle to Dealer. Customer warrants any trade-in vehicle to be his property free and clear of all liens and encumbrances except as otherwise noted on this Order.

6. **NON-REFUNDABLE DEPOSIT.** Unless this Order is cancelled by Customer in accordance with Paragraph 3 and 4 above, Dealer shall have the right upon failure or refusal of Customer to accept delivery of the ordered vehicle or to comply with the terms of this Order, to retain as liquidated damages any cash deposit. In addition, where Customer has traded a used motor vehicle as part of the consideration for the vehicle ordered, Dealer shall have the right to sell such trade-in and reimburse himself out of the proceeds of such sale for the expenses specified in Paragraphs 3 and 4 above and for such other expenses and losses as Dealer may incur or suffer as a result of the Customer's failure or refusal to comply with the provisions of this Order.

7. **DESIGN CHANGES BY THE MANUFACTURER.** The Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts of new vehicles at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts of vehicles previously purchased by or shipped to Dealer or being manufactured or sold in accordance with the Dealer's orders. In the event of any such change by the Manufacturer, Dealer shall have no obligation to Customer to make this same or any similar change in any motor vehicle, chassis, accessories or parts of the vehicle covered by this Order either before or after delivery to Customer.

8. **DELAYS IN DELIVERY.** Dealer shall not be liable for failure to deliver or for any delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

9. **PAYMENT OF SALES AND USE TAXES.** The price for the motor vehicle specified on the face of this Order includes reimbursement for certain Federal Excise taxes but does not include sales taxes and use taxes (Federal, State or Local) or other taxes, unless expressly stated. Customer agrees to pay all applicable sales, use, or occupational taxes. In the event Dealer fails to collect or miscalculates an applicable tax, Customer agrees to pay any additional amount due upon notification by Dealer.

10. **EXECUTION OF OTHER DOCUMENTS.** The Customer, before or at the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement or documents as may be required by the terms and conditions of payment in accordance with Customer's election to purchase for cash, purchase and finance or to lease the vehicle covered by this Order.

11. **PAYMENT OF BALANCE DUE AND ACCEPTANCE BY CUSTOMER.** The Customer agrees to advise Dealer of his election to purchase for cash, purchase and finance or to lease the vehicle covered by this Order and to pay the balance due on the terms specified and to accept delivery of the ordered vehicle within 48 hours after notification that the vehicle is ready for delivery. In the event Customer fails to take delivery of the vehicle, Customer's deposit may be retained by Dealer as liquidated damages for Dealer's expense and efforts in the matter. In addition, Dealer may dispose of or sell ordered vehicle as Dealer deems reasonable.

12. **SALES OF DEMONSTRATORS AND USED VEHICLES ONLY:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provision in the contract of sale.

13. **PROHIBITION ON EXPORTING NEW VEHICLES:** The Customer agrees that the new vehicle to be purchased or leased will be used only in, and will not be exported from, the USA within one year of delivery of the vehicle to Customer. Customer accepts full responsibility, for any violation of this provision, and shall be liable for all costs and any charge backs, other costs or economic sanctions imposed on Dealer by Dealer's Manufacturer such as product withholding, directly or indirectly. This provision applies to the use and export of vehicle from any place and to any recipient, with or without the knowledge of Customer. Customer consents to the jurisdiction of the Superior Court of NJ in the event that Dealer litigates to enforce this provision.

14. **ASSIGNMENT OF ORDER PROHIBITED:** Customer and Dealer agree that this Order cannot be assigned to any third party, without the written consent of both Customer and Dealer.

15. **TITLE AND REGISTRATION FEES:** These are fees charged by the State of New Jersey for the title, and registration for your vehicle, any additional paperwork necessary to process your title and registration, and where applicable, for transferring the title of your trade-in. These fees may be estimated. In the event the actual fees charged by the State are different, Dealer will refund any overcharge to the Customer in the ordinary course of business. In the event of an undercharge, Customer agrees to pay any underestimate to Dealer.

16. **DOCUMENTARY FEE:** Is a fee charged by the dealer in an amount that covers costs and reflects the value of the benefit provided by the service. In some cases, the fee includes some services that may be optional or may be performed by the Customer.

17. **GOVERNING LAW, JURISDICTION AND VENUE:** It is irrevocably agreed by and between the parties hereto that in any controversy or claim, on any basis whatsoever, relating to this agreement, or any alleged breach thereof, or regarding the vehicle which is the subject matter of this agreement, that such claim or controversy shall be adjudicated under the laws of the State of New Jersey and the parties further irrevocably agree that exclusive jurisdiction and venue to hear all such claims or controversies shall be in the Superior Court on the State of New Jersey and in the County of Camden, New Jersey.

# COMPLAINT
# EXHIBIT B

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 95 of 299 PageID: 106
CAM-L-001836-21   06/21/2021 12:06:54 PM  Pg 89 of 143 Trans ID: LCV20211478782

# LAND ROVER



ABOVE & BEYOND



**PASSPORT TO SERVICE**
**PASSEPORT POUR L'ENTRETIEN**

# Summary of Warranties

The Land Rover warranties detailed in this booklet are issued by Jaguar Land Rover North America, LLC, the sole authorized distributor of Land Rover vehicles in the USA, Puerto Rico, and Guam and cover only vehicles originally specified and built by Jaguar Land Rover Ltd. for the United States, Puerto Rico, and Guam.

Land Rover warranties are in favor of the original purchaser and each subsequent owner during the respective warranty periods.

Jaguar Land Rover North America, LLC, will not cover the costs to modify the vehicle to meet legal requirements in another country. If you need to make modifications to your Land Rover vehicle in order to meet another country's legal requirements, Jaguar Land Rover North America, LLC, encourages you to have these modifications performed at an authorized Land Rover retailer.

**Notwithstanding anything to the contrary in this Passport to Service, the warranties and benefits (including, but not limited to, the Roadside Assistance Program and service adjustments) detailed in this booklet are applicable to vehicles sold only in the United States, Puerto Rico, and Guam, and that have only been operated in the United States, Puerto Rico, Guam, and Canada, subject to all applicable exclusions or limitations. The Passport to Service (i.e., warranties and Roadside Assistance) will be voided and you will not be able to receive any warranty repairs or benefits contained in this booklet if your vehicle is exported to another country. This excludes any outstanding Recall Campaign.**

## Summary of Warranties

A summary of Land Rover warranties applicable to 2017 Model Year vehicles follows.

## New Vehicle Limited Warranty

Bumper to bumper
4 years / 50,000 miles
(whichever occurs first)

Battery
4 years / 50,000 miles
(whichever occurs first)

Wear parts and service adjustments
1 year / 12,500 miles
(whichever occurs first)

Corrosion
6 years / unlimited mileage

**NOTE:** Some states have mandated alternate coverage time periods for parts of your vehicle (e.g. seat belts).

## Emission Control System Warranties

### Federal

Emission Design and Defect Warranty [1]
2 years / 24,000 miles
(whichever occurs first)

– Certain emissions-related parts [2]
8 years / 80,000 miles
(whichever occurs first)

Emission Performance Warranty
2 years / 24,000 miles
(whichever occurs first)

– Certain emissions-related parts [2]
8 years / 80,000 miles
(whichever occurs first)

### California [5]

Emission Defect Warranty: non-PZEV [4]

- Short-term Warranty [1]
3 years / 50,000 miles
(whichever occurs first)

- Long-term Warranty [3]
7 years / 70,000 miles
(whichever occurs first)

Emission Performance Warranty: non-PZEV [4]
3 years / 50,000 miles
(whichever occurs first)

Emission Defect & Performance Warranty: PZEV [4]
15 years / 150,000 miles
(whichever occurs first)

[1] Extended to 4 years / 50,000 miles (whichever occurs first) under the New Vehicle Limited Warranty Bumper-to-Bumper coverage.

[2] Specific components are listed in the section "Federal Emission Control System Warranties" of this handbook.

[3] Specific components are listed in the section "California Emission Control System Warranties" of this handbook.

[4] PZEV (Partial Zero Emission Vehicle) is a vehicle certified to California's PZEV standards as indicated on the Vehicle Emission Control Information label located in the engine compartment.

[5] California Emission Control System Warranties are also applicable to vehicles registered in certain other states. Specific states and vehicle applicability are specified in the section "California Emission Control System Warranties" of this handbook.

# LAND ROVER



ABOVE & BEYOND



DISPUTE RESOLUTION SUPPLEMENT

## NOTICE TO ALL LAND ROVER OWNERS

## NOTICE TO ALL LAND ROVER OWNERS

[illegible body text]

[illegible body text]

[illegible body text]

2

## BBB AUTO LINE®

CAM-L-001836-21 06/21/2021 12:06:54 PM Pg 96 of 143 Trans ID: LCV20211478782

## BBB AUTO LINE"

DIESEL TECHNOLOGY



ABOVE & BEYOND



## REDUCING OUR ENVIRONMENTAL IMPACT

At Land Rover, we are continually striving to reduce emissions, both from our manufacturing facilities, and from our vehicle range. Since 2007, Jaguar Land Rover CO2 operating emissions have dropped by 21%, per vehicle produced.

Life Cycle Assessment (LCA) is used during the design process of all new Land Rover vehicles, to identify ways to reduce environmental impact, while increasing vehicle performance.

## SELECTIVE CATALYST REDUCTION TECHNOLOGY

Ever more stringent emissions regulations also play an important part in helping reduce the environmental impact of motor vehicles. Selective Catalyst Reduction (SCR) technology allows vehicles to meet the latest Low Emission Vehicle (LEV) III emissions standards, by reducing the levels of nitrogen oxide (NOx) emitted from the exhaust system by up to 90%. It does this by turning NOx emissions into harmless water vapor and Nitrogen



## HOW DOES THIS AFFECT DIESEL ENGINES?

Diesel engines also need to conform to strict legislative emission requirements. To allow them to do this, a number of technologies are employed. These include a Diesel Particulate Filter (DPF) fitted in the vehicle's exhaust system, and an additive called Diesel Exhaust Fluid (DEF). DEF is also known as AdBlue®, AUS 32 or ARLA 32.

## HOW DO I START A DIESEL ENGINE?

Starting a diesel engine is a very similar process to starting a gasoline engine. You may, however, notice a few minor differences



For vehicles with a diesel engine, the delay period before cranking begins will be longer in low ambient temperatures. This is due to extended glow plug operation. During this extended delay, the brake pedal must remain firmly pressed. Once the engine starts, release the brake pedal, if it is safe to do so.

For more information, refer to the Starting the Engine section of your Owner's Handbook.

## WHAT ELSE DO I NEED TO KNOW?

It is most important that you fill the fuel tank with the correct specification of diesel fuel. Do not add gasoline into your fuel tank, as this could seriously damage the fuel system and the engine. If you inadvertently add gasoline, do not start the vehicle, and contact your Land Rover retailer immediately.

For more information on the correct diesel and bio-diesel fuels to use, refer to the Fuel and Refueling section of your Owner's Handbook.

## IS THERE A WAY TO STOP ME USING THE WRONG FUEL?

Diesel vehicles are fitted with a misfueling protection device, which in most circumstances will stop you adding gasoline into the fuel tank.

The misfueling protection device will allow refueling once the correct size nozzle is inserted.

It is also important that you insert the refueling nozzle at the correct angle. If inserted at the wrong angle, diesel fuel may not be able to flow into the tank.



## WHAT IS A DIESEL PARTICULATE FILTER?

A Diesel Particulate Filter, or DPF, is an engine exhaust filter. A diesel engine produces emissions that may cause problems for people who suffer from breathing difficulties. The DPF reduces these emissions to a minimum.

### HOW DO I OPERATE THE DPF?

Under normal circumstances, you don't need to do anything. Occasionally however, a series of warning lamps and messages may appear in the message center. These will advise you of the status of the DPF. If this happens, follow the instructions given.

For more information, refer to the Maintenance section of your Owner's Handbook, or contact your Land Rover retailer.

## WHAT IS DIESEL EXHAUST FLUID?

Diesel Exhaust Fluid, or DEF, is a non-toxic liquid containing urea and demineralized water. It is drawn into the exhaust system of your vehicle from a reservoir. DEF may also be known as AdBlue®, AUS 32 or ARLA 32.



### WHY DO I NEED DEF?

Diesel vehicles fitted with SCR technology require DEF to meet the latest LEV III emissions standards. If your vehicle runs out of DEF, legislation dictates that the engine should not start.

### HOW OFTEN WILL I NEED TO ADD DEF?

It's difficult to say how often you will need to add DEF to the reservoir, as there are a lot of factors involved. Driving style, vehicle load, and engine size are just a few of the influences on the amount of DEF you will use. The average rate of consumption is detailed in the Fuel and Refueling section of your Owner's Handbook.

### HOW WILL I KNOW WHEN I NEED TO ADD DEF?

A series of messages will be displayed in the message center to advise you when your DEF level is low. The messages start by advising that a DEF top-up is advised. If no action is taken, the messages escalate to amber warnings. We recommend that you don't ignore these messages and that you book your vehicle into a Land Rover retailer for a full DEF refill. If the level becomes critically low, a red warning will be displayed. At this point, no further engine restarts will be possible until the DEF reservoir is refilled.

## WHAT IF I CAN'T GET TO A LAND ROVER RETAILER?

If you can't get to a Land Rover retailer before running out of DEF, you can top up the reservoir yourself. To do this, you will need standard sized, non-drip refill bottles. Each bottle contains 0.5 gallons of DEF.

Before adding any fluid, make sure the bottles display the specifications ISO 22241, ISO 22241-1, or DIN 70070.



## WHERE CAN I PURCHASE BOTTLES OF DEF?

Bottles of DEF are readily available, but can also be purchased from your Land Rover retailer. Before purchasing, make sure the bottles are non-drip, and display the correct specifications.



## HOW DO I TOP UP THE DEF RESERVOIR?

To top up the DEF reservoir:

1  Find the location of the DEF reservoir. This is shown in the Fluid Filler Locations section of your Owner's Handbook.

2  Remove the DEF reservoir cap, by turning it counter-clockwise.



3.  Place the refill bottle over the DEF reservoir filler aperture. Turn the bottle clockwise, until it locks into position;

4.  Press the base of the bottle, until all of the fluid has drained into the DEF reservoir

5.  Turn the bottle counter-clockwise, and remove.

6.  Repeat the procedure with additional bottles, as required. Take care not to overfill the DEF reservoir.

7.  Replace the DEF reservoir cap, turning it clockwise until a click is heard.

For more information, refer to the Fuel and Refueling section of your Owner's Handbook.

## WHAT HAPPENS NOW?

Once you have topped up the DEF and restarted the vehicle, the messages in the message center should extinguish. If the warning lamp remains illuminated switch the engine on, run it for approximately 30 seconds then turn it off again. Carry out this process three times in succession.

If you have topped up the DEF reservoir using non-drip refill bottles, we recommend that you book your vehicle into a Land Rover retailer for a full system refill.

## IMPORTANT POINTS

Always use the correct specification of diesel fuel. Land Rover diesel engines are capable of running up to a 5% biumet bio-diesel (B5), in accordance with the ASTM D975 standard. This fuel is more commonly known as Ultra Low Sulfur Diese (ULSD). Do not use a higher blend of bio-diesel. For more information, refer to the Fuel and Refueling section of your Owner's Handbook.

Do not add gasoline to your fuel tank. If this happens, do not start the vehicle, and contact your Land Rover retailer immediately. It is your responsibility to make sure the correct fuel is added to the fuel tank.

Make sure the DEF meets ISO 22241, ISO 22241-1 or DIN 70070.

Store DEF in its original containers in a cool, dry, well ventilated area. Always observe the manufacturer's storage and handling recommendations.

DEF is not a fuel additive. If you pour DEF into your fuel tank by mistake, DO NOT start the engine, and call a Land Rover retailer immediately.

Do not pour any other liquids into the DEF reservoir. It is a legal requirement to operate the DEF system as detailed in your Owner's Handbook. It may be a criminal offence to operate the vehicle when it is not consuming the correct specification of DEF.

Do not pour contaminated DEF into the DEF reservoir.

If DEF comes into contact with any of your vehicle's paintwork or trim, simply wipe it off, and rinse the area with soapy water.

Jaguar Land Rover Ltd
Abbey Road, Whitley
Coventry, CV3 4LF
United Kingdom
www.landroverusa.com

AdBlue® is a registered trade mark of the Verband der Automobilindustrie E.V. (VDA)

Part Number LRL 18 73 95 534



# RANGE ROVER SPORT



LAND ROVER

ABOVE & BEYOND



OWNER'S HANDBOOK
MANUEL DU CONDUCTEUR

## Warning and information lamps

Green and blue lamps within the
instrument panel indicate a system's
status.

### LAMP CHECK

A bulb check is initiated for some warning
lamps when the ignition is switched on.
The check lasts for 3 seconds except for
the air bag warning lamp, which remains
on for 6 seconds. If any warning lamp
remains on after this period, investigate
the cause before driving.

Some warning lamps have associated
messages displayed in the message
center.

*Note: Not all warning lamps are included
in the check e.g., high beam headlights
and turn signals.*

*Note: If a trailer with LED lights is
connected to the trailer socket the bulb
check may not be performed.*

### BATTERY CHARGE (RED)



The battery charge warning
lamp illuminates, as a bulb
check, when the ignition is
switched on. The lamp
extinguishes when the engine
is started.

If the lamp remains on, or illuminates while
driving, there is a fault with the battery
charging system. A message is displayed in
the message center. Seek qualified
assistance urgently.

### BRAKE (RED)

⚠ **WARNING**

Do not drive if the message Brakes
Overheating is displayed in the message
center. Stop the vehicle as soon as
safety permits and allow the brakes to
cool. If necessary, seek qualified
assistance before continuing. Driving
with overheated brakes can cause
increased braking distance or brake
failure and can result in a collision.

The Brakes Overheating message is
accompanied by a continuous chime,
which stops when the vehicle comes to a
halt.

*Note: The Brakes Overheating message
is only displayed on SVR vehicles.*

 USA.

 Canada.

The lamp illuminates briefly, as a bulb
check when the ignition is switched on. If
the lamp illuminates while driving, suspect
low brake fluid level or a fault with the
Electronic Brake Distribution (EBD) system.

Stop the vehicle as soon as safety permits.
Check and top up the brake fluid, if
necessary. If the lamp remains illuminated,
seek qualified assistance before
continuing.

### CRITICAL WARNING MESSAGE (RED)



The critical warning message
lamp illuminates when a
relevant message is displayed
in the message center.

### DIESEL EXHAUST FLUID (DEF) (RED)



The Diesel Exhaust Fluid (DEF)
warning lamp illuminates to
warn the driver that the level of
DEF is seriously low

The warning lamp also illuminates if
incorrect fluid has been added to the
system, or if there is a fault with the
system.

The lamp is accompanied by messages in
the message center. Follow the on-screen
messages, if safe to do so. Seek qualified
assistance urgently.

### DIESEL PARTICULATE FILTER (DPF) (RED)



The Diesel Particulate Filter
(DPF) warning lamp illuminates
when the DPF is full, or there is
a fault with the DPF system.

Depending on severity, the lamp may be
accompanied by a chime and a message
in the message center. Seek qualified
assistance at the earliest opportunity.

### ELECTRIC PARKING BRAKE (EPB) (RED)

 USA

 Canada.

The Electric Parking Brake (EPB) warning
lamp illuminates if the EPB is correctly
applied

If the lamp flashes, a fault has been
detected. Seek qualified assistance
urgently.

## Warning and information lamps

### ENGINE TEMPERATURE (RED)



The engine temperature
warning lamp illuminates when
the engine's temperature is too
high. The message center also
displays the message ENGINE
OVERHEATING.

Stop the vehicle as soon as safety permits
and seek qualified assistance before
continuing.

### LANE DEPARTURE WARNING (RED)



The lane departure warning
lamp illuminates if the vehicle
crosses a lane marking, without
the appropriate turn signal
being operated

Illumination of the lamp is accompanied
by a vibration felt through the steering
wheel.

### LOW OIL PRESSURE (RED)



If the low oil pressure warning
lamp flashes or illuminates while
driving, stop the vehicle as soon
as safety permits. Switch off the
engine immediately.

Check and top up the oil level, if
necessary. Start the engine. If the lamp
remains illuminated, switch the engine off
immediately. Seek qualified assistance
before continuing.

## Warning and information lamps

### SEAT BELT (RED)



The seat belt warning lamp illuminates, accompanied by a chime, when the vehicle is in motion and an occupied seat belt is unbuckled.

The lamp extinguishes when the relevant seat belt is buckled.

*Note:* Objects on the front passenger seat may activate the seat belt reminder feature. It is recommended that any objects placed on the front passenger seat are secured using the seat belt. See **37, USING THE SEAT BELTS**.

### ADAPTIVE FRONT LIGHTING SYSTEM (AFS) (AMBER)



The Adaptive Front lighting System (AFS) warning lamp illuminates when there is a fault with the AFS.

The headlights still operate, but without the feature operating correctly. Seek qualified assistance as soon as possible.

### AIR BAG (AMBER)



The air bag warning lamp illuminates, as a bulb check, when the ignition is switched on. The lamp extinguishes after 6 seconds.

If the lamp illuminates again, after the bulb check or when driving, there is a fault with the air bag system. Seek qualified assistance as soon as possible.

### ALL TERRAIN PROGRESS CONTROL (ATPC) (AMBER)



The All Terrain Progress Control (ATPC) lamp illuminates to confirm that the ATPC system is enabled.

### ANTI-LOCK BRAKING SYSTEM (ABS) (AMBER)

**⚠ WARNING**

**If the ABS and brake warning lamps are illuminated at the same time, do not drive the vehicle until the fault is rectified as the brake system may not be functioning correctly. This may, in turn, lead to loss of control causing an accident. Seek qualified assistance immediately.**

**⚠ WARNING**

**It remains the responsibility of the driver to operate the vehicle in an appropriate manner for the prevailing conditions.**



The ABS warning lamp illuminates briefly, as a bulb check, when the ignition is switched on.

If the lamp remains on, or illuminates while driving, there is a fault with the Anti-lock Braking System (ABS). Drive with care, avoiding heavy brake pedal application, and seek qualified assistance urgently.

### AUTOMATIC SPEED LIMITER (ASL) (AMBER)



The Automatic Speed Limiter (ASL) lamp illuminates when the ASL is active.

### BRAKE (AMBER)

 USA.

 Canada.

The brake warning lamp illuminates briefly, as a bulb check, when the ignition is switched on.

If the lamp illuminates after starting the engine or while driving, suspect worn brake pads or a fault with the braking system. The vehicle can still be driven with care, but seek qualified assistance urgently.

### DIESEL EXHAUST FLUID (DEF) (AMBER)



The Diesel Exhaust Fluid (DEF) warning lamp illuminates to warn the driver that the level of DEF is starting to run low.

The warning lamp also illuminates if incorrect fluid has been added to the system, or if there is a fault with the system.

The lamp is accompanied by messages in the message center. Follow the on-screen messages, if safe to do so.

### DIESEL PARTICULATE FILTER (DPF) (AMBER)



The Diesel Particulate Filter (DPF) warning lamp illuminates when the DPF has failed to regenerate and is starting to become full.

The lamp is accompanied by a message in the message center. Follow the on screen messages, if safe to do so.

### DRIVER FATIGUE ALERT (AMBER)



The driver fatigue alert warning lamp illuminates when the driver fatigue alert system determines the driver is presenting signs of tiredness.

The lamp is accompanied by a message in the message center.

### DYNAMIC STABILITY CONTROL (DSC) (AMBER)



The Dynamic Stability Control (DSC) lamp flashes when the system is active.

If there is a fault with the system, it remains illuminated and the message center displays **DSC NOT AVAILABLE**.

The vehicle can still be driven, but without DSC assistance. Seek qualified assistance as soon as possible.

### DYNAMIC STABILITY CONTROL (DSC) OFF (AMBER)



The Dynamic Stability Control (DSC) OFF lamp illuminates when the system is switched off.

The lamp is accompanied by a chime and a confirmation message in the message center.

# COMPLAINT
# EXHIBIT C

## REPAIR HISTORY SUMMARY

| DATE IN & OUT & # OF DAYS VEHICLE AT DEALER | MILES IN & OUT OF DEALER | INVOICE # | CUSTOMER COMPLAINT AND/OR REPAIR ATTEMPT AND/OR DIAGNOSIS REPORTED BY DEALER |
|---|---|---|---|
| 4-11-18 1 DAY | 7,581 TO 7,583 | 95210 | A COMPLETE LUBRICATION SERVICE LUBE COMPLETE LUBRICATION AND FILTER CHANGE |
| | | | B PERFORM COURTESY INSPECTION CI PERFORM COURTESY INSPECTION |
| | | | C PROVIDED LAND ROVER LOANER COURTESY VEHICLE M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE |
| | | | D COMPLETE EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | D TOP OFF DIESEL EXHAUST FLUID MISC TOP OFF FLUID |
| | | | E PROVIDED LAND ROVER LOANER COURTESY VEHICLE M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE |
| | | | F COMPLETE EXTERIOR WASH AND. INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR. VACUUM |
| | | | H CLIENT STATES THAT THERE IS A PLASTIC REAR TRIM THAT IS LOOSE MISC SECURE PANEL |
| 4-29-19 TO 5-2-19 4 DAYS | 24,175 TO 24,182 | 102761 | A 16,000 MILES/ 26,000 KM OR 12 MONTHS SERVICE CORRECTION: 101016 16,000 MILES/ 26,000 KM OR 12 MONTHS SERVICE TECH NUMBER: 88 LABOR TYPE: CPM FLUID INSPECT AND CORRECT FLUID LEVELS AS NEEDED TECH NUMBER: 88 LABOR TYPE: CPM BATT TEST BATTERY AND PROVIDE RESULTS TECH NUMBER: 88 LABOR TYPE: CPM HISS CORRECT TIRE PRESSURES AS NECESSARY TECH NUMBER: 88 LABOR TYPE: CPM I INSPECT SUSPENSION, BRAKES, TIRES, WEAR ITEMS, AND FOR EXTERNAL FLUID LEAKS TECH NUMBER: 88 LABOR TYPE: CPM VF REPLACE POLLEN FILTER TECH NUMBER: 88 LABOR TYPE: CPM ROTATE ROTATE (SIC) TIRES FRONT TO REAR TECH NUMBER: 88 LABOR TYPE: CPM RESET RESET (SIC) SERVICE COUNTER TECH NUMBER: 88 LABOR TYPE: CPM |

| | | | |
|---|---|---|---|
| | | | B PERFORM COMPLETE INTERIOR AND EXTERIOR DETAIL<br>CAUSE:<br>CORRECTION: DETAIL PERFORM COMPLETE INTERIOR AND EXTERIOR DETAIL |
| | | | C PERFORM COURTESY INSPECTION<br>CAUSE:<br>CORRECTION: CI PERFORM COURTESY INSPECTION<br>TECH NUMBER: 88 LABOR TYPE: INT |
| | | | D PROVIDED LAND ROVER LOANER COURTESY VEHICLE<br>CAUSE:<br>CORRECTION: M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | E CLIENT STATES WHEN TRAVELING OVER 70MPH THERE IS A RATTLE FROM THE RIGHT FRONT PASSENGER AREA OF THE VEHICLE<br>CAUSE:<br>CORRECTION: 10 RIGHT FRONT WHEEL IS BENT, REPAIRED BY ALLOY WHEEL<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | F CLIENT STATES THERE IS A NAIL PUNCTURE IN THE RIGHT FRONT TIRE<br>CAUSE: IAS AUTH#JM143599-1597489 FAX#5122574777<br>CORRECTION: MT2 MOUNT AND BALANCE TWO TIRES.CORRECT TIRE PRESSURES WHEN COMPLETED.<br>TECH NUMBER: 88 LABOR TYPE: WCEXT |
| | | | H (SIC) INSPECT FOR DOOR DINGS<br>CAUSE:<br>CORRECTION: 10 NONE PRESENT<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | J REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE<br>CAUSE:<br>CORRECTION: M15R REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE<br>TECH NUMBER: 88 LABOR TYPE: CPM |
| | | | K PERFORM N120<br>CAUSE: PERFROM N120B<br>CORRECTION: 889003 INSTRUMENT CLUSTER - SYSTEM DIAGNOSIS - INCLUDES CONFIGURATION OF NEW ECU<br>TECH NUMBER: 88 LABOR TYPE: WTY |
| | | | L PERFORM N241<br>CAUSE: PERRFOM N241A<br>CORRECTION: 189090 POWERTRAIN CONTROL MODULE (PCM) - SOFTWARE UPDATE<br>TECH NUMBER: 88 LABOR TYPE: WTY |
| 9-4-19<br>TO<br>9-5-19<br>2 DAYS | 30,007<br>30,010 | 105861 | A CLIENT STATES CHIP IN WINDSHIELD<br>CAUSE: IAS-AUTH#DW5837531655930<br>10 STATES HAS WINDHIELD CHIP |

| 2-18-20<br>TO<br>2-19-20<br>2 DAYS | 37,312<br>TO<br>37,322 | 110270 | A CUSTOMER STATES THAT WARNING LIGHT CAME ON SAYING EXH FILTER FULL SEE<br>DEALER<br>CAUSE:<br>175045 DIESEL PARTICULATE FILTER – DYNAMIC REGENERATION<br>44 WTY<br>129016 READ AND CLEAR FAULT CODES<br>44 WTY<br>869123 DIAGNOSTIC ALLOWANCE<br>44 WTY<br>101701 CHECK DIESEL EXHAUST FLUID (DEF) LEVEL<br>44 WTY<br>PARTS: 0.00 LABOR: 0.00 TOTAL LINE A: 0.00<br>,, ,,37312 CONNECT PATHFINDE, SCAN DTCS-AND-~<br>0UND P24B3-0CJ'PRESENT.<br>, , ,,CHECK ENGINE LAMP AND DPF WARNING MESSAGE ARE CAUSED BY DIESEL<br>,, ,,PARTICULATE FILTER BEING TOO FULL. NEEDS REGENERATION PERFORMED .<br>, , , ,,PERFORM DYNAMIC REGENERATION AND CLEAR DTCS. VERIFY CONCERN IS NO<br>,,,, LONGER PRESENT |
|  |  |  | B CUSTOMER STATES THAT THE PASS SIDE REAR TIRE MAYBE LOSING AIR LIGHT IS ON<br>CAUSE:<br>MT1 MOUNT AND BALANCE ONE TIRE. CORRECT TIRE PRESSURE WHEN COMPLETED.<br>44WCEXT<br>1 784389333 EAGLE F ASYM SU<br>1 TF STATE OF NEW JERSEY TIRE FEE<br>MISC DISP<br>WCEXT<br>PARTS: 0.00 LABOR: 0.00 OTHER: 0.00 TOTAL LINE B:<br>, ,,,37312 FOUND 2 NAILS IN RR TIRE. NEW TIRE IS NEEDED. 1 IN SHOULDER<br>, , ,,MOUNT AND BALANCE ONE TIRE RR 7/32 GOODYEAR EAGLE FL SUV IAS 800 346<br>, 6469 APPROVAL DB118 760 - 1 722520 FAX 512 257 4777 OLD DOT 6IYLAWTX1617<br>, , , ,NEW DOT NEHHJAIR2419 |
|  |  |  | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>99 INT<br>44 INT<br>PARTS: 0.00 LABOR: 0.00    OTHER:  0.00 TOTAL LINE C: 0.00 |
|  |  |  | D PERFORM COURTESY INSPECTION<br>CI PERFORM COURTESY INSPECTION<br>44 INT<br>PARTS: 0.00 LABOR: 0.00 OTHER:  0.00 TOTAL LINE D: 0.00 |

| | | | |
|---|---|---|---|
| | | | E PERFORM THE FOLLOWING RECALL. N377<br>PARTS:<br>CAUSE: PERFORM N377 CAMPAIGN<br>859908 N377 INCONTROL TOUCH PRO - UPDATE<br>36 WTY<br>PARTS: 0.00 LABOR: 0.00 0THER: 0.00 TOTAL LINE E: 0.00<br>, , , , 37312 UPDATED INCONTROL TOUCH OVER<br>PATHFINDER OPTION B DRIVE IN AND<br>, , , , OUT |
| | | | F CLIENT STATES THERE IS A CHECK ENGINE ERROR<br>MESSAGE PRESENT<br>CE CLIENT STATES THERE IS A CHECK ENGINE ERROR<br>MESSAGE PRESENT<br>44 INT<br>PARTS: 0. 00 LABOR: 0.00 OTHER: 0.00 TOTAL LINE F:<br>, , , , 37312 SEE LINE A |
| | | | G**     CANDICE<br>44 INT<br>PARTS: 0.00 LABOR: 0.00 OTHER: 0. 00 TOTAL LINE G: |
| | | | H** CHECK DS REAR DOOR WINDOW MOLDING<br>10 RESURED MOULDING<br>44 INT<br>PARTS: 0.00 LABOR: 0.00 OTHER: 0.00 TOTAL LINE H:<br>0.00<br>, , , ,37312 RESECURED MOLDING |
| | | | I** REPLACE WORN FRONT BRAKE PADS, ROTORS, AND<br>SENSORS WHEN APPLICABLE<br>ML4FR REPLACE WORN FRONT BRAKE PADS, ROTORS,<br>AND<br>SENSORS WHEN APPLICABLE<br>44 CPM 360.00<br>1 LR051626 BRAKE PADS - WIT ~. 312.37<br>1 LR045959 WIRE - BRAKE PAD 52.66<br>2 LR038934 DISC - BRAKE<br>PARTS: 863. 33 LABOR: 360.00 OTHER: 0.00<br>TOTAL LINE I: 1223.33<br>, , , , 37312 FRONT PADS AT 3MM RENEW FRONT PADS,<br>FRONT ROTORS, SENSOR AND<br>,,,BG BRAKE FLUID SERVICE |
| | | | J** BG/LAND ROVER BRAKE FLUID SERVICE<br>BFF BG/LAND ROVER BRAKE FLUID SERVICE<br>44 CPM<br>1 84032 FLUSH/KIT<br>PARTS: 29.15 LABOR: 120.00 OTHER 0.00 TOTAL LINE J:<br>149.15<br>, , , , 37312 PERFORMED BRAKE FLUID FLUSH |
| | | | CUSTOMER PAY MISC CHGS FOR REPAIR ORDER 10.00<br>SHUTTLE TO OLD CUTHBERT BLVD |
| 3-3-20<br>TO<br>3-6-20<br>4 DAYS | 37,929<br>TO<br>37,938 | 110620 | A CUSTOMER STATES VEHICLE SAYS EXH FILTER FULL<br>CAUSE:<br>DIESEL PARTICULATE FILTER CLOGGED.  CONNECT<br>PATHFINDER AND RETRIEVE DTCS. FOUND P2463 |

Page 4 of 8

| | | | STORED WITH IN (SIC) PCM. CHECK AND TOP UP EXHAUST FLUID LEVEL (16 LITERS). RESET DOSING FACTOR USING PATHFINDER, RUN EGR AND AIR PATH CHECK FOR INTAKE LEAKS. PERFORM REGENERATION DRIVE CYCLE WITH PATHFINDER ATTACHED. PERFORM DYNAMIC REGENERATION PROCEDURE USING PATHFINDER (FAILED). DIESEL PARTICULATE FILTER BEYOND REGENERATION CAPABILITIES. REMOVE AND REPLACE PARTICULATE FILTER CONNECT PATHFINDER PERFORM FILTER REPLACEMENT PROCEDURE. CLEAR |
|---|---|---|---|
| | | | B PERFORM COURTESY INSPECTION<br>CAUSE:<br>CORRECTION: CI PERFORM COURTESY INSPECTION<br>TECH NUMBER: 46 LABOR TYPE: INT |
| | | | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>CAUSE:<br>CORRECTION: WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | D PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE<br>CAUSE:<br>CORRECTION: M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | E CUSTOMER STATES DIESEL FLUID IS LOW<br>CAUSE:<br>CORRECTION: C/S CUSTOMER STATES DIESEL FLUID IS LOW<br>TECH NUMBER: 46 LABOR TYPE: INT |
| 5-5-20<br>TO<br>5-20-20<br>16 DAYS | 38,313<br>TO<br>38,316 | 111366 | A PERFORM COURTESY INSPECTION<br>CI PERFORM COURTESY INSPECTION |
| | | | B COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | C CUSTOMER STATES RIGHT FRONT TIRE LOSING AIR<br>CAUSE: IAS<br>MTL MOUNT AND BALANCE ONE "TIRE. CORRECT TIRE PRESSURE WHEN COMPLETED |
| | | | D* * FRONT RIGHT TIRE WAS DRIVEN ON FLAT, THERE IS A BOLT IN THE TIRE THAT IS PLUGGABLE BUT·I WOULD; RECOMMEND REPDACING THE TIRE SINCE THE SIDEWALL WAS COMPROMISED GOODYEAR EAGLE FL 255/55R20 110Y |
| 9-16-20<br>TO<br>9-23-20<br>11 DAYS | 39,587<br>39,623 | 114696 | A CUSTOMER STATES VEHICLE SAYS EXHAUST FILTER FULL<br>CAUSE:<br>851806 READ AND CLEAR FAULT CODES<br>39623 FOUND MALFUNCTION ON DASH. FOUND P2463 AND P246B IN PCM. DROVE VEHICLE 18 MILES (39587-39605) DURING A REGEN ATTEMPT TO CLEAR THE EXHAUST FILTER. WENT FROM 30.5 GRAMS OF SOOT |

| | | | |
|---|---|---|---|
| | | | WITH A TARGET OF 6 GRAMS. VEHICLE WENT DOWN TO 14.2 G AND THEN STARTED RISING AGAIN. OPENED TA CASE. 3046785. REMOVED ENGINE AIR FILTER, EGR TUBE AND VALVE, AND PIPE TO THROTTLE VALVE TO TAKE PHOTOS OF ALL COMPONENTS TO SEND TO TA TO CHECK FOR EXCESSIVE:SOOT/OIL CONTAMINATION BUILD UP IN ENGINE.  ADVISED BY TA TO REMOVE DPF DIFFERENTIAL PRESSURE SENSOR & LINES AND CHECK FOR CLOGS OR CONTAMINATION.  NONE FOUND. PHOTOS TAKEN AND SENT TO TA. TA CALLED AND ADVISED HABITS ARE LARGEST CONCERN.  VEHICLE NEEDS TO BE DRIVEN MORE AND ON LONGER HIGHWAY TRIPS.  REQUESTSTED REGEN 173 TIMES AND ONLY WAS ABLE TO PERFORM IT 3 TIMES. REMOVED OIL SEPARATOR AND REPLACED DUE TO OIL INTRUSION, ADVISED BY TA.  WAS ABLE TO UPDATE PCM FURTHER WITH UPDATED PATHFINDER.  RE-RAN REGEN RUN ON HIGHWAY.  (39605-39623) WAS ABLE TO GET SOOT LEVEL UNDER 6GRAMS (SIC) AND WITIN SPEC. VEHICLE NO LONGER HAS FAULTS ON DASH AND HAS FULL POWER BACK TO VEHICLE |
| | | | B PERFORM COURTESY INSPECTION<br>CI PERFORM COURTESY INSPECTION |
| | | | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | D 16,000 MILE FACTORY MAINTENANCE SERVICE<br>16K 16,000 MILE FACTORY MAINTENANCE SERVICE |
| | | | E** PRICE FOR 5. 5 LITERS OF DEF FLUID<br>MISC PRICE FOR 5. 5 LITERS OF DEF FLUID |
| | | | F** WIPERS<br>WIPER REPLACE WIPER BLADES |
| | | | G**ENGINE AIR FILTERS<br>AUR REPLACE ENGINE AIR FILTER ELEMENT |
| | | | H** CLIENT STATES THAT THERE ARE DENTS ON LEFT REAR DOOR AND RIGHT FENDER<br>CAUSE: CLAIMS@IASDIRECT.COM<br>AUTH#ER6011911798444 TOTAL $180<br>SUBLET PDR- INV#151319 |
| 10-17-20 TO 10-20-20 4 DAYS | 39,917 TO 39,937 | 115440 | A COMPLETE- EXTERIOR WASH AND INTERIOR VACUUM<br>WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | B CUSTOMER STATES DIESEL EXHAUST FULL MESSAGE IS ON<br>129016 READ AND CLEAR FAULT CODES<br>C/S DPF CLOGGED LIGHT ON DASH. VERIFIED. FOUND P2463 STORED IN PCM. TRIED RUNNING REGEN ON VEHICLE ON HIGHWAY. NO DIFFERENCE MADE. WOULD NO (SIC) LOWER SOOT LEVELS. RAN BG EXHAUST, FUEL, AND OIL ADDITIVE CLEANING SERVICE FOR 45 MIN THRU VEHICLE AT HIGH- EXHAUST TEMPS IN AN EFFORT TO CLEAN SYSTEM AND FORCE REGEN |

| | | | |
|---|---|---|---|
| | | | THROUGH EXHAUST TEMPS. CHANGED OIL AFTER SERVICE COMPLETE.  SOOT LEVELS TOO HIGH FOR REGEN. REPLACED DPF IN EXHAUST AND REST ADAPTIONS AND DPF LIFE TIME. CHECK ENGINE LIGHT NO LONGER ON DASH. WARNING LIGHT NO LONGER ON DASH. POWER RETURNED TO VEHICLE. |
| | | | C PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE<br>M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE |
| | | | VEHICLE MUST BE DRIVEN AT HIGHWAY SPEEDS FOR DI STANCE (SIC) IN ORDER TO KEEP FILTER FROM GETTING CLO GGED (SIC)/  FAILURE TO PERFORM THIS ACTION WILL LEAD T O (SIC) CONDITION RETURNING WHICH MAY NOT BE A MATTER OF WARRANTY AT THAT TIME |
| 4-23-21 | 44,442 TO 44,425 | 120120 | JOB # A - CUSTOMER STATES FUEL FILTER IS FULL (WARNING LIGHT).<br>DIESEL EXHAUST FILTER IS FULL PLEASE LOOK OVER.<br>CAUSE: F<br>CORRECTION: 175045 DIESEL PARTICULATE FILTER (DPF) - DYNAMIC REGENERATION<br>TECH NUMBER: 55 LABOR TYPE: WTY<br>175061 SELECTIVE CATALYST REDUCTION (SCR) DOSING MODULE - TEST<br>TECH NUMBER: 55 LABOR TYPE: WTY<br>851806 READ AND CLEAR FAULT CODES<br>TECH NUMBER: 55 LABOR TYPE: WTY<br>020202 DRIVE IN-DRIVE OUT<br>TECH NUMBER: 55 LABOR TYPE: WTY<br>42442 ROAD TEST AND INSPECT, CHECK FOR CODES WITH PATHFINDER, CHECK DEF FLUID LEVEL 17.8L, CLEAR CODES, RESET SCR, PERFORM ROAD TEST ON HIGHWAY TO DO DIESEL PARTICULATE FILTER REGENERATION, RECHECK FOR CODES – 0 |
| | | | JOB # B - CORRECTION: NONE VEHICLE IS 98% FILLED WITH DEF NO NEED TO FILL DEF TANK AT THIS |
| | | | JOB # C - PERFORM COURTESY INSPECTION<br>CAUSE:<br>CORRECTION: CI PERFORM COURTESY INSPECTION<br>TECH NUMBER: 55 LABOR TYPE: INT |
| | | | JOB # D - COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>CAUSE:<br>CORRECTION: WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>TECH NUMBER: 55 LABOR TYPE: INT |
| | | | JOB # E - PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE<br>CAUSE:<br>CORRECTION: M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE<br>TECH NUMBER: 55 LABOR TYPE: INT |

Page 7 of 8

➤ MINIMUM NUMBER OF DAYS THAT THE VEHICLE WAS AT DEALERSHIPS FOR REPAIR ATTEMPTS PERFORMED FOR A DIESEL PROBLEM STARTING FROM THE VEHICLE'S DELIVERY = 22 DAYS.

➤ TOTAL MINIMUM NUMBER OF REPAIR ATTEMPTS PERFORMED UPON VEHICLE SINCE DELIVERY FOR A DIESEL PROBLEM = 5.

# COMPLAINT
# EXHIBIT D

Customer Number: **20086**

Invoice No: **95210**

# LAND ROVER CHERRY HILL

*INVOICE*

1100 HADDONFIELD ROAD
CHERRY HILL, NJ 08002

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034-1431

PAGE 1

(856) 663-2800 FAX (856) 663-7090

cherryhilllandrover.com

Home: ▮▮▮▮▮ Bus: ▮▮▮▮ Cell: ▮▮▮
Email: EMAIL▮▮▮▮▮▮ HOME

SERVICE ADVISOR: 241 CHRIS ACERBO

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| N.BLACK | 17 | LAND ROVER RANGE ROV | SALWR2FKXHA693677 | ▮▮▮ | 7581  7583 | T6149 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|----------|------------|------------|----------|------|------|---------|-----------|
| 22DEC17 | 159 | | 17:00 11APR18 | | 139.00 | CASH | 11APR18 |

| R.O. OPENED | READY | |
|-------------|-------|--|
| 07:15 11APR18 | 09:48 11APR18 | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD 2)MUDDYREWARDS#4000760515 |

| LINE OPCODE TECH TYPE HOURS | LIST | NET | TOTAL |
|---|---|---|---|
| A COMPLETE LUBRICATION SERVICE INCLUDING OIL AND FILTER CHANGE | | | |
| LUBE COMPLETE LUBRICATION SERVICE INCLUDING OIL | | | |
| AND FILTER CHANGE | | | |
| 317  CPM | | 59.95 | 59.95 |
| 6 12085 C1 GTX DIESEL | 11.22 | 11.22 | 67.32 |
| 1 1013938 PLUG - OIL DRAIN | 5.43 | 5.43 | 5.43 |
| 1 LR013148 FILTER - ENGINE | 30.40 | 30.40 | 30.40 |
| FLUID INSPECT AND CORRECT FLUID LEVELS AS NEEDED | | | |
| 317  CPM | | 0.00 | 0.00 |
| 1 SOLVENT W/W-SOLVENT | 3.75 | 3.75 | 3.75 |
| BATT TEST BATTERY AND PROVIDE RESULTS | | | |
| 317  CPM | | 0.00 | 0.00 |
| I INSPECT SUSPENSION ,BRAKES ,TIRES, WEAR ITEMS, | | | |
| AND FOR EXTERNAL FLUID LEAKS | | | |
| 317  CPM | | 0.00 | 0.00 |
| HISS CORRECT TIRE PRESSURES AS NECESSARY | | | |
| 317  CPM | | 0.00 | 0.00 |
| RESET RESET SERVICE COUNTER | | | |
| 317  CPM | | 0.00 | 0.00 |

PARTS: 106.90 LABOR: 59.95 OTHER: 0.00 TOTAL LINE A: 166.85
*******************************************************

B PERFORM COURTESY INSPECTION
CI PERFORM COURTESY INSPECTION
317  CP               0.00      0.00

PARTS: 0.00 LABOR: 0.00 OTHER: 0.00 TOTAL LINE B: 0.00
*******************************************************

C PROVIDED LAND ROVER LOANER COURTESY VEHICLE
M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE
99  INT                                    (N/C)

PARTS: 0.00 LABOR: 0.00 OTHER: 0.00 TOTAL LINE C: 0.00
*******************************************************

D COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
99  INT                                    (N/C)

**I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED**

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| **PLEASE PAY THIS AMOUNT** | |

SIGNATURE _____ DATE PICKED UP _____

DATE OUT _____ SPEEDOMETER OUT _____

CUSTOMER SIGNATURE

*Customer Copy*

Copyright CDK Global LLC SERVICE INVOICE TYPE 2 - BI2C - IMAGING

Customer Number: 20086

Invoice No: **102761**

"INVOICE"

PAGE 1

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East
Cherry Hill, NJ 08003
(856) 663-2800  FAX (856) 663-7090
www.jlrch.com

ILU LILY DESIGNS LLC
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034-1431
Home: ▮▮▮▮▮  Bus: ▮▮▮▮▮  Cell: ▮▮▮▮▮
Email: EMAIL ▮▮▮▮▮ HOME

SERVICE ADVISOR: 241 CHRIS ACERBO

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|---|---|---|---|---|---|---|
| N BLACK | 17 | LAND ROVER RANGE ROV | SALWR2FKXHA693677 | ▮ | 24175  24182 | T8586 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 30APR19 | | 149.00 | CASH | 02MAY19 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP |
|---|---|---|
| 10:06 29APR19 | 11:02 02MAY19 | 12/22/22 2)MUDDYREWARDS#4000760515 |

| LINE OPCODE TECH TYPE HOURS | LIST | NET | TOTAL |
|---|---|---|---|
| A 16,000 MILES/ 26,000 KM OR 12 MONTHS SERVICE | | | |
| 101016 16,000 MILES/ 26,000 KM OR 12 MONTHS | | | |
| SERVICE | | | |
| 88   CPM | | 325.50 | 325.50 |
| 1 LR013148 FILTER - ENGINE | 21.63 | 21.63 | 21.63 |
| 6 157A73 5W30 DIESEL | 10.69 | 10.69 | 64.14 |
| 1 1013938 PLUG - OIL DRAIN | 5.11 | 5.11 | 5.11 |
| FLUID INSPECT AND CORRECT FLUID LEVELS AS NEEDED | | | |
| 88   CPM | | 0.00 | 0.00 |
| 1 SOLVENT W/W-SOLVENT | 3.79 | 3.79 | 3.79 |
| BATT TEST BATTERY AND PROVIDE RESULTS | | | |
| 88   CPM | | 0.00 | 0.00 |
| HISS CORRECT TIRE PRESSURES AS NECESSARY | | | |
| 88   CPM | | 0.00 | 0.00 |
| I INSPECT SUSPENSION ,BRAKES ,TIRES, WEAR ITEMS, | | | |
| AND FOR EXTERNAL FLUID LEAKS | | | |
| 88   CPM | | 0.00 | 0.00 |
| VF REPLACE POLLEN FILTER | | | |
| 88   CPM | | 0.00 | 0.00 |
| 1 LR036369 FILTER - ODOUR A | 76.11 | 76.11 | 76.11 |
| ROTATE ROTATE TIRES FRONT TO REAR | | | |
| 88   CPM | | 0.00 | 0.00 |
| RESET RESET SERVICE COUNTER | | | |
| 88   CPM | | 0.00 | 0.00 |
| PARTS:   170.78  LABOR:   325.50  OTHER:   0.00  TOTAL LINE A: | | | 496.28 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| B PERFORM COMPLETE INTERIOR AND EXTERIOR DETAIL | | | |
|---|---|---|---|
| DETAIL PERFORM COMPLETE INTERIOR AND EXTERIOR | | | |
| DETAIL | | | |
| 99   CP | | 0.00 | 0.00 |
| SUBL QUINTIN DETAIL | | | |
| CP | | 250.00 | 250.00 |
| PARTS:   0.00  LABOR:   0.00  OTHER:   250.00  TOTAL LINE B: | | | 250.00 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

SIGNATURE _____ DATE PICKED UP _____

DATE OUT _____ SPEEDOMETER OUT _____

CUSTOMER SIGNATURE

*Customer Copy*



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | 102761 |
| Tag #: | T8586 |
| Advisor: | Chris Acerbo |
| Advisor No. #: | 241 |
| Order Open Date: | 2019-04-29 |



ILU LILY DESIGNS LLC

1879 OLD CUT  BERT RD STE 25
C  ERRY   ILL, NJ 08034-1431
Cus omer Number - 20086
Home Phone #:  (
Ce  Phone #:  (
Contact Phone #:
Ema  Address:

**2017 LRNA  TWBV**

VIN #:  SALWR2FKXHA693677
Co or #:  N.BLACK
M eage In/Out #:  24175/24182

---

Job # A                                                    **Labor Total:**          **$ 325.50**

**16,000 MILES/ 26,000 KM OR 12 MONTHS SERVICE**
Cause:
**Correction:**   101016   16,000 MILES/ 26,000 KM OR 12 MONT  S SERVICE
Tech Number: 88   Labor Type: CPM
  FLUID   INSPECT AND CORRECT FLUID LEVELS AS NEEDED
Tech Number: 88   Labor Type: CPM
  BATT   TEST BATTERY AND PROVIDE RESULTS
Tech Number: 88   Labor Type: CPM
  ISS   CORRECT TIRE PRESSURES AS NECESSARY
Tech Number: 88   Labor Type: CPM
  I   INSPECT SUSPENSION ,BRAKES ,TIRES, WEAR ITEMS, AND FOR EXTERNAL FLUID LEAKS
Tech Number: 88   Labor Type: CPM
  VF   REPLACE POLLEN FILTER
Tech Number: 88   Labor Type: CPM
  ROTATE   ROTATE TIRES FRONT TO REAR
Tech Number: 88   Labor Type: CPM
  RESET   RESET SERVICE COUNTER
Tech Number: 88   Labor Type: CPM

| Par Number | Par  Descr p on | Q y | L s | | **Parts Total:** | **$ 170.78** |
|---|---|---|---|---|---|---|
| LR0 3  48 | F L  ER  ENG NE | | $ 2 63 | $ 2 63 | | |
| 57A73 | 5W30 D ESEL | 6 | $  0 69 | $ 64  4 | | |
| G 3938 | PLUG  O L | | $ 5 | $ 5 | | |
| | ORA N | | | | | |
| SOLVEN | W/W SOLVEN | | $ 3 79 | $ 3 79 | | |
| LR036369 | F L  ER  ODOUR | | $ 76 | $ 76 | | |
| | A | | | | | |

**Job # A Total:                    $ 496 2** 

---

Job # B                                                    **Labor Total:**          **$ 0.00**

*O  M means Original  quipment Manu acturer ( actory   arts   ** All parts are New unless specified otherwise

05/02/2019 8:04 AM                     *~ Thank you for your business ~~*

CAM-L-001836-21 06/21/2021 12:06:54 PM Pg 118 of 143 Trans ID: LCV20211478782



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | **102761** |
| Tag #: | **T8586** |
| Advisor: | **Chris Acerbo** |
| Advisor No. #: | **241** |
| Order Open Date: | **2019-04-29** |

**PERFORM COMPLETE INTERIOR AND EXTERIOR DETAIL**

Cause:
Correction:  DETAIL   PERFORM COMPLETE INTERIOR AND EXTERIOR DETAIL
Tech Number: 99  Labor Type: CP

| Part Number | Part Description | Qty | Ls | Parts Total: | $ 0.00 |
|---|---|---|---|---|---|

**Job # B Total** | **$ 0.00**

---

**Job # C** | | Labor Total: | **No Charge**

**PERFORM COURTESY INSPECTION**

Cause:
Correction:  CI  PERFORM COURTESY INSPECTION
Tech Number: 88  Labor Type: INT

| Part Number | Part Description | Qty | Ls | Parts Total: | No Charge |
|---|---|---|---|---|---|

**Job # C Total** | **$ 0.00**

---

**Job # D** | | Labor Total: | **No Charge**

**PROVIDED LAND ROVER LOANER COURTESY VEHICLE**

Cause:
Correction:  M013   PROVIDED LAND ROVER LOANER COURTESY VEICLE
Tech Number: 99  Labor Type: INT

| Part Number | Part Description | Qty | Ls | Parts Total: | No Charge |
|---|---|---|---|---|---|

**Job # D Total** | **$ 0.00**

---

**Job # E** | | Labor Total: | **No Charge**

**CLIENT STATES WHEN TRAVELING OVER 70MPH THERE IS A RATTLE FROM THE RIGHT FRONT PASSENGER AREA OF THE VEHICLE**

*O M means Original  quipment Manu acbrer ( actory   arts ** All parts are New unless special ied otherwise

~~ Thank you for your business ~~



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | 102761 |
| Tag #: | T8586 |
| Advisor: | **Chris Acerbo** |
| Advisor No. #: | 241 |
| Order Open Date: | 2019-04-29 |

Cause:
Correction:  10   RIG T FRONT W EEL IS BENT, REPAIRED BY ALLOY W EEL
Tech Number: 99   Labor Type: INT

| Par Number | Par Descr p on | Q y | L s | Parts Total: | No Charge |
|---|---|---|---|---|---|
| | **Job # E Total** | | | | **$ 0.00** |

**Job # F**  Labor Total:  No Charge

**CLIENT STATES THERE IS A NAIL PUNCTURE IN THE RIGHT FRONT TIRE**
Cause: IAS AUT  #JM143599-1597489 FAX#5122574777
Correction:  MT2  MOUNT AND BALANCE TWO TIRES.CORRECT TIRE PRESSURES W EN
COMPLETED.
Tech Number: 88   Labor Type: WCEXT

| Par Number | Par Descr p on | Q y | L s | Parts Total: | No Charge |
|---|---|---|---|---|---|
| 784389333 | EAGLE F ASYM SU | 2 | | | |
| WW | WHEEL WE GH | 4 | | | |
| NJ | RE/ AX | 2 | | | |
| | **Job # F Total** | | | | **$ 0.00** |

**Job # H**  Labor Total:  No Charge

**INSPECT FOR DOOR DINGS**
Cause:
Correction:  10   NONE PRESENT
Tech Number: 99   Labor Type: INT

| Par Number | Par Descr p on | Q y | L s | Parts Total: | No Charge |
|---|---|---|---|---|---|
| | **Job # H Total** | | | | **$ 0.00** |

**Job # J**  Labor Total:  $ 157.50

05/02/2019 8:04 AM

*O M means Original quipment Manu acturer actory arts  ** All parts are New unless specied otherwise

*~~ Thank you for your business ~~*



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | 102761 |
| Tag #: | T8586 |
| Advisor: | **Chris Acerbo** |
| Advisor No. #: | 241 |
| Order Open Date: | 2019-04-29 |

## REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE

Cause:
Correction:  M15R   REPLACE WORN REAR BRAKE PADS AND SENSORS W EN APPLICABLE
Tech Number: 88   Labor Type: CPM

| Par Number | Par Descr p on | Q y | L s | | **Parts Total:** | **$ 215.33** |
|---|---|---|---|---|---|---|
| LR 08260 | K   BRAKE L N | | $ 63 87 | $ 63 87 | | |
| LR033295 | W RE  BRAKE PAD | | $5 46 | $5 46 | | |

**Job # L Total** **$ 372.83**

---

| **Job # K** | | **Labor Total:** | **No Charge** |
|---|---|---|---|

**PERFORM N120**

Cause: PERFROM N120B
Correction:  889003   INSTRUMENT CLUSTER - SYSTEM DIAGNOSIS - INCLUDES CONFIGURATION
OF NEW ECU
Tech Number: 88   Labor Type: WTY

| Par Number | Par Descr p on | Q y | L s | | **Parts Total:** | **No Charge** |
|---|---|---|---|---|---|---|

**Job # K Total** **$0.00**

---

| **Job # L** | | **Labor Total:** | **No Charge** |
|---|---|---|---|

**PERFORM N241**

Cause: PERRFOM N241A
Correction:  189090   POWERTRAIN CONTROL MODULE (PCM) - SOFTWARE UPDATE
Tech Number: 88   Labor Type: WTY

| Par Number | Par Descr p on | O y | L s | | **Parts Total:** | **No Charge** |
|---|---|---|---|---|---|---|

**Job # L Total** **$ 0.00**

---

05/02/2019 8:04 AM

* O  M means Original   quipment Manu acturer ( actory   erial   ** All parts are New unless special ed otherwise

~~ Thank you for your business ~~



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | **102761** |
| Tag #: | **T8586** |
| Advisor: | **Chris Acerbo** |
| Advisor No. #: | **241** |
| Order Open Date: | **2019-04-29** |

## Miscellaneous

| Job # | PO # | Description |
|---|---|---|
| B | 9999 | QUINTIN DETAIL |
| F | 9997 | DISP |

| **Miscellaneous Total:** | **$ 250.00** |
|---|---|

## RO Comments

## Amount Totals

| | |
|---|---|
| Total Labor: | **$ 483.00** |
| Total Parts: | **$ 386.11** |
| Gas, Oil, Lube + Sublet + Misc: | **$ 260.00** |
| Sales Tax: | **$ 74.80** |

| **Customer Total:** | **$ 1,203.91** |
|---|---|

### Terms and Acceptance

Cus omer acknowledges approval o work described in his Repair Order Summary  Any Warran ies on he produc sold herein are hose made by
he manu ac urer  he seller hereby expressly disclaims all warran ies  ei her express including any implied warran y o  merchan abili y or  i ness
or a par icular purpose  and nei her assumes nor au horizes any o her person  o assume  or i  any liabili y in connec ion wi h  he sale o  said
produc s

Please look  or a survey on your service experience   he manu ac ures survey will be sen  o you by email    you are no  sure i  your curren  email
address is on ile please check wi h your service advisor

We're working hard  o make cus omers  or li e

✖

* O M means Original  quipment Manu acturer  actory  arts  ** All parts are New unless speci ied otherwise

*~~ Thank you for your business ~~*

Customer Number: **20086**

Invoice No: **105861**

*INVOICE*

PAGE 1

# JAGUAR LAND ROVER CHERRY HILL

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800  FAX (856) 663-7090

www.jlrch.com

ILU.LILY DESIGNS LLC
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034-1431
Home:          Bus:          Cell:
Email: EMAIL                    HOME

SERVICE ADVISOR: 1000 LORAINE MILOSEVIC

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER RANGE ROV | SALWR2FKXHA693677 | | 30007 | 30010 | T315 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 04SEP19 | | 160.00 | CASH | 05SEP19 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP 12/22/22 2)MUDDYREWARDS#4000760515 |
|---|---|---|
| 08:21 04SEP19 | 15:17 05SEP19 | |

| LINE OPCODE TECH TYPE HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|

A CLIENT STATES CHIP IN WINDSHIELD
CAUSE: IAS-AUTH#DW5837531655930
    10 STATES HAS WINDHIELD CHIP
       99WCEXT                                                (N/C)
SUBL ED & SONS
        WCEXT                                              (N/C)
PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE A:   0.00
*******************************************************

D TOP OFF DIESEL EXHAUST FLUID
  MISC TOP OFF FLUID
      99     CP                                0.00     0.00
    15 LR079977 FLUID - DIESEL E            3.95     3.95    59.25
PARTS:   59.25  LABOR:   0.00  OTHER:   0.00  TOTAL LINE D:   59.25
*******************************************************

E PROVIDED LAND ROVER LOANER COURTESY VEHICLE
  M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE
      99     INT                                              (N/C)
PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE E:   0.00
*******************************************************

F COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
  WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
      99     INT                                              (N/C)
PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE F:   0.00
*******************************************************

G PERFORM COURTESY INSPECTION
  CL PERFORM COURTESY INSPECTION
      14     INT                                              (N/C)
PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE G:   0.00
*******************************************************

H CLIENT STATES THAT THERE IS A PLASTIC REAR TRIM THAT IS LOOSE
  MISC SECURE PANEL
      99     INT                                              (N/C)
PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE H:   0.00
*******************************************************

I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED

| STATEMENT OF DISCLAIMER | DESCRIPTION | TOTALS |
|---|---|---|
| The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assure for it any liability in connection with the sale of this item/items. | LABOR AMOUNT | |
| | PARTS AMOUNT | |
| | GAS, OIL, LUBE | |
| | SUBLET AMOUNT | |
| | MISC. CHARGES | |
| SIGNATURE             DATE PICKED UP | TOTAL CHARGES | |
| | LESS INSURANCE | |
| DATE OUT_____ SPEEDOMETER OUT_____ | SALES TAX | |
| CUSTOMER SIGNATURE | PLEASE PAY THIS AMOUNT | |

*Customer Copy*

Customer Number: **20086**

Invoice No: **105861**

*INVOICE*

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800 FAX (856) 663-7090

www.jlrch.com

**ILU.LILY DESIGNS LLC**

1879 OLD CUTHBERT RD STE 25

CHERRY HILL, NJ 08034-1431

Home: ▮▮▮▮ |Bus: ▮▮▮▮ |Cell: ▮▮▮▮

Email: EMAIL|KNEJAT@GROPPERLAWGROUP.COM|HOME

PAGE 2

SERVICE ADVISOR: 1000 LORAINE MILOSEVIC

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER RANGE ROV | SALWR2FKXHA693677 | ▮▮▮▮ | 30007 | 30010 | T315 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 04SEP19 | | 160.00 | CASH | 05SEP19 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP |
|---|---|---|
| 08:21 04SEP19 | 15:17 05SEP19 | 12/22/22 2)MUDDYREWARDS#4000760515 |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|
| I | INSPECT SCRATCHES ON D/S REAR DOOR AND QUARTER PANEL | | | | | | | |
| | SUBLET REPAIR SCRATCHES D/S REAR QTR AND D/S REAR | | | | | | | |
| | DOOR | | | | | | | |
| | | 99 | CP | | | 0.00 | 0.00 | |
| | SUBL D MCLAUGHLIN-INV#7250 | | | | | | | |
| | | | CP | | | | 150.00 | 150.00 |
| PARTS: | 0.00 | LABOR: | 0.00 | OTHER: | 150.00 | TOTAL LINE I: | | 150.00 |

*************************************************

CUSTOMER PAY MISC CHGS FOR REPAIR ORDER                                    1.78

THANK YOU FOR ALLOWING US TO MAINTAIN YOUR
VEHICLE TO ITS HIGHEST STANDARDS. ATTENTION
TO DETAIL AND THOROUGH REPAIRS ARE PARAMOUNT
TOWARDS PROVIDING YOU WITH AN EXCELLENT
EXPERIENCE. PLEASE CONTACT ME WITH ANY
CONCERNS REGARDING YOUR RECENT VISIT.
ERIC SILVA

**I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED**

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this items/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

SIGNATURE _____ DATE PICKED UP _____

DATE OUT _____ SPEEDOMETER OUT _____

| DESCRIPTION | TOTALS | |
|---|---|---|
| LABOR AMOUNT | $ | 0.00 |
| PARTS AMOUNT | $ | 59.25 |
| GAS, OIL, LUBE | $ | 0.00 |
| SUBLET AMOUNT | $ | 150.00 |
| MISC. CHARGES | $ | 1.78 |
| TOTAL CHARGES | $ | 211.03 |
| LESS INSURANCE | $ | 0.00 |
| SALES TAX | $ | 13.99 |
| PLEASE PAY THIS AMOUNT | $ | 225.02 |

CUSTOMER SIGNATURE

*Customer Copy*

Copyright 2014 CDK Global LLC  SERVICE INVOICE TYPE3 - STFC - IMAGING

Page 2 of 2

Customer Number: 20086

Invoice No: **110270**

"INVOICE"

PAGE 1

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800  FAX (856) 663-7090

www.jlrch.com

ILU.LILY DESIGNS LLC
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home: ███  Bus: ███  Cell: ███
Email: EMAIL

SERVICE ADVISOR: 221 JON PALMER

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | ███ | 37312 | 37322 | T1269 |

| DEL.DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 20FEB20 | | 169.00 | CASH | 19FEB20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP 12/22/22 2)MUDDYREWARDS#4000760515 | | |
|---|---|---|---|---|
| 09:52 18FEB20 | 14:35 19FEB20 | | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

A CUSTOMER STATES THAT WARNING LIGHT CAME ON SAYING EXH FILTER FULL SEE
  DEALER
CAUSE: .
  175045 DIESEL PARTICULATE FILTER - DYNAMIC
    REGENERATION
    44  WTY                                                    (N/C)
  129016 READ AND CLEAR FAULT CODES
    44  WTY                                                    (N/C)
  869123 DIAGNOSTIC ALLOWANCE
    44  WTY                                                    (N/C)
  101701 CHECK DIESEL EXHAUST FLUID (DEF) LEVEL
    44  WTY                                                    (N/C)
PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE A:        0.00
  37312 CONNECT PATHFINDER, SCAN DTCS AND FOUND P2463-00 PRESENT.
  CHECK ENGINE LAMP AND DPF WARNING MESSAGE ARE CAUSED BY DIESEL
  PARTICULATE FILTER BEING TOO FULL. NEEDS REGENERATION PERFORMED.
  PERFORM DYNAMIC REGENERATION AND CLEAR DTCS. VERIFY CONCERN IS NO
  LONGER PRESENT.
  ****************************************
B CUSTOMER STATES THAT THE PASSENGER SIDE REAR TIRE MAYBE LOSING AIR
  LIGHT IS ON
CAUSE: .
  MT1 MOUNT AND BALANCE ONE TIRE CORRECT TIRE
    PRESSURE WHEN COMPLETED
    44WCEXT                                                   (N/C)
  1 784389333 EAGLE F1 ASYM SU                                (N/C)
  1 TF STATE OF NEW JERSEY TIRE FEE                           (N/C)
MISC DISP
    WCEXT                                                     (N/C)
PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE B:        0.00
  37312 FOUND 2 NAILS IN RR TIRE. NEW TIRE IS NEEDED. 1 IN SHOULDER
  MOUNT AND BALANCE ONE TIRE RR 7/32 GOODYEAR EAGLE F1 SUV IAS 800 346
  6469 APPROVAL DB118760-1722520 FAX 512 257 4777 OLD DOT 6IYLAWTX1617

I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person or assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| **PLEASE PAY THIS AMOUNT** | |

SIGNATURE _____  DATE PICKED UP _____

DATE OUT _____  SPEEDOMETER OUT _____

CUSTOMER SIGNATURE

*Customer Copy*

Page 1 of 3

Copyright 2014 CDK Global, LLC. SERVICE INVOICE12.2.BBC.HINGHO

Customer Number: **20086**

Invoice No: **110270**

**\*INVOICE\***

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800  FAX (856) 663-7090

www.jlrch.com

PAGE 2

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home: EMAIL   Bus:   Cell:
Email: EMAIL                        HOME

SERVICE ADVISOR: 221 JON PALMER

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | | TAG |
|---|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | | 37312 | 37322 | T1269 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 20FEB20 | | 169.00 | CASH | 19FEB20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP 12/22/22 2)MUDDYREWARDS/#4000760515 |
|---|---|---|
| 09:52 18FEB20 | 14:35 19FEB20 | |

| LINE OPCODE TECH TYPE HOURS | LIST | NET | TOTAL |
|---|---|---|---|

,,,,NEW DOT NEHHJAIR2419
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
    WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
        99   INT                                       (N/C)
        44   INT                                       (N/C)
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00   TOTAL LINE C:    0.00
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
D PERFORM COURTESY INSPECTION
    CI PERFORM COURTESY INSPECTION
        44   INT                                       (N/C)
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00   TOTAL LINE D:    0.00
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
E PERFORM THE FOLLOWING RECALL. N377
CAUSE: PERFORM N377 CAMPAIGN
      859908 N377 INCONTROL TOUCH PRO - UPDATE
        36   WTY                                     (N/C)
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00   TOTAL LINE E:    0.00
,,,,37312 updated incontrol touch over pathfinder opton b drive in and
,,,,out
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
F CLIENT STATES THERE IS A CHECK ENGINE ERROR MESSAGE PRESENT
    CE CLIENT STATES THERE IS A CHECK ENGINE ERROR
        MESSAGE PRESENT
        44   INT                                       (N/C)
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00   TOTAL LINE F:    0.00
,,,,37312 SEE LINE A
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
G\*\* 856 973 1309 CANDICE
    10 856 973 1309
        44   INT                                       (N/C)
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00   TOTAL LINE G:    0.00
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
H\*\* CHECK DS REAR DOOR WINDOW MOLDING

**I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED**

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

SIGNATURE                        DATE PICKED UP

DATE OUT_____ SPEEDOMETER OUT_____

CUSTOMER SIGNATURE

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| **PLEASE PAY THIS AMOUNT** | |

*Customer Copy*

Page 2 of 3

**Customer Number: 20086**

**Invoice No: 110270**

*INVOICE*

PAGE 3

## JAGUAR LAND ROVER CHERRY HILL
2000 Route 70 East
Cherry Hill, NJ 08003
(856) 663-2800 FAX (856) 663-7090
www.jlrch.com

ILU.LILY DESIGNS LLC
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home: ████  Bus: ████  Cell: ████
Email: EMAIL ████ HOME

**SERVICE ADVISOR: 221 JON PALMER**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | ████ | 37312 37322 | T1269 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 20FEB20 | | 169.00 | CASH | 19FEB20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP 12/22/22 2)MUDDYREWARDS#4000760515 |
|---|---|---|
| 09:52 18FEB20 | 14:35 19FEB20 | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

```
        10 RESURED MOULDING                                           (N/C)
            44   INT                                                   0.00
PARTS:     0.00  LABOR:     0.00  OTHER:     0.00  TOTAL LINE H:
,,,37312 RESECURED MOLDING
*********************************************************
I** REPLACE WORN FRONT BRAKE PADS, ROTORS, AND SENSORS WHEN APPLICABLE
    M14FR REPLACE WORN FRONT BRAKE PADS, ROTORS, AND
        SENSORS WHEN APPLICABLE
            44   CPM                                         360.00    360.00
    1 LR051626 BRAKE PADS - WIT              312.37          312.37    312.37
    1 LR045959 WIRE - BRAKE PAD               52.66           52.66     52.66
    2 LR038934 DISC - BRAKE                  249.15          249.15    498.30
PARTS:   863.33  LABOR:   360.00  OTHER:     0.00  TOTAL LINE I:      1223.33
,,,37312 FRONT PADS AT 3MM RENEW FRONT PADS, FRONT ROTORS, SENSOR AND
,,,BG BRAKE FLUID SERVICE
*********************************************************
J** BG/LAND ROVER BRAKE FLUID SERVICE
    BFF BG/LAND ROVER BRAKE FLUID SERVICE
            44   CPM                                         120.00    120.00
    1 84032 FLUSH/KIT                         29.15           29.15     29.15
PARTS:    29.15  LABOR:   120.00  OTHER:     0.00  TOTAL LINE J:       149.15
,,,37312 PERFORMED BRAKE FLUID FLUSH
*********************************************************
CUSTOMER PAY MISC CHGS FOR REPAIR ORDER                                10.00
SHUTTLE TO OLD CUTHBERT BLVD  THANK YOU FOR ALLOWING US TO MAINTAIN YOUR
                              VEHICLE TO ITS HIGHEST STANDARDS. ATTENTION
                              TO DETAIL AND THOROUGH REPAIRS ARE PARAMOUNT
                              TOWARDS PROVIDING YOU WITH AN EXCELLENT
                              EXPERIENCE. PLEASE CONTACT ME WITH ANY
                              CONCERNS REGARDING YOUR RECENT VISIT.
                              ERIC SILVA
```

**I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED**

STATEMENT OF DISCLAIMER
This factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

SIGNATURE _____ DATE PICKED UP _____

DATE OUT _____ SPEEDOMETER OUT _____

CUSTOMER SIGNATURE

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | $ 480.00 |
| PARTS AMOUNT | $ 892.48 |
| GAS, OIL, LUBE | $ 0.00 |
| SUBLET AMOUNT | $ 0.00 |
| MISC. CHARGES | $ 10.00 |
| TOTAL CHARGES | $ 1382.48 |
| LESS INSURANCE | $ 0.00 |
| SALES TAX | $ 91.59 |
| PLEASE PAY THIS AMOUNT | $ 1474.07 |

*Customer Copy*

Page 3 of 3

Customer Number: **20086**

Invoice No: **110620**

**"INVOICE"**

PAGE 1

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800 FAX (856) 663-7090

www.jlrch.com

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home: ███████ Bus: ███████ Cell: ███████
Email: EMAIL

**SERVICE ADVISOR: 221 JON PALMER**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|-------|------|-----------|-----|---------|------|------|-----|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | | 37929 | 37938 | T1588 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|------|------|---------|-----------|
| 22DEC17 | 159 | | 17:00 03MAR20 | | 169.00 | CASH | 06MAR20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP |
|-------------|-------|--------|
| 08:47 03MAR20 | 13:00 06MAR20 | 12/22/22 2)MUDDYREWARDS#4000760515 |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|------|--------|------|------|-------|---|------|-----|-------|

A CUSTOMER STATES VEHICLE SAYS EXH FILTER FULL
CAUSE:
```
    175020 DIESEL PARTICULATE FILTER - RENEW
         46   WTY                                              (N/C)
      1 LR011593 ELEMENT - AIR CL                              (N/C)
      1 LR072193 FILTER - DIESEL                               (N/C)
      1 LR016619 GASKET - EXHAUST                              (N/C)
     16 LR079977 FLUID - DIESEL E                              (N/C)
    179010 RESET SELECTIVE CATALYST REDUCTION QUALITY
       MONITOR
         46   WTY                                              (N/C)
    199011 TURBOCHARGER, EGR AND AIR PATH - DYNAMIC
       TEST
         46   WTY                                              (N/C)
    101701 CHECK DIESEL EXHAUST FLUID (DEF) LEVEL
         46   WTY                                              (N/C)
    175045 DIESEL PARTICULATE FILTER - DYNAMIC
       REGENERATION
         46   WTY                                              (N/C)
    961002 DRIVE CYCLE 'B'                                     (N/C)
         46   WTY
    869123 DIAGNOSTIC ALLOWANCE                                (N/C)
         46   WTY
    020202 DRIVE IN-DRIVE OUT                                  (N/C)
         46   WTY
PARTS:    0.00  LABOR:    0.00  OTHER:   0.00  TOTAL LINE A:
                                                             0.00
```
,,,,37929 p2463-00, DIESEL PARTICULATE FILTER CLOGGED. CONNECT
,,,,PATHFINDER AND RETRIEVE DTC'S. FOUND P2463 STORED WITH IN PCM. CHECK
,,,,AND TOP UP EXHAUST FLUID LEVEL (16 LITERS). RESET DOSING FACTOR USING
,,,,PATHFINDER, RUN EGR AND AIR PATH CHECK FOR INTAKE LEAKS. PERFORM
,,,,REGENERATION DRIVE CYCLE WITH PATHFINDER ATTACHED. PERFORM DYNAMIC
,,,,REGENERATION PROCEDURE USING PATHFINDER (FAILED). DIESEL PARTICULATE
,,,,FILTER BEYOND REGENERATION CAPABILITIES. REMOVE AND REPLACE PARTICULATE
,,,,FILTER CONNECT PATHFINDER PERFORM FILTER REPLACEMENT PROCEDURE. CLEAR

**I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED**

STATEMENT OF DISCLAIMER
The factory warranty constitutes all the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

SIGNATURE _____ DATE PICKED UP _____

DATE OUT _____ SPEEDOMETER OUT _____

CUSTOMER SIGNATURE

*Customer Copy*



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | 110620 |
| Tag #: | T1588 |
| Advisor: | Jon Palmer |
| Advisor No. #: | 221 |
| Order Open Date: | 2020-03-03 |



ILU.LILY DESIGNS LLC

1879 OLD CUT  BERT RD STE 25
C  ERRY   ILL, NJ 08034
Cus omer Number - 20086

Home Phone #:
Ce  Phone #:
Contact Phone #:
Ema  Address:



**Vehicle Information**

2017 LAND  RGRVSP

VIN #:  SALWR2FKXHA693677
Co or #:  N.BLACK
M eage In/Out #:  37929/37938

---

**Job # A**                                                      **Labor Total:**        **No Charge**

**CUSTOMER STATES VEHICLE SAYS EXH FILTER FULL**

Cause: .
**Correction:**  175020  DIESEL PARTICULATE FILTER - RENEW
Tech Number: 46   Labor Type: WTY
 179010  RESET SELECTIVE CATALYST REDUCTION QUALITY MONITOR
Tech Number: 46   Labor Type: WTY
 199011  TURBOC  ARGER, EGR AND AIR PAT   - DYNAMIC TEST
Tech Number: 46   Labor Type: WTY
 101701  C  ECK DIESEL EX  AUST FLUID (DEF) LEVEL
Tech Number: 46   Labor Type: WTY
 175045  DIESEL PARTICULATE FILTER - DYNAMIC REGENERATION
Tech Number: 46   Labor Type: WTY
 961002  DRIVE CYCLE 'B'
Tech Number: 46   Labor Type: WTY
 869123  DIAGNOSTIC ALLOWANCE
Tech Number: 46   Labor Type: WTY
 020202  DRIVE IN-DRIVE OUT
Tech Number: 46   Labor Type: WTY

| Par Number | Par Descr p on | O y | L s | **Parts Total:** | **No Charge** |
|---|---|---|---|---|---|
| LR0  593 | ELEMEN  A R CL | | | | |
| LR072 93 | FL ER  D ESEL | | | | |
| LR0 66 9 | GASKE EXHAUS | | | | |
| LR079977 | FLU D  D ESEL E | 6 | | | |

37929  p2463-00, DIESEL PARTICULATE FILTER CLOGGED. CONNECT PAT  FINDER AND RETRIEVE DTC'S. FOUND P2463 STORED
WIT  IN PCM. C  ECK AND TOP UP EX  AUST FLUID LEVEL (16 LITERS). RESET DOSING FACTOR USING PAT  FINDER. RUN EGR AND
AIR PAT   C  ECK FOR INTAKE LEAKS. PERFORM REGENERATION DRIVE CYCLE WIT  PAT  FINDER ATTAC  ED. PERFORM DYNAMIC
REGENERATION PROCEDURE USING PAT  FINDER (FAILED). DIESEL PARTICULATE FILTER BEYOND REGENERATION CAPABILITIES.
REMOVE AND REPLACE PARTICULATE FILTER CONNECT PAT  FINDER PERFORM FILTER REPLACEMENT PROCEDURE. CLEAR AND
RE READ DTC'S.

**Job # A Total**                                                      **$0.00**

*O  M means Origina   quipment Manu acturer ( ctory  arts  ** All parts are Now unless spec ied otherwise

~~ Thank you for your business ~~



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | 110620 |
| Tag #: | T1588 |
| Advisor: | Jon Palmer |
| Advisor No. #: | 221 |
| Order Open Date: | 2020-03-03 |

---

**Job # B**                                                    Labor Total:        No Charge

**PERFORM COURTESY INSPECTION**
Cause:
**Correction:**  CI   PERFORM COURTESY INSPECTION
Tech Number: 46   Labor Type: INT

Par Number          Par Descrp on          Q y          L s          Parts Total:        No Charge

**Job # B Total**                                                    **$ 0.00**

---

**Job # C**                                                    Labor Total:        No Charge

**COMPLETE EXTERIOR WASH AND INTERIOR VACUUM**
Cause:
**Correction:**  WAS    COMPLETE EXTERIOR WAS   AND INTERIOR VACUUM
Tech Number: 99   Labor Type: INT

Par Number          Par Descrp on          Q y          L s          Parts Total:        No Charge

**Job # C Total**                                                    **$ 0.00**

---

**Job # D**                                                    Labor Total:        No Charge

**PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE**
Cause:
**Correction:**  M013   PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VE ICLE
Tech Number: 99   Labor Type: INT

Par Number          Par Descrp on          Q y          L s          Parts Total:        No Charge

**Job # D Total**                                                    **$ 0.00**

---

*O M means Original  quipment Manu acturer ( actory   arts  ** All parts are New unless speci ed otherwise

*~~ Thank you for your business ~~*



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | **110620** |
| Tag #: | **T1588** |
| Advisor: | **Jon Palmer** |
| Advisor No. #: | **221** |
| Order Open Date: | **2020-03-03** |

| Job # E | Labor Total: | No Charge |
|---|---|---|

**CUSTOMER STATES DIESEL FLUID IS LOW**
Cause:
**Correction:** C/S CUSTOMER STATES DIESEL FLUID IS LOW
Tech Number: 46 Labor Type: INT

| Part Number | Part Description | Qty | List | Parts Total: | No Charge |
|---|---|---|---|---|---|
| 37929 | SEE LINE A | | | | |

| Job # E Total | $ 0.00 |
|---|---|

**RO Comments**

**Amount Totals**

| | |
|---|---|
| Total Labor: | $ 0.00 |
| Total Parts: | $ 0.00 |
| Miscellaneous + Discounts: | $ 0.00 |
| Sales Tax: | $ 0.00 |
| Shop Supplies: | $ 0.00 |

| Customer Total: | $ 0.00 |
|---|---|

Terms and Acceptance

Customer acknowledges approval of work described in this Repair Order Summary. Any Warranties on the products sold herein are those made by the manufacturer. The seller hereby expressly disclaims all warranties other express including any implied warranty of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products.

Please look for a survey on your service experience. The manufacturers survey will be sent to you by email. If you are not sure if your current email address is on file please check with your service advisor.

We're working hard to make customers for life.

✕ _____

03/05/2020 1:02 PM

"O M means Original Equipment Manufacturer (factory) parts ** All parts are New unless specified otherwise.

~~ Thank you for your business ~~

| Customer Number: **20086** | | | Invoice No: **111366** | | **JAGUAR LAND ROVER CHERRY HILL** |

\*INVOICE\*

2000 Route 70 East

**ILU.LILY DESIGNS LLC**

Cherry Hill, NJ 08003

1879 OLD CUTHBERT RD STE 25

PAGE 1

CHERRY HILL, NJ 08034

(856) 663-2800 FAX (856) 663-7090

Home: ▮▮▮▮  Bus: ▮▮▮▮  Cell: ▮▮▮

www.jlrch.com

Email: EMAIL

SERVICE ADVISOR: 1000 LORAINE MILOSEVIC

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | | 38313 | 38316 | T6356 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 05MAY20 | | 169.00 | CASH | 20MAY20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP |
|---|---|---|
| 15:25 05MAY20 | 12:19 20MAY20 | 12/22/22 2)MUDDYREWARDS#4000760515 |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

A PERFORM COURTESY INSPECTION
   CI PERFORM COURTESY INSPECTION
     317   INT                              (N/C)
PARTS:   0.00  LABOR:     0.00  OTHER:     0.00    TOTAL LINE A:    0.00
       \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

B COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
   WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
     99   INT                              (N/C)
     317   INT                              (N/C)
PARTS:   0.00  LABOR:     0.00  OTHER:     0.00    TOTAL LINE B:    0.00
       \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

C CUSTOMER STATES RIGHT FRONT TIRE IS LOSING AIR
CAUSE: IAS
   MT1 MOUNT AND BALANCE ONE TIRE. CORRECT TIRE
     PRESSURE WHEN COMPLETED.
     317WCEXT                        (N/C)
   1 784389333 EAGLE F1 ASYM SU           (N/C)
   1 TF STATE OF NEW JERSEY TIRE FEE     (N/C)
   1 WW WHEEL WEIGHTS               (N/C)
MISC DISP
     WCEXT                          (N/C)
PARTS:   0.00  LABOR:     0.00  OTHER:     0.00    TOTAL LINE C:    0.00
,,,,38313 REPLACE FRONT RIGHT TIRE
       \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

D\*\* FRONT RIGHT TIRE WAS DRIVEN ON FLAT, THERE IS A BOLT IN THE TIRE
   THAT IS PLUGGABLE BUT I WOULD RECOMMEND REPLACING THE TIRE
   SINCE THE SIDEWALL WAS COMPROMISED GOODYEAR EAGLE F1 255/55R20
   110Y
   MISC SEE LINE C
     317   INT                              (N/C)
PARTS:   0.00  LABOR:     0.00  OTHER:     0.00    TOTAL LINE D:    0.00
       \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

~|

**I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED**

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

SIGNATURE _____ DATE PICKED UP _____

DATE OUT_____ SPEEDOMETER OUT_____

CUSTOMER SIGNATURE

*Customer Copy*

Copyright 2014 CDK Global, LLC SERVICE INVOICE - SVCFCP - SVC - IMAGING



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | 111366 |
| Tag #: | T6356 |
| Advisor: | Loraine Milosevic |
| Advisor No. #: | 1000 |
| Order Open Date: | 2020-05-05 |

ILU.LILY DESIGNS LLC

1879 OLD CUT BERT RD STE 25
C ERRY ILL, NJ 08034
Cus omer Number - 20086

| | |
|---|---|
| Home Phone #: | |
| Ce Phone #: | |
| Contact Phone #: | |
| Ema Address: | |

2017 LAND RGRVSP

VIN #: SALWR2FKXHA693677
Co or #: N.BLACK
M eage In/Out #: 38313/38316

---

**Job # A**                                    **Labor Total:**      **No Charge**

PERFORM COURTESY INSPECTION
Cause:
Correction: CI PERFORM COURTESY INSPECTION
Tech Number: 317 Labor Type: INT

| Par Number | Par Descr p on | Q y | L s | **Parts Total:** | **No Charge** |
|---|---|---|---|---|---|

**Job # A Total**                                                   **$ 0.00**

---

**Job # B**                                    **Labor Total:**      **No Charge**

COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
Cause:
Correction: WAS COMPLETE EXTERIOR WAS AND INTERIOR VACUUM
Tech Number: 99 Labor Type: INT

| Par Number | Par Descr p on | Q y | L s | **Parts Total:** | **No Charge** |
|---|---|---|---|---|---|

**Job # B Total**                                                   **$ 0.00**

---

**Job # C**                                    **Labor Total:**      **No Charge**

CUSTOMER STATES RIGHT FRONT TIRE IS LOSING AIR
Cause: IAS
Correction: MT1 MOUNT AND BALANCE ONE TIRE.CORRECT TIRE PRESSURE W EN

05/20/2020 12:23 PM

* O M means Orignal quipmont Manu adurer (actory arts ** All parts are New unless special ed otherwise

*~~ Thank you for your business ~~*



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | 111366 |
| Tag #: | T6356 |
| Advisor: | Loraine Milosevic |
| Advisor No. #: | 1000 |
| Order Open Date: | 2020-05-05 |

COMPLETED.
Tech Number: 317   Labor Type: WCEXT

| Par Number | Par Descrp on | Q y | L s | | |
|---|---|---|---|---|---|
| | | | | **Parts Total:** | No Charge |
| 784389333 | EAGLE F ASYM SU | | | | |
| 38313 REPLACE FRONT RIG T TIRE | | | | | |

**Job # C Total**                          **$ 0.00**

Job # D                                **Labor Total:**   No Charge

FRONT RIGHT TIRE WAS DRIVEN ON FLAT, THERE IS A BOLT IN THE TIRE
THAT IS PLUGGABLE BUT I WOULD RECOMMEND REPLACING THE TIRE
SINCE THE SIDEWALL WAS COMPROMISED GOODYEAR EAGLE F1
255/55R20 110Y
Cause:
**Correction:** MISC  SEE LINE C
Tech Number: 317   Labor Type: INT

| Par Number | Par Descrp on | Q y | L s | | |
|---|---|---|---|---|---|
| | | | | **Parts Total:** | No Charge |

**Job # D Total**                          **$ 0.00**

Miscellaneous

| Job # | PO # | Description |
|---|---|---|
| c | 9997 | DISP |
| c | 9997 | STATE OF NEW JERSEY TIRE FEE |
| c | 9997 | WHEEL WEIGHTS |

**Miscellaneous Total**                     **$ 0.00**

RO Comments

AS R  R  9  NTAT V  NSTRUCT D TD SUBM T CLA M-O
CCUR D WH  N SYST  M WAS NO  RAT V

05/20/2020 12:23 PM

*O  M means Original  quipment Manu acturer ( actory   arts  ** All parts are New unless spec ied otherwise

~~ *Thank you for your business* ~~



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | 111366 |
| Tag #: | T6356 |
| Advisor: | **Loraine Milosevic** |
| Advisor No. #: | 1000 |
| Order Open Date: | 2020-05-05 |

## Amount Totals

| | |
|---|---|
| Total Labor: | $ 0.00 |
| Total Parts: | $ 0.00 |
| Miscellaneous + Discounts: | $ 0.00 |
| Sales Tax: | $ 0.00 |
| Shop Supplies: | $ 0.00 |
| **Customer Total:** | **$ 0.00** |

### Terms and Acceptance

Customer acknowledges approval of work described in this Repair Order Summary. Any Warranties on the products sold herein are those made by the manufacturer. The seller hereby expressly disclaims all warranties either express including any implied warranty of merchantability or fitness or a particular purpose and neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products.

Please look for a survey on your service experience. The manufacturer survey will be sent to you by email. If you are not sure of your current email address is on file please check with your service advisor

We're working hard to make customers for life

✗ _____

*O M means and Original equipment Manufacturer Factory parts ** All parts are New unless specified otherwise

*~~ Thank you for your business ~~*

Customer Number: **20086**

Invoice No: **114696**

**JAGUAR LAND ROVER CHERRY HILL**

*INVOICE*
DUPLICATE 1
PAGE 1

2000 Route 70 East
Cherry Hill, NJ 08003
(856) 663-2800  FAX (856) 663-7090
www.jlrch.com

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home: ▮▮▮▮  Bus: ▮▮▮▮  Cell: ▮▮▮▮
Email: EMAIL

SERVICE ADVISOR: **1000** LORAINE MILOSEVIC

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | ▮▮▮ | 39587 | 39623 | T9021 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 24SEP20 | | 169.00   CASH | 23SEP20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP 12/22/22 2)MUDDYREWARDS#4000760515 |
|---|---|---|
| 16:04 16SEP20 | 14:24 23SEP20 | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

A CUSTOMER STATES VEHICLE SAYS EXHAUST FILTER FULL
CAUSE: .

```
    851806 READ AND CLEAR FAULT CODES
           220    WTY                                        (N/C)
      1 LR054999 SEPARATOR - OIL                             (N/C)
      2 1337060 SEAL - OIL SEPAR                             (N/C)
    171004 ENGINE VENT OIL SEPARATOR - RENEW
           220    WTY                                        (N/C)
    174528 EGR INLET TUBE - SET - RENEW
           220    WTY                                        (N/C)
    126096 TUBE - OIL EXTRACTION - RENEW
           220    WTY                                        (N/C)
    175045 DIESEL PARTICULATE FILTER (DPF) - DYNAMIC
           REGENERATION
           220    WTY                                        (N/C)
```

PARTS:    0.00   LABOR:    0.00   OTHER:    0.00   TOTAL LINE A:    0.00

,,,,39623 FOUND MALFUNCTION ON DASH. FOUND P2463 AND P246B IN PCM.
,,,,DROVE VEHICLE 18 MILES (39587-39605) DURING A REGEN ATTEMPT TO CLEAR
,,,,THE EXHAUST FILTER. WENT FROM 30.5 GRAMS OF SOOT WITH A TARGET OF 6
,,,,GRAMS. VEHICLE WENT DOWN TO 14.2G AND THEN STARTED RISING AGAIN. OPENED
,,,,TA CASE. 3046785. REMOVED ENGINE AIR FILTER, EGR TUBE AND VALVE, AND
,,,,PIPE TO THROTTLE VALVE TO TAKE PHOTOS OF ALL COMPONENTS TO SEND TO TA
,,,,TO CHECK FOR EXCESSIVE SOOT/OIL CONTAMINATION/BUILD UP IN ENGINE.
,,,,ADVISED BY TA TO REMOVE DPF DIFFERENTIAL PRESSURE SENSOR & LINES AND
,,,,CHECK FOR CLOGS OR CONTAMINATION. NONE FOUND. PHOTOS TAKEN AND SENT TO
,,,,TA. TA CALLED AND ADVISED DRIVING HABITS ARE LARGEST CONCERN. VEHICLE
,,,,NEEDS TO BE DRIVEN MORE AND ON LONGER HIGHWAY TRIPS. REQUESTED REGEN
,,,,173 TIMES AND ONLY WAS ABLE TO PERFORM IT 3 TIMES. REMOVED OIL
,,,,SEPERATOR AND REPLACED DUE TO OIL INTRUSION, ADVISED BY TA. WAS ABLE TO
,,,,UPDATE PCM FURTHER WITH UPDATED PATHFINDER. RE-RAN REGEN RUN ON
,,,,HIGHWAY. (39605-39623) WAS ABLE TO GET SOOT LEVEL UNDER 6GRAMS AND
,,,,WITHIN SPEC. VEHICLE NO LONGER HAS FAULTS ON DASH AND HAS FULL POWER
,,,,BACK TO VEHICLE

**************************************************

**I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED**

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

SIGNATURE _____  DATE PICKED UP _____

DATE OUT _____  SPEEDOMETER OUT _____

CUSTOMER SIGNATURE

*Customer Copy*

Copyright 2014 CDK Global, LLC  SERVICE INVOICE TYPE 2 - SEC - IMAGING

Customer Number: **20086**

Invoice No: **114696**

# JAGUAR LAND ROVER CHERRY HILL

"INVOICE"
DUPLICATE 1
PAGE 2

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800  FAX (856) 663-7090

www.jlrch.com

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home:          Bus:          Cell:
Email: EMAIL

**SERVICE ADVISOR: 1000 LORAINE MILOSEVIC**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | | 39587 | 39623 | T9021 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 24SEP20 | | 169.00 | CASH | 23SEP20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP |
|---|---|---|
| 16:04 16SEP20 | 14:24 23SEP20 | 12/22/22 2)MUDDYREWARDS#4000760515 |

| LINE OPCODE TECH TYPE HOURS | LIST | NET | TOTAL |
|---|---|---|---|
| B PERFORM COURTESY INSPECTION | | | |
| CI PERFORM COURTESY INSPECTION | | | (N/C) |
| 220  INT | | | |
| PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE B: | | | 0.00 |
| ************************************************ | | | |
| C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM | | | |
| WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM | | | |
| 99  INT | | | (N/C) |
| 220  INT | | | (N/C) |
| PARTS:   0.00  LABOR:   0.00  OTHER:   0.00  TOTAL LINE C: | | | 0.00 |
| ************************************************ | | | |
| D 16,000 MILE FACTORY MAINTENANCE SERVICE | | | |
| 16K 16,000 MILE FACTORY MAINTENANCE SERVICE | | | |
| 220  CPM | | 372.00 | 372.00 |
| 6 15C89E 5W30 DIESEL | 15.45 | 15.45 | 92.70 |
| 1 LR013148 FILTER - ENGINE | 22.82 | 22.82 | 22.82 |
| 1 1013938 PLUG - OIL DRAIN | 9.44 | 9.44 | 9.44 |
| RESET RESET SERVICE COUNTER | | | |
| 220  CPM | | 0.00 | 0.00 |
| I INSPECT SUSPENSION , BRAKES , TIRES, WEAR ITEMS, | | | |
| AND FOR EXTERNAL FLUID LEAKS | | | |
| 220  CPM | | 0.00 | 0.00 |
| HISS CORRECT TIRE PRESSURES AS NECESSARY | | | |
| 220  CPM | | 0.00 | 0.00 |
| BATT TEST BATTERY AND PROVIDE RESULTS | | | |
| 220  CPM | | 0.00 | 0.00 |
| FLUID INSPECT AND CORRECT FLUID LEVELS AS NEEDED | | | |
| 220  CPM | | 0.00 | 0.00 |
| 1 SOLVENT W/W-SOLVENT | 4.74 | 4.74 | 4.74 |
| VF REPLACE POLLEN FILTER | | | |
| 220  CPM | | 0.00 | 0.00 |
| 1 LR036369 FILTER - ODOUR A | 80.27 | 80.27 | 80.27 |
| ROTATE ROTATE TIRES FRONT TO REAR | | | |
| 220  CPM | | 0.00 | 0.00 |

I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

SIGNATURE                          DATE PICKED UP

DATE OUT_____          SPEEDOMETER OUT_____

CUSTOMER SIGNATURE

*Customer Copy*

Page 2 of 4

Copyright 2014 CDK Global, LLC  SERVICE INVOICE • TYPE 2 • SOC • IMAGING

Customer Number: **20086**

Invoice No: **114696**

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800  FAX (856) 663-7090

www.jlrch.com

*INVOICE*
DUPLICATE 1
PAGE 3

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home: ▮  Bus: ▮  Cell: ▮
Email: EMAIL

SERVICE ADVISOR: **1000 LORAINE MILOSEVIC**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | | 39587 39623 | **T9021** |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 24SEP20 | | 169.00 | CASH | 23SEP20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP 12/22/22 2)MUDDYREWARDS#4000760515 |
|---|---|---|
| 16:04 16SEP20 | 14:24 23SEP20 | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

```
PARTS:    209.97  LABOR:    372.00  OTHER:    0.00  TOTAL LINE D:        581.97
,,,,39605 PERFORMED SERVICE. CHANGED OIL AND FILTER. ADJUSTED TIRE
,,,,PRESSURES. CLEARED COWL DRAINS. REPLACED POLLEN FILTER. RESET SERVICE
,,,,INTERVAL.
          *****************************************************
E** PRICE FOR 5.5 LITERS OF DEF FLUID
    MISC PRICE FOR 5.5 LITERS OF DEF FLUID
          220    CP                                          0.00      0.00
       6  LR079977 FLUID - DIESEL E                3.95      3.95     23.70
PARTS:     23.70  LABOR:    0.00  OTHER:    0.00  TOTAL LINE E:         23.70
,,,,39605 FILLED 5.5 LITRES OF DEF INTO SYSTEM AND RESET COUNTER.
          *****************************************************
F** WIPERS
    WIPER REPLACE WIPER BLADES
          220    CPM                                         0.00      0.00
       1  LR083272 BLADE - WIPER                  46.10     46.10     46.10
       1  LR106593 BLADE - WIPER                  46.10     46.10     46.10
PARTS:     92.20  LABOR:    0.00  OTHER:    0.00  TOTAL LINE F:         92.20
,,,,39605 REPLACED WIPER BLADES.
          *****************************************************
G** ENGINE AIR FILTERS
    AIR REPLACE ENGINE AIR FILTER ELEMENT
          220    CPM                                         0.00      0.00
       1  LR011593 ELEMENT - AIR CL               60.68     60.68     60.68
PARTS:     60.68  LABOR:    0.00  OTHER:    0.00  TOTAL LINE G:         60.68
,,,,39605 REPLACED ENGINE AIR FILTERS.
          *****************************************************
H** CLIENT STATES THAT THERE ARE DENTS ON LEFT REAR DOOR AND RIGHT
    FENDER
CAUSE: CLAIMS@IASDIRECT.COM AUTH#ER6011911798444 TOTAL $180
       SUBLET PDR-INV#151319
       220WCEXT                                                      (N/C)
SUBL PDR-INV#151319
       WCEXT                                                         (N/C)
```

| | STATEMENT OF DISCLAIMER | DESCRIPTION | TOTALS |
|---|---|---|---|
| I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED | The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items. | LABOR AMOUNT | |
| | | PARTS AMOUNT | |
| | | GAS, OIL, LUBE | |
| | | SUBLET AMOUNT | |
| | | MISC. CHARGES | |
| SIGNATURE _____ DATE PICKED UP _____ | | TOTAL CHARGES | |
| | | LESS INSURANCE | |
| DATE OUT _____ SPEEDOMETER OUT _____ | | SALES TAX | |
| | CUSTOMER SIGNATURE | PLEASE PAY THIS AMOUNT | |

*Customer Copy*

Copyright 2014 CDK Global LLC  SERVICE INVOICE TYPE 2 - SVC - IMAGING

Customer Number: **20086**

Invoice No: **114696**

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800 FAX (856) 663-7090

www.jlrch.com

*INVOICE*
DUPLICATE 1
PAGE 4

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home:
Bus:
Cell:
Email: EMAIL

SERVICE ADVISOR: **1000 LORAINE MILOSEVIC**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | | TAG |
|---|---|---|---|---|---|---|---|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | | 39587 | 39623 | T9021 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 22DEC17 | 159 | | 17:00 24SEP20 | | 169.00 | CASH | 23SEP20 |

| R.O. OPENED | | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP 12/22/22 2)MUDDYREWARDS#4000760515 |
|---|---|---|---|
| 16:04 16SEP20 | | 14:24 23SEP20 | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

PARTS :      0.00   LABOR:      0.00   OTHER:      0.00   TOTAL LINE H:        0.00
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EST: 232.35        17SEP20 12:38  SA: 1000
  CONTACT:
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EST: 0.00          16SEP20 16:04  SA: 1000
  CONTACT:
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CUSTOMER PAY MISC CHGS FOR REPAIR ORDER                                   10.00
CUSTOMER WOULD LIKE A LOANER       THANK YOU FOR ALLOWING US TO MAINTAIN YOUR
CAR IF THIS TAKES LONGER THAN      VEHICLE TO ITS HIGHEST STANDARDS. ATTENTION
FRIDAY TO FIX.                     TO DETAIL AND THOROUGH REPAIRS ARE PARAMOUNT
                                   TOWARDS PROVIDING YOU WITH AN EXCELLENT
                                   EXPERIENCE. PLEASE CONTACT ME WITH ANY
                                   CONCERNS REGARDING YOUR RECENT VISIT.
                                   ERIC SILVA

I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS | |
|---|---|---|
| LABOR AMOUNT | $ | 372.00 |
| PARTS AMOUNT | $ | 386.55 |
| GAS, OIL, LUBE | $ | 0.00 |
| SUBLET AMOUNT | $ | 0.00 |
| MISC. CHARGES | $ | 10.00 |
| TOTAL CHARGES | $ | 768.55 |
| LESS INSURANCE | $ | 0.00 |
| SALES TAX | $ | 50.92 |
| PLEASE PAY THIS AMOUNT | $ | 819.47 |

SIGNATURE _____  DATE PICKED UP _____

DATE OUT _____  SPEEDOMETER OUT _____

CUSTOMER SIGNATURE

*Customer Copy*

Page 4 of 4

Customer Number: **20086**

Invoice No: **115440**

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East

Cherry Hill, NJ 08003

(856) 663-2800 FAX (856) 663-7090

www.jlrch.com

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034

*INVOICE*

PAGE 1

Home: | Bus: | Cell: | HOME

Email: EMAIL|

SERVICE ADVISOR: **1000 LORAINE MILOSEVIC**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|-------|------|------------|-----|---------|-----------------|-----|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | | 39917  39937 | T9659 |

| DEL DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|------|------|---------|-----------|
| 22DEC17 | 159 | | 17:00 12OCT20 | | 169.00 | CASH | 20OCT20 |

R.O. OPENED    READY    OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP

16:17 12OCT20    10:17 20OCT20    12/22/22 2)MUDDYREWARDS#4000760515

| LINE | OPCODE | TECH | TYPE | HOURS | LIST | NET | TOTAL |
|------|--------|------|------|-------|------|-----|-------|

A COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
    WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
            220    INT                                          (N/C)
PARTS:    0.00    LABOR:    0.00    OTHER:    0.00    TOTAL LINE A:    0.00
        **********************************************
B CUSTOMER STATES DIESEL EXHAUST FILTER IS FULL MESSAGE IS ON
    129016 READ AND CLEAR FAULT CODES
            220    WTY                                          (N/C)
        1 LR072193 FILTER - DIESEL                             (N/C)
        1 LR016619 GASKET - EXHAUST                            (N/C)
        1 LR078958 GASKET                                      (N/C)
        1 LR079273 CLAMP                                       (N/C)
        2 RYG501590 SCREW                                      (N/C)
        3 WYP000025 SCREW                                      (N/C)
        2 FN106046 NUT - HEX.                                  (N/C)
        1 LR013148 FILTER - ENGINE                             (N/C)
        1 1013938 PLUG - OIL DRAIN                             (N/C)
        1 SOLVENT W/W-SOLVENT                                  (N/C)
        6 15C89E 5W30 DIESEL                                   (N/C)
        1 LR016619 GASKET - EXHAUST                            (N/C)
    175020 DIESEL PARTICULATE FILTER - RENEW
            220    WTY                                          (N/C)
    175045 DIESEL PARTICULATE FILTER (DPF) - DYNAMIC
        REGENERATION
            220    WTY                                          (N/C)
    851806 READ AND CLEAR FAULT CODES
            220    WTY                                          (N/C)
    020202 DRIVE IN-DRIVE OUT
            220    WTY                                          (N/C)
    104409 RENEW ENGINE OIL AND FILTER (DURING
        SERVICE)
            220    WTY                                          (N/C)
PARTS:    0.00    LABOR:    0.00    OTHER:    0.00    TOTAL LINE B:    0.00
,,,,39937 C/S DPF CLOGGED LIGHT ON DASH. VERIFIED. FOUND P2463 STORED

**I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED**

STATEMENT OF DISCLAIMER
The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

| DESCRIPTION | TOTALS |
|-------------|--------|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

SIGNATURE _____    DATE PICKED UP _____

DATE OUT _____    SPEEDOMETER OUT _____

CUSTOMER SIGNATURE

*Customer Copy*

Copyright 2014 CDK Global, LLC   SERVICE INVOICE   TYPE 2 - 512C - INV/SINO

**Page 1 of 2**

Customer Number: **20086**

Invoice No: **115440**

*INVOICE*

PAGE 2

**JAGUAR LAND ROVER CHERRY HILL**

2000 Route 70 East
Cherry Hill, NJ 08003
(856) 663-2800 FAX (856) 663-7090
www.jlrch.com

**ILU.LILY DESIGNS LLC**
1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Home: ▮▮▮ Bus: ▮▮▮ Cell: ▮▮▮
Email: EMAIL ▮▮▮

☐HOME

SERVICE ADVISOR: **1000 LORAINE MILOSEVIC**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|-------|------|-----------|-----|---------|--------|--------|-----|
| N.BLACK | 17 | LAND ROVER Range Rov | SALWR2FKXHA693677 | ▮▮▮ | 39917 | 39937 | **T9659** |

| DEL.DATE | DEALER NO. | WARR. EXP. | PROMISED | TRIM | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|------|------|---------|-----------|
| 22DEC17 | 159 | | 17:00 12OCT20 | | 169.00 | CASH | 20OCT20 |

| R.O. OPENED | READY | OPTIONS: SOLD-STK:R9287 DLR:159 1)BRAD IAS HP CLASS IV/5YR/EXP 12/22/22 2)MUDDYREWARDS#4000760515 |
|-------------|-------|---|
| 16:17 12OCT20 | 10:17 20OCT20 | |

LINE OPCODE TECH TYPE HOURS                                LIST        NET      TOTAL

, , , IN PCM. TRIED RUNNING REGEN ON VEHICLE ON HIGHWAY. NO DIFFERENCE MADE.
, , , WOULD NO LOWER SOOT LEVELS. RAN BG EXHAUST, FUEL, AND OIL ADDITIVE
, , , CLEANING SERVICE FOR 45 MIN THRU VEHICLE AT HIGH EXHAUST TEMPS IN AN
, , , EFFORT TO CLEAN SYSTEM AND FORCE REGEN THROUGH EXHAUST TEMPS. CHANGED
, , , OIL AFTER SERVICE COMPLETE. SOOT LEVELS TOO HIGH FOR REGEN. REPLACED
, , , DPF IN EXHAUST AND REST ADAPTIONS AND DPF LIFE TIME. CHECK ENGINE LIGHT
, , , NO LONGER ON DASH. WARNING LIGHT NO LONGER ON DASH. POWER RETURNED TO
, , , VEHICLE.

*************************************************************

C PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE
    M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY
        VEHICLE
        220  INT                                                        (N/C)
PARTS:  0.00  LABOR:      0.00  OTHER:      0.00   TOTAL LINE C:       0.00
*************************************************************

EST: 0.00          12OCT20 16:17  SA: 1000
    CONTACT:
*************************************************************

VEHICLE MUST BE DRIVEN AT          THANK YOU FOR ALLOWING US TO MAINTAIN YOUR
HIGHWAY SPEEDS FOR DI STANCE       VEHICLE TO ITS HIGHEST STANDARDS. ATTENTION
IN ORDER TO KEEP FILTER FROM       TO DETAIL AND THOROUGH REPAIRS ARE PARAMOUNT
GETTING CLO GGED. FAILURE TO       TOWARDS PROVIDING YOU WITH AN EXCELLENT
PERFORM THIS ACTION WILL LEAD      EXPERIENCE. PLEASE CONTACT ME WITH ANY
T O CONDITION RETURNING WHICH      CONCERNS REGARDING YOUR RECENT VISIT.
MAY NOT BE A MATTER OF             ERIC SILVA
WARRANTY AT THAT TIME.

| I ACKNOWLEDGE AND APPROVE ALL REPAIRS PERFORMED | STATEMENT OF DISCLAIMER The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items. | DESCRIPTION | TOTALS |
|---|---|---|---|
| | | LABOR AMOUNT | $ 0.00 |
| | | PARTS AMOUNT | $ 0.00 |
| | | GAS, OIL, LUBE | $ 0.00 |
| | | SUBLET AMOUNT | $ 0.00 |
| SIGNATURE _____ DATE PICKED UP _____ | | MISC. CHARGES | $ 0.00 |
| | | TOTAL CHARGES | $ 0.00 |
| DATE OUT _____ SPEEDOMETER OUT _____ | | LESS INSURANCE | $ 0.00 |
| | | SALES TAX | $ 0.00 |
| | CUSTOMER SIGNATURE | PLEASE PAY THIS AMOUNT | $ 0.00 |



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | **120120** |
| Tag #: | ▇▇▇ |
| Advisor: | **Geoff Eisenberg** |
| Advisor No. #: | **96** |
| Order Open Date: | **2021-04-23** |

### Customer Information

ILU.LILY DESIGNS LLC

1879 OLD CUTHBERT RD STE 25
CHERRY HILL, NJ 08034
Customer Number - 20086

### Vehicle Information

**2017 LAND RGRVSP**

VIN #:  **SALWR2FKXHA693677**
Color #:  **N.BLACK**
Mileage In/Out #:  **42442/42445**

---

**Job # A**                    Labor Total:    **No Charge**

### CUSTOMER STATES FUEL FILTER IS FULL (WARNING LIGHT ).
### DIESEL EXHAUST FILTER IS FULL PLEASE LOOK OVER.

Cause: F
**Correction:**   175045   DIESEL PARTICULATE FILTER (DPF) - DYNAMIC REGENERATION
Tech Number: 55   Labor Type: WTY
   175061   SELECTIVE CATALYST REDUCTION (SCR) DOSING MODULE - TEST
Tech Number: 55   Labor Type: WTY
   851806   READ AND CLEAR FAULT CODES
Tech Number: 55   Labor Type: WTY
   020202   DRIVE IN-DRIVE OUT
Tech Number: 55   Labor Type: WTY

| Part Number | Part Description | Qty | List | | |
|---|---|---|---|---|---|
| | | | | **Parts Total:** | **No Charge** |

42442 ROAD TEST AND INSPECT, CHECK FOR CODES WITH PATHFINDER, CHECK DEF FLUID LEVEL 17.8L, CLEAR CODES, RESET
SCR, PERFORM ROAD TEST ON HIGHWAY TO DO DIESEL PARTICULATE FILTER REGENERATION, RECHECK FOR CODES - 0

| **Job # A Total** | **$ 0.00** |
|---|---|

---

**Job # B**                    Labor Total:    **No Charge**

### TOP OFF DEF FLUID.

Cause:
**Correction:**   None   VEHICLE IS 98% FILLED WITH DEF NO NEED TO FILL DEF TANK AT THIS
TIME.
Tech Number: 55   Labor Type: INT

| Part Number | Part Description | Qty | List | | |
|---|---|---|---|---|---|
| | | | | **Parts Total:** | **No Charge** |

---

04/26/2021 2:05 PM

* O  M means O g na   qu pmen  Manu ac u e ( ac o y) Pa  s  ** A  pa s a e New un ess  spec  ed o he w se

*~~ Thank you for your business ~~*



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | **120120** |
| Tag #: | |
| Advisor: | **Geoff Eisenberg** |
| Advisor No. #: | **96** |
| Order Open Date: | **2021-04-23** |

| Job # B Total | $ 0.00 |
|---|---|

---

### Job # C
**Labor Total:   No Charge**

**PERFORM COURTESY INSPECTION**
Cause:
**Correction:** CI   PERFORM COURTESY INSPECTION
Tech Number: 55   Labor Type: INT

| Part Number | Part Description | Qty | List | **Parts Total:** | **No Charge** |
|---|---|---|---|---|---|

| Job # C Total | $ 0.00 |
|---|---|

---

### Job # D
**Labor Total:   No Charge**

**COMPLETE EXTERIOR WASH AND INTERIOR VACUUM**
Cause:
**Correction:** WASH   COMPLETE EXTERIOR WASH AND INTERIOR VACUUM
Tech Number: 55   Labor Type: INT

| Part Number | Part Description | Qty | List | **Parts Total:** | **No Charge** |
|---|---|---|---|---|---|

| Job # D Total | $ 0.00 |
|---|---|

---

### Job # E
**Labor Total:   No Charge**

**PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE**
Cause:
**Correction:** M013   PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE
Tech Number: 55   Labor Type: INT

| Part Number | Part Description | Qty | List | **Parts Total:** | **No Charge** |
|---|---|---|---|---|---|

| Job # E Total | $ 0.00 |
|---|---|

---

04/26/2021 2:05 PM

*O N means O gna  qu pmen Manu ac u e ( ac o y) Pa s  ** A  pa  s a e New un ess spec ed o he w se

*~~ Thank you for your business ~~*



**Jaguar Land Rover Cherry Hill**
2000 RT 70
Cherry Hill, New Jersey, 08003, US
Phone: 8566632800

| | |
|---|---|
| Repair Order #: | **120120** |
| Tag #: | |
| Advisor: | **Geoff Eisenberg** |
| Advisor No. #: | **96** |
| Order Open Date: | **2021-04-23** |

RO Comments

## Amount Totals

| | |
|---|---|
| Total Labor: | $ 0.00 |
| Total Parts: | $ 0.00 |
| Miscellaneous + Discounts: | $ 0.00 |
| Sales Tax: | $ 0.00 |
| Shop Supplies: | $ 0.00 |
| Customer Total: | $ 0.00 |

### Terms and Acceptance

Cus o e ack ow edges app ova of wo k desc bed   s Repa  O de  Su   a y A y Wa  a eso   ep oduc sod e e a e
  ose  ade by   e  a ufac u e   ese e   eeby exp ess y d sca   sa  wa   a   ese  e  express   c ud  ga y   ped
wa   a yof   e c  a  ab   yof   ess fo  a pa  cua  pu pose  a d  e  e assu es o  au   o zes a yo e  pe so   o assu e
fo    a y ab  y  co   ec o w    e sa e of sa d p oduc s

  ease ook fo  a su vey o  you  se v ce expe   e ce   e  a  ufac u e ssu vey w   be se   o you by e a  f you a e o su e f
you  cu   e  a  add ess  so  f e p ease c eck w    you  se v ce adv so

We  e wo k  g  ad o   ake cus o  e s fo   fe!

✖

* O  M means O  g na   qu pmen  Manu ac u e  ( ac o y) Pa  s  ** A  pa  s a e New un ess spec  ed o he w se
~~ *Thank you for your business* ~~

04/26/2021 2:05 PM

# COMPLAINT
# EXHIBIT E

# The Warranty Process Flow Within the Automotive Industry:
# An Investigation of Automotive Warranty Processes and Issues

Prepared for the

Program on Automotive Practices

Sponsored by

Microsoft Corporation



CENTER FOR AUTOMOTIVE RESEARCH

## August 2005

The statements, findings, and conclusions herein are those of the authors and do not necessarily reflect the views of the project sponsor.

# Acknowledgements

The CAR-Microsoft Program on Automotive Industry Practices is a four-year research effort consisting of in-depth, focused interviews with industry participants on subjects of importance to all industry stakeholders. The Automotive Industry Program, funded by Microsoft, will investigate two topics per year, with results publicly disseminated. The first topic of investigation for 2005, presented in this report, is the flow of warranty data within the automotive industry.

The Center for Automotive Research would like to thank Microsoft Corporation for its support and proactive interest in topics of critical importance to all automotive industry stakeholders. We believe the CAR-Microsoft Program on Automotive Industry Practices is representative of Microsoft's desire to further public discussion on important automotive issues.

We would like to thank those in the automotive industry who took time to guide our work. CAR greatly appreciates the willingness of those interviewed to share their insights and ideas. Without their support such a project would not be possible. These individuals showed a strong passion for creating better warranty processes both within their companies, and throughout the industry. We hope this report reflects, in some way, the commitment these industry participants have toward their work.

Finally, this report is the result of several people contributing in many ways. The authors of this report would like to thank Karen Esper, who contributed by formatting and managing the document. Jillian Lindsay Gauthier assisted in the interview process and document review.

Brett C. Smith
Assistant Director, Manufacturing, Engineering and Technology

Raymond T. Miller
Research Assistant

The Center for Automotive Research
1000 Victors Way, Suite 200
Ann Arbor, MI 48108
Telephone:  (734) 662-1287
Fax:  (734) 662-5736
www.cargroup.org

## TABLE OF CONTENTS

**EXECUTIVE SUMMARY** .......................................................................I

Introduction ...............................................................................1

The Path from Repair Bay to the Supplier ...........................................2

From the Dealer to the Vehicle manufacturer .......................................3

The Pathway Within the Vehicle manufacturers ...................................5

Data Overload...........................................................................10

Strategic Warranty Considerations ..................................................13

Conclusions .............................................................................16

# Executive Summary

The Center for Automotive Research (CAR) has undertaken the CAR-Microsoft Program on Automotive Industry Practices. The program is a four-year research effort consisting of in-depth, focused interviews with industry participants on subjects of importance to all industry stakeholders. The Automotive Industry Program will investigate two topics per year, with results publicly disseminated. [The first topic of investigation is warranty process flow in the automotive industry.] Importantly, this topic is not intended to gather confidential data such as warranty cost estimates. Instead, this report will describe the flow of warranty data gathering, including processing and application activities, and where possible, highlight selected practices and critical future operating issues.

As with many CAR projects, the identity of companies interviewed will not be made available—nor will information be presented in a way that may directly identify any participating companies. CAR researchers interviewed representatives from three automakers, four suppliers, and one dealership as part of this project. Given the relative small number of interviews, this report is not intended to be a complete description of the topic. Instead it is hoped that by selecting companies that have been identified as thought leaders in a specific topic, these reports will be then viewed as contributing to the greater understanding of the issues and challenges.

Given the high volume of manufacture, the complexity of the product, and the often harsh operating environment in which the automobile is used, it is inevitable that there will be component failures. While there are certainly lessons to be learned from these failures, such incidents can in some ways be viewed as normal operating noise from non-assignable causes. However, the manufacturers and suppliers must be able to differentiate the expected component failure rate—the 'noise'—from those incidents that may be an indication of a systemic failure of the component. This report will focus on how the industry is addressing those warranty issues that appear to be serial in nature, and would thus present significant potential cost exposure.

Guided by the responses of those interviewed, CAR has identified two areas of the warranty process of focus for this report, and four issues that are likely to be critical challenges for the industry in the coming years. The first area of focus is the flow of data from the dealership to the manufacturer, and then from the manufacturer to the supplier. The second area of focus is the challenges brought about by the large volume of warranty data that is available.

Lastly, CAR will address four issues that were described by interviewees as pending warranty challenges within the industry: (1) the challenge of increased warranty issues surrounding greater application of on-vehicle electronics; (2) the lack of skilled mechanics; (3) the action of vehicle manufacturers moving toward warranty cost-sharing as a method to increase revenue; and finally (4) the difficulty presented when applying current warranty strategies in developing markets.

The flow of warranty data, in its most simple form, is a reporting and transfer of information regarding an in-service product failure. A failure is reported by the service representative (the dealer) to the vehicle manufacturer, and then, if deemed necessary by the vehicle manufacturer, to the component supplier. In reality, this seemingly simple path is exceptionally complex, and at times even serendipitous. The warranty data

i

process is highly quantitative and qualitative, sometimes scientific, and often creative. The process as identified by the participants includes:

1. Part identification/defect analysis and codification.
2. Reporting of warranty claim to the vehicle manufacturer—claim processing.
3. Investigation of claim by vehicle manufacturer warranty analysis center—claim review.
4. Notification of incident—or more accurately, increase in reported incidents—to component supplier.
5. Incident remediation (i.e. manufacturing, engineering, materials etc.) as required.
6. And, possible further action taken to assure the correction is implemented throughout the product line, including future components.

This report describes the communication formats, and touch-points for the six data flow processes.

As noted, on the surface the warranty process would appear to be rather straight forward.  However, the variance with which the data is collected, communicated and analyzed creates opportunity for complexity nearly unimaginable by an outsider. Warranty data coding of failures varies from dealer to dealer—even from technician to technician—within a vehicle manufacturer dealer network, as well as between the vehicle manufacturer dealer networks.  Nearly all interviewed suggested that if they were to take the same part to five different dealers, the failure would likely be identified and coded differently by each dealer.  In their view, this was not an indictment of the repair shops ability to analyze the problem.  Instead it was a reflection of the extent of the challenge.  Often times the reason for a part failure is obvious, but just as often, the root cause of a failure is not readily apparent.  The dealer repair shop must make a rapid decision regarding the failed part.  Included in the decision process is allowable repair time, workload of staff, the experience of the technician, and even the history of reimbursement by the vehicle manufacturer.

From this rather inauspicious start, the data is then sent to the vehicle manufacturer where, although it is usually centrally housed, it often follows several separate paths. While each manufacturer has developed its own internal process for warranty data, the flow generally starts with a review of the dealership claim.  In most aspects, this step serves as a method to monitor dealer repair work and focus on the process of repairing the vehicle.  Although the claim process has become electronic in recent years, there is still a considerable amount of staff effort required to analyze and follow-up via telephone for clarification.  While this review process is intended to monitor the dealership repair work, it is also considered a line of first defense in identifying potential warranty problems.

Once the warranty data is in an acceptable form, the vehicle manufacturer enters it into a database.  From this point, each manufacturer has developed very established and confidential internal systems, often using both internally developed and third party software.  The warranty data is controlled by either a quality or warranty function, but can be accessed by product engineering, manufacturing, materials, legal, finance, and other functions within the company.

Selected data is then made available to the suppliers. The type of data transferred from vehicle manufacturer to supplier differs greatly among the vehicle manufacturers. One respondent described three general types of data they receive: incident-based data (limited to claims and count); rate-based data (based on production/sales); and warranty data with month of production/months in service (MOP/MIS) data included. Obviously the ability to tie a defect to a date of manufacture, months in service, or some similar measure is of great value when assessing the problem and developing a response. It was widely agreed that to have an effective warranty process, the 'born on date' for a component is critical. The traceability of subsystems may become a competitive advantage for manufacturers and suppliers.

While the warranty data is vital to identifying systemic failures, an analysis of the component is often required to establish root cause of the failure. Due largely to logistics and transportation, it is also a costly proposition. Thus it is important to better understand the fate of the failed component. Often the component is disposed of at the dealership, thus ending any opportunity to establish root cause of the failure. Manufacturers also may randomly select dealers to send a limited number of components for inspection, allowing a sample for study. These are then sent to the supplier for review. Finally, if the supplier has an indication there may be issues related to a component, the supplier may request the vehicle manufacturer obtain a small number of components for analysis from the dealers. Importantly, the vehicle manufacturers differ greatly in how they deliver the parts. Some send them through a vehicle manufacturer parts center, while others have a more formal warranty processing location, and still others send the parts directly to the supplier. The inherent conflict of the warranty system is that it was originally developed to monitor and pay claims, not necessarily to capture the data.

The vehicle manufacturers (and some of the suppliers) interviewed indicated that one of the most pressing challenges of warranty investigation is the vast amounts of data processed, and the wide range of groups within the company that have use for the data. During the creation and implementation of the TREAD (Transportation Recall Enhancement, Accountability and Documentation) act, much was made of the enormous amount of data already collected by the industry. Based on numerous published reports, CAR estimates the automotive industry handles well over 100 million warranty claims per year. Each claim includes numerous fields, and often several lines of text. Realistically, the industry handles billions of warranty data fields annually.

Not only are companies challenged to develop methods of effectively capturing and storing warranty data, but they also must have the ability to access the information in a timely—and perhaps most importantly—cost effective way. As noted, each manufacturer has developed such information technology systems, but there continues to be concern that these systems are not yet fully capable of delivering consistent data to the suppliers. One supplier suggested they don't need more data, instead they need increased responsiveness (of the manufacturers to data requests); while another suggested that there was not consistent data available. A strong theme from all discussions was that a successful warranty program relied on a strong relationship between the interested parties.

Several companies were either currently investigating or had recently investigated text data mining as a method of increasing their ability to better analyze warranty data. From a vehicle manufacturer's viewpoint, text data mining presents opportunity to further

investigate and understand the vast text reports received from dealer repair shops.  The ability to accurately analyze text entered by technicians may offer insight into, and potential early warning of, likely in-service product failures. One supplier indicated that it had spent several months investigating text data mining, but concluded that the cost of off-the-shelf systems could not be justified by the expected savings.

During the interviews, respondents identified several issues that will likely challenge the automotive industry in the near future.  While CAR does not attempt to offer solutions to these issues, each of them is worthy of discussion and provides fertile ground for further research. Those areas are:

1. Warranty cost sharing
2. The lack of skilled mechanics
3. Electronics as a warranty burden
4. Adapting warranty systems to developing markets

This report presents a description of the flow of warranty data within the automotive industry, and highlights pending challenges faced by dealers, vehicle manufacturers and suppliers.  CAR's investigation has highlighted several areas that offer opportunity for improvement.  It is apparent that the industry continues to struggle with the warranty data flow, particularly in the areas of data management and process interfaces.   In conclusion, CAR believes the warranty process will continue to be an area of great challenge, interest and opportunity for the industry.

# Introduction

The Center for Automotive Research (CAR) has undertaken the CAR-Microsoft Program on Automotive Industry Practices.  This program is a four-year research effort consisting of in-depth, focused interviews with industry participants on subjects of importance to all industry stakeholders.  The Automotive Industry Program will investigate two topics per year; the results will be publicly disseminated.  Warranty in the automotive industry is the first topic for consideration.  It is important to note that it is not the study's purpose to gather confidential data, such as warranty cost estimates.  Instead, this report will describe the flow of warranty data gathering and, where possible, highlight selected practices and critical future operating challenges.  The identity of companies interviewed will not be made available—nor will information be presented in a way that could directly identify any participating company.

As a part of this project, CAR researchers interviewed representatives from three vehicle manufacturers (VM), four automotive suppliers, and one automobile dealer.  By design, this program's studies are not intended to be a complete description of the topic.  Instead it is hoped that by focusing on companies identified as leaders in a specific topic, these reports will then be viewed as contributing to the greater understanding of the issues and challenges.

Given the high volume of manufacture, the complexity of the product, and the often harsh environment in which the automobile operates, it is inevitable that there will be component failures.  While there are certainly lessons to be learned from these failures, such incidents can in some ways be viewed as normal operating noise.  However, the vehicle manufacturers and suppliers must be able to differentiate the expected component failure rate—the 'noise'—from those incidents that may indicate a systemic failure of the component.  This report will focus on how the industry is addressing those warranty issues that appear to be systemic in nature, and would thus present significant potential cost exposure.

Theoretically, vehicle manufacturers can address warranty costs via two approaches.  First, they can proactively attempt, through engineering, to reduce expected warranty costs toward zero.  While this approach will likely lead to robustly engineered products, and concomitantly higher usage of engineering resources, it also often requires a willingness to accept a higher initial price for a component.  Alternatively, the manufacturers can attempt to monitor the warranty data and react to in–service incidents.  This approach is closely associated with those companies that have a strong cost-focused purchasing bias in their sourcing decision process.  Realistically, each vehicle manufacturer uses a combination of the strategies, with some companies biased more toward the proactive engineering approach, while others tend to place more emphasis on reacting to reported data.

The automotive industry tends to focus on warranty in terms of direct costs—manufacturing, logistics and labor for replacement.  Granted, these are significant costs; however, it is also important to understand other 'soft' costs associated with warranty.  While any in-service product failure is likely to dissatisfy a customer to some extent, the quick, accurate repair of a warranty issue is likely to lessen the customer's overall dissatisfaction.  Any discussion of warranty processes should not overlook the

1

importance of developing warranty strategies that deliver the greatest customer satisfaction—or more appropriately—least dissatisfaction in the most cost effective manner.

## The Path from Repair Bay to the Supplier

The flow of warranty data, in its most simple form, is a reporting and transferring of information regarding an in-service product failure. A failure is reported by the service representative (the dealer) to the vehicle manufacturer, and then, if deemed necessary by the vehicle manufacturer, to the component supplier[1]. In reality, this seemingly simple path is exceptionally complex, and at times even serendipitous. The warranty data process is highly quantitative and qualitative, sometimes scientific, and often creative.

The process, as identified by the participants, includes:

1. Part identification/defect analysis and codification. This may be the most critical element of the process, and yet it is certainly the most variable. The process of capturing the customer's description of an in-service product failure, diagnosing the problem and correcting it remains a difficult and unscientific process.

2. Reporting of warranty claims to the vehicle manufacturer. The movement of data from the dealer repair shop to the vehicle manufacturer has become electronic in recent years, which has allowed for a much faster reporting system.

3. Investigation of claim by vehicle manufacturer warranty analysis center. Even though warranty claim filing has become increasingly electronic, it still requires effort to verify and clarify the data. Each manufacturer has a group review the data and enter it into some form of warranty database. This database is then accessed by product engineering, product development, manufacturing engineering, and the manufacturing plant, among others.

4. Notification of incident—or more frequently, increase in reported incidents—to component supplier. The type and amount of data transferred to supplier differs among the vehicle manufacturers.

5. Incident remediation (i.e. manufacturing, engineering, materials etc.) as required. If the in-service product failure is found to be caused by a supplier component, the supplier will then use the available data and parts to identify the problem, and determine actions to elicit a remedy.

---

[1] CAR acknowledges the failure of a product may enter through other sources (e.g. police reports, fleet reports, insurance claims and customer service calls). For this study, the focus is on the warranty process though the most common entry-point, from the dealer's repair shop.

6. Proactive suppliers and the vehicle manufacturers will take action to assure the correction is implemented throughout the product line, including incorporating the knowledge into future component development.

## From the Dealer to the Vehicle Manufacturer

On the surface the warranty process appears to be rather straightforward. However, the variance with which the data is collected, communicated, and analyzed results in complexity nearly unimaginable by someone unfamiliar with the process. Warranty data reporting varies from dealer to dealer within vehicle manufacturer dealer networks, and even mechanic to mechanic within dealerships. Vehicle manufacturers also differ in the reporting methods they require of their dealers. Such a varied starting point for warranty data creates potential for great difficulty downstream.

Nearly all study participants suggested that if they were to take the same part to five different dealers, the failure would likely be identified and coded differently by each dealer. In their views, this was not an indictment of the repair shops' ability to analyze the problem. Instead, it was a reflection of the extent of the challenge. Often times, the reason for a part failure is obvious, but just as often, the root cause of a failure is not readily apparent. The dealer repair shop must make a rapid decision regarding the failed part. Included in the decision process is allowable repair time, workload of staff, the experience of the technician or mechanic, and even the history of reimbursement by the vehicle manufacturer.

Because the point of entry for an in-service product failure is so critical, it is valuable to investigate this stage of the process more closely (Diagram 1). The first step in the process is to record the customer's complaint. Again, while this is a seemingly simple task, there is great opportunity for miscommunication as the customer tries to explain the problem to the service manager. Importantly, this input—often a short written documentation of the issue—can be a vital part of the warranty tracking process. Key words or phrases entered at this point can potentially offer insights as vehicle manufacturers and suppliers undertake root cause analysis weeks, months or even years later. An investigation of the warranty process in the automotive industry quickly highlights the fact that the dealer repair shop service manager is, in many ways, the cornerstone of a successful process. Once the shop manager identifies a likely cause of the problem, the vehicle is assigned to the appropriate mechanic.[2]

Each vehicle manufacturer continues to develop strategies that remove the responsibility from the repair shop floor. One vehicle manufacturer respondent suggested the biggest improvement of the information received from the repair shop to the vehicle manufacturer would be the implementation of a new, more structured warranty reporting software; however, the respondent also suggested that the replacement cost was currently prohibitive. While it is important to develop systems that make the identification of an in-service failure more efficient and effective, it is also important to realize that the ability of the mechanic or technician will be a key part of any diagnosis strategy for the

---

[2] Repair shops may use a technician to identify the problem, then, in turn assign a mechanic who will do the actual repair work.

foreseeable future. As such, it behooves the industry to work to develop a skilled technical base at the dealership level.

**Diagram 1: In-Service Problem Identification**



The mechanic, using visual inspection, technical manuals, service bulletins, and technical support from the vehicle manufacturer, must then begin the process of identifying the part that has failed. Upon determining the failure, the mechanic must then match it to a warranty repair code. The coding process illustrates two important variables. First, there are often ulterior motives for the mechanic to select a code for the in-service failure. For example, some codes may tend to offer more repair time, or may be less likely to be questioned by the manufacturer[3]. Second, the true cause of the failure may not be completely understood, thus the mechanic may make an educated guess as to why the failure occurred, and code it accordingly. Given the time constraints, working environment and differing experience level among mechanics, it is understandable that the mechanics often aren't able to fully identify the product failure. However, once the repair is performed, a warranty claim is then sent to the manufacturers.

Most respondents expressed concern that there is potential for dealers to consider the repair shop as a profit center by affecting *unnecessary* repair work. Although there was no data presented to support this concern, those that mentioned the problem indicated that if new vehicle sales were down, some dealers were more likely to push warranty

---

[3] CAR does not wish to suggest that these are necessarily fraudulent acts, instead they may be honest attempts by the mechanic to better capture the time needed to complete an adequate repair, and better satisfy the customer, while remaining within the standards set forth.

claims to fill the profit 'valleys.' While such actions have wide ranging implications, of interest to this report is the potential for a decrease in the accuracy of the reported warranty data. A warranty claim that is not accurate—whether intentionally or unintentionally entered as such—will have consequences throughout the entire warranty process.

Finally, it is at the dealer repair shop where warranty data and the part are separated. Most parts are scrapped, while others are shipped to the manufacturer—or directly to the supplier for review. In order to understand and analyze the warranty process more completely, it is important to note the data and the component take markedly different paths.

## The Pathway Within the Vehicle Manufacturer

From this rather inauspicious start, the data is then sent to the vehicle manufacturer where it often follows several separate paths, although it is usually centrally housed. While each manufacturer has developed its own internal process for warranty data, the flow generally starts with a review of the dealership claim. Such a review is intended to monitor the work done at the dealership. In most aspects, this step serves as a method to monitor dealer repair work and focus on the process of repairing the vehicle. Special attention is given at this step to assuring the warranty claim meets the standards set by the manufacturer. Commonly, the review includes an evaluation of the claim to assure completeness and correctness, an analysis of the type of repair, the time taken to make the repair (especially if different from the standard), the frequency of repair at that dealership vis-à-vis other dealerships and other such concerns. Although the entry of the claim process has become electronic in recent years (most are now on-line, and completed overnight), there is still a considerable amount of staff effort required to analyze and follow-up via telephone for clarification. While this review process is intended to monitor the dealership repair work, it is also considered a line of first defense in identifying potential warranty problems as trends become evident.

The reduction in time for the claim filing process has important implications for root cause analysis. Critical to understanding any in-service part failure is the interaction with the mechanic. The ability for the vehicle manufacturer—or even the supplier—to contact the mechanic within a few days of when the repair is affected increases the chance the mechanic will be able to more clearly remember the repair in question, and thus more accurately describe the problem identified, and the process of repair.

Once the warranty data is in an acceptable form, the vehicle manufacture enters it into a database. From this point, each manufacturer has developed comprehensive and confidential internal systems, often using both internally developed and third party software. The warranty data is controlled by either a quality or warranty function, but is available to be accessed by product engineering (product and manufacturing), manufacturing (assembly plant), legal and other functions within the company. Diagram 2 illustrates the complex flow of warranty data within the vehicle manufacturer. It is important to note warranty data is only one form of information used to identify in-service product issues. Other forms (technical call centers, insurance claims, police reports, etc.) are often captured by other internal functions, and are likely to be stored in entirely different data warehouses.

Warranty data is accessed by many different functions within a vehicle manufacturer. The manufacturers interviewed indicated that because the warranty data was accessed by so many functions internally, some uncertainty exists among the different functions as to who else in the organization might be accessing the same data and what their needs might be. There was also uncertainty expressed as to how the data might be of value to others in the company. It is a valuable area of further study to more closely examine the pathways within the vehicle manufacturers. However, two caveats are offered. First, the flow of data, or more appropriately the description of users, within these large companies is complex. Second, each manufacturer views the warranty process as a competitive advantage, and is not necessarily interested in discussing detailed descriptions of the process.

**Diagram 2: Flow of Data within the Vehicle Manufacturer (VM)**



The type and amount of data that flows to suppliers from a vehicle manufacturer differs greatly among vehicle manufacturers. Generally, the supplier must query the vehicle manufacturer database (increasingly via web-based applications) to access warranty information. One respondent described three general types of data his company receives (Diagram 3): incident-based data (limited to claims and count); rate-based data (based on production/sales); and data that included months in service, and month of production. While the suppliers interviewed had developed strong internal warranty tracking processes, the respondents made it clear the quality of data passed along by

the vehicle manufacturers affected the speed and accuracy of any early warning system. The ability to tie a defect to a date of manufacture, months in service, or other similar measures is of great value when assessing the problem and developing a response. Certainly there has been much discussion surrounding the traceability of parts in the manufacturing process. However, the traceability of some key components in service presents an opportunity for those wishing to gain a competitive advantage in the automotive warranty business. Vehicle manufacturers that develop effective reporting systems—a means of getting concise, accurate warranty data to their suppliers in a timely fashion—will take a large step toward developing a proactive early warning system.

**Diagram 3: The Reporting of Data from Vehicle Manufacturer to Supplier**



Because of the variance in the warranty reporting processes among vehicle manufacturers, each supplier interviewed had set up its warranty efforts by customer. Such redundancy was difficult for the suppliers to justify financially. Although several people interviewed indicated it would be valuable for the vehicle manufacturers to work to make their systems more common, there was little hope that it would occur. It is worth noting the Automotive Industry Acton Group (AIAG) has begun to investigate warranty process flow, with the intention of developing a set of industry best practices for use as a guideline. As such, this guideline could potentially serve to offer a first step toward industry standardization within some elements of the automotive warranty reporting system.

While the warranty data is important for identifying systemic failures, an analysis of the component is often required to establish the root cause of the failure. It is a costly proposition, due largely to logistics and transportation. Thus, it is important to better understand the fate of the failed component. Diagram 4 shows the possible outcomes for an in-service failure under warranty. The vast majority of components are disposed of at the dealership, thus eliminating any opportunity to establish the root cause of the

failure.[4]  Manufacturers may randomly select dealers and require that the dealers send a limited number of components for inspection, creating a sample for study.  Depending on the vehicle manufacturer, these components are then sent either to their component assessment center, or directly to the supplier for review.

**Diagram 4: The Returning of Parts from Vehicle Manufacturer Repair Shop to Supplier**



If the supplier has an indication there may be issues related to a component, the supplier may request the vehicle manufacturer obtain a small number of components for analysis from the dealers.  As was illustrated during the course of the interviews for this project, the automotive warranty process is often driven by relationships.  Each of the suppliers interviewed had established relationships that enabled them to side-step the bureaucratic red tape, and resolve issues rapidly.  This was especially evident in the area of component procurement.  Such relationships are difficult to represent in a flow chart, but are vital to successfully solving warranty issues.  One final method of parts dispersal, according to one supplier: one vehicle manufacturer sends the supplier a 'box of parts' with no information nor explanation of failure.

Each supplier interviewed had developed similar, albeit slightly different processes, for analyzing the warranty data.  Diagram 5 shows the general flow of warranty data and parts as described by a smaller supplier.  The data (and component) is directed from the vehicle manufacturer to the supplier's manufacturing plant, where it is received by the plant's quality department.  After review of the data, a cross-functional team is assembled to begin the process of identifying the problem.  It is important to note that the smaller supplier felt warranty issues were in essence a 'plant issue,' thus they used

---

[4] Vehicle manufacturers have often struggled with quality on newly launched vehicles, and therefore have become much more aggressive in addressing launch quality.  Several companies have leveraged the existing warranty system to assure that launch products have a 100 percent part return program.  By capturing all parts that fail during the launch phase and using the warranty infrastructure to analyze the data, companies hope to quickly respond to potential product issues.

the manufacturing plant as the central processing point for the in-service product failures.

**Diagram 5: Stylized Flow of Warranty Data and Parts—Tier 2 (Small Supplier)**



CAR researchers also had discussions with a larger supplier who admitted that ownership of the problem—and thus solution—was often found at the manufacturing plant. However, this supplier had a more comprehensive program than the others (Diagram 6). This maybe due, in part, to a progressive warranty strategy as well as availability of greater resources. According to this supplier, the warranty data was received from the vehicle manufacturer by a central quality contact for this supplier. This supplier requested a structured monthly data report from its customer. The data was then reviewed by the customer-focused quality team. Any issues were discussed at a cross-functional meeting. The warranty data was tracked using structured problem solving strategies. If it was determined that more information was needed, they would make a special request to the vehicle manufacturer for more specific data or components. The supplier also worked with the vehicle manufacturers' assembly facility, engineers and others as needed.

The supplier requested that generic parts (i.e. those components that were used for several different vehicle lines and customers) be sent to a central location. This was done because these products tended to be manufactured using similar processes in multiple plants. Components that were product specific (i.e. those components that were unique to a vehicle) were passed on to their specific manufacturing plant.

**Diagram 6: Stylized Flow of Warranty Data and Parts—Tier 1 (Large Supplier)**



The availability of resources was an important determinant of the supplier's warranty process. The larger companies are more likely to have dedicated quality departments, focusing on ongoing warranty tracking. Conversely, smaller companies are more likely to have a small quality staff, with much of the product failure analysis done by an ad hoc cross-functional team at the manufacturing facility. In such cases, the tracking of warranty information is then done by a small staff at the product engineering center.

Several respondents interviewed used basic spreadsheet software found on most computers to handle all data. A few respondents indicated they needed more complex information technologies to be used for specific and more technical actions—or as one respondent suggested the "backroom work." However, most of the respondents interviewed strongly indicated their current spreadsheet software was more than adequate for many of their manipulation and data management needs. The challenge was making the "back room" operations available in a format conducive to corporate wide use through common user-friendly interfaces.

## Data Overload

The manufacturers (and some of the suppliers) interviewed indicated one of the most pressing challenges of warranty investigation is the vast amount of data processed. Further, they indicated the wide range of groups within the company that have use for

10

the data adds even greater complexity. During the creation and implementation of the TREAD (Transportation Recall Enhancement, Accountability and Documentation) Act (2000), much was made of the enormous amount of data already collected by the industry. Based on numerous published estimates, and discussions with industry sources, CAR researchers estimate the automotive industry handles well over 100 million warranty claims per year. Each claim includes numerous fields, and often several lines of text. Realistically, the industry handles billions of warranty data fields annually. The challenge for vehicle manufacturers is not to get enough data, but instead to better understand which of the data is important.

While the TREAD act is not of central concern to this report, it is important to briefly address some key points of the regulation. Probably the most visible element of TREAD is the development of an early warning database to help identify critical safety defects. Like many aspects of the warranty/defect discussion, this database (containing information on 24 vehicle systems) presents a challenge far greater than merely reporting those key systems. Although the act requires vehicle manufacturers to report quarterly on 24 different systems, in reality each of those systems is made up of numerous components, which are manufactured by a wide range of suppliers. Interestingly, the interviewees had varying levels of familiarity with TREAD. The vehicle manufacturers have proactively approached the act by developing internal systems. Each manufacturer has developed a TREAD response system that it believes offers a significant advantage over its competitors. However, the vehicle manufacturer representatives were not willing to discuss the specifics of those programs. This highlights an interesting challenge with regard to investigating warranty processes. Each manufacturer believes warranty to present opportunity for strong competitive advantage. Thus, there is little willingness to share strategies, and even less understanding of the opportunities presented by collaborative efforts. The suppliers interviewed seemed to better grasp the opportunity—and even need—to develop collaborative solutions. This is likely due to the fact the suppliers have to deal with numerous warranty systems. The suppliers may be better able to identify which vehicle manufacturer systems truly provide a competitive advantage.

Although the usefulness of the TREAD act was initially questioned by many within the automotive industry, several respondents did credit the act for leading manufacturers to be more proactive in establishing early warning reporting systems. It has encouraged—even required—the companies to re-examine their existing systems, to better understand the data, and to assess how the warranty process might be improved.

Diagram 7 shows the various inputs that comprise a vehicle manufacturer warranty data warehouse. It is important to note although the diagram suggests a single data storage warehouse, there are often numerous data warehouses within each manufacturer. While this report has focused on the dealer warranty repair shop as the entry point, it is valuable to briefly consider the other input sources. National Highway Transportation Safety Administration (NHTSA) reports, police reports and insurance claims are usually presented in some form of coded response and unstructured text. Customer feedback (via call centers and other forums) is often the first line of notification for a developing problem. Critical data can also be gathered from mechanic councils and tracking repair part sales. There is also valuable information available from monitoring both internal and supplier engineering documents. Many of these inputs present rich information. However, they are often in the form of unstructured text.

11

**Diagram 7: In-Service Product Failure Reporting Channels**



Not only are companies challenged to develop methods of effectively capturing and storing warranty data, but they also have the ability to access the information in a timely—and perhaps most importantly—cost-effective way. As noted, each manufacturer has developed numerous internal information technology storage and retrieval systems. These legacy systems are occasionally redundant, and often narrowly focused. One individual stated that data overload was an important challenge. According to this respondent, it was critical for each function within a vehicle manufacturer to learn what data were the best indicators for their needs. They should then use that type of data as the guidepost. The other types of data should then be used to confirm trends identified by the lead data.

A supplier indicated that it doesn't need more data. Instead, it needed increased responsiveness from the manufacturers to data requests. Another supplier also

12

suggested that consistent data was not available.  All discussions asserted a successful warranty program relied on a strong relationship between the interested parties, in part to make up for the lack of robust data (and component retrieval) processes.

Both manufacturers and suppliers highlighted the richness and importance of warranty claim text.  Each of the respondents described the complexity and repetitiveness of reviewing the unstructured text.  Each of the suppliers was either currently investigating, or had recently considered unstructured text data mining as a method of increasing their ability to better analyze warranty data.  From a vehicle manufacturer perspective, text data mining presents an opportunity to further investigate and understand the vast text reports received from dealer repair shops.  The text entries may offer insight into, and potentially an early warning of, in-service product failures.  Such analysis also adds depth to the often vague or inconclusive repair codes entered at the repair shop.

One supplier indicated that his company had spent several months investigating text mining, but concluded that the cost of off-the-shelf systems could not be justified by the expected savings.  The respondent believed the vast coding differences and terminology between vehicle manufacturers presented complexity issues that made text mining strategies difficult (and cost prohibitive) at the supplier level.  This respondent believed the standard reports were sufficient in tracking potential problems.  However, another supplier had worked with a software provider to develop a text mining application that effectively searched data text from several manufacturers.  This supplier believed that its ability to mine text was a significant advantage.  Further, they indicated several other suppliers had contacted him to inquire about their application of the software.

## Strategic Warranty Considerations

During the interviews, respondents identified several issues that will likely challenge the automotive industry in the near future.  This section will address those concerns.  While solutions to these issues are not presented here, each of the issues is worth discussing and provides fertile ground for further research.

A.  Warranty Cost Recovery

The issue of most concern to supplier respondents was that of vehicle manufacturers moving toward a cost recovery warranty strategy as a revenue stream.  As an increasing amount of the vehicle is built by suppliers, it is logical to believe components produced by suppliers are a major portion of the total warranty cost.  One vehicle manufacturer estimated that 80 to 85 percent of all recalls were traceable to supplier components.  Therefore, according to the vehicle manufacturers, it is logical that the suppliers take a larger portion of the financial responsibility for the failures.  The vehicle manufacturer representatives indicated it was a logical step to pursue some form of cost sharing.  They also expected it would happen.

Currently, it is common practice for the component supplier to be responsible for the manufacturing cost of the failed part covered under warranty plus some portion of the logistics and labor cost.  However, the vehicle manufacturer must cover the remaining costs, including transportation, part replacement labor, and

information processing.  Warranty cost recovery has shifted an increased portion of those non-manufacturing costs to the supplier.

Suppliers felt that if the vehicle manufacturers continue to pursue cost recovery, it will have a negative impact on product quality.  It was suggested that suppliers will be forced to put increased resources into defending against accusations, and less time resolving issues, resulting in more cost for all.  Another aspect is the lack of ability to build some cost for warranty into the piece price of the component. Suppliers suggested that the car companies 'bake-in' warranty cost into the price of a vehicle.  (Assuming they are able to get the 'price.')  Suppliers have no leverage/leeway to include a 'warranty cost' into the price of the component.  A part is sold at production cost, with no allowance for future warranty costs.  Thus, if the suppliers are increasingly charged for total warranty costs, the respondents believe it could have serious implications.

Importantly, the suppliers interviewed indicated they had made recommendations—even warnings—to vehicle manufacturers regarding product decisions.  According to these suppliers, the warnings usually went unheeded and occasionally predicted warranty actions accurately during production.  There was great concern among the suppliers that with warranty cost recovery, the suppliers would likely be paying for future product failures that could have been prevented with better upfront engineering.

Suppliers (and the dealership manager) also expressed concern regarding vehicle manufacturers including a strong purchasing bias in their component sourcing decision process.  One supplier recounted an example where it had clearly demonstrated that its component, although a few pennies more expensive than that of its competitor's, had a significantly lower expected warranty cost— and a thus a lower overall cost.  According to the supplier, the vehicle manufacturer, driven by its purchasing bias, chose the component with the lower upfront cost.  According to this supplier, within several months of launch the cheaper component was already causing significant warranty expense and likely customer dissatisfaction.   Suppliers indicated such a strategy creates a very difficult operating environment.

Suppliers also expressed concern regarding initial analysis of the component at the dealership, and the integration of that component into the vehicle.  Because of the vagaries of component identification, defect analysis and codification processes (at the dealership repair shop) suppliers suggested there is opportunity, even likelihood, that their part may be improperly identified as at fault.  Further, if the in-service failure is the fault of their part, they may be held liable for the costs of disassembling the vehicle to conduct a repair.  Such cost (as measured in mechanic labor hours) could be substantial, and is driven, not by the component, but instead by vehicle design decisions made by the vehicle manufacturer.

B. Lack of Skilled Mechanics

As described in this report, the first step in the warranty process is the identification of the in-service product failure by the mechanic at the dealer repair shop.  If a problem is not properly identified, or it takes several attempts to

14

correctly pinpoint the problem, the process is less efficient.  The service manager interviewed indicated his concern regarding the availability of highly competent mechanics.  According to the service manager, a strong understanding of how a vehicle works is essential to quickly and accurately assessing in-service product failures.  Based on his experience, he believes there are too few mechanics who truly understand the automobile.  He left little doubt that a good mechanic can be one of the most effective early warning points in the process.

While mechanics are critical to the warranty process, they can also be viewed as the touch point for the customer.  An accurate, fair and fast assessment of a warranty issue by the mechanic can greatly enhance customer satisfaction.  Thus, a first step for vehicle manufacturers looking to more effectively address warranty costs while increasing customer satisfaction is to address the shortage of highly trained mechanics with a strong diagnostic skill.

C.  Electronics as a Warranty Burden

Numerous articles in the popular press have illustrated the growing dissatisfaction (as measured in quality ratings) among consumers—and concern among vehicle manufacturers—regarding the reliability of in-vehicle electronics.  Warranty repair for electrical systems has always presented unique challenges.  Traditionally a wire that was 'pinched' during installation in the vehicle could cause a short in the electrical system.  This type of electrical open circuit has been a part of the failure identification challenge since the alternator became a standard option on the vehicle.  However, it is no longer as simple as finding a bare wire or a poorly performing electrical motor.  Now many of the product failures are caused by software or other electronic glitches.  The non-technical term for such challenges offered by one respondent was 'chasing electronic gremlins.'

These electronic gremlins present significant challenges for the repair shop attempting to properly identify and correct the problem.  A dealer repair shop manager interviewed for this project estimated that 90 percent of the electronic problems reported by consumers were intermittent, and were not able to be validated by the dealership on the first attempt.  Since the warranty process cannot start without a validated problem, they will return the vehicle to the consumer and expect it back within a short period.  After two failed attempts to verify using vehicle manufacturer guidelines, the manager then advises the mechanic to attempt to identify the problem by using a process of elimination.  Often times such a strategy proves to be very time-consuming and difficult to code into warranty claim forms.  However, the manager felt it was his responsibility to his customers to go beyond what the system allowed, and do anything in his power to resolve their problems.  Once the electronic gremlin was identified, the dealership was able to correct about 90 percent of the problems.  The area of in-service electronic product failure resolution—and prevention of such incidences—presents a strong opportunity for further investigation.

D.  The International Challenge

The final area of concern addressed in this report is the international challenge— or more accurately the *two* international challenges.  The first challenge is that of

15

vehicle manufacturers operating different warranty strategies and processes in the United States, Japan and Europe. Suppliers indicated some manufacturers have different warranty processes and targets for each of these regions. The elimination of such differences could bring significant efficiency gains. The second challenge is that of bringing the current warranty methodology to developing markets.

The warranty process is, in many ways, driven by the dealer repair service shops. As noted earlier, the dealer repair service is the point of entry for any in-service product failure. The United States, Japanese and European dealer systems are characterized by strong technical expertise, significant experience, and ample resources. As such, they have demonstrated an ability to analyze and identify in-service product failures. They also benefit from strong logistical networks within the borders of their country of operation. Although the dealerships in these different regions are similar in some ways, they have developed within the constraints of the local customs, laws and consumer requirements. Suppliers indicated their customers had different systems in place in the each of the developed markets. From their point of view, there is significant opportunity to standardize international warranty operations.

As manufacturers move into developing markets, they often ask their suppliers to apply their warranty data control systems to operations in these new markets. This request presents challenges on many levels. It was strongly suggested that operations in markets with relatively undeveloped dealer networks—and no local suppliers—cannot meet the same warranty standards as those in more experienced markets. It is important for vehicle manufacturers to work with suppliers and dealers in these developing markets to leverage the systems already in place elsewhere, but also to be prepared for lapses in the system.

## Conclusions

This study, the first in the CAR-Microsoft Program on Automotive Industry Practices, is intended to identify the flow of warranty data through the automotive value chain. As such, CAR researchers have captured the drivers and pertinent issues regarding this important automotive data process flow. However, to view the path warranty data travels as merely a data flow process would be a mistake. As this project progressed, it became apparent that although the flow of warranty data was increasingly becoming more formalized, successful actions were still often behavioral and relationship driven. From the dealership through to the supplier, each of the interviewees had examples of how they went beyond the process 'structure' to obtain a better result.

It is valuable to present a few examples of this creative behavior for illustrative purposes. One supplier, with a critical new engine component, developed an early warning system by enlisting the help of local dealerships. This supplier contacted several local dealers and asked them to inform the supplier if the dealer were to perform repairs on engines that used this particular technology. The supplier had an engineer assigned to the dealerships to observe the repair, and analyze specifics of the failure. While such an action is not statistically reliable, it gives the supplier immediate feedback on early problem detection.

16

Another supplier spoke of how his personal relationship with his vehicle manufacturer warranty contact allowed him to 'go around' the process to get a more immediate response to questions and concerns. If this supplier needed better access to a part, or wanted further data, he would contact the vehicle manufacturer representative. And certainly, the service manager interviewed had developed numerous action plans that better enabled him to reach a satisfactory—and equitable—resolution for the vehicle owner. CAR researchers believe any analysis of the warranty process must consider these behavioral characteristics as an important and effective part of the system.

Similarly, there were individuals within the vehicle manufacturers that had clearly driven a process or project to resolve challenges. These individuals had to use creativity to overcome the challenge of the legacy systems, scope, and cost to develop solutions that achieved the desired results while still staying within the bounds of their corporate culture.

These relationships, while successful, are indicative of the complexity of an effective warranty process. As vehicle manufacturers and IT providers attempt to formalize the warranty process, it is likely that behavioral aspects will continue to be a vital part of rapid warranty resolution.

# COMPLAINT
# EXHIBIT F

Richard Roth
RSJ AUTO LLC

June 14, 2021

Perlman-DePetris Consumer Law
1926 Greentree Rd. Suite 100
Cherry Hill, NJ 08003

RE:
Kris Nejat
4 Cranberry Place
Voorhees, NJ 08043

Mr. DePetris,

I have reviewed this vehicle's repair invoices, Mr. Nejat's documentation of his repeated attempted repair experiences, technical service bulletins and other relevant information regarding this case. Subsequent to reviewing the supplied documentation, I examined Mr. Nejat's 2017 Land Rover Range Rover VIN# SALWR2FKXHA693677 on 3/20/21. I performed a multipoint inspection which includes road testing the vehicle, a visual inspection, and a diagnostic scan of the vehicle's electronic systems. The vehicle had 42,190 miles at the time of my inspection. During this review, I have formed opinions about the vehicle's repair history, defects, and value. My evaluation takes into account the disclosure of its repair history.



**Page 1**

SUMMARY

- Five (5) repair visits for abnormal diesel filtering system anomalies in 3 years and 4 months of ownership.
- This vehicle is clearly defective from the factory. There were known latent defects that existed at the time of sale that have caused the repeated diesel filtering system anomalies that are extant to this day.
- These anomalies are known issues as there are numerous Land Rover TSBs regarding the diesel filtering system.
- It is disingenuous for Land Rover to blame Mr. Nejat's driving habits for the known defect with the diesel filtering system. Land Rover's instruction (from the 9/16/20 repair order) to have the vehicle driven more and on longer highway trips is not found in the owner's manual for this vehicle. In addition, I am unaware of any vehicle manufacturer's standard or requirement that a vehicle be driven a certain amount, at a certain speed, for a certain length of time, so that a critical emission system does not fail. Land Rover must have known there are issues with their diesel filtering system.
- I found numerous abnormal trouble codes related to the repeated abnormal conditions.
- I found the use, value and safety of this vehicle have been compromised by the recurring defects and malfunctions of the engine and diesel filtering system.
- I found the diminished value of this vehicle to be $13,877.64.


I. RECORDS REVIEWED

1. Retainer agreement signed by counsel.
2. Revocation of acceptance letter.
3. Complaint in Shaaya v. Land Rover Jaguar North America, LLC.
4. Vehicle Carfax report.
5. Various sales/financing documents.
6. Numerous Land Rover Technical Service Bulletins
7. Land Rover booklet excerpts about warranty terms and vehicle's diesel system.
8. Current NADA Value Report

## II. BACKGROUND

Mr. Nejat purchased the vehicle new on 12/22/17. The purchase price is $79,300.82. The vehicle was delivered defective as manifested during his ownership. **This Land Rover Range Rover has had the repeated abnormal condition of "Diesel Exhaust Filter Full" error message displayed.** It has required no less than five (5) additional repairs to attempt to correct these abnormal conditions. Mr. Nejat reports that the diesel filtering system problems still occur to this day.

## III. REPAIR HISTORY

Mr. Nejat reports that the vehicle was serviced by an authorized Land Rover repair facility at least five (5) times between the purchase date of 12/22/17 and 4/23/21.

The specific repair visits based on the records supplied by Mr. Nejat are as follows:

- 2/18/20 @ 37,312 miles.
  - CUSTOMER STATES THE WARNING LIGHT CAME ON SAYING EXHAUST FILTER FULL.
    - FOUND CODE P2463-00 PRESENT.
    - CEL AND DPF WARNING MESSAGE ARE CAUSED BY DIESEL PARTICULATE FILTER BEING TOO FULL.
    - NEED REGENERATION PERFORMED.
    - PERFORMED DYNAMIC REGENERATION AND CLEAR DTCS.

- 3/3/20 @ 37,929 miles.
  - CUSTOMER STATES VEHICLE SAYS EXH FILTER FULL.
    - DIESEL PARTICULATE FILTER CLOGGED.
    - CONNECT PATHFINDER AND RETRIEVE DTCS.
    - FOUND P2463 STORED WITH IN (SIC) PCM. CHECK AND TOP UP EXHAUST FLUID LEVEL (16 LITERS).
    - RESET DOSING FACTOR USING PATHFINDER, RUN EGR AND AIR PATH CHECK FOR INTAKE LEAKS.
    - PERFORM REGENERATION DRIVE CYCLE WITH PATHFINDER ATTACHED.
    - PERFORM DYNAMIC REGENERATION PROCEDURE USING PATHFINDER (FAILED). DIESEL PARTICULATE FILTER BEYOND REGENERATION CAPABILITIES.
    - REMOVE AND REPLACE PARTICULATE FILTER CONNECT PATHFINDER.
    - PERFORM FILTER REPLACEMENT PROCEDURE. CLEAR

- 9/16/20 @ 39,587 miles.
  - CUSTOMER STATES VEHICLE SAYS EXHAUST FILTER FULL
    - READ AND CLEAR FAULT CODES
    - FOUND MALFUNCTION ON DASH.
    - FOUND P2463 AND P246B IN PCM.
    - DROVE VEHICLE 18 MILES (39587-39605) DURING A REGEN ATTEMPT TO CLEAR THE EXHAUST FILTER. WENT FROM 30.5 GRAMS OF SOOT WITH A TARGET OF 6 GRAMS. VEHICLE WENT DOWN TO 14.2 G AND THEN STARTED RISING AGAIN.

- OPENED TA CASE. 3046785. REMOVED ENGINE AIR FILTER, EGR TUBE AND VALVE, AND PIPE TO THROTTLE VALVE TO TAKE PHOTOS OF ALL COMPONENTS TO SEND TO TA TO CHECK FOR EXCESSIVE:SOOT/OIL CONTAMINATION BUILD UP IN ENGINE.
- ADVISED BY TA TO REMOVE DPF DIFFERENTIAL PRESSURE SENSOR & LINES AND CHECK FOR CLOGS OR CONTAMINATION. NONE FOUND. PHOTOS TAKEN AND SENT TO TA. TA CALLED AND ADVISED HABITS ARE LARGEST CONCERN. VEHICLE NEEDS TO BE DRIVEN MORE AND ON LONGER HIGHWAY TRIPS. REQUESTSTED REGEN 173 TIMES AND ONLY WAS ABLE TO PERFORM IT 3 TIMES.
- REMOVED OIL SEPARATOR AND REPLACED DUE TO OIL INTRUSION, ADVISED BY TA. WAS ABLE TO UPDATE PCM FURTHER WITH UPDATED PATHFINDER.
- RE-RAN REGEN RUN ON HIGHWAY. (39605-39623) WAS ABLE TO GET SOOT LEVEL UNDER 6GRAMS (SIC) AND WITHIN SPEC.
- VEHICLE NO LONGER HAS FAULTS ON DASH AND HAS FULL POWER BACK TO VEHICLE.

- 10/17/20 @ 39,917 miles.
  - CUSTOMER STATES DIESEL EXHAUST FULL MESSAGE IS ON.
    - READ AND CLEAR FAULT CODES
    - C/S DPF CLOGGED LIGHT ON DASH. VERIFIED.
    - FOUND P2463 STORED IN PCM. TRIED RUNNING REGEN ON VEHICLE ON HIGHWAY. NO DIFFERENCE MADE. WOULD NO (SIC) LOWER SOOT LEVELS.
    - RAN BG EXHAUST, FUEL, AND OIL ADDITIVE CLEANING SERVICE FOR 45 MIN THRU VEHICLE AT HIGH- EXHAUST TEMPS IN AN EFFORT TO CLEAN SYSTEM AND FORCE REGEN THROUGH EXHAUST TEMPS.
    - CHANGED OIL AFTER SERVICE COMPLETE.
    - SOOT LEVELS TOO HIGH FOR REGEN.
    - REPLACED DPF IN EXHAUST AND RESET ADAPTIONS AND DPF LIFE TIME.
    - CHECK ENGINE LIGHT NO LONGER ON DASH. WARNING LIGHT NO LONGER ON DASH.
    - POWER RETURNED TO VEHICLE.

- 4/23/21 @ 42,442 miles.
  - CUSTOMER STATES DIESEL EXHAUST FILTER FULL MESSAGE IS ON.
    - CHECK FOR CODES WITH PATHFINDER.
    - CHECK DEF FLUID LEVEL, VEHICLE IS 98% FILLED WITH DEF
    - CLEAR CODES, RESET SCR.
    - PERFORM ROAD TEST ON HIGHWAY TO DO DIESEL PARTICULATE FILTER REGENERATION.
    - RECHECK FOR CODES, 0.

Mr. Nejat reports that the diesel filtering system anomalies still occur to this day.

IV. <u>INSPECTION</u>

I inspected Mr. Nejat's vehicle on 3/20/21 @ 42,190 miles.

- I checked the vehicle's fluids; they were of normal level and condition.

- I scanned the vehicle's computer systems.  Numerous abnormal trouble codes were found.

  - 33 computer systems were analyzed on this vehicle.

  - I found 20 abnormal trouble codes, 4 of which were in the engine module which directly corresponds to Mr. Nejat's continued complaints of the diesel fuel filter full message displayed.

  - Engine
    - P0234-77 | Turbocharger/Supercharger Over Boost Condition - Commanded Position Not Reachable
    - P246B-00 | Vehicle Conditions Incorrect For Diesel Particulate Filter Regeneration - No Subtype Information
    - U0080-86 | Vehicle Communication Bus F - Signal Invalid
    - U0402-00 | Invalid Data Received From Transmission Control Module - No Subtype Information

  - Antilock Brakes
    - U0449-81 | Invalid Data Received From Gateway C - Invalid Serial Data Received

  - All Terrain Control Module
    - U2300-54 | Central Configuration - Missing Calibration

  - Body Control Module
    - B1C45-67 | Front Windshield Wiper Park Position Switch - Signal Incorrect After Event

  - Heating Ventilation and Air Conditioning
    - B13C2-87 | Windshield Misting Sensor - Missing Message

  - Park Assist
    - U0001-82 | High Speed CAN Communication Bus - Alive / Sequence Counter Incorrect / Not Updated

  - Gear Shift Module
    - U0402-2A | Invalid Data Received From Transmission Control Module - Signal Stuck In Range
    - U0402-92 | Invalid Data Received From Transmission Control Module - Performance Or Incorrect Operation

- o Chassis Control Module
  - ▪ C1A24-64 | No Temperature Increase When Compressor Requested - Signal Plausibility Failure
  - ▪ U210A-27 | Temperature Sensor - Signal Rate Of Change Above Threshold

- o Image Processing Module B
  - ▪ U0447-29 | Invalid Data Received From Gateway A - Signal Invalid

- o Side Object Detection - Left
  - ▪ U0046-86 | Vehicle Communication Bus C - Signal Invalid
  - ▪ U0534-86 | Invalid Data Received From The Obstacle Detection Control Module - Right - Signal Invalid
  - ▪ U0556-09 | Invalid Data Received From The Front Display Interface Module - Component Failure

- o Side Object Detection - Right
  - ▪ U0046-86 | Vehicle Communication Bus C - Signal Invalid
  - ▪ U0533-86 | Invalid Data Received From The Obstacle Detection Control Module - Left - Signal Invalid
  - ▪ U0556-09 | Invalid Data Received From The Front Display Interface Module - Component Failure

- I road tested the vehicle.  The "Check Engine" light was illuminated during my road test.



## V. OPINION

Mr. Nejat has a vehicle that has had the repeated abnormal condition of "Diesel Exhaust Filter Full" error message displayed, for 3 years and 4 months of ownership. These type of warranty issues are not acceptable under any industry standard I am aware of from my standpoint as a 29-year veteran of the industry.

I have many years' experience as an automotive shop owner/operator, responsible for generating, authorizing and auditing records exactly like these. Relying on this experience, my inspection of the vehicle, the accounts of Mr. Nejat, and the documentation from the authorized factory agencies, I am able to make this evaluation.

The above repair history is significant since:

- There are repeated abnormal complaints about the diesel filtering system anomalies. It is impossible to ignore the abnormal and poor performance of the vehicle given Mr. Nejat's repeated complaints. This vehicle has not been repaired after five (5) visits for the same and various abnormal conditions.

- The repair invoices prove the malfunctions have occurred repeatedly and the authorized Land Rover repair facility has not performed any meaningful diagnosis or repairs to correct these problems.

- It is disingenuous for Land Rover to blame Mr. Nejat's driving habits for the known defect with the diesel filtering system. Land Rover's instruction (from the 9/16/20 repair order) to have the vehicle driven more and on longer highway trips is not found in the owner's manual for this vehicle. In addition, I am unaware of any manufacturer's standard or requirement that a vehicle be driven a certain amount, at a certain speed, for a certain length of time, so that a critical emission system does not fail. Land Rover must have known there are issues with their diesel filtering system. There are numerous Land Rover TSBs regarding the diesel fuel system anomalies.

- Just clearing the trouble codes and performing a regeneration and resetting the SCR is not a repair for the abnormal condition. This has been done on two of the repair visits. The abnormal condition recurred five (5) times in 5,000 miles. It is not repaired, and the abnormal condition will continue to happen until there is meaningful diagnosis or repair by Land Rover.

- Mr. Nejat reports the diesel filtering system issues continue to this day.

The repair history and vehicle inspection results are significant as the repeated complaints include diesel filtering system anomalies that have not been repaired.

Overall, the condition and performance of this vehicle is fair at best and dangerous at worst in certain situations. I have been in the automotive repair industry for 29+ years and have owned a transmission and total car care repair facility for 10+ years. I consider the poor performance of this vehicle to be a serious safety concern and understand Mr. Nejat's reluctance to drive this vehicle as he is concerned that the vehicle will lose power because of the abnormal diesel fuel system anomaly, along with the

continued warning lights and messages. Mr. Nejat does not feel safe operating this vehicle and is concerned for his and his family's safety. I would not feel safe or confident driving Mr. Nejat's vehicle due to the above concerns experienced.

**Repair History Effect on Use, Value, and Safety**

The use of this vehicle has been substantially compromised since it repeatedly failed to operate as intended, the number of times it has had to go back to the dealer for repair attempts to have essentially the same abnormal condition fixed, the number of days it has been out of service, andthrough the difficulty of procuring proper repairs from the authorized Land Rover repair facility.

The value of this vehicle has been substantially compromised.  The significant repair history with the repeated abnormal condition of "Diesel Exhaust Filter Full" error message displayed, the numerous abnormal trouble codes and warning light found during my inspection, along with five (5) repair visits in 3 years and 4 months of ownership, compromises the vehicle's value.

This is because one of the greatest areas of diminished value is private party sale. Since Mr. Nejat would achieve the greatest value for his Land Rover Range Rover when listing it himself for sale rather than trading it in to a dealer and that disclosure of the vehicle's repair history would be a prerequisite to the private sale and thus cause the sale price to be lowered significantly. Dealers do not consider warranty repairs when accepting vehicle trades or purchasing vehicles from consumers. Automotive dealers instead focus mainly on physical exterior and interior visible condition and miles registered on the vehicle's odometer.

The problems Mr. Nejat experienced are unexpected and abnormal.  I would consider this Range Rover unreliable given Mr. Nejat's repair history.

The safety of this vehicle has been compromised by the engine and diesel filtering system malfunctions chronicled in its repair history. The engine should start and run as expected without abnormal warning messages and lights displayed along with a diesel filtering system that are known to cause a sudden loss of power.  If the engine loses power unexpectedly while driving, serious safety concerns occur.

Finally, there is no indication that this Land Rover Range Rover's engine and diesel filtering system defects and abnormal conditions are the result of abuse, neglect, or unauthorized modifications or alterations of this Land Rover Range Rover by anyone other than the manufacturer. This is based on my vehicle inspection and the review of the records provided which include the authorized Land Rover repair facility repair orders and records, Land Rover recalls and service bulletins, along with the accounts of Mr. Nejat. It is also my understanding Mr. Nejat will testify under oath that the vehicle has not been in any accidents, damaged, modified or undergone any body or collision repairsor refinishing since he purchased it.

VI. Damages

Diminished Value is the difference in value at the time and place of acceptance between the value of the goods as accepted and the value they would have had if they had been delivered as warranted. There is a significant difference or diminished value from as the vehicle was represented and as it truly existed. The diminished value of this vehicle as delivered and warranted equals 17.5% of the purchase price.

Valuation is a part of what I have done on a daily basis at my shop. We performed major repairs like transmissions, engine, AC and everything in between. It is important to value the vehicle to determine if the repairs are the right thing to do. Valuing and appraising is a process that any mechanic or used car dealer would do. Starting with a thorough examination of the vehicle, sometimes disassembling components to determine the extent of the repair or damage. Next, I calculate the cost of the repairs. Using the same court accepted methodology mechanics and used car dealers employ, I determine the value of the vehicle with the industry accepted reference guides like Kelly Blue Book and NADA guides. I gather the elements and facts including what was paid for the vehicle, what was its price when new, mileage and condition. I then apply an objective, court and industry accepted standard to determine the value of the vehicle. I have applied the same method to the facts of this case.

I based this diminution on the vehicle's value today per NADA Guides.com. In "Clean Retail" condition the vehicle is worth $53,850 based on its age and mileage. "Rough" condition is defined by NADA as "A vehicle with significant mechanical defects requiring repairs in order to restore reasonable running condition." I define the condition of this vehicle as "Rough" since its purchase given the significant repair history with the repeated abnormal condition of "Diesel Exhaust Filter Full" error message displayed, the numerous abnormal trouble codes and warning light found during my inspection, along with five (5) repair visits in 3 years and 4 months of ownership. As the vehicle was delivered in "Rough" condition, its value today is $44,425. The difference between these figures is 17.5%. Therefore, the diminution in the value of this vehicle, as warranted and delivered at the time and place of delivery is equal to 17.5% of the purchase price. Taking the 17.5% and multiplying it by the purchase price of $79,300.82 equals $13,877.64 as the diminished value at the time of purchase.

These opinions have been made to a reasonable degree of automotive mechanical certainty based on my years of experience in the automotive repair industry. I reserve the right to supplement and amend this report with additional inspection reports, pictures, videos or other information in the future.

Respectfully submitted,

Richard Roth

- For Reference, the following is the CV for Richard Roth.

# EXPERIENCE

**Owner, RSJ AUTO LLC**                                    **December 2012-Present**

- Provide Expert Witness services including vehicle inspections, report generation with photos and videos, attendance and testimony at trials/arbitrations, attendance at service advisor, and mechanic depositions.
- Court Admissions as a Mechanical and Valuation Expert:
  - Philadelphia County, PA
  - Allegheny County, PA
  - Lehigh County, PA
  - Camden County, NJ
  - Cumberland County, NJ
  - Sussex County, NJ
  - Burlington County, NJ
- Provide service to automotive repair shops including diagnostic, mechanical, and management assistance on an as needed basis.
- Provide mechanical and physical damage appraisals. (PAMVPDA License #788577)
- Provide mechanical breakdown and physical inspections for insurance, warranty, and fleet companies. (Allstate, Safe-Guard VSC, Auto Retention Services, Aegis/APCO, Preferred Warranties Inc., ARI, General Motors-Chrysler-Mopar Vehicle Protection, Subaru Factory Warranty and others).
- Provide pre-purchase vehicle inspections for warranty companies.

**Owner, AAMCO Transmissions and Total Car Care, Turnersville, NJ  July 2007-September 2017**

- Involved daily in the diagnosis and repair of customer vehicles.
- Manage all operations, sales, marketing and technical proficiencies. This includes customer interfacing, management of customer service manager and technicians.
- Practical hands-on knowledge and performance of all repair services, supplies and equipment including: automatic transmission, manual transmission, clutch, brakes, exhaust, air conditioning, cooling system, air bag, automotive parts, automotive lubricants, friction materials, part suppliers, differential, emissions, alignment, steering, suspension, tires, EGR, EVAP, check engine light diagnosis, engine, tools, scan tools, scanner, smoke machine, alignment, and tires.
- Regularly worked with insurance, warranty and fleet company adjusters providing service on current model year vehicles.
- Over 15,000 vehicles serviced.

**Director of Transmission Operations, Henley Transmissions,**
**Newton, MA/Moveras, Salem, NH**                          **May 2006-June 2007**

- General management of 6 AAMCO centers' operations, sales, marketing and technical proficiencies. This includes human resources management of customer service managers and technicians, 67 employees.
- Worked daily in the diagnosis and service recommendations of vehicles in all 6 centers.
- Shared in the management of a centralized transmission remanufacturing facility (Moveras) that supplied transmissions to the company owned stores and other local repair shops.  Assisted in the design and management of transmission teardown, parts supply, rebuilding and dyno testing procedures

**Director of Technical Services, AAMCO Transmissions Inc.**                **July 1991-April 2006**

- Management of AAMCO's Technical Support Department, providing technical support for transmission repair and total car care repair to over 800 AAMCO centers.
    - Support services provided to the chain include management of:
        - Technical Hotline (phone technical support for all AAMCO Centers).
        - Regional Technical Support Managers (8 in-field trainers/center analysts).
        - Technical Information, Certification and Testing.
- Technical Training Materials Production – Manage the planning, developing and leadership of Technical projects to meet corporate goals. Personally involved at every level of production of books, technical bulletins, certification tests, and videos including writing, layout, editing, photography, print production, slide production, video production (taping, editing, on-screen talent, duplication, collateral materials, etc.).
    - Some of the training titles produced include but are not limited to: transmission specific programs (E4OD, VW 01M, CD4E, JF506E, SATURN, 4L80-E, 4T65E, 45RFE, etc.), Valve Body Repair, ACCESS (Automotive Computer Controls & Electrical System Servicing), 1-5 Series, Differential Repair, R&R (transmission removal and reinstallation), Fundamental Rebuilding, Standard Transmission, *Do These or CBs*, *Rebuilder's Kwik Reference Guide*, *Kwik Pressure Specifications Guide*, Brake System Servicing, Air Conditioning System Servicing, Air Bag System servicing, and the Benchnote Series.
- Equipment and Tools
    - Performed evaluation, in-field testing, and recommendation of tools and equipment from numerous vendors.
    - Maintained AAMCO's required tool and equipment list for AAMCO Dealers.
    - Negotiated national pricing programs with RTI (now MAHLE), Snap-on, Hot Flush, and Rotary.
    - Worked closely with AAMCO's Parts warehouse on procurement and distribution.

- Part, Lubricant and Service vendors
  - o Negotiated national programs with Autozone, Transtar and Lubeguard.
  - o Met with vendors executives regularly to design special programs and promotions for AAMCO Dealers.
- Technical Seminars
  - o Developed, created, and presented technical training seminars.
  - o Presented seminars to groups of dealers and technicians with audiences ranging from 10 to over 300 attendees.
- Center Visits
  - o Personally performed over 500 AAMCO center visits nationwide, in Canada, and Puerto Rico.

## AFFILIATIONS AND CERTIFICATIONS

**Pennsylvania Insurance Department**

- **Licensed Motor Vehicle Physical Damage Appraiser, License #788577**

**ASE Certification**

- **A1 through A7 certified through 2021**

**GLG (Gerson Lehrman Group) Research Consulting Management Council Member**

- Council Member since 2010
- Paid consultant on various automotive projects including part suppliers, tools, lubricants, repair and industry trends

**MOBILE AIR CONDITIONING SOCIETY (MACS)**

- Certified MACS Air Conditioning Repair, Training and Testing Proctor

**SMART AIR**

- Certified Vehicle Mold Screening Technician

## EDUCATION

- **B.A. Cabrini College in Communications and Business**                    **May 1988**

CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 39 of 150 Trans ID: LCV20211478782

LTB00968NAS2

# TECHNICAL BULLETIN

26 MAY 2017



© Jaguar Land Rover North America, LLC

NOTE: The information in Technical Bulletins is intended for use by trained, professional Technicians with the knowledge, tools, and equipment required to do the job properly and safely. It informs these Technicians of conditions that may occur on some vehicles, or provides information that could assist in proper vehicle service. The procedures should not be performed by 'do-it-yourselfers'. If you are not a Retailer, do not assume that a condition described affects your vehicle. Contact an authorized Land Rover service facility to determine whether this bulletin applies to a specific vehicle.

INFORMATION

This reissue replaces all previous versions. Please destroy all previous versions.

SECTION:

310-01: Fuel Tank and Lines

SUBJECT/CONCERN:

Fuel Tank Difficult To Fill

AFFECTED VEHICLE RANGE:

| MODEL: | MODEL YEAR: | VIN: | ASSEMBLY PLANT: | APPLICABILITY: |
|---|---|---|---|---|
| Range Rover Sport (LW) | 2015-2016 | 504538-599999 | Solihull | V6 S/C 3.0L Petrol /V8 S/C 5.0L Petrol |
| Range Rover Sport (LW) | 2016-2017 | 100001-150686 | Solihull | V6 S/C 3.0L Petrol /V8 S/C 5.0L Petrol |
| Range Rover Sport (LW) | 2015-2017 | 600188-685778 | Solihull | V6 S/C 3.0L Petrol /V8 S/C 5.0L Petrol |
| Range Rover (LG) | 2015-2017 | 197044-349716 | Solihull | V6 S/C 3.0L Petrol /V8 N/A 5.0L Petrol/V8 S/C 5.0L Petrol |

MARKETS:

NORTH AMERICA

CAM-L-001836-21   06/21/2021 12:06:54 PM  Pg 40 of 150 Trans ID: LCV2021147878 2

CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 41 of 150 Trans ID: LCV20211478782

## CONDITION SUMMARY:

**SITUATION:**

The fuel tank may be difficult to fill.

**CAUSE:**

This may be caused by the fuel filler pipe design being restrictive.

**ACTION:**

Should a Customer express this concern, follow the Service Instruction below.

## PARTS:

| PART NUMBER | DESCRIPTION | QUANTITY: |
|---|---|---|
| LR093763 | Fuel Filler Pipe | 1 |
| TYG500130 | Driveshaft Bolts | 4 |
| LR044836 | Air line Connector | 2 |
| LR038196 | Bolt | 2 |
| LR051047 | Bolt | 4 |
| LR034277 | Nut | 2 |

## TOOLS:

Refer to Workshop Manual for any required special tools.

## WARRANTY:

### NOTES:

- Repair procedures are under constant review, and therefore times are subject to change; those quoted here must be taken as guidance only. Always refer to TOPIx to obtain the latest repair time.

- DDW requires the use of causal part numbers. Labor only claims must show the causal part number with a quantity of zero.

| DESCRIPTION | SRO | TIME (HOURS) | CONDITION CODE | CAUSAL PART |
|---|---|---|---|---|
| Filler neck - Renew - Range Rover Sport (L494; V6 3.0L S/C Petrol; V8 5.0L S/C Petrol); Range Rover (L405; V8 5.0L S/C Petrol) | 19.55.07 | 7.2 | 55 | LR062455 |
| Filler neck - Renew - Range Rover (L405; V6 3.0L S/C Petrol) | 19.55.07 | 7.3 | 55 | LR062455 |

### NOTE:

Normal Warranty procedures apply.

## SERVICE INSTRUCTION:

1   Refer to Special Service Message (SSM) SSM72957.

- Continue to Step 2 only if necessary.

2   Remove and discard the fuel filler pipe (see TOPIx Workshop Manual section 310-01: Fuel Tank and Lines).

3   Install the new fuel filler pipe (LR093763) (see TOPIx Workshop Manual section 310-01: Fuel Tank and Lines).

CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 43 of 150 Trans ID: LCV20211478782

| | |
|---|---|
| Reference | SSM72861 |
| Models | Discovery Sport / L550<br>LR3 / L319<br>Range Rover / L405<br>Range Rover Evoque / L538<br>Range Rover Sport / L494 |
| Title | Diesel Exhaust Fluid (DEF) Injector Crystallization |
| Category | Engine |
| Last modified | 16-May-2018 00:00:00 |
| Symptom | 403000 Exhaust System Concerns |
| Attachments | 11DEF Injector Crystallization.pdf |
| Content | **Issue:**<br>Diesel exhaust fluid (DEF) injector crystallization leading to incorrect and unnecessary replacement.<br><br>**Cause:**<br>Some crystallization will always be present on the tip of the injector after engine shut down, this is considered to be normal.  The crystallization will quickly disappear after the engine is started and the exhaust system becomes hot.<br><br>**Action:**<br>Refer to the attached file which shows a selection of crystallization on the DEF injector tip.<br>These pictures show a level of crystallization present on the tip which will not influence the function of the injector.  These pictures are typical of injectors currently being replaced and returned via warranty and when tested are no fault found.<br><br>Always refer to the Diagnostic and Testing Section in TOPIx if help is required diagnosing concerns with the Selective Catalytic Reduction (SCR) system.  Section 309 – Exhaust System.<br><br><br>Technicians - Please rate this SSM and provide comments so that future communications can be improved.<br><br>1 = Poor – Basic information provided – The SSM does not help me resolve the customer concern.<br><br>3 = Average – Adequate information provided – The SSM partially helps me resolve the customer concern. |

5/17/2018                         SSM72861 - Diesel Exhaust Fluid (DEF) Injector Crystallization | TOPIx

5 = Excellent — All required information provided to resolve the
customer concern.










3/5/2019                    N241NAS2 - Service Action: Diesel Exhaust Fluid (DEF) Malfunction Warning Message | TOPIx



N241NAS2

# TECHNICAL BULLETIN

21 FEB 2019

© Jaguar Land Rover North America, LLC

NOTE: The information in Technical Bulletins is intended for use by trained, professional Technicians
with the knowledge, tools, and equipment required to do the job properly and safely. It informs these
Technicians of conditions that may occur on some vehicles, or provides information that could assist in
proper vehicle service. The procedures should not be performed by 'do-it-yourselfers'. If you are not a
Retailer, do not assume that a condition described affects your vehicle. Contact an authorized Land
Rover service facility to determine whether this bulletin applies to a specific vehicle.

**INFORMATION**

Changes are highlighted in blue

**SECTION:**

303-14

**SUBJECT/CONCERN:**

Service Action: Diesel Exhaust Fluid (DEF) Malfunction Warning Message

**AFFECTED VEHICLE RANGE:**

| MODEL: | MODEL YEAR: | VIN: | ASSEMBLY PLANT: | APPLICABILITY: |
|---|---|---|---|---|
| Discovery (LR) | 2017-2019 | 000001-093227 | Solihull | TDV6 3.0L Diesel |

| MODEL: | MODEL YEAR: | VIN: | ASSEMBLY PLANT: | APPLICABILITY: |
|---|---|---|---|---|
| Discovery (LR) | 2019 | 400488-402827 | Nitra (Slovakia) | TDV6 3.0L Diesel |
| Range Rover Sport (LW) | 2017-2019 | 100436-838935 | Solihull | TDV6 3.0L Diesel |
| Range Rover (LG) | 2017-2019 | 297609-539983 | Solihull | TDV6 3.0L Diesel |

## MARKETS

NORTH AMERICA

## CONDITION SUMMARY

SITUATION:

A potential issue has been identified on certain vehicles within the listed Affected Vehicle Range where a 'Diesel Exhaust Fluid Malfunction' warning message is displayed in the message center or the MIL (Malfunction Indicator Lamp) may be illuminated on the Instrument Panel Cluster (IPC).

ACTION:

Retailers are required to HOLD affected new vehicles that are within your control and refrain from releasing the vehicles for new vehicle sale pending completion of the Diagnostic/Workshop Procedure detailed in this Technical Bulletin. Unsold vehicles should have this performed as part of the Pre-Delivery Inspection (PDI) process but must have it completed prior to vehicle handover to the customer.

Affected vehicles already in the hands of customers should be updated at the next available opportunity.

## PARTS

No parts required.

## SPECIAL TOOLS:

Jaguar Land Rover-approved Battery Power Supply

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 198 of 299 PageID: 209
CAM-L-001836-21   06/21/2021 12:06:54 PM  Pg 49 of 150 Trans ID: LCV20211478782

3/5/2019                          N241NAS2 - Service Action: Diesel Exhaust Fluid (DEF) Malfunction Warning Message | TOPIx

Jaguar Land Rover-approved diagnostic equipment with latest PATHFINDER software



⚠ **NOTE:**

Use the Jaguar Land Rover claims submission system to make sure that a vehicle is affected by this program prior to undertaking any rework action.

At the time of confirming a booking for vehicle repair, make sure that all open Recall and Service Actions are identified to make sure the correct parts are available and adequate workshop time is allocated for repairs to be completed at one visit.

Warranty claims must be submitted quoting the Program Code and the relevant Option Code; this will result in payment of the stated time. The SRO and parts information is included for information only. The Option Code(s) that allows for the drive in/drive out allowance may only be claimed if the vehicle is brought back into the workshop for this action alone to be undertaken.

Repair procedures are under constant review and therefore times/prices are subject to change; those quoted here must be taken as guidance only. Use TOPIx to obtain the latest repair time.

This program is valid for a limited time only. Warranty claims with a repair date prior to the February 28, 2021, closure date must be submitted or payment within 30 calendar days of completion of the December repair.

| PROGRAM CODE | OPTION CODE | DESCRIPTION | SRO | TIME (HOURS) | PART NUMBER/SUNDRY CODE | QUANTITY/VALUE | |
|---|---|---|---|---|---|---|---|
| N241 | A | Powertrain Control Module (PCM) - Update ECU | 18.90.90 | 0.2 | - | - | |
| N241 | B | Powertrain Control Module (PCM) - Update ECU Drive in/drive out | 18.90.90 02.02.02 | 0.2 0.2 | - - | - - | |

Normal Warranty policies and procedures apply.

## DIAGNOSTIC PROCEDURE:

### ⊙ CAUTIONS:

- A Jaguar Land Rover-approved battery power supply must be connected to the vehicle startup battery during diagnosis / module programming.

- All ignition ON/OFF requests MUST be performed; failure to do so may cause damage to vehicle control modules.

---

**1** Connect the Jaguar Land Rover-approved battery power supply to the vehicle startup battery.

---

**2**  △ **NOTE:**

The Jaguar Land Rover-approved diagnostic equipment must be loaded with PATHFINDER version 218 (or later).

Connect the Jaguar Land Rover-approved diagnostic equipment to the vehicle and begin a new session.

---

**3**  △ **NOTE:**

The Jaguar Land Rover-approved diagnostic equipment will read the correct Vehicle Identification Number (VIN) for the current vehicle and automatically take the vehicle out of Transit mode (if required).

Follow the on-screen instructions.

---

**4** Select **ECU Diagnostics**.

---

**5** Select **Powertrain control module [PCM]**.

---

**6** Select **Update ECU**.

**1** Follow the on-screen instructions until the application finishes successfully.

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 200 of 299 PageID: 211
CAM-L-001836-21   06/21/2021 12:08:54 PM   Pg 51 of 150 Trans ID: LCV20211478782

3/5/2019                    N241NAS2 - Service Action: Diesel Exhaust Fluid (DEF) Malfunction Warning Message | TOPIx

**2** Go to the next Step.

 Exit the current session.

> **1** If required, reset the vehicle to **Transit mode**.
>
> **2** Select the **Exit** icon.

 Disconnect the diagnostic equipment and battery power supply from the vehicle.

# SERVICE ACTION N241: DIESEL EXHAUST FLUID (DEF) MALFUNCTION WARNING MESSAGE




| NAS19.01.001 | WORKSHOP | CAN/USA | **AFTERSALES BULLETIN** |
|---|---|---|---|
| ISSUE 2 | | | FEBRUARY 21, 2019 |

**NOTE: this bulletin updates/supersedes NAS19.01.001 (dated January 3, 2019). Changes are highlighted in blue.**

## DESCRIPTION OF ISSUE

An issue has been identified on a limited number of Land Rover vehicles within the listed Affected Vehicle Range where the message 'Diesel Exhaust Fluid Malfunction' is displayed in the message center and/or the Malfunction Indicator Lamp (MIL) may be illuminated on the Instrument Panel Cluster (IPC).

## AFFECTED VEHICLE RANGE

Discovery (L462; TDV6 3.0L Diesel)
    Model Year: ................. 2017-2019
    VIN: .......................... 000155- 093227; 400488-402827

Range Rover Sport (L494; TDV6 3.0L Diesel)
    Model Year: ................. 2017-2019
    VIN: .......................... 100436- 838935

Range Rover (L405; TDV6 3.0L Diesel)
    Model Year: ................. 2017-2019
    VIN: .......................... 297609- 539983

Visit the British Brands Sales Suite (BBSS) website for a list of affected vehicles at your retailer.

## SERVICE PROGRAM / REWORK ACTION

An authorized Land Rover retailer will update the Powertrain Control Module (PCM) software to the latest level. There will be no charge to owners for this action under this program.

## ACTION TO BE TAKEN

Use the Jaguar Land Rover claims submission system to make sure that the vehicle is affected by this program prior to undertaking any rework action.

Retailers are required to HOLD affected new vehicles that are within your control and refrain from releasing the vehicles for new vehicle sale pending completion of the rework action. Affected vehicles already in the hands of customers should be updated at the next available opportunity.

Refer to Technical Bulletin N241NAS, *Service Action: Diesel Exhaust Fluid (DEF) Malfunction Warning Message,* for detailed repair instructions.

## PARTS

No parts required.

## TOOLS

Refer to Technical Bulletin noted above for any required tools.

## WARRANTY

NOTE: use the Jaguar Land Rover claims submission system to make sure that a vehicle is affected by this program prior to undertaking any rework action.

Jaguar Land Rover North America, LLC
100 Jaguar Land Rover Way
Mahwah, NJ 07495

At the time of confirming a booking for vehicle repair, make sure that all outstanding Recall and Service Actions are identified to make sure the correct parts are available and adequate workshop time is allocated for repairs to be completed at one visit.

Warranty claims must be submitted quoting the Program Code together with the relevant Option Code. The SRO and parts information is included for information only. The Option Code(s) that allows for the drive in/drive out allowance can only be claimed if the vehicle is brought back into the workshop for this action alone to be undertaken.

Repair procedures are under constant review and therefore times / prices are subject to change; those quoted here must be taken as guidance only. Use TOPIx to obtain the latest repair time.

This program is valid for a limited time only. Warranty claims with a repair date prior to the February 28, 2021, closure date must be submitted for payment within 30 calendar days of completion of the repair.

| PROGRAM CODE | OPTION CODE | DESCRIPTION | SRO | TIME (HOURS) | PARTS / SUNDRY CODE | QUANTITY / VALUE |
|---|---|---|---|---|---|---|
| **N241** | **A** | Powertrain Control Module (PCM) – Update ECU | 18.90.90 | 0.2 | – | – |
| **N241** | **B** | Powertrain Control Module (PCM) – Update ECU | 18.90.90 | 0.2 | – | – |
| | | Drive in/drive out | 02.02.02 | 0.2 | – | – |

*Normal Warranty policies and procedures apply.*

# COMPLAINT
# EXHIBIT G

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 204 of 299 PageID: 215
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 55 of 150   Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 1 of 29 PageID: 1

**COHN LIFLAND PEARLMAN**
**HERRMANN & KNOPF LLP**
Kelly M. Purcaro
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel.: (201) 845-9600
Fax:  (201) 845-9423
kmp@njlawfirm.com

**GLANCY PRONGAY & MURRAY LLP**
Marc L. Godino
 *(pro hac vice to be filed)*
Lionel Z. Glancy
 *(pro hac vice to be filed)*
Danielle L. Manning
 *(pro hac vice to be filed)*
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160
mgodino@glancylaw.com
lglancy@glancylaw.com
dmanning@glancylaw.com

*Counsel for Plaintiff and the Class*
*[Additional Counsel appear on signature page]*

## UNITED STATES DISTRICT COURT
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAOUD SHAAYA, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA LLC,<br>Defendant. | Case No.: _____<br><br>Civil Action<br><br>**CLASS ACTION COMPLAINT**<br>**& DEMAND FOR JURY TRIAL** |

Plaintiff Daoud Shaaya ("Plaintiff") residing at East 5th Street, Brooklyn, NY 11229, on

behalf of himself and all others similarly situated, alleges the following against Defendant Jaguar

Land Rover North America LLC ("Defendant" or "Jaguar Land Rover").

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 205 of 299 PageID: 216
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 56 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 2 of 29 PageID: 2

## I.   INTRODUCTION

1.     In order to meet stringent emissions requirements, beginning in 2009 Defendant equipped all diesel vehicles with an exhaust filter known as a Diesel Particulate Filter ("DPF"). Vehicles equipped with a DPF allegedly have more efficient emissions because DPFs efficiently capture and store soot particles from exhaust gases, helping to lower tailpipe emissions. These soot particles must be burnt to keep the filter clean, through a combustion process known as regeneration.

2.     For regeneration to occur, a vehicle must be driven on a regular basis at highway speeds for prolonged periods of time. Consequently, the DPF in Defendant's diesel vehicles is prone to become clogged under many normal operating conditions including, but not limited to, frequent stop-and-go traffic. To make matters worse, Defendant's DPF warning light system often activates only after it is too late for regeneration to occur, necessitating costly replacement of the DPF. These issues are collectively referred to herein as the "DPF Defect."

3.     The DPF Defect poses an extreme and unreasonable safety hazard to drivers, passengers, and pedestrians alike. This is because a clogged DPF can cause sudden and unexpected loss of power that can severely inhibit vehicle performance and even complete shut-down. The DPF Defect thus increases the risk of an accident as well as the risk that drivers will become stranded with an inoperable vehicle.

4.     Plaintiff is the purchaser of a 2018 Range Rover equipped with a DPF and seeks to represent all persons who purchased or leased 2018 Range Rover or other Jaguar Land Rover vehicle equipped with a substantially similar DPF system within the United States, or alternatively within the State of New York ("Class Vehicles").

5.     As a result of the DPF Defect, numerous Class Vehicle owners have had to replace their DPF at exorbitant costs.

2

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 206 of 299 PageID: 217
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 57 of 150   Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 3 of 29 PageID: 3

6.      Defendant knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.  Defendant has actively concealed the true nature and extent of the DPF Defect from Plaintiff and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.  Had Plaintiff and prospective Class Members known about the DPF Defect, they would not have purchased the Class Vehicles or would have paid less for them.

7.      Despite notice of the DPF Defect from, among other things, pre-production testing, warranty data, customer complaints at dealerships, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the DPF Defect.

8.      Defendant knew of and concealed the DPF Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiff and the other Class Members both at the time of sale and repair and thereafter.  As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

## II.      PARTIES

### A.  Plaintiff Daoud Shaaya

9.      Plaintiff Daoud Shaaya is a New York citizen who lives in Brooklyn, Kings County, New York.  In or about July of 2018, Mr. Shaaya purchased a new 2018 Land Rover Range Rover HSE equipped with a diesel engine from Land Rover Manhattan in New York, New York.  At the time of purchase, Mr. Shaaya test drove the vehicle, spoke with the dealer sales representative about the vehicle and viewed the Monroney sticker posted on the side window of the vehicle.  Mr.

Case 1:21-cv-14698-RMB-SAK   Document 1-3   Filed 08/06/21   Page 207 of 299 PageID: 218
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 58 of 150   Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 4 of 29 PageID: 4

Shaaya was never informed by the dealer sales representative that his vehicle suffered from the DPF Defect and relied upon this fact in purchasing his vehicle. Had Mr. Shaaya been informed that his vehicle suffered from the DPF Defect, he would not have purchased it. Mr. Shaaya purchased his vehicle for personal, family or household purposes. Mr. Shaaya's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Jaguar Land Rover.

10.     In about November 2018, the DPF warning light in Mr. Shaaya's vehicle illuminated in amber and instructed him to drive approximately forty miles per hour or above or above for approximately twenty minutes. Mr. Shaaya promptly attempted to drive to a highway so that he could follow these instructions, but the vehicle would not accelerate past nine miles per hour. Meanwhile, the DPF warning light turned from amber to red within an hour. Mr. Shaaya took his vehicle to Land Rover Manhattan and informed the service representative of the problem. At the time of service, Mr. Shaaya's vehicle had 3,325 miles on its odometer and was well within the vehicle's New Vehicle Limited Warranty ("NVLW") 48 months/50,0000 miles Basic Coverage and 96 months/80,000 miles Emissions Coverage. The service representative inspected Mr. Shaaya's vehicle and attempted a regeneration which failed. Mr. Shaaya was then informed that his DPF was full and required replacement at a cost of over $5,000.

11.     Mr. Shaaya complained that he was never informed prior to purchase that his filter would become clogged under normal driving conditions and would require replacement despite the fact that he had promptly attempted regeneration as instructed by his vehicle's warning lights. Mr. Shaaya requested that Land Rover Manhattan provide warranty coverage, which request Land Rover Manhattan in turn communicated to Defendant's customer relations department. Mr. Shaaya was ultimately denied warranty coverage and required to pay $3,122.98 out-of-pocket for

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 208 of 299 PageID: 219
CAM-L-001838-21   06/21/2021 12:08:54 PM   Pg 59 of 150   Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 5 of 29 PageID: 5

the repair of his DPF. During his discussions with Land Rover Manhattan, Mr. Shaaya asked whether Land Rover Manhattan had received a lot of complaints regarding the problem he experienced, to which the service representative responded in the affirmative. The service representative further informed Mr. Shaaya that Land Rover Manhattan was not taking any diesels for 2019 and would only be selling diesel vehicles on special request to limit the number of diesels sold because the problems were costing the dealership too much time.

12. Mr. Shaaya's vehicle continued to suffer from the DPF Defect following this repair. This is because when repairs are performed one defective component is merely replace with a similarly defective component. For example, in February of 2019 with 4,766 miles on his odometer, Mr. Shaaya's vehicle again displayed a DPF warning light and Mr. Shaaya promptly took his vehicle to Land Rover Manhattan. The service representative inspected the vehicle and attempted a DPF regeneration which failed, and replaced the DPF this time under warranty. Mr. Shaaya has continued to experience the DPF Defect since this repair.

**B. Defendant**

13. Defendant, Jaguar Land Rover LLC is a limited liability company organized under the laws of the State of Delaware and registered to do business throughout the United States. Jaguar Land Rover's corporate headquarters are located at 555 Macarthur Blvd., Mahwah, New Jersey 07430.

14. Jaguar Land Rover designees, manufactures, markets, distributes, services, repairs, sells and/or leases passenger vehicles, including the Class Vehicles, nationwide. Jaguar Land Rover is the warrantor and distributor of the Class Vehicles in the United States.

15. Whenever, in this Complaint, reference is made to any act, deed or conduct of Jaguar Land Rover, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 209 of 299 PageID: 220
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 60 of 150   Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 6 of 29 PageID: 6

actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

### III.   JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  There are more than 100 Class Members.  At least one Class Member is a citizen of a different state than the Defendant.

17.    This court also has federal question jurisdiction over this action under 28 U.S.C. §1331 because Plaintiff's claims under the Magnuson-Moss Act arise under federal law, 15 U.S.C. § 2301, et seq.  This Court has personal jurisdiction over Defendant because it's its principle place of business is located in New Jersey.

18.    Venue is proper in this District because Defendant is headquartered, and thus resides, in this District within the meaning of 28 U.S.C. §1391 and a substantial part of the acts and omissions alleged herein took place in this District, as the Class Vehicles are, were, and are regularly advertised, marketed, sold / leased and serviced in this District through Defendant's network of dealers.

### IV.   ADDITIONAL FACTUAL ALLEGATIONS

#### A.   How Defendant's DPF Functions

19.    Diesel particulate matter resulting from the incomplete combustion of diesel fuel produces soot (*i.e.*, black carbon) particles.  The expulsion of soot and other particles from diesel engines worsen the particulate matter pollution in the air and are harmful to the environment and health.

20.    A DPF is a device designed to remove diesel particulate matter from the exhaust gas of a diesel engine.  As exhaust travels through the filter particulate matter particles are trapped

Case 1:21-cv-14698-RMB-SAK Document 1-2 Filed 08/06/21 Page 210 of 299 PageID: 221
CAM-L-001836-21 06/21/2021 12:06:54 PM Pg 61 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679 Document 1 Filed 05/07/20 Page 7 of 29 PageID: 7

while the exhaust gas is allowed to escape. These particles must be burnt through a combustion process called regeneration, or the DPF will become clogged.

21. Regeneration, in turn, requires a high temperature to ensure effective combustion which is often only achieved under a high engine load. By design, therefore, regeneration may occur automatically when a vehicle is driven regularly at highway speeds for extended periods of time (i.e., in excess of twenty or thirty minutes). This process is called passive regeneration. Many common driving conditions such frequent city driving in slow moving traffic or even driving in cold weather may not provide a sufficient opportunity for passive regeneration to occur, causing particulate matter to build up in the filter. In such instances active regeneration—a process initiated by the vehicle's on-board computer to increase exhaust temperature so that the soot particles can be burnt -- is required. For the active regeneration process to be effective, the vehicle must be driven at highway speeds for an extended period of time.

22. Although Defendant has equipped its vehicles with warning lights to alert drivers when regeneration is necessary, this system is ineffective. Defendant's DPF warning system has three lights that may appear on the display panel. An amber light indicates regeneration is required, and instructs the driver to drive at highway speeds for approximately twenty minutes. A red light indicates that the DPF is full and instructs the driver to contact a service center. A green light will display when regeneration is complete. However, by the time the amber light appears the filter is often already substantially clogged and requires replacement, or will require replacement in an extremely short period of time. Consequently, if regeneration is even possible by the time of an amber light warning, the time to regenerate the filter is far too short.

23. Mr. Shaaya estimates that the amber warning light on his vehicle has illuminated approximately ten times since he has owned the car. The time Mr. Shaaya has had to regenerate

Case 1:21-cv-14698-RMB-SAK Document 1-3 Filed 08/06/21 Page 211 of 299 PageID: 222
CAM-L-001838-21 06/21/2021 12:06:54 PM Pg 82 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679 Document 1 Filed 05/07/20 Page 8 of 29 PageID: 8

his vehicle (i.e. the time between an amber warning light and a red warning light) has typically ranged from fifteen minutes to one hour, and has never been longer than a few hours. This window of time can translate to a driving distance of three or four miles in congested traffic before the amber light turns red.

24.     On more than one of these occasions, Mr. Shaaya's DPF failed to regenerate even though he followed the warning light's instructions.

25.     As one article explained: "There can be as little as a minute between the car alerting you to a problem and it going into limp home mode … In that time, and assuming you're on a clear road, you must start the regen process, which involves driving the car at no less than 37 mph for 10 minutes with the engine turning at over 2000 rpm."[1]  In other words, by the time the warning light comes on, it is often essentially too late.

26.     The DPF system in all Jaguar Land Rover diesel vehicles in the United States and Europe is the same or substantially similar.

**B.      Defendant's Knowledge of the DPF Defect**

27.     Defendant's DPF is prone to clog under normal driving conditions for much of the country, such as driving frequently in congested urban traffic or even cold weather.  A DPF-equipped vehicle must be driven at highway speeds on a regular basis for the DPF for the process of passive regeneration to clean the DPF automatically.  Defendant was necessarily aware of this at the time it sold the Class Vehicles, but failed to inform Plaintiff and Class Members.  The fact that Defendant's vehicles incorporate a DPF warning system (albeit ineffective) evidences Defendant's knowledge.

---

[1]  Getting    cleaned    out:    diesel    particulate    filters    10    years    on,    AutoCar, https://www.autocar.co.uk/car-news/features/getting-cleaned-out-diesel-particulate-filters-10-years (Feb. 3, 2019).

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 212 of 299 PageID: 223
CAM-L-001836-21   06/21/2021   12:06:54 PM   Pg 63 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 9 of 29 PageID: 9

28.     Since Defendant's introduction of diesel engine vehicles equipped with DPFs, Defendant became aware of the DPF Defect through sources not available to Plaintiff and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Defendant's network of dealers and directly to Defendant, aggregate warranty data compiled from Defendant's network of dealers, testing conducted by Defendant in response to consumer complaints, and repair order and parts data received by Defendant from Defendant's network of dealers.

29.     During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles which would necessarily have taken place prior to the sale of the Class Vehicles, Defendant, directly and/or through its agents or affiliated companies in the supply chain, necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's DPF system:  its capabilities including its ability to passively or actively regenerate, and the conditions required to do so; the vehicle's ability to detect when active regeneration is needed; whether the warnings given to drivers were adequate and timely; how the DPF would experience performance problems or fail; and, the cumulative and specific impacts on the DPF caused by wear and use, the passage of time, driver habits, driving patterns, environmental factors, etc.

30.     An adequate pre-release analysis of the design, engineering, and manufacture of the DPF system used for the Class Vehicles would have revealed to Defendant that it does not operate properly and is not fit for its intended use.  Thus, during the pre-release design stage of the Class Vehicles, Defendant would have known that the DPF system in the Class Vehicles was defective and would pose a safety risk to owners/lessees and the motoring public.

Case 1:21-cv-14698-RMB-SAK   Document 1-3   Filed 08/06/21   Page 213 of 299 PageID: 224
CAM-L-001836-21 P  06/21/2021 12:06:54 PM  Pg 64 of 150  Trans ID: LCV20211478782

Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 10 of 29 PageID: 10

31.     On January 11, 2015 Land Rover issued a press release touting the fuel efficient diesel powertrains in the 2016 model year Land Rover.[2]  The article describes, inter alia, how the exhaust gas recirculation ("EGR") system of the Land Rover takes low pressure gasses—after the DPF filter in the exhaust pipe—and feeds them back into the turbocharger inlet, resulting in a lower level of NOx emissions.  In a section titled "Tested and Proven in the USA" the article discusses the extensive diesel engine testing performed by Defendant in the United States:

> Land Rover engineers embarked on US testing schedule to ensure the new diesel engine could handle all US climate and terrain conditions.  By the time US sales have begun, the test fleet will have completed one million test miles.
>
> The test fleet has targeted the most extreme climates and diverse terrains imaginable across the US.  The new Range Rover and Range Rover Sport diesel have navigated from sea level to altitudes of 14,000 feet during the grueling test program.  To meet unique demands of the North American climate, engineers have undertaken testing year round, from the coldest winter days in Minnesota, to summertime in the deserts of the Southwest.

Surely such testing would have alerted Defendant to the fact that it's DPF's are prone to clog under various driving conditions, and that the DPF's warning light system is inadequate.

32.     In an August 2016 article, Jaguar boasts that "Throughout each stage of design, development and production, every component of a Jaguar goes through thousands of tests and checks for safety, durability and quality, ensuring that the finished product is the most reliable, dependable and safest car you can drive."[3]  The article goes on to detail the grueling physical testing to which vehicles are subjected:

> Although virtual engineering is a powerful tool, there's no substitute for physical testing in a laboratory environment as the ultimate proof of concept for reliability

---

[2]  *See* Land Rover Brings Two-Luxury Diesel SUV models North America Market available at https://media.landrover.com/en-us/news/2015/01/land-rover-brings-two-luxury-diesel-suv-models-north-america-market.

[3]  *See* https://www.jaguar.com/about-jaguar/reliability/testing-process.html

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 214 of 299 PageID: 225
CAM-L-001836-21  08/24/2021 12:08:54 PM  Pg 65 of 150  Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 11 of 29 PageID: 11

and durability. We have doubled the size of our structural test facilities in recent years, with a £22m investment to further enhance our state-of-the-art labs.

New transmission designs go through a continuous 12-week rig test, simulating a 10-year 240,000 kilometre cycle that includes town driving, high-speed highway driving and track driving. This is repeated six times for different engine and transmission variants, meaning that every new gearbox is tested for 72 weeks and 1.45 million kilometres – the equivalent of driving to the moon and back. There are also shift cycle tests that put the clutch through a gruelling series of high-speed shifts, and steady-state tests where the transmission is run at high levels of torque for long periods.

Our engines have their own comprehensive suite of static rig and dynamometer tests, with the new generation of Ingenium engines having gone through 72,000 hours of durability testing – equivalent to eight years of real-world tests – before they hit the road for two million kilometres of final validation testing.

Individual components can be tested in the Environmental Robotic Durability Cell, which uses four robots, which can be used to test everything from seatbelt activation and release, door opening and closing, and key turns. Vehicle noise, vibration and harshness qualities are also refined in advanced anechoic sound chambers.

Climate Chambers replicate the world's toughest weather conditions, freezing cars to -40ºC in hurricane-strength winds, or replicating the sort of +50ºC temperatures and solar loads of up to 1,200W/m2 that you'd expect in the Sahara desert – all without vehicles ever having to leave the UK. Water-tightness is proven with monsoon soak tests, drizzle tests that last up to 16 hours, and freeze tests.

Physical laboratory testing even extends to interior features such as the rotary JaguarDrive Selector, which was subject to every abuse imaginable during its development. "A bottle of cola is a tough test, as the sugar turns to treacle in hot climates," says Julian Jones, User Controls Manager. "Sand can also be bad if it gets in the DriveSelector's gears." Each test takes a month to run, with the DriveSelector having to cycle 60,000 times without fault.

Surely such testing would similarly have placed Defendant on notice of the DPF Defect.

33.     Defendant also would have known about the DPF Defect because of the higher than expected number of replacement exhaust filters ordered from Defendant, which should have alerted Defendant that the DPF system was defective. Defendant's service centers use Defendant's replacement parts that they order directly from Defendant. Therefore, Defendant would have detailed and accurate data regarding the number and frequency of replacement part orders,

Case 1:21-cv-14698-RMB-SAK Document 1-2 Filed 08/06/21 Page 215 of 299 PageID: 226
CAM-L-001836-21 P 06/21/2021 12.06.54 PM Pg 66 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679 Document 1 Filed 05/07/20 Page 12 of 29 PageID: 12

including replacement exhaust filters. The ongoing high sales of replacement exhaust filters was known to Defendant, and would have alerted Defendant that its DPF system was defective and posed a safety risk early on.

34.     Defendant also knew about the DPF Defect because numerous consumer complaints regarding DPF replacements were made directly to Defendant. The large number of complaints, and the consistency of their descriptions of DPF defect alerted Defendant to this serious Defect affecting the Class Vehicles.  The full universe of complaints made directly to Defendant about the DPF Defect is information presently in the exclusive custody and control of Defendant and is not yet available to Plaintiff prior to discovery.  However, upon information and belief, many Class Vehicle owners complained directly to Defendant and Defendant's dealerships and service centers about the repeated need for exhaust filter replacements that their vehicles experienced.

35.     Defendant also knew about the DPF Defect from a number of public complaints, and articles complaining of the DPF Defect, posted on the Internet and elsewhere.  By way of example on March 30, 2017, AOL published an article titled "Furious Range Rover owner vandalises his own car."[4]  In relevant part the article explained that:

> Dev Bath, 30, paid more than £70,000 for the black Range Rover Sport, and has threatened to burn it live on camera if manufacturer Land Rover fails to sort out its alleged issues.

> He ditched the SUV in a Mayfair street on Tuesday, and claims Land Rover has repeatedly asked him to remove the vehicle as it is 'damaging its brand'.

---

[4] *Id.*, available at https://www.aol.co.uk/cars/2017/03/30/furious-range-rover-owner-vandalises-his-own-car/?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8S8&guce_referrer_sig=AQAAAMGKzPXJAZKWcJEFQ7_yryLVEPmE0_Fkbsj9EKvfcvSGNDwOkEw8qE9GBe44vhI6ecbHTXHlaBa-HRgfS9vOoBKPndXzjByenvnqGCb40l2lTaPtDfkV6_rB94Ynbcuy68L-CBMsSgXLymREHd8CS7n_2wstvGFIWTXozi4dj9mN (Mar. 30, 2017).

Case 1:21-cv-14698-RMB-SAK Document 1-2 Filed 08/06/21 Page 216 of 299 PageID: 227
CAM-L-001836-21 06/21/2021 12:06:54 PM Pg 67 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679 Document 1 Filed 05/07/20 Page 13 of 29 PageID: 13

One of the messages Bath left on the car reads: 'Be careful, don't buy from Range Rover. I got ripped off. They sold me this junk.'

. . .

'I've only had it for 10 months and we've had nothing but problems. We had had it for six weeks when the yellow light first came on saying I had to drive the car for thirty minutes at 50mph.'

"No-one told me this when I bought the car. Where can you do that in London? Range Rover haven't done anything to help me so I thought what better place to park it than on Berkley Street in Mayfair?'

*Id.* The article concluded by a Land Rover spokeswoman commenting that: "The customer is complaining of a full DPF (Diesel Particulate Filter) owing to the urban cycle the vehicle has been used on, which would be the case in any diesel with a DPF. There is no fault with the vehicle. Land Rover is trying to work with the customer to bring the situation to a mutually satisfactory conclusion." *Id.* Therefore, by March of 2017, Jaguar Land Rover was aware of DPF Defect, but refused to acknowledge the Defect or offer an adequate fix, instead blaming the customer's driving style.

36. Notwithstanding its longstanding knowledge of the DPF Defect, Defendant has actively concealed the Defect, failed to disclose the Defect to its customers prior to or at the time of purchase of their vehicles, and failed to provide a remedy for the DFF Defect to date.

37. Customers have reported the DPF Defect in the Class Vehicles to Defendant directly and through its dealers. Indeed, when Plaintiff informed Land Rover Manhattan about his DFF Defect, the service representative informed him that this was a common problem and that the dealership would only be selling diesel vehicles in 2019 on special request to limit the number of diesels sold because the problems were costing the dealership too much time.

38. Defendant is fully aware of the DPF Defect contained in the Class Vehicles. Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiff and the other Class Members at the time of purchase or repair and thereafter. Specifically, Defendant:

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 217 of 299 PageID: 228
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 68 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 14 of 29 PageID: 14

    a.      failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the DPF Defect;

    b.      failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their DPFs were not in good working order, were defective, and were not fit for their intended purpose; and,

    c.      failed to disclose and/or actively concealed the fact that the Class Vehicles and their DPFs were defective, despite the fact that Defendants learned of the DPF Defect prior to releasing its vehicles equipped with diesel engines, and prior to Plaintiff's purchase of his vehicle.

39.     Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the DPF Defect contained in the Class Vehicles.

40.     Defendant has not recalled the Class Vehicles to repair the DPF Defect, has not offered to its customers a suitable repair or replacement of parts related to the DPF Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the DPF Defect.

41.     Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

42.     As a result of the DPF Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiff, expect and assume that a vehicle's DPF and related components are not defective and

Case 1:21-cv-14698-RMB-SAK Document 1-2 Filed 08/06/21 Page 218 of 299 PageID: 229
CAM-L-001836-21 06/21/2021 12:06:54 PM Pg 69 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679 Document 1 Filed 05/07/20 Page 15 of 29 PageID: 15

will not malfunction while operating the vehicle as it is intended. Plaintiff and Class Members further expect and assume that Defendant will not sell or lease vehicles with known safety defects, such as the DPF Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable repair or non-defective replacement.

## C. **Tolling of the Statute of Limitations**

43. Plaintiff and the other Class Members were not reasonably able to discover the DPF Defect, despite their exercise of due diligence.

44. Despite their due diligence, Plaintiff and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their DPF systems was concealed from them.

45. In addition, even after Class Members contacted Defendant and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their DPFs, they were routinely told by Defendant and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

46. Hence, any applicable statute of limitation, if any, has been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein.

## V. **CLASS ACTION ALLEGATIONS**

47. Plaintiff bring this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

48. The Class and Sub-Class are defined as follows:

> **Nationwide Class:** All persons who purchased or leased a diesel engine-powered 2018-2020 Land Rover Range Rover or other diesel engine-powered Jaguar Land

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 219 of 299 PageID: 230
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 70 of 150   Trans ID: LCV20211478789

Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 16 of 29 PageID: 16

Rover vehicle equipped with a substantially similar DPF system within the United States.

**New York Sub-Class:** All persons who purchased or leased a diesel engine-powered 2018-2020 Land Rover Range Rover or other diesel engine-powered Jaguar Land Rover vehicle equipped with a substantially similar DPF system within the State of New York.

49.  Excluded from the Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class definition, and to add subclasses, if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

50.  **Numerosity**: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from, inter alia, information and records in Defendant's possession, custody, or control.

51.  **Typicality**: The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendant which is subject to the DPF Defect. The representative Plaintiff, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing a defective or full DPF. Further, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 220 of 299 PageID: 231
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 71 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 17 of 29 PageID: 17

52.   **Commonality:** There are numerous questions of law and fact common to Plaintiff and the Classes that predominate over any question affecting only individual Class Members. These common legal and factual questions include the following:

a.   whether the Class Vehicles suffer from the DPF Defect;

b.   whether the DPF Defect constitutes an unreasonable safety hazard;

c.   whether the defective nature of the Class Vehicles' DPF system constitutes a material fact;

d.   whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' DPF system to Plaintiff and the other Class Members;

e.   whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

f.   whether Defendant knew or reasonably should have known of the DPF Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

g.   Whether Defendant violated: (1) New York's General Business Law for Deceptive Acts or Practices § 349; (2) Breach of Express Warranty (N.Y. U.C.C. § 2-313); (3) common law fraudulent omission; (4) Breach of Written Warranty Under the Magnuson-Moss Warranty Act (15 U.S.C. §2301, *et seq.*); and (5) was unjustly enriched.

53.   **Adequate Representation:** Plaintiff will fairly and adequately protect the interests of the Class Members.   Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 221 of 299 PageID: 232
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 72 of 156 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 18 of 29 PageID: 18

54.    **Predominance and Superiority:**   Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## VI.    CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF NEW YORK'S GENERAL BUSINESS LAW FOR DECEPTIVE ACTS OR PRACTICES § 349 ("N.Y. GBL")**
**(On behalf of the Nationwide Class or, in the Alternative, on behalf of the New York Sub-Class)**

55.    Plaintiff incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

56.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class, or in the alternative, the New York Sub-Class.

57.    Plaintiff and Class Members are "persons" within the meaning of N.Y. GBL § 349(h).

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 222 of 299 PageID: 233
CAM-L-001836-21   06/21/2021   12:06:54 PM   Pg 73 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 19 of 29 PageID: 19

58.     The N.Y. GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." Defendant's conduct, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL § 349. Furthermore, Defendant's deceptive acts and practices, which were intended to mislead consumers who were in the process of purchasing and/or leasing the Defective Vehicles, constitute conduct directed at consumers.

59.     Defendant knew that the Class Vehicles' suffered from the DPF Defect, as described herein.

60.     In failing to disclose the DPF Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in deceptive acts or practices within the meaning of the N.Y. GBL § 349.

61.     Defendant was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' DPFs because:

    a.     Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' DPF system;

    b.     Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their DPF systems were defective until after they purchased the Class Vehicles;

    c.     Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the DPF Defect; and

    d.     Defendant actively concealed the defective nature of the Class Vehicles' DPF system from Plaintiff and Class Members at the time of sale and thereafter.

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 223 of 299 PageID: 234
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 74 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 20 of 29 PageID: 20

62.     The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them.

63.     Defendant continued to conceal the defective nature of the Class Vehicles and their DPFs even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of this systematic problem today.

64.     Plaintiff also asserts a violation of public policy arising from Defendant's withholding of material safety facts from consumers.  Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

65.     Defendant's omissions of material facts, as set forth herein, also constitute deceptive acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

66.     Thus, by its conduct, Defendant has engaged in deceptive acts or practices within the meaning of the N.Y. GBL § 349.

67.     Defendant's deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

68.     As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Had Plaintiff and other Class Members known that the Class Vehicles suffered from the DPF Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.  Moreover, Plaintiffs and Class Members have had to pay out of pocket expenses to repair the DPF Defect.

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 224 of 299 PageID: 235
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 75 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 21 of 29 PageID: 21

69.     Since Defendant's willful and knowing conduct caused injury to Plaintiff and Class Members, Plaintiff seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under N.Y. GBL § 349.

## COUNT II

### BREACH OF EXPRESS WARRANTY N.Y. U.C.C. § 2-313
### (On behalf of the Nationwide Class or, in the Alternative,
### on behalf of the New York Sub-Class)

70.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

71.     Plaintiff brings this cause of action on behalf of himself and the Nationwide Class, or in the alternative, the New York Sub-Class.

72.     Defendant provided all purchasers and lessees of the Class Vehicles with the NVLW described herein, which became a material part of the bargain.  Accordingly, Defendant's express warranty is an express warranty under New York law.

73.     In NVLW, Defendant expressly warranted that it covered "defects in factory-supplied materials or factory workmanship." Defendant's NVLW provided 48 months/50,000 miles Basic Coverage and 96 months/80,000 miles Emissions Coverage.  Plaintiff's vehicle is within the mileage and durational limits of both of these coverage periods.

74.     Defendant breached the express warranty through the acts and omissions described above.

75.     Plaintiff was not required to notify Defendant of the breach because affording Defendant a reasonable opportunity to cure its breach of written warranty would have been futile.

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 225 of 299 PageID: 236
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 76 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 22 of 29 PageID: 22

Defendant was on notice of the DPF Defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Class Vehicles' DPFs, and through other internal sources. Nevertheless, in connection with Plaintiff's November 2018 repair and request for warranty coverage, Defendant's customer relations department was contacted and placed on direct notice of Plaintiff's claim.

76. As a result of Defendant's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles have suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the DPF Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles DPFs are substantially certain to fail before their expected useful life has run.

77. As a result of Defendant's breach of the express warranty, Plaintiff and Class Members are entitled to legal and equitable relief against Defendant, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

78. In addition, with respect to Class Members whose vehicles failed after the expiration of the applicable warranty period and were repaired within reasonable time thereafter, the durational limits of the warranty are unconscionable pursuant to New York Uniform Commercial Code Sec. 2-302(1) and (2), because as alleged herein, Defendant was aware of the basic defects in the DPF system prior to selling or leasing the Class Vehicles and knew or should have known that the Class Vehicles suffered from the DPF Defect, but concealed or intentionally failed to reveal this information to Class Members in order to cause them to wait until after the warranty period to seek repairs.

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 226 of 299 PageID: 237
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 77 of 150   Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 23 of 29 PageID: 23

## COUNT III

### FRAUDULENT OMISSION
**(On behalf of the Nationwide Class or, in the Alternative,
on behalf of the New York Sub-Class)**

79.     Plaintiff incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

80.     Plaintiff brings this cause of action on behalf of himself and the Nationwide Class, or in the alternative, the New York Sub-Class.

81.     Defendant knew that the Class Vehicles' front DPF were defectively designed and/or manufactured, would fail, and were not suitable for their intended use.

82.     Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles and their DPFs.

83.     Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles' front DPF because:

a.      Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' DPF system;

b.      Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their DPF systems were defective until after they purchased the Class Vehicles;

c.      Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the DPF Defect; and

d.      Defendant actively concealed the defective nature of the Class Vehicles' DPF system from Plaintiff and Class Members at the time of sale and thereafter.

Case 1:21-cv-14698-RMB-SAK   Document 1-3   Filed 08/06/21   Page 227 of 299 PageID: 238
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 78 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 24 of 29 PageID: 24

84.     The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles' DPF systems, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

85.     Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defect(s) contained in the Class Vehicles' DPF system in order to induce Plaintiff and Class Members to act thereon.  Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Vehicles.

86.     Defendant continued to conceal the defective nature of the Class Vehicles' DPF even after Class Members began to report problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem today.

87.     As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

<div align="center">

**COUNT IV**

**BREACH OF WRITTEN WARRANTY UNDER MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On behalf of the Nationwide Class or, in the Alternative,
on behalf of the New York Sub-Class)**

</div>

88.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

89.     Plaintiff brings this cause of action on behalf of himself and the Nationwide Class, or in the alternative, the New York Sub-Class.

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 228 of 299 PageID: 239
CAM-L-001836-21  06/21/2021 12:06:54 PM  Pg 79 of 150  Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 25 of 29 PageID: 25

90. Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

91. Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

92. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

93. Defendant's express warranty is a "written warranty" within the meaning of 15 U.S.C. §2301(6).

94. Defendant breached the express warranty by virtue of the above-described acts.

95. Plaintiff and the other Class Members notified Defendant of the breach within a reasonable time and/or were not required to do so. Defendant was also on notice of the DPF Defect from, among other sources, Defendant's extensive pre-release testing, complaints from Class Members and dealer requests/feedback.

96. Defendant's breach of the express warranty deprived Plaintiff and Class Members of the benefits of their bargains.

97. As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and the other Class Members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate.

Case 1:21-cv-14698-RMB-SAK   Document 1-3   Filed 08/06/21   Page 229 of 299 PageID: 240
CAM-L-001836-21   06/21/2021 12:08:54 PM   Pg 80 of 150   Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 26 of 29 PageID: 26

## COUNT V

### UNJUST ENRICHMENT
#### (On behalf of the Nationwide Class or, in the Alternative,
#### on behalf of the New York Sub-Class)

98.　　Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

99.　　Plaintiff brings this cause of action on behalf of himself and the Nationwide Class, or in the alternative, the New York Sub-Class.

100.　　As a direct and proximate result of Defendant's failure to disclose known defects, Defendant has profited through the sale and lease of the Class Vehicles. Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

101.　　Additionally, as a direct and proximate result of Defendant failure to disclose the DPF Defect in the Class Vehicles, Plaintiff and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

102.　　Defendant has been unjustly enriched due to the known DPF Defect in the Class Vehicles through the use money paid that earned interest or otherwise added to Defendant profits when said money should have remained with Plaintiff and Class Members.

103.　　As a result of Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

### PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment against Defendant, and issue an order providing the following relief:

Case 1:21-cv-14698-RMB-SAK Document 1-2 Filed 08/06/21 Page 230 of 299 PageID: 241
CAM-L-001838-21 06/21/2021 12:08:54 PM Pg 81 of 150 Trans ID: LCV20211478782

Case 2:20-cv-05679 Document 1 Filed 05/07/20 Page 27 of 29 PageID: 27

## AS TO THE CLASS CLAIMS

a.      That Defendant provide notice, in a form pre-approved by the counsel identified below, to all Class Members, and in the said notice offer to replace the defective DPF system contained in every Class Vehicle with a non-defective DPF system;

b.      That Defendant provide notice, in a form pre-approved by the counsel identified below, to all Class Members, and in the said notice extend the warranty for the Class Vehicles' DPF system as appropriate;

c.      That Defendant offer to reimburse all Class Members all expenses already incurred as a result of the DPF Defect, including repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.);

d.      That Defendant immediately cease the sale and leasing of the Class Vehicles at all authorized Jaguar Land Rover dealerships without first notifying the purchasers of the DPF Defect, and otherwise immediately cease to engage in the violations of law as set forth above;

e.      Damages and restitution in an amount to be proven at trial;

f.      An order certifying the proposed Class and Sub-Class, designating Plaintiff as named representative of the Class and Sub-Class, and designating the undersigned as Class Counsel;

g.      A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles' DPF;

h.      Any and all remedies provided pursuant to the state consumer protection laws, express and implied warranty laws, and fraudulent omissions laws alleged herein;

i.      An award to Plaintiff and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

Case 1:21-cv-14698-RMB-SAK Document 1-3 Filed 08/06/21 Page 231 of 299 PageID: 242
CAM-L-001836-21 06/21/2021 12:06:54 PM Pg 82 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679 Document 1 Filed 05/07/20 Page 28 of 29 PageID: 28

    j.    A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiff and Class Members;

    k.    An award of attorneys' fees and costs, as allowable under the N.J. Stat. Ann. § 56:8-19, N.Y. G.BL. § 349(h), and the other laws pursuant to which Plaintiff's claims are brought or as otherwise allowed by law;

    l.    An award of pre-judgment and post-judgment interest, as provided by law;

    m.    Leave to amend the Complaint to add additional class representatives, and conform to the evidence produced at trial; and

    n.    Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: May 7, 2020

Respectfully submitted,

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
**COHN LIFLAND PEARLMAN**
**HERRMANN & KNOPF LLP**
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Tel.: (201) 845-9600
Fax: (201) 845-9423
kmp@njlawfirm.com

Marc L. Godino
*(pro hac vice to be filed)*
Lionel Z. Glancy
*(pro hac vice to be filed)*
Danielle L. Manning
*(pro hac vice to be filed*
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160
mgodino@glancylaw.com
lglancy@glancylaw.com
dmanning@glancylaw.com

Case 1:21-cv-14698-RMB-SAK   Document 1-2   Filed 08/06/21   Page 232 of 299 PageID: 243
CAM-L-001836-21   06/21/2021 12:06:54 PM   Pg 83 of 150 Trans ID: LCV20211478782
Case 2:20-cv-05679   Document 1   Filed 05/07/20   Page 29 of 29 PageID: 29

Kevin Landau
(*pro hac vice* to be filed)
Charles Goulding
(*pro hac vice* to be filed)
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (646) 873-7654
Fax: (212) 931-0703
klandau@tcllaw.com
cgoulding@tcllaw.com

Mark S. Greenstone
 (*pro hac vice* to be filed)
**GREENSTONE LAW PC**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9156
FaX: (310) 201-9160
mgreenstone@greenstonelaw.com


*Counsel for Plaintiff and the Class*

# ClassAction.org

This complaint is part of ClassAction.org's searchable class action lawsuit database and can be found in this post: Class Action Claims Diesel Filter Defect in Jaguar, Land Rover, Range Rover Vehicles Poses an 'Unreasonable' Safety Hazard

# COMPLAINT
# EXHIBIT H

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

If a motor vehicle is returned to the manufacturer under the provisions of the New Jersey Lemon Law or similar statute of another state or as a result of a legal action or an informal dispute settlement procedure, it shall not be resold or re-leased in New Jersey unless the manufacturer has the vehicle's title stamped **"R – RETURNED TO THE MANUFACTURER UNDER LEMON LAW OR OTHER PROCEEDING."** A copy of the stamped title shall be submitted to the New Jersey Motor Vehicle Commission (MVC) to be permanently branded as a Lemon (Status "L" on your NJ title).

The list below should not be considered a complete list of all vehicles repurchased under the New Jersey Lemon Law or similar laws of other states. The vehicles being reported on this website are up to 12 model years old. The Division of Consumer Affairs makes no representation regarding the current condition of any particular vehicle.

### To search for a vehicle in the list below:

**1.** Hit the "Ctrl" key and the "F" key at the same time.
**2.** Type the VIN (Vehicle Identification Number) in the search box that pops-up.
**3.** Click "Enter"

*Remember, the letters "I", "O" and "Q" are not used in a VIN.*

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2010 | ACURA | MDX | 2HNYD2H7XAH503529 |
| 2010 | ACURA | RL | JH4KB2F67AC000098 |
| 2010 | ACURA | RL | JH4KB2F67AC000098 |
| 2010 | ACURA | TL | 19UUA9E59AA000700 |
| 2010 | ACURA | TL | 19UUA9E53AA004287 |
| 2010 | ACURA | TL | 19UUA8F51AA008718 |
| 2010 | ACURA | TSX | JH4CU2F6XAC008470 |
| 2010 | ACURA | TSX | JH4CU2F69AC004099 |
| 2011 | ACURA | TL | 19UUA8F56BA002950 |
| 2012 | ACURA | TL | 19UUA9F23CA009030 |
| 2012 | ACURA | TSX | JH4CU2F63CC007311 |
| 2012 | ACURA | TSX | JH4CU2F4XCC000385 |
| 2012 | ACURA | TSX | JH4CU2F65CC028290 |
| 2013 | ACURA | ILX | 19VDE2E55DE000357 |
| 2013 | ACURA | MDX | 2HNYD2H44DH501219 |
| 2013 | ACURA | RDX | 5J8TB4H54DL019526 |
| 2013 | ACURA | ZDX | 2HNYB1H67DH500261 |
| 2014 | ACURA | MDX | 5FRYD4H45EB023903 |
| 2014 | ACURA | MDX | 5FRYD4H69EB033139 |
| 2014 | ACURA | MDX | 5FRYD3H41EB010317 |
| 2014 | ACURA | MDX | 5FRYD3H44EB004480 |
| 2014 | ACURA | RLX | JH4KC1F34EC001082 |
| 2014 | ACURA | TSX | JH4CU2F48EC001165 |
| 2015 | ACURA | MDX | 5FRYD4H2XFB017661 |
| 2015 | ACURA | MDX | 5FRYD4H40FB023146 |
| 2015 | ACURA | MDX | 5FRYD4H43FB002906 |
| 2015 | ACURA | RDX | 5J8TB4H54FL031355 |
| 2015 | ACURA | RDX | 5J8TB4H59FL014325 |
| 2015 | ACURA | TLX | 19UUB1F37FA003971 |
| 2015 | ACURA | TLX | 19UUB2F53FA005532 |
| 2015 | ACURA | TLX | 19UUB2F3XFA006031 |
| 2015 | ACURA | TLX | 19UUB3F52FA007889 |
| 2015 | ACURA | TLX | 19UUB3F56FA007023 |
| 2015 | ACURA | TLX | 19UUB1F3XFA019176 |
| 2015 | ACURA | TLX | 19UUB2F31FA014311 |
| 2015 | ACURA | TLX | 19UUB3F72FA005741 |
| 2016 | ACURA | MDX | 5FRYD4H46GB015165 |
| 2016 | ACURA | MDX | 5FRYD4H96GB015999 |
| 2016 | ACURA | MDX | 5FRYD4H22GB002704 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2020 | KIA | TELLURIDE | 5XYP34HC4LG031536 |
| 2020 | KIA | TELLURIDE | 5XYP3DHC2LG018073 |
| 2020 | KIA | TELLURIDE | 5XYP6DHC5LG092403 |
| 2021 | KIA | K5 | 5XXG64J24MG004447 |
| 2021 | KIA | SELTOS | KNDEUCAA0M7041826 |
| 2021 | KIA | SELTOS | KNDEU2AA3M7055505 |
| 2017 | LAMBORGHINI | AVENTADOR | ZHWUG4ZD2HLA06428 |
| 2018 | LAMBORGHINI | AVENTADOR | ZHWUG4ZD2JLA06595 |
| 2018 | LAMBORGHINI | AVENTADOR | ZHWUV4ZDXJLA07662 |
| 2010 | LAND ROVER | LR2 | SALFR2BNXAH173072 |
| 2010 | LAND ROVER | LR2 | SALFR2BNXAH154232 |
| 2010 | LAND ROVER | LR4 | SALAK2D4XAA521416 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D47AA229632 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D44AA223710 |
| 2010 | LAND ROVER | RANGE ROVER | SALMF1D40AA316473 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D41AA239427 |
| 2010 | LAND ROVER | RANGE ROVER | SALSF2D40AA216712 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D48AA232071 |
| 2010 | LAND ROVER | RANGE ROVER | SALMF1D42AA324459 |
| 2010 | LAND ROVER | RANGE ROVER | SALMF1E42AA325870 |
| 2010 | LAND ROVER | RANGE ROVER | SALSF2D40AA234403 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D4XAA224750 |
| 2010 | LAND ROVER | RANGE ROVER | SALMF1E40AA311711 |
| 2010 | LAND ROVER | RANGE ROVER | SALSH2E49AA231394 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D4XAA242102 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D40AA230346 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D41AA244465 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D44AA241656 |
| 2010 | LAND ROVER | RANGE ROVER | SALME1D49AA321691 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D48AA225119 |
| 2010 | LAND ROVER | RANGE ROVER | SALMF1D49AA311305 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D40AA239936 |
| 2010 | LAND ROVER | RANGE ROVER | SALME1D46AA319364 |
| 2010 | LAND ROVER | RANGE ROVER | SALMF1D44AA315701 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D40AA223185 |
| 2010 | LAND ROVER | RANGE ROVER | SALMF1D44AA320588 |
| 2010 | LAND ROVER | RANGE ROVER | SALSH2E43AA246487 |
| 2010 | LAND ROVER | RANGE ROVER | SALSK2D49AA234170 |
| 2010 | LAND ROVER | RANGE ROVER | SALSH2E44AA252637 |
| 2010 | LAND ROVER | RANGE ROVER | SALMP1E43AA304930 |
| 2010 | LAND ROVER | RANGE ROVER | SALSH2E4XAA248348 |
| 2010 | LAND ROVER | RANGE ROVER | SALSF2D43AA245489 |
| 2010 | LAND ROVER | RANGE ROVER | SALMF1E49AA307611 |
| 2011 | LAND ROVER | LR2 | SALFR2BN7BH271493 |
| 2011 | LAND ROVER | LR2 | SALFR2BN7BH266116 |
| 2011 | LAND ROVER | LR4 | SALAK2D4XBA568091 |
| 2011 | LAND ROVER | LR4 | SALAK2D49BA577980 |
| 2011 | LAND ROVER | LR4 | SALAG2D45BA590694 |
| 2011 | LAND ROVER | LR4 | SALAK2D40BA559285 |
| 2011 | LAND ROVER | LR4 | SALAK2D48BA588713 |
| 2011 | LAND ROVER | LR4 | SALAK2D42BA547073 |
| 2011 | LAND ROVER | RANGE ROVER | SALME1D43BA338584 |
| 2011 | LAND ROVER | RANGE ROVER | SALSF2D42BA296838 |
| 2011 | LAND ROVER | RANGE ROVER | SALSH2E46BA279517 |
| 2011 | LAND ROVER | RANGE ROVER | SALSK2D47BA294952 |
| 2011 | LAND ROVER | RANGE ROVER | SALSK2D48BA713746 |
| 2011 | LAND ROVER | RANGE ROVER | SALMF1E4XBA331661 |
| 2011 | LAND ROVER | RANGE ROVER | SALSF2D42BA290280 |
| 2011 | LAND ROVER | RANGE ROVER | SALMF1E44BA347774 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2011 | LAND ROVER | RANGE ROVER | SALSH2E43BA716700 |
| 2011 | LAND ROVER | RANGE ROVER | SALSK2D40BA714437 |
| 2011 | LAND ROVER | RANGE ROVER | SALSH2E41BA707235 |
| 2011 | LAND ROVER | RANGE ROVER | SALSF2D41BA701183 |
| 2011 | LAND ROVER | RANGE ROVER | SALMF1D48BA354969 |
| 2011 | LAND ROVER | RANGE ROVER | SALSK2D48BA295835 |
| 2011 | LAND ROVER | RANGE ROVER | SALME1D42BA358468 |
| 2011 | LAND ROVER | RANGE ROVER | SALSF2D49BA711699 |
| 2011 | LAND ROVER | RANGE ROVER | SALMF1D44BA346190 |
| 2011 | LAND ROVER | RANGE ROVER | SALSK2D44BA707880 |
| 2012 | LAND ROVER | LR2 | SALFR2BN2CH286775 |
| 2012 | LAND ROVER | LR4 | SALAG2D42CA627251 |
| 2012 | LAND ROVER | LR4 | SALAK2D48CA639760 |
| 2012 | LAND ROVER | LR4 | SALAG2D4XCA608902 |
| 2012 | LAND ROVER | LR4 | SALAG2D41CA611462 |
| 2012 | LAND ROVER | LR4 | SALAG2D47CA637628 |
| 2012 | LAND ROVER | RANGE ROVER | SALVP1BG3CH602830 |
| 2012 | LAND ROVER | RANGE ROVER | SALVT2BG8CH615493 |
| 2012 | LAND ROVER | RANGE ROVER | SALVV2BG2CH659564 |
| 2012 | LAND ROVER | RANGE ROVER | SALSF2D43CA720528 |
| 2012 | LAND ROVER | RANGE ROVER | SALSK2D45CA718551 |
| 2012 | LAND ROVER | RANGE ROVER | SALVT1BG5CH000510 |
| 2012 | LAND ROVER | RANGE ROVER | SALMF1D48CA385656 |
| 2012 | LAND ROVER | RANGE ROVER | SALVR2BG2CH606027 |
| 2012 | LAND ROVER | RANGE ROVER | SALMF1E48CA362411 |
| 2012 | LAND ROVER | RANGE ROVER | SALMF1D45CA386571 |
| 2012 | LAND ROVER | RANGE ROVER | SALSK2D47CA742754 |
| 2012 | LAND ROVER | RANGE ROVER | SALSK2D41CA731863 |
| 2012 | LAND ROVER | RANGE ROVER | SALVT2BG4CH660205 |
| 2012 | LAND ROVER | RANGE ROVER | SALVV2BG4CH662191 |
| 2012 | LAND ROVER | RANGE ROVER | SALME1D48CA360971 |
| 2012 | LAND ROVER | RANGE ROVER | SALMF1E43CA387524 |
| 2012 | LAND ROVER | RANGE ROVER | SALVV2BG7CH689448 |
| 2012 | LAND ROVER | RANGE ROVER | SALVT2BG7CH649439 |
| 2012 | LAND ROVER | RANGE ROVER | SALVT2BG8CH636134 |
| 2012 | LAND ROVER | RANGE ROVER | SALME1D40CA362231 |
| 2012 | LAND ROVER | RANGE ROVER | SALME1D46CA372441 |
| 2012 | LAND ROVER | RANGE ROVER | SALVV2BGXCH660347 |
| 2012 | LAND ROVER | RANGE ROVER | SALVR1BG6CH608583 |
| 2012 | LAND ROVER | RANGE ROVER | SALVT1BG0CH000480 |
| 2012 | LAND ROVER | RR | SALMF1E42CA390236 |
| 2013 | LAND ROVER | LR2 | SALFR2BG4DH360958 |
| 2013 | LAND ROVER | LR2 | SALFR2BG0DH321607 |
| 2013 | LAND ROVER | LR4 | SALAK2D48DA693027 |
| 2013 | LAND ROVER | RANGE ROVER | SALVR2BG7DH716492 |
| 2013 | LAND ROVER | RANGE ROVER | SALVT1BG6DH717662 |
| 2013 | LAND ROVER | RANGE ROVER | SALVP2BG3DH806664 |
| 2013 | LAND ROVER | RANGE ROVER | SALSF2D43DA807153 |
| 2013 | LAND ROVER | RANGE ROVER | SALGS2DF1DA100698 |
| 2013 | LAND ROVER | RANGE ROVER | SALVP1BG0DH714230 |
| 2013 | LAND ROVER | RANGE ROVER | SALGS2DF2DA113508 |
| 2013 | LAND ROVER | RANGE ROVER | SALSF2D45DA809549 |
| 2013 | LAND ROVER | RANGE ROVER | SALVP2BG2DH843320 |
| 2013 | LAND ROVER | RANGE ROVER | SALVR2BG8DH800840 |
| 2013 | LAND ROVER | RANGE ROVER | SALGS2EF1DA121064 |
| 2013 | LAND ROVER | RANGE ROVER | SALSH2E47DA794139 |
| 2013 | LAND ROVER | RANGE ROVER | SALVR2BG6DH733588 |
| 2013 | LAND ROVER | RANGE ROVER | SALVR2BG6DH755364 |
| 2013 | LAND ROVER | RANGE ROVER | SALSH2E40DA784018 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2013 | LAND ROVER | RANGE ROVER | SALGS2EF0DA113148 |
| 2013 | LAND ROVER | RANGE ROVER | SALGS2EF8DA102057 |
| 2013 | LAND ROVER | RANGE ROVER | SALSK2D49DA791343 |
| 2013 | LAND ROVER | RANGE ROVER | SALGS2DF1DA115055 |
| 2013 | LAND ROVER | RANGE ROVER | SALSF2D47DA782614 |
| 2013 | LAND ROVER | RANGE ROVER | SALVP2BGXDH839757 |
| 2013 | LAND ROVER | RANGE ROVER | SALVT2BG3DH814355 |
| 2013 | LAND ROVER | RANGE ROVER | SALVN2BG7DH730758 |
| 2013 | LAND ROVER | RANGE ROVER | SALVP2BG8DH744453 |
| 2013 | LAND ROVER | RANGE ROVER | SALSK2D40DA787763 |
| 2013 | LAND ROVER | RANGE ROVER | SALSF2D45DA774690 |
| 2013 | LAND ROVER | RANGE ROVER | SALSK2D40DA811754 |
| 2013 | LAND ROVER | RANGE ROVER | SALSK2D43DA773257 |
| 2013 | LAND ROVER | RANGE ROVER | SALVP2BG0DH813880 |
| 2013 | LAND ROVER | RR | SALSH2E47DA788048 |
| 2014 | LAND ROVER | LR4 | SALAK2V60EA704619 |
| 2014 | LAND ROVER | LR4 | SALAK2V64EA701058 |
| 2014 | LAND ROVER | LR4 | SALAG2V6XEA707674 |
| 2014 | LAND ROVER | LR4 | SALAK2V64EA716126 |
| 2014 | LAND ROVER | LR4 | SALAK2V64EA726395 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG0EH876737 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG9EH878003 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG3EH896061 |
| 2014 | LAND ROVER | RANGE ROVER | SALVV2BG3EH880903 |
| 2014 | LAND ROVER | RANGE ROVER | SALVR1BG0EH933345 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG4EH954596 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG6EH904511 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG2EH894155 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2WF3EA330863 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2WF8EA330745 |
| 2014 | LAND ROVER | RANGE ROVER | SALGS2VF3EA126672 |
| 2014 | LAND ROVER | RANGE ROVER | SALVT2BG6EH900423 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2WFXEA333680 |
| 2014 | LAND ROVER | RANGE ROVER | SALGS2TF6EA153903 |
| 2014 | LAND ROVER | RANGE ROVER | SALGS2EFXEA140777 |
| 2014 | LAND ROVER | RANGE ROVER | SALVR2BG6EH941830 |
| 2014 | LAND ROVER | RANGE ROVER | SALWG2WF0EA349957 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2WF3EA359828 |
| 2014 | LAND ROVER | RANGE ROVER | SALWV2TF3EA382137 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2WF6EA369737 |
| 2014 | LAND ROVER | RANGE ROVER | SALGV2EF1EA142943 |
| 2014 | LAND ROVER | RANGE ROVER | SALGS2WF7EA134823 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2WF9EA349112 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2EFXEA337181 |
| 2014 | LAND ROVER | RANGE ROVER | SALGS2WFXEA178962 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG2EH932967 |
| 2014 | LAND ROVER | RANGE ROVER | SALGS2EFXEA134395 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG1EH935147 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2TF4EA358529 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2WF4EA349292 |
| 2014 | LAND ROVER | RANGE ROVER | SALWV2TF3EA341667 |
| 2014 | LAND ROVER | RANGE ROVER | SALGS3TF4EA185254 |
| 2014 | LAND ROVER | RANGE ROVER | SALWV2TF2EA365149 |
| 2014 | LAND ROVER | RANGE ROVER | SALVV2BG0EH953984 |
| 2014 | LAND ROVER | RANGE ROVER | SALVV2BG6EH866686 |
| 2014 | LAND ROVER | RANGE ROVER | SALVN2BG3EH890203 |
| 2014 | LAND ROVER | RANGE ROVER | SALGS3TF6EA185661 |
| 2014 | LAND ROVER | RANGE ROVER | SALGW3TF7EA170347 |
| 2014 | LAND ROVER | RANGE ROVER | SALVP2BG9EH875540 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2014 | LAND ROVER | RANGE ROVER | SALWR2VF3EA304121 |
| 2014 | LAND ROVER | RANGE ROVER | SALWR2WF5EA366263 |
| 2014 | LAND ROVER | RR | SALGS2WFXEA181795 |
| 2014 | LAND ROVER | RR | SALGS2WF5EA191537 |
| 2015 | LAND ROVER | DISCOVERY | SALCR2BG0FH516645 |
| 2015 | LAND ROVER | DISCOVERY | SALCR2BG1FH536371 |
| 2015 | LAND ROVER | DISCOVERY | SALCR2BG6FH533059 |
| 2015 | LAND ROVER | DISCOVERY | SALCR2BG9FH512030 |
| 2015 | LAND ROVER | DISCOVERY | SALCT2BG4FH540691 |
| 2015 | LAND ROVER | DISCOVERY | SALCR2BG5FH518178 |
| 2015 | LAND ROVER | EVOQUE | SALVR2BG0FH965185 |
| 2015 | LAND ROVER | EVOQUE | SALVT2BG1FH018318 |
| 2015 | LAND ROVER | LR2 | SALFR2BG8FH421277 |
| 2015 | LAND ROVER | LR4 | SALAK2V69FA761189 |
| 2015 | LAND ROVER | LR4 | SALAG2V66FA744206 |
| 2015 | LAND ROVER | LR4 | SALAG2V64FA758315 |
| 2015 | LAND ROVER | LR4 | SALAK2V63FA743318 |
| 2015 | LAND ROVER | LR4 | SALAG2V64FA750425 |
| 2015 | LAND ROVER | LR4 | SALAG2V61FA768395 |
| 2015 | LAND ROVER | LR4 | SALAG2V6XFA766466 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS2TF6FA217262 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS2VF7FA204016 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2TF6FA605115 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2TF3FA611891 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS2TF4FA225277 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS3TF8FA215986 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2TF6FA511204 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2TF6FA602375 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2TF8FA511303 |
| 2015 | LAND ROVER | RANGE ROVER | SALVP2BG7FH065809 |
| 2015 | LAND ROVER | RANGE ROVER | SALVT2BG8FH021037 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2TF4FA628067 |
| 2015 | LAND ROVER | RANGE ROVER | SALWG2VF6FA617400 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2VF4FA619737 |
| 2015 | LAND ROVER | RANGE ROVER | SALVN2BG3FH985930 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2VF2FA511536 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS2VF8FA209872 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS2TF3FA213539 |
| 2015 | LAND ROVER | RANGE ROVER | SALVP2BG7FH962340 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2TF5FA626831 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS2TF7FA217450 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2VF3FA628364 |
| 2015 | LAND ROVER | RANGE ROVER | SALVP2BG4FH072071 |
| 2015 | LAND ROVER | RANGE ROVER | SALVP2BG2FH075096 |
| 2015 | LAND ROVER | RANGE ROVER | SALVR2BG0FH074538 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2VF7FA628710 |
| 2015 | LAND ROVER | RANGE ROVER | SALWG2VF0FA529409 |
| 2015 | LAND ROVER | RANGE ROVER | SALVN2BG6FH075981 |
| 2015 | LAND ROVER | RANGE ROVER | SALVP1BG5FH034813 |
| 2015 | LAND ROVER | RANGE ROVER | SALVP2BG4FH968497 |
| 2015 | LAND ROVER | RANGE ROVER | SALVP2BG4FH015854 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2VFXFA506858 |
| 2015 | LAND ROVER | RANGE ROVER | SALWG2VF9FA625281 |
| 2015 | LAND ROVER | RANGE ROVER | SALWR2VF9FA508911 |
| 2015 | LAND ROVER | RANGE ROVER | SALWZ2EF7FA518935 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS2TF9FA227218 |
| 2015 | LAND ROVER | RANGE ROVER | SALVN2BG3FH974751 |
| 2015 | LAND ROVER | RANGE ROVER | SALGS2TF8FA219384 |
| 2015 | LAND ROVER | RANGE ROVER | SALGR2VF9FA214980 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2015 | LAND ROVER | RANGE ROVER | SALWR2VF6FA538089 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BGXGH548571 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BG7GH547314 |
| 2016 | LAND ROVER | DISCOVERY | SALCP2BG5GH562334 |
| 2016 | LAND ROVER | DISCOVERY | SALCP2BG7GH550217 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG8GH569336 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG9GH554618 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BG1GH586691 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BG4GH581016 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BG9GH558072 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BGXGH568884 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG2GH592501 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BGXGH600880 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG6GH557668 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG3GH548071 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BGXGH578426 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG2GH548496 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG4GH563470 |
| 2016 | LAND ROVER | DISCOVERY | SALCP2BG8GH601000 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BGXGH569855 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG3GH594029 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG0GH624426 |
| 2016 | LAND ROVER | DISCOVERY | SALCP2BG1GH548964 |
| 2016 | LAND ROVER | DISCOVERY | SALCP2BG3GH601471 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BG3GH564319 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BG8GH566695 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG9GH620519 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG6GH565270 |
| 2016 | LAND ROVER | DISCOVERY | SALCP2BG2GH576353 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BG4GH548534 |
| 2016 | LAND ROVER | DISCOVERY | SALCR2BG4GH546233 |
| 2016 | LAND ROVER | DISCOVERY | SALCT2BG5GH624648 |
| 2016 | LAND ROVER | LR4 | SALAK2V64GA795736 |
| 2016 | LAND ROVER | LR4 | SALAK2V68GA817429 |
| 2016 | LAND ROVER | LR4 | SALAG2V69GA806294 |
| 2016 | LAND ROVER | LR4 | SALAG2V63GA801334 |
| 2016 | LAND ROVER | LR4 | SALAG2V69GA839411 |
| 2016 | LAND ROVER | LR4 | SALAC2V68GA799267 |
| 2016 | LAND ROVER | LR4 | SALAG2V66GA794699 |
| 2016 | LAND ROVER | LR4 | SALAG2V62GA786826 |
| 2016 | LAND ROVER | LR4 | SALAG2V6XGA802545 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG1GH098774 |
| 2016 | LAND ROVER | RANGE ROVER | SALVR2BGXGH078131 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BGXGH099244 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG1GH078816 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG7GH089786 |
| 2016 | LAND ROVER | RANGE ROVER | SALVD2BG9GH101414 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG8GH082491 |
| 2016 | LAND ROVER | RANGE ROVER | SALVR2BG1GH148311 |
| 2016 | LAND ROVER | RANGE ROVER | SALVR2BG4GH084944 |
| 2016 | LAND ROVER | RANGE ROVER | SALVR2BG1GH080818 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF3GA250458 |
| 2016 | LAND ROVER | RANGE ROVER | SALVR2BG3GH078505 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF4GA639105 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF7GA634819 |
| 2016 | LAND ROVER | RANGE ROVER | SALWG2VF7GA558424 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF0GA260045 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF0GA298211 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF2GA245039 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2016 | LAND ROVER | RANGE ROVER | SALVD2BGXGH145406 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2EFXGA582808 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF8GA246342 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS3EF4GA256775 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2VF3GA263873 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2VF8GA280779 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KFXGA651291 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF4GA584977 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2PF1GA655626 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2VF4GA648429 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2PF9GA590170 |
| 2016 | LAND ROVER | RANGE ROVER | SALWS2PF3GA594073 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF1GA655102 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF5GA294823 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2VF7GA283270 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2PF7GA114287 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KFXGA655387 |
| 2016 | LAND ROVER | RANGE ROVER | SALGR2KF9GA297932 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF1GA301939 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF2GA316840 |
| 2016 | LAND ROVER | RANGE ROVER | SALWG2PF3GA114129 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF8GA550346 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF4GA305441 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2VF4GA245110 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF7GA659249 |
| 2016 | LAND ROVER | RANGE ROVER | SALWZ2EF9GA566664 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF2GA297114 |
| 2016 | LAND ROVER | RANGE ROVER | SALWV2EF2GA100943 |
| 2016 | LAND ROVER | RANGE ROVER | SALGV2EF2GA303271 |
| 2016 | LAND ROVER | RANGE ROVER | SALGV3EFXGA280621 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG7GH158959 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EFXGA295901 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF5GA265091 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG4GH166582 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG5GH099281 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG5GH158989 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG9GH155433 |
| 2016 | LAND ROVER | RANGE ROVER | SALVR2BG7GH124255 |
| 2016 | LAND ROVER | RANGE ROVER | SALWG2KF6GA562792 |
| 2016 | LAND ROVER | RANGE ROVER | SALWG2PF9GA666881 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2EF3GA102317 |
| 2016 | LAND ROVER | RANGE ROVER | SALGR2VFXGA282562 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF8GA317698 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF7GA298405 |
| 2016 | LAND ROVER | RANGE ROVER | SALWG2KF0GA582732 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF0GA562572 |
| 2016 | LAND ROVER | RANGE ROVER | SALWG2PF0GA104139 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF5GA658598 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF7GA252119 |
| 2016 | LAND ROVER | RANGE ROVER | SALGR2PFXGA298645 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF8GA297064 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF0GA309700 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2EF7GA599260 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF1GA260412 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF2GA304398 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2PF6GA592409 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF0GA289007 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2PF4GA287533 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF9GA640380 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF4GA258833 |
| 2016 | LAND ROVER | RANGE ROVER | SALWG2KF9GA631961 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2EF0GA299505 |
| 2016 | LAND ROVER | RANGE ROVER | SALVR2BG5GH080305 |
| 2016 | LAND ROVER | RANGE ROVER | SALVP2BG4GH078731 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2PF9GA653915 |
| 2016 | LAND ROVER | RANGE ROVER | SALWS2VF6GA571549 |
| 2016 | LAND ROVER | RANGE ROVER | SALWR2KF6GA119987 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF5GA251129 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2KF5GA258968 |
| 2016 | LAND ROVER | RANGE ROVER | SALGS2VFXGA253356 |
| 2016 | LAND ROVER | RANGE ROVER | SALWG2PF5GA599924 |
| 2017 | LAND ROVER | DISCOVERY | SALCT2BG2HH656295 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK1HA021722 |
| 2017 | LAND ROVER | DISCOVERY | SALCR2BG7HH704338 |
| 2017 | LAND ROVER | DISCOVERY | SALCR2BG9HH690023 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBK4HA018994 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV7HA033497 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV3HA014376 |
| 2017 | LAND ROVER | DISCOVERY | SALRTBBVXHA017292 |
| 2017 | LAND ROVER | DISCOVERY | SALCP2BG6HH689224 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK5HA038622 |
| 2017 | LAND ROVER | DISCOVERY | SALCR2BGXHH650310 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV5HA013262 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV9HA021980 |
| 2017 | LAND ROVER | DISCOVERY | SALRTBBV3HA014511 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK5HA010545 |
| 2017 | LAND ROVER | DISCOVERY | SALCP2BG3HH670016 |
| 2017 | LAND ROVER | DISCOVERY | SALCT2BG5HH634405 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV9HA026094 |
| 2017 | LAND ROVER | DISCOVERY | SALCP2BG5HH660040 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBK9HA042384 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV9HA024218 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV0HA040837 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV8HA010954 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK3HA013220 |
| 2017 | LAND ROVER | DISCOVERY | SALRTBBV3HA015433 |
| 2017 | LAND ROVER | DISCOVERY | SALCP2BG3HH696552 |
| 2017 | LAND ROVER | DISCOVERY | SALCP2BG9HH691632 |
| 2017 | LAND ROVER | DISCOVERY | SALCR2BG1HH656819 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV3HA040415 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK7HA010515 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV3HA045806 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBK6HA000173 |
| 2017 | LAND ROVER | DISCOVERY | SALCP2BG6HH711691 |
| 2017 | LAND ROVER | DISCOVERY | SALCR2BG7HH701794 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV2HA017823 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV9HA028494 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK9HA009527 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV2HA025675 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV9HA020165 |
| 2017 | LAND ROVER | DISCOVERY | SALCR2BGXHH661274 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBVXHA021356 |
| 2017 | LAND ROVER | DISCOVERY | SALRGBBV3HA039008 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV2HA029857 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV7HA043623 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV1HA025697 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV3HA040119 |
| 2017 | LAND ROVER | DISCOVERY | SALCR2BG0HH705072 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2017 | LAND ROVER | DISCOVERY | SALCR2BG6HH651213 |
| 2017 | LAND ROVER | DISCOVERY | SALRGBBV7HA018324 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK5HA036143 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV8HA021245 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBKXHA013361 |
| 2017 | LAND ROVER | DISCOVERY | SALRGBBV8HA039540 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBK2HA026236 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV8HA039244 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK8HA005498 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV7HA030256 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBVXHA035132 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK5HA047367 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBKXHA035635 |
| 2017 | LAND ROVER | DISCOVERY | SALRTBBV3HA017229 |
| 2017 | LAND ROVER | DISCOVERY | SALRGBBV8HA042826 |
| 2017 | LAND ROVER | DISCOVERY | SALRHBBV2HA023203 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBKXHA027907 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBK0HA035739 |
| 2017 | LAND ROVER | DISCOVERY | SALRRBBV8HA013305 |
| 2017 | LAND ROVER | RANGE ROVER | SALVR2BG7HH174249 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE3HA322171 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE3HA324145 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE8HA321032 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FE7HA126787 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV1HA669892 |
| 2017 | LAND ROVER | RANGE ROVER | SALWZ2FE9HA128024 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE6HA361479 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE7HA347509 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG2HH187626 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG8HH190367 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FEXHA146774 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FVXHA667753 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV7HA675891 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV6HA153362 |
| 2017 | LAND ROVER | RANGE ROVER | SALWZ2FE4HA125130 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE7HA322673 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE9HA339086 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FE9HA154655 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FE3HA152881 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FEXHA329004 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FEXHA362651 |
| 2017 | LAND ROVER | RANGE ROVER | SALVD5BG5HH209659 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG8HH169518 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FKXHA682145 |
| 2017 | LAND ROVER | RANGE ROVER | SALGV2FE3HA323147 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV1HA681024 |
| 2017 | LAND ROVER | RANGE ROVER | SALVD2BG3HH195310 |
| 2017 | LAND ROVER | RANGE ROVER | SALVE2BG4HH242549 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FE4HA152473 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FVXHA682852 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FE3HA152511 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV9HA151203 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE4HA329113 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE8HA361404 |
| 2017 | LAND ROVER | RANGE ROVER | SALVD2BGXHH215858 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG0HH250304 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG9HH239298 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FK5HA351448 |
| 2017 | LAND ROVER | RANGE ROVER | SALGV2FE9HA329955 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG1HH190050 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG7HH224699 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FE1HA152382 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FE3HA140668 |
| 2017 | LAND ROVER | RANGE ROVER | SALGR2FV7HA339839 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FK9HA365658 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FV3HA329667 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FV9HA378453 |
| 2017 | LAND ROVER | RANGE ROVER | SALGW2FE0HA327945 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BGXHH189964 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BGXHH191987 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG9HH187106 |
| 2017 | LAND ROVER | RANGE ROVER | SALVR2BG3HH235225 |
| 2017 | LAND ROVER | RANGE ROVER | SALWG2FV1HA133241 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FE6HA142057 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FK9HA151874 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FVXHA681135 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV2HA670503 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FE8HA133758 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV5HA155121 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV6HA692628 |
| 2017 | LAND ROVER | RANGE ROVER | SALGR2FK4HA328433 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE0HA321736 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FV6HA362520 |
| 2017 | LAND ROVER | RANGE ROVER | SALGV5FE0HA351215 |
| 2017 | LAND ROVER | RANGE ROVER | SALWG2FK9HA689495 |
| 2017 | LAND ROVER | RANGE ROVER | SALWG2FVXHA141645 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FV8HA334637 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE8HA351715 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG3HH179292 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG5HH215354 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FVXHA154194 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV0HA130521 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV0HA681788 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV5HA145267 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FK2HA674816 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE8HA361661 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FV0HA328962 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV2HA131942 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV5HA671690 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FEXHA346417 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE6HA322941 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FK0HA360929 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE3HA339505 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE4HA356975 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE5HA321720 |
| 2017 | LAND ROVER | RANGE ROVER | SALWG2FVXHA143704 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FVXHA149304 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FK3HA669611 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG7HH170899 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE6HA331705 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG4HH247826 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE2HA363003 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE2HA328351 |
| 2017 | LAND ROVER | RANGE ROVER | SALGW3FE4HA335987 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG7HH205117 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV8HA144842 |
| 2017 | LAND ROVER | RANGE ROVER | SALVR2BG6HH191978 |
| 2017 | LAND ROVER | RANGE ROVER | SALWG2FK7HA161180 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2017 | LAND ROVER | RANGE ROVER | SALGR2FV4HA373947 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FKXHA150345 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV0HA134357 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE7HA363269 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BGXHH170458 |
| 2017 | LAND ROVER | RANGE ROVER | SALGR2FK3HA344333 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE2HA345666 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE8HA327186 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FE1HA152379 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV2HA670937 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV8HA162777 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV9HA162296 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FK4HA343597 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE5HA351459 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE9HA361167 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG7HH207613 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FK0HA134042 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FE7HA371583 |
| 2017 | LAND ROVER | RANGE ROVER | SALWG2FK7HA669987 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV5HA152459 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV6HA164765 |
| 2017 | LAND ROVER | RANGE ROVER | SALGR2FV9HA350311 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2TF8FA229414 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FVXHA329682 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FK7HA328642 |
| 2017 | LAND ROVER | RANGE ROVER | SALGW3FE4HA336735 |
| 2017 | LAND ROVER | RANGE ROVER | SALWR2FV1HA680049 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FV5HA687274 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS5FEXHA348265 |
| 2017 | LAND ROVER | RANGE ROVER | SALVP2BG0HH183848 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE3HA346193 |
| 2017 | LAND ROVER | RANGE ROVER | SALGS2FE8HA349011 |
| 2017 | LAND ROVER | RANGE ROVER | SALWV2FE0HA160811 |
| 2017 | LAND ROVER | RR | SALGS2FE3HA347179 |
| 2017 | LAND ROVER | RR | SALWR2FV5HA135889 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX6JH747192 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX3JH744864 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX3JH747618 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX6JH734541 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX2JH739638 |
| 2018 | LAND ROVER | DISCOVERY | SALCP2RX3JH750458 |
| 2018 | LAND ROVER | DISCOVERY | SALCP2RX7JH748518 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RVXJA063411 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RKXJA047764 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RK8JA048591 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RV8JA055714 |
| 2018 | LAND ROVER | DISCOVERY | SALCP2RX9JH747953 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX2JH759937 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RV4JA075233 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV1JA063667 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV8JA048289 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV6JA059291 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX8JH750854 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RVXJA060332 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RV7JA051279 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RV7JA057325 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX3JH776228 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV4JA057152 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RK7JA048064 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2018 | LAND ROVER | DISCOVERY | SALRG2RV1JA058992 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RK4JA048006 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RK9JA047661 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RV7JA079261 |
| 2018 | LAND ROVER | DISCOVERY | SALRG2RV5JA076251 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV1JA072515 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV2JA067663 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RV7JA061097 |
| 2018 | LAND ROVER | DISCOVERY | SALCP2RX2JH746871 |
| 2018 | LAND ROVER | DISCOVERY | SALRG2RV2JA075221 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV5JA076759 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RVXJA078881 |
| 2018 | LAND ROVER | DISCOVERY | SALCP2RX1JH765959 |
| 2018 | LAND ROVER | DISCOVERY | SALRG2RVXJA059090 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RV4JA050378 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV6JA079105 |
| 2018 | LAND ROVER | DISCOVERY | SALCP2RX6JH756111 |
| 2018 | LAND ROVER | DISCOVERY | SALRG2RV1JA069300 |
| 2018 | LAND ROVER | DISCOVERY | SALRG2RV5JA068845 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV0JA073171 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV6JA048386 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV6JA055368 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV6JA076706 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RV3JA070122 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV7JA058926 |
| 2018 | LAND ROVER | DISCOVERY | SALCP2RX2JH757398 |
| 2018 | LAND ROVER | DISCOVERY | SALCP2RX6JH751278 |
| 2018 | LAND ROVER | DISCOVERY | SALCR2RX5JH755641 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RVXJA061724 |
| 2018 | LAND ROVER | DISCOVERY | SALRR2RV9JA075131 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RK6JA047875 |
| 2018 | LAND ROVER | DISCOVERY | SALRT2RK9JA051368 |
| 2018 | LAND ROVER | RANGE ROVER | SALYC2RV9JA702391 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX2JA711032 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RKXJA182438 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX0JA714852 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK7JA189637 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX2JA707937 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RX8JA733551 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE9JA508152 |
| 2018 | LAND ROVER | RANGE ROVER | SALWZ2SE3JA188845 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RNXJA715747 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV1JA717807 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK6JA381804 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RV5JA699799 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RV7JA698556 |
| 2018 | LAND ROVER | RANGE ROVER | SALWZ2SE9JA801535 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV5JA707877 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX1JA747102 |
| 2018 | LAND ROVER | RANGE ROVER | SALGR2RV7JA395524 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE1JA393742 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE7JA384026 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV1JA392942 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV9JA385480 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS5RE8JA396798 |
| 2018 | LAND ROVER | RANGE ROVER | SALGV5RE1JA506887 |
| 2018 | LAND ROVER | RANGE ROVER | SALVP2RX8JH278640 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2RE0JA188982 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2SVXJA190393 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RV1JA718426 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX0JA776223 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX3JA732572 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX9JA759937 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RN6JA722971 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV2JA741288 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV3JA739338 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RXXJA738690 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX1JA709398 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RV2JA704237 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE0JA395160 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV0JA386498 |
| 2018 | LAND ROVER | RANGE ROVER | SALWG2RV6JA698571 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE0JA197170 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2SV6JA698411 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX0JA707421 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RN3JA734947 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV6JA717673 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX6JA745524 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX8JA710919 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX8JA764169 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV4JA385709 |
| 2018 | LAND ROVER | RANGE ROVER | SALVR2RX1JH316624 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE1JA184007 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX0JA715311 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX5JA715546 |
| 2018 | LAND ROVER | RANGE ROVER | SALYC2RV2JA702376 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RVXJA750448 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV2JA718495 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX4JA724932 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX6JA766096 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX8JA778556 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS5REXJA390095 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE6JA185881 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK2JA695893 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2RE1JA193253 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2SV2JA406124 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2SV7JA192070 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RV9JA719730 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RXXJA737720 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RV3JA730670 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE4JA395386 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE7JA182262 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2SV2JA403319 |
| 2018 | LAND ROVER | RANGE ROVER | SALWZ2SE8JA801610 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RXXJA741611 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV2JA742229 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX6JA736919 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RV8JA756990 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS5RE1JA381558 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RV3JA182615 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RN3JA723642 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV3JA708302 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE8JA514573 |
| 2018 | LAND ROVER | RANGE ROVER | SALVP2RX1JH286093 |
| 2018 | LAND ROVER | RANGE ROVER | SALWG2RK7JA409249 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE3JA184350 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RV8JA698386 |
| 2018 | LAND ROVER | RANGE ROVER | SALWZ2SE0JA811368 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RN5JA735164 |
| 2018 | LAND ROVER | RANGE ROVER | SALWG2RV5JA408210 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RV1JA196173 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RV6JA752345 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX2JA737162 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE8JA389056 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS5RE2JA392410 |
| 2018 | LAND ROVER | RANGE ROVER | SALVD5RX3JH307732 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE7JA199143 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RV2JA186624 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RV7JA189423 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RV1JA758926 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX8JA775933 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK4JA381073 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX3JA775714 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV9JA756922 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RX4JA727195 |
| 2018 | LAND ROVER | RANGE ROVER | SALVR2RX0JH322415 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RV0JA753310 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE3JA392348 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RV8JA733960 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX6JA721906 |
| 2018 | LAND ROVER | RANGE ROVER | SALGR2RV5JA395280 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE4JA387014 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE6JA515494 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RKXJA381966 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK1JA386277 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK9JA381165 |
| 2018 | LAND ROVER | RANGE ROVER | SALGV5RE5JA501935 |
| 2018 | LAND ROVER | RANGE ROVER | SALWG2RV8JA408038 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE0JA806810 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RKXJA199787 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2FV8HA156098 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RXXJA748929 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX7JA773027 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RX3JA749950 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2REXJA393173 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV9JA388802 |
| 2018 | LAND ROVER | RANGE ROVER | SALGV2RE0JA398387 |
| 2018 | LAND ROVER | RANGE ROVER | SALGW2SE5JA505666 |
| 2018 | LAND ROVER | RANGE ROVER | SALWG2RKXJA699227 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK1JA185664 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK3JA400350 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RVXJA807317 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2SV0JA414772 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RV1JA742435 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX8JA731790 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV1JA759278 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX3JA725845 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX6JA725211 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE5JA380752 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV3JA399035 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV5JA385718 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK6JA182405 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK8JA193342 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK9JA182365 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RV2JA697492 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2SV3JA404382 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RVXJA751936 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK0JA382334 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK7JA382170 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SVXJA387917 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV4JA386794 |
| 2018 | LAND ROVER | RANGE ROVER | SALWG2RV0JA699957 |
| 2018 | LAND ROVER | RANGE ROVER | SALGR2RK3JA514739 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE3JA397954 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS5RE9JA380397 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK4JA183438 |
| 2018 | LAND ROVER | RANGE ROVER | SALWV2SV8JA406239 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RN0JA727957 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV1JA716785 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV4JA748288 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV4JA742927 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV8JA751971 |
| 2018 | LAND ROVER | RANGE ROVER | SALGR2RV1JA384311 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2REXJA393688 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE7JA387315 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK7JA396585 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK9JA380565 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK9JA381506 |
| 2018 | LAND ROVER | RANGE ROVER | SALGV5RE5JA394143 |
| 2018 | LAND ROVER | RANGE ROVER | SALVP2RX0KH330425 |
| 2018 | LAND ROVER | RANGE ROVER | SALVP2RX4JH322519 |
| 2018 | LAND ROVER | RANGE ROVER | SALVP2RX6JH303292 |
| 2018 | LAND ROVER | RANGE ROVER | SALVP2RX8JH269341 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE1JA182774 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE6JA188490 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RV7JA752998 |
| 2018 | LAND ROVER | RANGE ROVER | SALYB2RX8JA777586 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV1JA763914 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV6JA742315 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RX8JA775320 |
| 2018 | LAND ROVER | RANGE ROVER | SALYM2RV1JA701880 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE0JA391805 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RK3JA397510 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV0JA393113 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV5JA512662 |
| 2018 | LAND ROVER | RANGE ROVER | SALWG2RV8JA413370 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE6JA813504 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK0JA199748 |
| 2018 | LAND ROVER | RANGE ROVER | SALWZ2SE6JA188631 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV3JA745866 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2RE0JA384739 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS2SV1JA509063 |
| 2018 | LAND ROVER | RANGE ROVER | SALGS5REXJA391666 |
| 2018 | LAND ROVER | RANGE ROVER | SALVP2RX2JH290332 |
| 2018 | LAND ROVER | RANGE ROVER | SALVP2RX2JH321000 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE2JA195338 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RE4JA184213 |
| 2018 | LAND ROVER | RANGE ROVER | SALWR2RK5JA181701 |
| 2018 | LAND ROVER | RANGE ROVER | SALYL2RV3JA751229 |
| 2018 | LAND ROVER | RR | SALVP2RX5JH321539 |
| 2018 | LAND ROVER | RR | SALWR2RE7JA810420 |
| 2018 | LAND ROVER | RR | SALWZ2SEXJA199342 |
| 2018 | LAND ROVER | RR | SALYB2RX4JA710905 |
| 2018 | LAND ROVER | RR | SALYL2RV9JA717134 |
| 2018 | LAND ROVER | RR | SALYL2RV9JA750067 |
| 2018 | LAND ROVER | VELAR | SALYM2RV2JA738467 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2018 | LAND ROVER | VELAR | SALYM2RV5JA744070 |
| 2019 | LAND ROVER | DISCOVERY | SALRR2RV8JA051144 |
| 2019 | LAND ROVER | DISCOVERY | SALRR2RV5KA080781 |
| 2019 | LAND ROVER | DISCOVERY | SALCP2FX6KH791902 |
| 2019 | LAND ROVER | DISCOVERY | SALRG2RV2KA083112 |
| 2019 | LAND ROVER | DISCOVERY | SALRR2RV1K2400270 |
| 2019 | LAND ROVER | DISCOVERY | SALRR2RV7K2407952 |
| 2019 | LAND ROVER | DISCOVERY | SALRG2RV1K2409850 |
| 2019 | LAND ROVER | DISCOVERY | SALRR2RVXKA081117 |
| 2019 | LAND ROVER | DISCOVERY | SALRR2RV4KA082473 |
| 2019 | LAND ROVER | DISCOVERY | SALRR2RV5KA081901 |
| 2019 | LAND ROVER | DISCOVERY | SALRG2RK9K2402831 |
| 2019 | LAND ROVER | DISCOVERY | SALRT2RV3KA080666 |
| 2019 | LAND ROVER | DISCOVERY | SALRR2RV6JA077810 |
| 2019 | LAND ROVER | DISCOVERY | SALCP2FX1KH790978 |
| 2019 | LAND ROVER | DISCOVERY | SALCR2FXXKH783330 |
| 2019 | LAND ROVER | DISCOVERY | SALRG2RV6K2412081 |
| 2019 | LAND ROVER | DISCOVERY | SALCP2FX5KH828468 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RE5KA817674 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV3KA821268 |
| 2019 | LAND ROVER | RANGE ROVER | SALWV2SV5JA409843 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS5RE6KA521525 |
| 2019 | LAND ROVER | RANGE ROVER | SALWV2SVXKA415669 |
| 2019 | LAND ROVER | RANGE ROVER | SALGR2RV0KA518226 |
| 2019 | LAND ROVER | RANGE ROVER | SALVC5RX1KH348557 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2REXKA835457 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RUXKA865372 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV4KA843845 |
| 2019 | LAND ROVER | RANGE ROVER | SALGV2RE7KA522897 |
| 2019 | LAND ROVER | RANGE ROVER | SALGV5RE4KA522566 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RE4KA824938 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX6KA210037 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX7KA203193 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV2KA832472 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV9KA850662 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RU7KA861621 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS2SV0KA546428 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RK6KA857848 |
| 2019 | LAND ROVER | RANGE ROVER | SALWV2SV0KA814364 |
| 2019 | LAND ROVER | RANGE ROVER | SALWV2SV6KA829290 |
| 2019 | LAND ROVER | RANGE ROVER | SALYB2EX3KA795047 |
| 2019 | LAND ROVER | RANGE ROVER | SALYB2EX5KA202997 |
| 2019 | LAND ROVER | RANGE ROVER | SALYB2FV2KA217017 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX0KA783144 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX9KA213613 |
| 2019 | LAND ROVER | RANGE ROVER | SALYM2EV3KA780119 |
| 2019 | LAND ROVER | RANGE ROVER | SALGV5RE5KA549002 |
| 2019 | LAND ROVER | RANGE ROVER | SALGW5SE4KA518850 |
| 2019 | LAND ROVER | RANGE ROVER | SALVP2RX3KH342228 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2REXKA847608 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RU6KA865272 |
| 2019 | LAND ROVER | RANGE ROVER | SALYA2EX9KA790860 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS2RE7KA521578 |
| 2019 | LAND ROVER | RANGE ROVER | SALWG2RV0KA849082 |
| 2019 | LAND ROVER | RANGE ROVER | SALYB2EX2KA792107 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX5KA215181 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX8KA210136 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS2SE9LA581180 |
| 2019 | LAND ROVER | RANGE ROVER | SALVP2RX8KH330043 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RU8KA875575 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV4KA817214 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV4KA820274 |
| 2019 | LAND ROVER | RANGE ROVER | SALWS2SU4KA873160 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2FV5KA219101 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX0KA203519 |
| 2019 | LAND ROVER | RANGE ROVER | SALGR2RVXKA549435 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS2SV1KA563528 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS2SV3KA531941 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS2SV9KA517882 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS5RE4KA525072 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS5RE9KA549593 |
| 2019 | LAND ROVER | RANGE ROVER | SALGV5RE2KA548647 |
| 2019 | LAND ROVER | RANGE ROVER | SALVD5RX5KH343553 |
| 2019 | LAND ROVER | RANGE ROVER | SALVP2RX0KH337665 |
| 2019 | LAND ROVER | RANGE ROVER | SALVP2RX2KH329793 |
| 2019 | LAND ROVER | RANGE ROVER | SALVP2RX2KH332483 |
| 2019 | LAND ROVER | RANGE ROVER | SALVP2RX6KH338822 |
| 2019 | LAND ROVER | RANGE ROVER | SALWG2RK4KA424437 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RE3KA819407 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RE7KA818552 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RU2KA867682 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV2KA418771 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV8KA832640 |
| 2019 | LAND ROVER | RANGE ROVER | SALWS2SU5KA861762 |
| 2019 | LAND ROVER | RANGE ROVER | SALWS2SU7KA874920 |
| 2019 | LAND ROVER | RANGE ROVER | SALWZ2SE6KA862990 |
| 2019 | LAND ROVER | RANGE ROVER | SALYB2EX9KA217714 |
| 2019 | LAND ROVER | RANGE ROVER | SALYB2FV8KA211853 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX3KA790735 |
| 2019 | LAND ROVER | RANGE ROVER | SALGS2SV6KA529987 |
| 2019 | LAND ROVER | RANGE ROVER | SALYB2EX6KA788755 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2FV9KA233468 |
| 2019 | LAND ROVER | RANGE ROVER | SALVC2RX2KH348419 |
| 2019 | LAND ROVER | RANGE ROVER | SALVP2RX1KH351218 |
| 2019 | LAND ROVER | RANGE ROVER | SALWG2RU9KA861903 |
| 2019 | LAND ROVER | RANGE ROVER | SALWR2RV0KA847228 |
| 2019 | LAND ROVER | RANGE ROVER | SALWS2SU8KA867619 |
| 2019 | LAND ROVER | RANGE ROVER | SALWV2SV0KA835327 |
| 2019 | LAND ROVER | RANGE ROVER | SALYA2EX8KA790865 |
| 2019 | LAND ROVER | RANGE ROVER | SALYB2EX3KA783674 |
| 2019 | LAND ROVER | RANGE ROVER | SALYL2EX5KA797508 |
| 2019 | LAND ROVER | RR | SALWR2RV6KA817716 |
| 2020 | LAND ROVER | DISCOVERY | SALRU2RV1L2415223 |
| 2020 | LAND ROVER | DISCOVERY | SALCJ2FX0LH834388 |
| 2020 | LAND ROVER | DISCOVERY | SALRU2RV8L2420306 |
| 2020 | LAND ROVER | DISCOVERY | SALCJ2FXXLH841994 |
| 2020 | LAND ROVER | DISCOVERY | SALRR2RK3L2419586 |
| 2020 | LAND ROVER | DISCOVERY | SALCT2FX3LH833679 |
| 2020 | LAND ROVER | RANGE ROVER | SALZT2GX7LH012027 |
| 2020 | LAND ROVER | RANGE ROVER | SALZL2GX3LH022909 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX8LH020398 |
| 2020 | LAND ROVER | RANGE ROVER | SALGS2RUXLA578608 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX3LH018915 |
| 2020 | LAND ROVER | RANGE ROVER | SALGS2RU4LA591094 |
| 2020 | LAND ROVER | RANGE ROVER | SALWS2RU1LA880414 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2RY1LA891217 |
| 2020 | LAND ROVER | RANGE ROVER | SALZJ2FXXLH039116 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX6LH031478 |

# Vehicles Branded Under The New Jersey Lemon Law
## As of April 1, 2021

| YEAR | MAKE | MODEL | VIN |
|------|------|-------|-----|
| 2020 | LAND ROVER | RANGE ROVER | SALGS2RU3LA569880 |
| 2020 | LAND ROVER | RANGE ROVER | SALWZ2RE4LA894800 |
| 2020 | LAND ROVER | RANGE ROVER | SALYK2FV3LA253204 |
| 2020 | LAND ROVER | RANGE ROVER | SALZL2FX0LH006250 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX2LH018677 |
| 2020 | LAND ROVER | RANGE ROVER | SALGS4RY2LA577127 |
| 2020 | LAND ROVER | RANGE ROVER | SALWG2SU6LA881229 |
| 2020 | LAND ROVER | RANGE ROVER | SALYK2FV8LA242540 |
| 2020 | LAND ROVER | RANGE ROVER | SALZJ2FX3LH023288 |
| 2020 | LAND ROVER | RANGE ROVER | SALZJ2FX3LH070997 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX5LH018902 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2RY3LA707637 |
| 2020 | LAND ROVER | RANGE ROVER | SALWG2SUXLA703839 |
| 2020 | LAND ROVER | RANGE ROVER | SALWG2SU1LA891117 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2RY0LA891287 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2RY3LA715821 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2RY4LA712958 |
| 2020 | LAND ROVER | RANGE ROVER | SALWS2RU4LA716624 |
| 2020 | LAND ROVER | RANGE ROVER | SALWS2RU5LA888001 |
| 2020 | LAND ROVER | RANGE ROVER | SALYK2EX7LA259283 |
| 2020 | LAND ROVER | RANGE ROVER | SALYK2EX9LA238323 |
| 2020 | LAND ROVER | RANGE ROVER | SALZJ2FX4LH019086 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX2LH083335 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX6LH004510 |
| 2020 | LAND ROVER | RANGE ROVER | SALGR2SU6LA580619 |
| 2020 | LAND ROVER | RANGE ROVER | SALGS2RUXLA402321 |
| 2020 | LAND ROVER | RANGE ROVER | SALGS2SE6LA568564 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2RY0LA898983 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2RY2LA703949 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2SU7LA708670 |
| 2020 | LAND ROVER | RANGE ROVER | SALZJ2FX2LH043404 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX9LH020345 |
| 2020 | LAND ROVER | RANGE ROVER | SALGR2SU0LA588988 |
| 2020 | LAND ROVER | RANGE ROVER | SALGR2SU2LA589284 |
| 2020 | LAND ROVER | RANGE ROVER | SALGS2RU0LA570730 |
| 2020 | LAND ROVER | RANGE ROVER | SALGS5SE1LA574337 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2SE3LA739777 |
| 2020 | LAND ROVER | RANGE ROVER | SALWR2SU6LA876879 |
| 2020 | LAND ROVER | RANGE ROVER | SALYK2EX3LA255490 |
| 2020 | LAND ROVER | RANGE ROVER | SALZJ2FXXLH007797 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FXXLH005319 |
| 2020 | LAND ROVER | RANGE ROVER | SALZP2FX2LH007288 |
| 2010 | LEXUS | ES350 | JTHBK1EGXA2376952 |
| 2010 | LEXUS | HS250H | JTHBB1BAXA2010473 |
| 2010 | LEXUS | HS250H | JTHBB1BA6A2001706 |
| 2010 | LEXUS | HS250H | JTHBB1BA5A2023485 |
| 2010 | LEXUS | LS460 | JTHDL5EF5A5001165 |
| 2010 | LEXUS | LS460 | JTHBL5EF3A5096686 |
| 2010 | LEXUS | LS460 | JTHCL5EF3A5008014 |
| 2010 | LEXUS | LX570 | JTJHY7AX1A4035203 |
| 2010 | LEXUS | RX350 | 2T2BK1BA5AC048482 |
| 2010 | LEXUS | RX350 | 2T2BK1BAXAC020547 |
| 2010 | LEXUS | RX350 | 2T2BK1BA4AC003842 |
| 2010 | LEXUS | RX350 | 2T2BK1BA4AC076077 |
| 2010 | LEXUS | RX350 | 2T2BK1BAXAC038644 |
| 2010 | LEXUS | RX350 | 2T2BK1BA6AC039225 |
| 2010 | LEXUS | RX350 | 2T2BK1BA2AC078751 |
| 2010 | LEXUS | RX350 | 2T2BK1BA0AC068817 |
| 2010 | LEXUS | RX350 | 2T2BK1BA5AC052659 |

# COMPLAINT
# EXHIBIT I

# Perlman-DePetris Consumer Law

1926 GREENTREE ROAD, SUITE 100, CHERRY HILL, NEW JERSEY 08003
Telephone (856) 446-9797 · Facsimile (888) 635-5933
www.newjerseylemons.com

**LEE M. PERLMAN**
Member, NJ bar
lperlman@newjerseylemons.com

**PAUL DEPETRIS**
Member, NJ & PA bars
info@newjerseylemons.com

## VIA CERTIFIED MAIL RRR & FIRST CLASS MAIL

December 7, 2020

JAGUAR LAND ROVER NORTH AMERICA, LLC
ATTN: Customer Relationship Centre
555 MacArthur Boulevard
Mahwah, NJ 07430-2326

Re:

| Case caption: | Ilu.Lily Designs, LLC v. Jaguar Land Rover North America, LLC |
|---|---|
| Case docket no.: | Not Yet Assigned |
| Consumers: | Ilu.Lily Designs, Llc |
| Vehicle: | 2017 Land Rover Range Rover Sport; Vin # SALWR2FKXHA693677 |
| Purchase/lease date: | 12-22-17 |

Dear Sir/Miss/Counsel:

### INTRODUCTION

In the above matter, my office represents the above referenced consumers relative to the purchase of the above referenced vehicle. Kindly direct all future correspondence or calls about this matter to my office.

The purpose of this letter is to make a formal demand for revocation of acceptance. The demand herein must be accepted within the time frame and in the manner set forth below and is presented without prejudice to my clients. As the contents of this letter are for settlement purposes only, nothing herein should be construed as an admission of any kind and the consumers shall object to any effort to introduce the contents of this letter at any court proceeding in this matter. The demand referenced herein is a compromise that reflects the potential resolution of this matter before additional time and expense may be expended in this matter.

Please do not misconstrue any of the contents of this letter or any documents enclosed herewith or identified or referenced herein as adoptive admissions on the consumers' part. See N.J.R.E. 803(b)(2); *Skibinski v. Smith*, 206 N.J. Super. 349 (App. Div. 1985); *Cocoran v. Sears*, 312 N.J. Super. 117 (App. Div. 1998).

Page 1 of 9

Excepting those facts which were gleaned from the documents provided by the consumers, all facts set forth below were provided by the consumers and are related below as I understand those facts.

This letter provides the manufacturer formal presuit notice of the consumer's intent to revoke acceptance of the subject product pursuant to the New Jersey Uniform Commercial Code (UCC), specifically N.J.S.A. 12A:2-608. Please do not misconstrue this letter as an optional final repair attempt letter pursuant to N.J.S.A. 56:12-29, et seq.

### FACTUAL ALLEGATIONS

On or about the above referenced date, the consumers purchased the above referenced vehicle in new condition with an odometer reading of approximately 18 miles. At time of sale, the consumers paid for the vehicle in full. At time of sale, the selling dealer issued the consumers a new vehicle limited warranty with various coverage periods for various components, including a 4 year, 50,000 mile warranty, whichever comes first, from the date of delivery to the first retail purchaser.

Following purchase, the consumers experienced problems with the vehicle's operation and pursuant to the manufacturer's new vehicle limited warranty, took the vehicle to various dealerships for multiple unsuccessful repair attempts.

In summary, the vehicle has not performed to the consumers' expectations, the consumers' confidence in the vehicle is totally shaken and the vehicle's value is substantially impaired to the consumers.

The following is a recitation of that repair history as taken from repair orders that I have for the vehicle (note that I am missing certain pages of said invoices):

### REPAIR HISTORY SUMMARY

| Date In & Out & # Of Days Vehicle At Dealer | Miles In & Out Of Dealer | Invoice # | Customer Complaint AND/OR Repair Attempt and/or Diagnosis Reported by Dealer |
|---|---|---|---|
| 4-11-18 1 DAY | 7,581 TO 7,583 | 95210 | A COMPLETE LUBRICATION SERVICE LUBE COMPLETE LUBRICATION AND FILTER CHANGE |
| | | | B PERFORM COURTESY INSPECTION CI PERFORM COURTESY INSPECTION |
| | | | C PROVIDED LAND ROVER LOANER COURTESY VEHICLE M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE |
| | | | D COMPLETE EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |

| | | | |
|---|---|---|---|
| | | | D TOP OFF DIESEL EXHAUST FLUID<br>MISC TOP OFF FLUID |
| | | | E PROVIDED LAND ROVER LOANER<br>COURTESY VEHICLE<br>M013 PROVIDED LAND ROVER LOANER<br>COURTESY VEHICLE |
| | | | F COMPLETE EXTERIOR WASH AND. INTERIOR<br>VACUUM<br>WASH COMPLETE EXTERIOR WASH AND<br>INTERIOR. VACUUM |
| | | | H CLIENT STATES THAT THERE IS A PLASTIC<br>REAR TRIM THAT IS LOOSE<br>MISC SECURE PANEL |
| 4-29-19<br>TO<br>5-2-19<br>4 DAYS | 24,175<br>TO<br>24,182 | 102761 | A 16,000 MILES/ 26,000 KM OR 12 MONTHS<br>SERVICE<br>CORRECTION: 101016 16,000 MILES/ 26,000 KM<br>OR 12 MONTHS SERVICE<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>FLUID INSPECT AND CORRECT FLUID LEVELS<br>AS NEEDED<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>BATT TEST BATTERY AND PROVIDE RESULTS<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>HISS CORRECT TIRE PRESSURES AS<br>NECESSARY<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>I INSPECT SUSPENSION, BRAKES, TIRES,<br>WEAR ITEMS, AND FOR EXTERNAL FLUID<br>LEAKS<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>VF REPLACE POLLEN FILTER<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>ROTATE ROTATE (SIC) TIRES FRONT TO REAR<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>RESET RESET (SIC) SERVICE COUNTER<br>TECH NUMBER: 88 LABOR TYPE: CPM |
| | | | B PERFORM COMPLETE INTERIOR AND<br>EXTERIOR DETAIL<br>CAUSE:<br>CORRECTION: DETAIL PERFORM COMPLETE<br>INTERIOR AND EXTERIOR DETAIL |
| | | | C PERFORM COURTESY INSPECTION<br>CAUSE:<br>CORRECTION: CI PERFORM COURTESY<br>INSPECTION<br>TECH NUMBER: 88 LABOR TYPE: INT |

| | | | |
|---|---|---|---|
| | | | D PROVIDED LAND ROVER LOANER COURTESY VEHICLE<br>CAUSE:<br>CORRECTION: M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | E CLIENT STATES WHEN TRAVELING OVER 70MPH THERE IS A RATTLE FROM THE RIGHT FRONT PASSENGER AREA OF THE VEHICLE<br>CAUSE:<br>CORRECTION: 10 RIGHT FRONT WHEEL IS BENT, REPAIRED BY ALLOY WHEEL<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | F CLIENT STATES THERE IS A NAIL PUNCTURE IN THE RIGHT FRONT TIRE<br>CAUSE: IAS AUTH#JM143599-1597489 FAX#5122574777<br>CORRECTION: MT2 MOUNT AND BALANCE TWO TIRES.CORRECT TIRE PRESSURES WHEN<br>COMPLETED.<br>TECH NUMBER: 88 LABOR TYPE: WCEXT |
| | | | H (SIC) INSPECT FOR DOOR DINGS<br>CAUSE:<br>CORRECTION: 10 NONE PRESENT<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | J REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE<br>CAUSE:<br>CORRECTION: M15R REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE<br>TECH NUMBER: 88 LABOR TYPE: CPM |
| | | | K PERFORM N120<br>CAUSE: PERFROM N120B<br>CORRECTION: 889003 INSTRUMENT CLUSTER - SYSTEM DIAGNOSIS - INCLUDES CONFIGURATION<br>OF NEW ECU<br>TECH NUMBER: 88 LABOR TYPE: WTY |
| | | | L PERFORM N241<br>CAUSE: PERRFOM N241A<br>CORRECTION: 189090 POWERTRAIN CONTROL MODULE (PCM) - SOFTWARE UPDATE<br>TECH NUMBER: 88 LABOR TYPE: WTY |
| 9-4-19<br>TO<br>9-5-19 | 30,007<br>30,010 | 105861 | A CLIENT STATES CHIP IN WINDSHIELD<br>CAUSE: IAS-AUTH#DW5837531655930<br>10 STATES HAS WINDHIELD CHIP |

| | | | |
|---|---|---|---|
| 2 DAYS | | | |
| 3-3-20 TO 3-6-20 4 DAYS | 37,929 TO 37,938 | 110620 | A CUSTOMER STATES VEHICLE SAYS EXH FILTER FULL CAUSE: DIESEL PARTICULATE FILTER CLOGGED. CONNECT PATHFINDER AND RETRIEVE DTCS. FOUND P2463 STORED WITH IN (SIC) PCM. CHECK AND TOP UP EXHAUST FLUID LEVEL (16 LITERS). RESET DOSING FACTOR USING PATHFINDER, RUN EGR AND AIR PATH CHECK FOR INTAKE LEAKS. PERFORM REGENERATION DRIVE CYCLE WITH PATHFINDER ATTACHED. PERFORM DYNAMIC REGENERATION PROCEDURE USING PATHFINDER (FAILED). DIESEL PARTICULATE FILTER BEYOND REGENERATION CAPABILITIES. REMOVE AND REPLACE PARTICULATE FILTER CONNECT PATHFINDER PERFORM FILTER REPLACEMENT PROCEDURE. CLEAR |
| | | | B PERFORM COURTESY INSPECTION CAUSE: CORRECTION: CI PERFORM COURTESY INSPECTION TECH NUMBER: 46 LABOR TYPE: INT |
| | | | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM CAUSE: CORRECTION: WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM TECH NUMBER: 99 LABOR TYPE: INT |
| | | | D PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE CAUSE: CORRECTION: M013 PROVIDED JAGUAR / LAND ROVER COURTESY VEHICLE TECH NUMBER: 99 LABOR TYPE: INT |
| | | | E CUSTOMER STATES DIESEL FLUID IS LOW CAUSE: CORRECTION: C/S CUSTOMER STATES DIESEL FLUID IS LOW TECH NUMBER: 46 LABOR TYPE: INT |
| 5-5-20 TO 5-20-20 16 DAYS | 38,313 TO 38,316 | 111366 | A PERFORM COURTESY INSPECTION CI PERFORM COURTESY INSPECTION |

| | | | B COMPLETE EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | C CUSTOMER STATES RIGHT FRONT TIRE LOSING AIR CAUSE: IAS MTL MOUNT AND BALANCE ONE "TIRE. CORRECT TIRE PRESSURE WHEN COMPLETED |
| | | | D* * FRONT RIGHT TIRE WAS DRIVEN ON FLAT, THERE IS A BOLT IN THE TIRE THAT IS PLUGGABLE BUT·I WOULD; RECOMMEND REPDACING THE TIRE SINCE THE SIDEWALL WAS COMPROMISED GOODYEAR EAGLE FL 255/55R20 110Y |
| 9-16-20 TO 9-23-20 11 DAYS | 39,587 39,623 | 114696 | A CUSTOMER STATES VEHICLE SAYS EXHAUST FILTER FULL CAUSE: 851806 READ AND CLEAR FAULT CODES 39623 FOUND MALFUNCTION ON DASH. FOUND P2463 AND P246B IN PCM. DROVE VEHICLE 18 MILES (39587-39605) DURING A REGEN ATTEMPT TO CLEAR THE EXHAUST FILTER. WENT FROM 30.5 GRAMS OF SOOT WITH A TARGET OF 6 GRAMS. VEHICLE WENT DOWN TO 14.2 G AND THEN STARTED RISING AGAIN. OPENED TA CASE. 3046785. REMOVED ENGINE AIR FILTER, EGR TUBE AND VALVE, AND PIPE TO THROTTLE VALVE TO TAKE PHOTOS OF ALL COMPONENTS TO SEND TO TA TO CHECK FOR EXCESSIVE:SOOT/OIL CONTAMINATION BUILD UP IN ENGINE. ADVISED BY TA TO REMOVE DPF DIFFERENTIAL PRESSURE SENSOR & LINES AND CHECK FOR CLOGS OR CONTAMINATION. NONE FOUND. PHOTOS TAKEN AND SENT TO TA. TA CALLED AND ADVISED HABITS ARE LARGEST CONCERN. VEHICLE NEEDS TO BE DRIVEN MORE AND ON LONGER HIGHWAY TRIPS. REQUESTSTED REGEN 173 TIMES AND ONLY WAS ABLE TO PERFORM IT 3 TIMES. REMOVED OIL SEPARATOR AND REPLACED DUE TO OIL INTRUSION, ADVISED BY TA. WAS ABLE TO UPDATE PCM FURTHER WITH UPDATED PATHFINDER. RE-RAN REGEN RUN ON HIGHWAY. (39605-39623) WAS ABLE TO GET |

| | | | |
|---|---|---|---|
| | | | SOOT LEVEL UNDER 6GRAMS (SIC) AND WITIN SPEC. VEHICLE NO LONGER HAS FAULTS ON DASH AND HAS FULL POWER BACK TO VEHICLE |
| | | | B PERFORM COURTESY INSPECTION<br>CI PERFORM COURTESY INSPECTION |
| | | | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | D 16,000 MILE FACTORY MAINTENANCE SERVICE<br>16K 16,000 MILE FACTORY MAINTENANCE SERVICE |
| | | | E** PRICE FOR 5. 5 LITERS OF DEF FLUID<br>MISC PRICE FOR 5. 5 LITERS OF DEF FLUID |
| | | | F** WIPERS<br>WIPER REPLACE WIPER BLADES |
| | | | G**ENGINE AIR FILTERS<br>AUR REPLACE ENGINE AIR FILTER ELEMENT |
| | | | H** CLIENT STATES THAT THERE ARE DENTS ON LEFT REAR DOOR AND RIGHT FENDER CAUSE: CLAIMS@IASDIRECT.COM AUTH#ER6011911798444 TOTAL $180 SUBLET PDR- INV#151319 |
| 10-17-20 TO 10-20-20 4 DAYS | 39,917 TO 39,937 | 115440 | A COMPLETE- EXTERIOR WASH AND INTERIOR VACUUM<br>WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | B CUSTOMER STATES DIESEL EXHAUST FULL MESSAGE IS ON<br>129016 READ AND CLEAR FAULT CODES<br>C/S DPF CLOGGED LIGHT ON DASH. VERIFIED. FOUND P2463 STORED IN PCM. TRIED RUNNING REGEN ON VEHICLE ON HIGHWAY. NO DIFFERENCE MADE. WOULD NO (SIC) LOWER SOOT LEVELS. RAN BG EXHAUST, FUEL, AND OIL ADDITIVE CLEANING SERVICE FOR 45 MIN THRU VEHICLE AT HIGH- EXHAUST TEMPS IN AN EFFORT TO CLEAN SYSTEM AND FORCE REGEN THROUGH EXHAUST TEMPS. CHANGED OIL AFTER SERVICE COMPLETE. SOOT LEVELS TOO HIGH FOR REGEN. REPLACED DPF IN EXHAUST AND REST ADAPTIONS AND DPF LIFE TIME. CHECK ENGINE LIGHT<br>NO LONGER ON DASH. WARNING LIGHT NO |

| | | | LONGER ON DASH. POWER RETURNED TO VEHICLE. |
|---|---|---|---|
| | | | C PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE<br>M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE |
| | | | VEHICLE MUST BE DRIVEN AT HIGHWAY SPEEDS FOR DI STANCE (SIC) IN ORDER TO KEEP FILTER FROM GETTING CLO GGED (SIC)/ FAILURE TO PERFORM THIS ACTION WILL LEAD T O (SIC) CONDITION RETURNING WHICH MAY NOT BE A MATTER OF WARRANTY AT THAT TIME |

> ➤ Minimum number of days that the vehicle was at dealerships for repair attempts performed for a diesel exhaust full light/message problem starting from the vehicle's delivery = 23 days.

> ➤ Total minimum number of repair attempts performed upon vehicle since delivery for a diesel exhaust full light/message problem = 4.

## NOTICE OF PROSPECTIVE LITIGATION HOLD

Since this matter may in future result in litigation, there is a legal duty to preserve all evidence, whether printed or electronic that might become relevant to this matter. The purpose of this letter is to explain to you what that obligation means. Take the following steps immediately to protect and preserve any of that information until further notice. Specifically, the following must be done immediately:

1. Suspend deletion, overwriting, or any other destruction of electronic information relevant to this dispute that is under the attorneys' control. This includes electronic information wherever it is stored – at work stations, on a phone or tablet, on a laptop, or at home. It includes all forms of electronic communication – e.g., e-mail, word processing, calendars, voice messages, videos, photographs, information in the personal data assistants/cell phones/tablets and the like. This electronic information must be preserved so that it can be retrieved at a later time. The information must be preserved in its original electronic form, so that all information contained within it, whether visible or not, is also available for inspection – i.e., it is not sufficient to make a hard copy of electronic communication.
2. Preserve any new electronic information that is relevant to this dispute and that is generated after receipt of this letter.
3. Preserve any hard copy of information that is relevant to this dispute.

This is an important legal duty and if this dispute results in litigation, failure to follow these instructions may result in imposition of sanctions by a court or arbitrator.

## DEMAND FOR REVOCATION OF ACCEPTANCE FOR BREACH OF WARRANTY

You failed to address the vehicle's problems in a reasonable period of time and the vehicle suffers from problems that substantially impair the vehicle's value to the consumers. Accordingly, via this letter, the consumers demand the remedy of revocation of acceptance of the vehicle and remedies under N.J.S.A. 12A:2-608.

**The consumers hereby revoke acceptance of the vehicle. Within seven (7) days from the date of this letter, you are requested to:**

1. Make arrangements with me to accept the return of the vehicle from the consumers in its present condition.

2. Make arrangements to pay off any loan associated with the vehicle and to provide me proof from the lender of the completion of such pay off. Upon request, we shall secure a per diem payoff rate.

3. Forward the consumers a check for all sums that the consumers paid for the vehicle to date (inclusive of all payments, deposits, etc.) plus $3,000 – the attorney's fees presently sought in this case.

If you refuse to act as requested in the aforesaid time frame, the consumers shall consider filing suit against you for all applicable relief. If the consumers must file suit, the consumers intend to seek all applicable relief. While the attorney's fees in this matter are currently small, if this dispute continues unresolved and if litigation commences, the attorney's fees and costs shall increase substantially and continue to accrue as the case proceeds through discovery. When seeking any fee award, we shall point to this letter as indicative that you had an opportunity to resolve this matter without incurring greater fees and costs.

Thank you for your attention to this matter.

Best Regards,
/s/ PAUL DEPETRIS
PAUL DEPETRIS

cc:   Clients (via email)
      Lewis G. Adler (via email)

Page 9 of 9

# COMPLAINT
# EXHIBIT I

# Perlman-DePetris Consumer Law

**1926 GREENTREE ROAD, SUITE 100, CHERRY HILL, NEW JERSEY 08003**
**Telephone (856) 446-9797 · Facsimile (888) 635-5933**
**www.newjerseylemons.com**

| | |
|---|---|
| **LEE M. PERLMAN**<br>**Member, NJ bar**<br>**lperlman@newjerseylemons.com** | **PAUL DEPETRIS**<br>**Member, NJ & PA bars**<br>**info@newjerseylemons.com** |

**VIA CERTIFIED MAIL RRR & FIRST CLASS MAIL**

December 7, 2020

JAGUAR LAND ROVER NORTH AMERICA, LLC
ATTN: Customer Relationship Centre
555 MacArthur Boulevard
Mahwah, NJ 07430-2326

**Re:**

| Case caption: | Ilu.Lily Designs, LLC v. Jaguar Land Rover North America, LLC |
|---|---|
| Case docket no.: | Not Yet Assigned |
| Consumers: | Ilu.Lily Designs, Llc |
| Vehicle: | 2017 Land Rover Range Rover Sport; Vin # SALWR2FKXHA693677 |
| Purchase/lease date: | 12-22-17 |

Dear Sir/Miss/Counsel:

## INTRODUCTION

In the above matter, my office represents the above referenced consumers relative to the purchase of the above referenced vehicle. Kindly direct all future correspondence or calls about this matter to my office.

The purpose of this letter is to make a formal demand for revocation of acceptance. The demand herein must be accepted within the time frame and in the manner set forth below and is presented without prejudice to my clients.   As the contents of this letter are for settlement purposes only, nothing herein should be construed as an admission of any kind and the consumers shall object to any effort to introduce the contents of this letter at any court proceeding in this matter.  The demand referenced herein is a compromise that reflects the potential resolution of this matter before additional time and expense may be expended in this matter.

Please do not misconstrue any of the contents of this letter or any documents enclosed herewith or identified or referenced herein as adoptive admissions on the consumers' part.  See N.J.R.E. 803(b)(2); *Skibinski v. Smith*, 206 N.J. Super. 349 (App. Div. 1985); *Cocoran v. Sears*, 312 N.J. Super. 117 (App. Div. 1998).

Page 1 of 9

Excepting those facts which were gleaned from the documents provided by the consumers, all facts set forth below were provided by the consumers and are related below as I understand those facts.

This letter provides the manufacturer formal presuit notice of the consumer's intent to revoke acceptance of the subject product pursuant to the New Jersey Uniform Commercial Code (UCC), specifically N.J.S.A. 12A:2-608.  Please do not misconstrue this letter as an optional final repair attempt letter pursuant to N.J.S.A. 56:12-29, et seq.

## FACTUAL ALLEGATIONS

On or about the above referenced date, the consumers purchased the above referenced vehicle in new condition with an odometer reading of approximately 18 miles.  At time of sale, the consumers paid for the vehicle in full.  At time of sale, the selling dealer issued the consumers a new vehicle limited warranty with various coverage periods for various components, including a 4 year, 50,000 mile warranty, whichever comes first, from the date of delivery to the first retail purchaser.

Following purchase, the consumers experienced problems with the vehicle's operation and pursuant to the manufacturer's new vehicle limited warranty, took the vehicle to various dealerships for multiple unsuccessful repair attempts.

In summary, the vehicle has not performed to the consumers' expectations, the consumers' confidence in the vehicle is totally shaken and the vehicle's value is substantially impaired to the consumers.

The following is a recitation of that repair history as taken from repair orders that I have for the vehicle (note that I am missing certain pages of said invoices):

### REPAIR HISTORY SUMMARY

| Date In & Out & # Of Days Vehicle At Dealer | Miles In & Out Of Dealer | Invoice # | Customer Complaint AND/OR Repair Attempt and/or Diagnosis Reported by Dealer |
|---|---|---|---|
| 4-11-18 1 DAY | 7,581 TO 7,583 | 95210 | A COMPLETE LUBRICATION SERVICE LUBE COMPLETE LUBRICATION AND FILTER CHANGE |
| | | | B PERFORM COURTESY INSPECTION CI PERFORM COURTESY INSPECTION |
| | | | C PROVIDED LAND ROVER LOANER COURTESY VEHICLE M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE |
| | | | D COMPLETE EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |

Page 2 of 9

| | | | |
|---|---|---|---|
| | | | D TOP OFF DIESEL EXHAUST FLUID<br>MISC TOP OFF FLUID |
| | | | E PROVIDED LAND ROVER LOANER<br>COURTESY VEHICLE<br>M013 PROVIDED LAND ROVER LOANER<br>COURTESY VEHICLE |
| | | | F COMPLETE EXTERIOR WASH AND INTERIOR<br>VACUUM<br>WASH COMPLETE EXTERIOR WASH AND<br>INTERIOR. VACUUM |
| | | | H CLIENT STATES THAT THERE IS A PLASTIC<br>REAR TRIM THAT IS LOOSE<br>MISC SECURE PANEL |
| 4-29-19<br>TO<br>5-2-19<br>4 DAYS | 24,175<br>TO<br>24,182 | 102761 | A 16,000 MILES/ 26,000 KM OR 12 MONTHS<br>SERVICE<br>CORRECTION: 101016 16,000 MILES/ 26,000 KM<br>OR 12 MONTHS SERVICE<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>FLUID INSPECT AND CORRECT FLUID LEVELS<br>AS NEEDED<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>BATT TEST BATTERY AND PROVIDE RESULTS<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>HISS CORRECT TIRE PRESSURES AS<br>NECESSARY<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>I INSPECT SUSPENSION, BRAKES, TIRES,<br>WEAR ITEMS, AND FOR EXTERNAL FLUID<br>LEAKS<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>VF REPLACE POLLEN FILTER<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>ROTATE ROTATE (SIC) TIRES FRONT TO REAR<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>RESET RESET (SIC) SERVICE COUNTER<br>TECH NUMBER: 88 LABOR TYPE: CPM |
| | | | B PERFORM COMPLETE INTERIOR AND<br>EXTERIOR DETAIL<br>CAUSE:<br>CORRECTION: DETAIL PERFORM COMPLETE<br>INTERIOR AND EXTERIOR DETAIL |
| | | | C PERFORM COURTESY INSPECTION<br>CAUSE:<br>CORRECTION: CI PERFORM COURTESY<br>INSPECTION<br>TECH NUMBER: 88 LABOR TYPE: INT |

| | | | |
|---|---|---|---|
| | | | D PROVIDED LAND ROVER LOANER COURTESY VEHICLE<br>CAUSE:<br>CORRECTION: M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | E CLIENT STATES WHEN TRAVELING OVER 70MPH THERE IS A RATTLE FROM THE RIGHT FRONT PASSENGER AREA OF THE VEHICLE<br>CAUSE:<br>CORRECTION: 10 RIGHT FRONT WHEEL IS BENT, REPAIRED BY ALLOY WHEEL<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | F CLIENT STATES THERE IS A NAIL PUNCTURE IN THE RIGHT FRONT TIRE<br>CAUSE: IAS AUTH#JM143599-1597489 FAX#5122574777<br>CORRECTION: MT2 MOUNT AND BALANCE TWO TIRES.CORRECT TIRE PRESSURES WHEN<br>COMPLETED.<br>TECH NUMBER: 88 LABOR TYPE: WCEXT |
| | | | H (SIC) INSPECT FOR DOOR DINGS<br>CAUSE:<br>CORRECTION: 10 NONE PRESENT<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | J REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE<br>CAUSE:<br>CORRECTION: M15R REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE<br>TECH NUMBER: 88 LABOR TYPE: CPM |
| | | | K PERFORM N120<br>CAUSE: PERFROM N120B<br>CORRECTION: 889003 INSTRUMENT CLUSTER - SYSTEM DIAGNOSIS - INCLUDES CONFIGURATION<br>OF NEW ECU<br>TECH NUMBER: 88 LABOR TYPE: WTY |
| | | | L PERFORM N241<br>CAUSE: PERRFOM N241A<br>CORRECTION: 189090 POWERTRAIN CONTROL MODULE (PCM) - SOFTWARE UPDATE<br>TECH NUMBER: 88 LABOR TYPE: WTY |
| 9-4-19 TO 9-5-19 | 30,007 30,010 | 105861 | A CLIENT STATES CHIP IN WINDSHIELD<br>CAUSE: IAS-AUTH#DW5837531655930<br>10 STATES HAS WINDHIELD CHIP |

| 2 DAYS | | | |
|---|---|---|---|
| 3-3-20<br>TO<br>3-6-20<br>4 DAYS | 37,929<br>TO<br>37,938 | 110620 | A CUSTOMER STATES VEHICLE SAYS EXH FILTER FULL<br>CAUSE:<br>DIESEL PARTICULATE FILTER CLOGGED. CONNECT PATHFINDER AND RETRIEVE DTCS. FOUND P2463 STORED WITH IN (SIC) PCM. CHECK AND TOP UP EXHAUST FLUID LEVEL (16 LITERS). RESET DOSING FACTOR USING PATHFINDER, RUN EGR AND AIR PATH CHECK FOR INTAKE LEAKS. PERFORM REGENERATION DRIVE CYCLE WITH PATHFINDER ATTACHED. PERFORM DYNAMIC REGENERATION PROCEDURE USING PATHFINDER (FAILED). DIESEL PARTICULATE FILTER BEYOND REGENERATION CAPABILITIES. REMOVE AND REPLACE PARTICULATE FILTER CONNECT PATHFINDER PERFORM FILTER REPLACEMENT PROCEDURE. CLEAR |
| | | | B PERFORM COURTESY INSPECTION<br>CAUSE:<br>CORRECTION: CI PERFORM COURTESY INSPECTION<br>TECH NUMBER: 46 LABOR TYPE: INT |
| | | | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>CAUSE:<br>CORRECTION: WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | D PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE<br>CAUSE:<br>CORRECTION: M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | E CUSTOMER STATES DIESEL FLUID IS LOW<br>CAUSE:<br>CORRECTION: C/S CUSTOMER STATES DIESEL FLUID IS LOW<br>TECH NUMBER: 46 LABOR TYPE: INT |
| 5-5-20<br>TO<br>5-20-20<br>16 DAYS | 38,313<br>TO<br>38,316 | 111366 | A PERFORM COURTESY INSPECTION<br>CI PERFORM COURTESY INSPECTION |

| | | | |
|---|---|---|---|
| | | | B COMPLETE EXTERIOR WASH AND INTERIOR VACUUM<br>WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | C CUSTOMER STATES RIGHT FRONT TIRE LOSING AIR<br>CAUSE: IAS<br>MTL MOUNT AND BALANCE ONE "TIRE. CORRECT TIRE<br>PRESSURE WHEN COMPLETED |
| | | | D* * FRONT RIGHT TIRE WAS DRIVEN ON FLAT, THERE IS A BOLT IN THE TIRE THAT IS PLUGGABLE BUT·I WOULD; RECOMMEND REPDACING THE TIRE SINCE THE SIDEWALL WAS COMPROMISED GOODYEAR EAGLE FL 255/55R20 110Y |
| 9-16-20<br>TO<br>9-23-20<br>11 DAYS | 39,587<br>39,623 | 114696 | A CUSTOMER STATES VEHICLE SAYS EXHAUST FILTER FULL<br>CAUSE:<br>851806 READ AND CLEAR FAULT CODES 39623 FOUND MALFUNCTION ON DASH. FOUND P2463 AND P246B IN PCM. DROVE VEHICLE 18 MILES (39587-39605) DURING A REGEN ATTEMPT TO CLEAR THE EXHAUST FILTER. WENT FROM 30.5 GRAMS OF SOOT WITH A TARGET OF 6 GRAMS. VEHICLE WENT DOWN TO 14.2 G AND THEN STARTED RISING AGAIN. OPENED<br>TA CASE. 3046785. REMOVED ENGINE AIR FILTER, EGR TUBE AND VALVE, AND PIPE TO THROTTLE VALVE TO TAKE PHOTOS OF ALL COMPONENTS TO SEND TO TA TO CHECK FOR EXCESSIVE:SOOT/OIL CONTAMINATION BUILD UP IN ENGINE. ADVISED BY TA TO REMOVE DPF DIFFERENTIAL PRESSURE SENSOR & LINES AND CHECK FOR CLOGS OR CONTAMINATION. NONE FOUND. PHOTOS TAKEN AND SENT TO TA. TA CALLED AND ADVISED HABITS ARE LARGEST CONCERN. VEHICLE NEEDS TO BE DRIVEN MORE AND ON LONGER HIGHWAY TRIPS. REQUESTSTED REGEN 173 TIMES AND ONLY WAS ABLE TO PERFORM IT 3 TIMES. REMOVED OIL SEPARATOR AND REPLACED DUE TO OIL INTRUSION, ADVISED BY TA. WAS ABLE TO UPDATE PCM FURTHER WITH UPDATED PATHFINDER. RE-RAN REGEN RUN ON HIGHWAY. (39605-39623) WAS ABLE TO GET |

| | | | |
|---|---|---|---|
| | | | SOOT LEVEL UNDER 6GRAMS (SIC) AND WITIN SPEC. VEHICLE NO LONGER HAS FAULTS ON DASH AND HAS FULL POWER BACK TO VEHICLE |
| | | | B PERFORM COURTESY INSPECTION CI PERFORM COURTESY INSPECTION |
| | | | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | D 16,000 MILE FACTORY MAINTENANCE SERVICE 16K 16,000 MILE FACTORY MAINTENANCE SERVICE |
| | | | E** PRICE FOR 5. 5 LITERS OF DEF FLUID MISC PRICE FOR 5. 5 LITERS OF DEF FLUID |
| | | | F** WIPERS WIPER REPLACE WIPER BLADES |
| | | | G**ENGINE AIR FILTERS AUR REPLACE ENGINE AIR FILTER ELEMENT |
| | | | H** CLIENT STATES THAT THERE ARE DENTS ON LEFT REAR DOOR AND RIGHT FENDER CAUSE: CLAIMS@IASDIRECT.COM AUTH#ER6011911798444 TOTAL $180 SUBLET PDR- INV#151319 |
| 10-17-20 TO 10-20-20 4 DAYS | 39,917 TO 39,937 | 115440 | A COMPLETE- EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | B CUSTOMER STATES DIESEL EXHAUST FULL MESSAGE IS ON 129016 READ AND CLEAR FAULT CODES C/S DPF CLOGGED LIGHT ON DASH. VERIFIED. FOUND P2463 STORED IN PCM. TRIED RUNNING REGEN ON VEHICLE ON HIGHWAY. NO DIFFERENCE MADE. WOULD NO (SIC) LOWER SOOT LEVELS. RAN BG EXHAUST, FUEL, AND OIL ADDITIVE CLEANING SERVICE FOR 45 MIN THRU VEHICLE AT HIGH- EXHAUST TEMPS IN AN EFFORT TO CLEAN SYSTEM AND FORCE REGEN THROUGH EXHAUST TEMPS. CHANGED OIL AFTER SERVICE COMPLETE. SOOT LEVELS TOO HIGH FOR REGEN. REPLACED DPF IN EXHAUST AND REST ADAPTIONS AND DPF LIFE TIME. CHECK ENGINE LIGHT NO LONGER ON DASH. WARNING LIGHT NO |

| | | | LONGER ON DASH. POWER RETURNED TO VEHICLE. |
|---|---|---|---|
| | | | C PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE |
| | | | VEHICLE MUST BE DRIVEN AT HIGHWAY SPEEDS FOR DI STANCE (SIC) IN ORDER TO KEEP FILTER FROM GETTING CLO GGED (SIC)/ FAILURE TO PERFORM THIS ACTION WILL LEAD T O (SIC) CONDITION RETURNING WHICH MAY NOT BE A MATTER OF WARRANTY AT THAT TIME |

➤ Minimum number of days that the vehicle was at dealerships for repair attempts performed for a diesel exhaust full light/message problem starting from the vehicle's delivery = 23 days.

➤ Total minimum number of repair attempts performed upon vehicle since delivery for a diesel exhaust full light/message problem = 4.

## NOTICE OF PROSPECTIVE LITIGATION HOLD

Since this matter may in future result in litigation, there is a legal duty to preserve all evidence, whether printed or electronic that might become relevant to this matter.  The purpose of this letter is to explain to you what that obligation means.  Take the following steps immediately to protect and preserve any of that information until further notice. Specifically, the following must be done immediately:

1. Suspend deletion, overwriting, or any other destruction of electronic information relevant to this dispute that is under the attorneys' control.  This includes electronic information wherever it is stored – at work stations, on a phone or tablet, on a laptop, or at home.  It includes all forms of electronic communication – e.g., e-mail, word processing, calendars, voice messages, videos, photographs, information in the personal data assistants/cell phones/tablets and the like.   This electronic information must be preserved so that it can be retrieved at a later time.  The information must be preserved in its original electronic form, so that all information contained within it, whether visible or not, is also available for inspection – i.e., it is not sufficient to make a hard copy of electronic communication.
2. Preserve any new electronic information that is relevant to this dispute and that is generated after receipt of this letter.
3. Preserve any hard copy of information that is relevant to this dispute.

This is an important legal duty and if this dispute results in litigation, failure to follow these instructions may result in imposition of sanctions by a court or arbitrator.

## DEMAND FOR REVOCATION OF ACCEPTANCE FOR BREACH OF WARRANTY

You failed to address the vehicle's problems in a reasonable period of time and the vehicle suffers from problems that substantially impair the vehicle's value to the consumers. Accordingly, via this letter, the consumers demand the remedy of revocation of acceptance of the vehicle and remedies under N.J.S.A. 12A:2-608.

**The consumers hereby revoke acceptance of the vehicle. Within seven (7) days from the date of this letter, you are requested to:**

1. Make arrangements with me to accept the return of the vehicle from the consumers in its present condition.

2. Make arrangements to pay off any loan associated with the vehicle and to provide me proof from the lender of the completion of such pay off. Upon request, we shall secure a per diem payoff rate.

3. Forward the consumers a check for all sums that the consumers paid for the vehicle to date (inclusive of all payments, deposits, etc.) plus $3,000 – the attorney's fees presently sought in this case.

If you refuse to act as requested in the aforesaid time frame, the consumers shall consider filing suit against you for all applicable relief. If the consumers must file suit, the consumers intend to seek all applicable relief. While the attorney's fees in this matter are currently small, if this dispute continues unresolved and if litigation commences, the attorney's fees and costs shall increase substantially and continue to accrue as the case proceeds through discovery. When seeking any fee award, we shall point to this letter as indicative that you had an opportunity to resolve this matter without incurring greater fees and costs.

Thank you for your attention to this matter.

Best Regards,
/s/ PAUL DEPETRIS
PAUL DEPETRIS

cc:     Clients (via email)
        Lewis G. Adler (via email)

# COMPLAINT
# EXHIBIT J



**National Programs**

**BBB AUTO LINE**

January 6, 2021

MR ILU LILY  DESIGNS LLC  C/O PAUL DEPETRIS
1926 GREENTREE RD SUITE #100
CHERRY HILL  NJ 08003

Re: LRV2110260 Designs LLC vs Land Rover North America

Dear Mr. Ilu.Lily Designs LLC C/O Paul Depetris:

Thank you for contacting the BBB AUTO LINE program. Your claim will be opened once your properly completed *Customer Claim Form (CCF)* is returned to our office.

Please review the information outlined below and follow the instructions.
* *Completing Your BBB AUTO LINE Claim* - Please read this document first. It explains what you need to do to help us handle your claim.
* *Program Summary* - This document explains the types of claims that may be arbitrated in the BBB AUTO LINE program and the remedies available.
* *CCF* - Information we have on file regarding your complaint is recorded on the *CCF*. Please verify the accuracy of the information and make any necessary changes.  Please provide the Vehicle Identification Number (VIN).

If you would like to review the programs rules and policies, please visit www.auto.bbbnp.org/rules/.

We have notified the manufacturer about your contact with us and they may contact you to discuss your case.  Please let us know if you reach a settlement so we can record that information in your file.

Once we receive your signed CCF with the VIN, if eligible, we will officially open your case.  Within a few days, we will contact you by phone to discuss your case. Our goal is to help you and the manufacturer in reaching a mutually satisfactory resolution to your dispute.

BBB AUTO LINE staff are here to help you.  Please call me at (800)955-5100 if you have any questions or if I can be of help.

Sincerely,

Mary Ann Khalifeh

1676 International Drive, Suite 550 · McLean, VA 22102 · Phone 800.955.5100 · Fax: 703.247.9700

## BBB AUTO LINE
## Customer Claim Form

Case number: LRV2110260
Contact Date: 01/06/21
Start Date:

Please make any necessary corrections to the information below, **print** or verify your VIN number and lienholder/leasing company information at the bottom of this page, and complete the missing information in Section 4 on the next page (attach additional sheets as needed).

### SECTION 1: CUSTOMER INFORMATION

Titled owner:   Mr Ilu.Lily  Designs LLC  C/O Paul Depetris

Mailing address:  1926 Greentree Rd Suite #100

City:  Cherry Hill                              State:  NJ    Zip code:  08003

Day phone: (856) 446-9797         Evening phone: (856) 446-9797       Cell phone:

Fax:                              E-mail address: info@newjerseylemons.com

### SECTION 2: VEHICLE INFORMATION

Make: Land Rover          Model:  Range Rover Sport  Year: 2017      Current mileage: 40000

Name(s) that appears on the vehicle title:    Ilu.Lily Designs LLC

Selling dealer/city/state: ,  , NJ

Primary Servicing dealer/city/state:  ,

Acquired as  ☒ new  ☐ used  ☐ demo  ☐ leased      Is your vehicle Certified Pre-Owned?  ☐ yes  ☒ no

Purchase/lease date:  12/22/17                     Mileage at purchase/lease:

First repair attempt date:                        First repair attempt mileage: 0

| How often is the vehicle used for business purposes (percentage):  0  % | Number of vehicles owned or leased by the business: | Is the vehicle in your possession? ☒ yes  ☐ no |
| --- | --- | --- |

Has the vehicle been in an accident/had body damage?  ☐ yes  ☒ no          Date of accident:

Description of damage:

### SECTION 3: DESIRED OUTCOME (Describe what you want done to resolve your concern)

Repurchase

Please complete the missing information in the box below and on page 2.

**VEHICLE INDENTIFICATION NUMBER**  __ __ __ — __ __ — __ __ __ __ — __ __ __ — __ __ __

Page 1

CCF

Case Number: LRV2110260

## SECTION 4: VEHICLE PROBLEMS (List primary problem first)

| Problem | Servicing dealer(s) | # of repair attempts | List the date, mileage, and days out of service for each repair attempt | Does the problem exist now? |
|---|---|---|---|---|
| **Example:**<br>A/C won't cool properly | Any Dealer, Inc. | 2 | 4/23/06  3,500 miles  5 days<br>6/10/07  12,700 miles 1 day | yes |
| diesel Exhaulst | | 4 | | yes |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Total days out of service for all problems:** _____

Signature of Titled Owner(s) _____ Date _____

Printed Name of Titled Owner(s) _____

I am submitting this dispute for resolution in the BBB AUTO LINE program, and I agree to arbitrate the dispute under the BBB AUTO LINE Arbitration Rules.

**Please mail or fax this completed form with <u>copies</u> of all available repair orders, your vehicle registration, your sales agreement or lease agreement, and any other relevant documents (e.g., written correspondence with the manufacturer, etc.) to:**

**BBB AUTO LINE**
**1676 International Drive, Suite 550**
**McLean VA, 22102**
**Fax: 703-247-9700**

 **BBB AUTO LINE PROGRAM SUMMARY**

# *Land Rover*

Land Rover has agreed to arbitrate claims covered by the applicable state lemon law. Land Rover has also agreed to arbitrate certain warranty claims not covered by the lemon law. This *Program Summary* supplements the BBB AUTO LINE Arbitration Rules and describes the claims that can be resolved through BBB AUTO LINE.

## ELIGIBLE CLAIMS AND REMEDIES

### Repurchase/Replacement

A warranty claim seeking relief under the applicable state lemon law must meet all the standards of that law. The claim must be received by BBB AUTO LINE within the time period for filing a legal action under that law. Please see the attached description of the applicable state lemon law provisions.

If the claim meets all standards set out by the applicable state lemon law, the arbitrator will award a repurchase or replacement vehicle including all remedies specifically provided by that law **excluding** attorney's fees. An arbitrator may not award any penalties or multiple damages.

Please note:

- ♦ The award will be reduced for the customer's use of the vehicle in accordance with the applicable state lemon law.
- ♦ The arbitrator may adjust the award based on damage to the vehicle exceeding normal wear and tear.
- ♦ The arbitrator will decide whether the applicable state lemon law permits an adjustment to the award for any trade-in over-allowance or debt from a previous transaction.
- ♦ The award will not include any manufacturer rebate or manufacturer-sponsored credit card earnings that the customer received or used as a downpayment or capitalized cost reduction.

## CUSTOMER RESPONSIBILITIES

- ♦ At the time of the repurchase or replacement transaction, the customer's vehicle must be currently registered. The customer will also be responsible for providing clear title to the vehicle and signing all documents necessary to effect transfer of the title, including a power of attorney for title transfer.

# WARRANTY CLAIMS NOT COVERED BY THE LEMON LAW

## Time Period for Filing Claims

Claims seeking **repairs** or **reimbursement** for past repairs must be received by BBB AUTO LINE within 2 years or 24,000 miles whichever comes first.

## Remedies for Warranty Claims

The arbitrator may award the following remedies:

- **Repairs** to defects in material or workmanship. The arbitrator may not order a change in the vehicle's options or its design. The arbitrator may not order repairs to aftermarket parts or accessories that are not covered by the Land Rover New Vehicle Limited Warranty. Further, it is the customer's responsibility to remove any aftermarket equipment or accessories that interfere with Land Rover's ability to perform the repair.

- **Reimbursement** for documented expenses the customer incurred to repair defects in material or workmanship that should have been covered under warranty. It is the customer's responsibility to provide copies of receipts for these repairs.

# CLAIMS THAT WILL NOT BE ARBITRATED

- Claims involving salvaged or branded titled vehicles.
- Claims covered by insurance or by warranties of other manufacturers.
- Claims involving a vehicle defect if the customer alleges – either as part of the BBB AUTO LINE claim or at any other time – that the vehicle defect has caused an accident or fire that resulted in damage to any vehicle or damage to property.
- Claims involving a vehicle defect if the customer alleges – either as part of the BBB AUTO LINE claim or at any other time – that the vehicle defect has caused bodily injury.
- Allegations of fraud or other violations of law.
- Claims seeking compensation for loss of wages, personal injury or mental anguish.
- Claims seeking compensation for legal fees.
- Claims seeking punitive damages.
- Claims identical to any claim that was resolved by a previous mediation or arbitration, court action, settlement, or agreement between the customer and Land Rover.

# OTHER IMPORTANT INFORMATION

- The customer must own or lease the vehicle throughout the entire arbitration process.

- If the customer files suit or a state administrative action against Land Rover prior to the completion of the arbitration process, Land Rover will not be obligated to continue with the arbitration.

- A test drive may be taken in the vehicle only if the customer has liability insurance that satisfies his/her state's minimum requirements.

**The BBB will let the parties know if other restrictions apply.**

# STANDARDS OF THE NEW JERSEY LEMON LAW

The following is a brief explanation of most relevant provisions of the New Jersey lemon law. The complete text of the lemon law can be found at N.J. Stat. Ann. § 56:12-29 *et seq.*

For more information about the lemon law, or to obtain a copy of "Consumer's Guide to the New Jersey Lemon Law," consumers may call the New Jersey Division of Consumer Affairs, Lemon Law Unit at (973) 504-6226, or visit http://www.njconsumeraffairs.com/ocp/lemguide.htm.

## VEHICLES COVERED

The New Jersey lemon law covers the following types of vehicles if purchased, leased or registered in New Jersey:

1. A passenger automobile, meaning any motor vehicle used and designed for the transportation of passengers, other than an omnibus or school bus;

2. An authorized emergency vehicle, meaning a vehicle of the fire department, police vehicle and such ambulance and other vehicle as approved by the chief administrator when operated in response to an emergency call; and

3. A motorcycle.

The lemon law covers used vehicles, but does not cover the living facilities of motor homes. The New Jersey Attorney General's Office has indicated that the lemon law does not cover a vehicle with a commercial registration.

## CONSUMERS COVERED

The lemon law covers the following "consumers":

1. The buyer or lessee, other than for purposes of resale or sublease, of a motor vehicle;

2. Any person to whom a motor vehicle is transferred during the duration of a warranty applicable to the motor vehicle; and

3. Any other person entitled by the terms of the warranty to enforce its obligations.

## PROBLEMS COVERED

The lemon law covers any *nonconformity*, which it defines as a defect or condition that substantially impairs the use, value or safety of a motor vehicle.

The lemon law provides an affirmative defense if the manufacturer can show that the alleged nonconformity does not substantially impair the use, value, or safety of the new motor vehicle, or the nonconformity is the result of abuse, neglect, or

---

This information is not intended as legal advice. Please direct specific questions to your legal counsel.
Updated 1/18/2010 © 2010, Council of Better Business Bureaus, Inc.

New Jersey

1

unauthorized modifications or alterations of the motor vehicle by anyone other than the manufacturer or its dealer.

## MANUFACTURER'S DUTY TO REPAIR

If a consumer reports a nonconformity to the manufacturer; an authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier; or the dealer or distributor during the first 18,000 miles of operation or during the period of two years following the date of the motor vehicle's original delivery to a consumer, whichever is earlier, then the manufacturer or authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier must make or arrange within a reasonable time all repairs necessary to correct the nonconformity.

For vehicles purchased or leased on or after October 1, 2009, the consumer must report the nonconformity during the first 24,000 miles of operation or during the period of two years following the date of the motor vehicle's original delivery to the consumer, whichever is earlier.

## MANUFACTURER'S DUTY TO REPURCHASE OR REPLACE A VEHICLE

If the manufacturer; an authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier; or the dealer or distributor is unable to repair or correct a nonconformity within a reasonable time during the first 18,000 miles of operation or during the period of two years following the date of the motor vehicle's original delivery to a consumer, whichever is earlier, then the manufacturer, co-manufacturer or post-manufacturing modifier must repurchase or replace the motor vehicle.

For vehicles purchased or leased on or after October 1, 2009, the manufacturer; an authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier; or the dealer or distributor must repair or correct a nonconformity within a reasonable time during the first 24,000 miles of operation or during the period of two years following the date of the motor vehicle's original delivery to the consumer, whichever is earlier.

## REASONABLE NUMBER OF REPAIR ATTEMPTS

The New Jersey lemon law establishes a *presumption* that a manufacturer; an authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier; or the dealer or distributor is unable to repair or correct a nonconformity within a reasonable time if, within the first 18,000 miles of operation or during two years following the date of the motor vehicle's original delivery to a consumer, whichever is earlier, either of the following occurs:

1. Substantially the same nonconformity has been subject to repair three or more times by the manufacturer; an authorized emergency vehicle's manufacturer, co-

manufacturer or post-manufacturing modifier; or the dealer or distributor and the nonconformity continues to exist; or

2. The vehicle is out of service due to repair for one or more nonconformities for a cumulative total of 20 or more calendar days since the original delivery of the motor vehicle and a nonconformity continues to exist.

For vehicles purchased or leased on or after October 1, 2009, the manufacturer; an authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier; or the dealer or distributor is *presumed* to have been unable to repair or correct a nonconformity within a reasonable time if, within the first 24,000 miles of operation or during two years following the date of the motor vehicle's original delivery to the consumer, whichever is earlier, one of the following occurs:

1. Substantially the same nonconformity (not likely to cause death or serious bodily injury if the vehicle is driven) has been subject to repair three or more times by the manufacturer; an authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier; or the dealer or distributor and the nonconformity continues to exist;

2. The vehicle is out of service due to repair for one or more nonconformities for a cumulative total of 20 or more calendar days (45 or more calendar days for a motorhome) since the original delivery of the motor vehicle and a nonconformity continues to exist; or

3. A nonconformity that is likely to cause death or serious bodily injury if the vehicle is driven has been subject to examination or repair at least once by the manufacturer; an authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier; or the dealer or distributor and the nonconformity continues to exist.

The two year term, 20-day period, and 45-day period specified in this section are extended by any period of time during which repair services are not available to the consumer because of war, invasion or strike, or a fire, flood or other natural disaster.

For a motorhome or authorized emergency vehicle, if the consumer presented the vehicle to a repair facility that is not authorized by the manufacturer, co-manufacturer or post-manufacturing modifier to provide service on that vehicle, it will not be considered an examination or repair attempt. If the consumer presents a motorhome to an authorized repair facility and, rather than wait for repairs to the nonconformity, the consumer decides to continue traveling and to seek repair of the same nonconformity at another authorized repair facility, it will be considered as one examination or repair attempt.

Each time a consumer's motor vehicle is returned from being examined or repaired during the specified time/mileage period, the manufacturer, co-manufacturer or post-manufacturing modifier, through its dealer or distributor, must provide to the

This information is not intended as legal advice. Please direct specific questions to your legal counsel.
Updated 1/18/2010 © 2010, Council of Better Business Bureaus, Inc.

consumer an itemized, legible statement of repair which indicates any diagnosis made and all work performed on the vehicle and provides information including but not limited to:

1. A general description or identification of the problem reported by the consumer or an identification of the defect or condition and the source of the defect;

2. The amount charged for parts and the amount charged for labor, if paid by the consumer; and

3. The date and odometer reading when the vehicle was submitted for repair and when the vehicle was made available to the consumer.

## NOTICE AND OPPORTUNITY TO REPAIR

The above presumption applies only if (1) the consumer or someone on the consumer's behalf sends notice of a potential claim in writing by certified mail, return receipt requested, to the manufacturer or an authorized emergency vehicle's manufacturer, co-manufacturer, post-manufacturing modifier, dealer or distributor; and (2) the manufacturer or an authorized emergency vehicle's manufacturer, co-manufacturer, post-manufacturing modifier, dealer or distributor has had one opportunity to repair or correct the defect or condition within ten calendar days following receipt of this notification.

Notification by the consumer must take place any time after (1) substantially the same nonconformity was subject to repair two or more times; (2) the vehicle has been out of service by reason of repair for a cumulative of 20 or more calendar days (45 or more calendar days for a motorhome); or (3) for vehicles purchased or leased on or after October 1, 2009, a nonconformity that is likely to cause death or serious bodily injury if the vehicle is driven was subject to examination or repair at least once by the manufacturer or its dealer and the nonconformity continues to exist.

## DISPUTE RESOLUTION

If the manufacturer or an authorized emergency vehicle's manufacturer, co-manufacturer or post-manufacturing modifier has established or participates in an informal dispute settlement procedure pursuant to 15 U.S.C. Sec. 2310 and 16 C.F.R. Part 703, or pursuant to the requirements of the lemon law, a consumer may but is not required to submit a dispute to the informal dispute settlement procedure before participating in the Division of Consumer Affairs' summary hearing procedure.

A consumer is not required to participate in either an informal dispute settlement procedure or the Division of Consumer Affairs' summary hearing procedure before filing an action in court.

## TIME PERIOD FOR FILING CLAIMS

Not specified. Assuming that the UCC statute of limitations applies, a claim must be filed with BBB AUTO LINE within four years from the date the alleged defect is discovered.

Please note that certain actions must be taken within specified time frames when filing a lemon law claim with BBB AUTO LINE or when seeking a hearing with the Division of Consumer Affairs' Automotive Dispute Resolution Program.

# REMEDIES UNDER THE NEW JERSEY LEMON LAW

## REPURCHASE OF AN OWNED VEHICLE

A manufacturer must pay the following amounts when it repurchases an owned vehicle under the lemon law:

1. Purchase price of the original motor vehicle, including any stated credit or allowance for the consumer's used vehicle;

2. The cost of any options or other modifications arranged, installed, or made by the manufacturer or its dealer within 30 days after the date of original delivery; and

3. Any other charges or fees, including but not limited to sales tax, license and registration fees, finance charges, reimbursement for towing and reimbursement for actual expenses incurred by the consumer for the rental of a vehicle equivalent to the consumer's vehicle during the period during which the consumer's vehicle was out of service due to a nonconformity;

4. Less a reasonable allowance for vehicle use.

For an authorized emergency vehicle, the manufacturer, co-manufacturer, or post-manufacturing modifier must pay the following amounts when it repurchases an owned vehicle under the lemon law:

1. Full refund of the purchase price of the original emergency vehicle, depending on the source of the nonconformity, including any stated credit or allowance for the consumer's used emergency vehicle;

2. Any other charges or fees, including but not limited to sales tax, license and registration fees, reimbursement for towing and reimbursement for actual expenses incurred by the consumer for the rental of a substitute emergency vehicle, if applicable, for the period during which the consumer's emergency vehicle was out of service due to the nonconformity;

3. Less a reasonable allowance for vehicle use.

Refunds must be made to the consumer and lienholder, if any, as their interests appear on the records of ownership.

The reasonable allowance for use is defined to mean the mileage at the time the consumer first presents the motor vehicle to the dealer, distributor, manufacturer, co-manufacturer, or post-manufacturing modifier for correction of a nonconformity times the purchase price of the vehicle, divided by one hundred thousand miles.

This information is not intended as legal advice. Please direct specific questions to your legal counsel.
Updated 1/18/2010 © 2010, Council of Better Business Bureaus, Inc.

## REPURCHASE OF A LEASED VEHICLE

A manufacturer must pay the following amounts when it repurchases a leased vehicle under the lemon law:

*To the lessee:*

1. A full refund of the amount actually paid by the consumer under the lease agreement; and

2. Any other charges or fees actually paid by the consumer, including but not limited to sales tax, license and registration fees, finance charges, reimbursement for towing and reimbursement for actual expenses incurred by the consumer for the rental of a vehicle equivalent to the consumer's vehicle during the period during which the consumer's vehicle was out of service due to a nonconformity;

3. Less a reasonable use allowance for vehicle use.

*To the lessor:*

1. A full refund of the vehicle's original purchase price plus any unrecovered interest expense;

2. Less the amount actually paid by the consumer under the lease agreement.

Refunds shall be made to the lessor and lienholder, if any, as their interests appear on the records of ownership. The consumer's lease agreement with the motor vehicle lessor is terminated and no penalty for early termination is assessed.

The reasonable allowance for use is the mileage at the time the consumer first presents the motor vehicle to the dealer, distributor, manufacturer, co-manufacturer, or post-manufacturing modifier for correction of a nonconformity times the lease price of the vehicle, divided by one hundred thousand miles.

## REPLACEMENT

When replacing a vehicle under the New Jersey lemon law, the manufacturer must ensure that any lien on the returned motor vehicle is transferred to the replacement vehicle. The reasonable allowance for use does not apply to a replacement.

This information is not intended as legal advice. Please direct specific questions to your legal counsel.
Updated 1/18/2010 © 2010, Council of Better Business Bureaus, Inc.

# Completing your BBB AUTO LINE Claim . . .
## It's as easy as 1, 2, 3

**1.** Review and sign the ***Customer Claim Form (CCF)***. If any information is missing or incorrect, please write the corrections or additions directly on the form. Please print or verify your VIN (Vehicle Identification Number) and lienholder or leasing company information on the bottom of the first page and complete the grid on the second page. You may attach additional sheets if the grid does not provide enough space. Please list *all* of your problems on the grid (do <u>not</u> write "see attached repair orders" instead of listing your problems).

**2.** Make one *clear* **copy** of the following documents, preferably on 8.5" X 11" standard paper:

☐ ***Sales Agreement/Purchase Contract*** or ***Lease Agreement*** containing the purchase or lease price, sales tax and other expenses associated with your purchase or lease;

☐ Current ***Vehicle Registration;***

☐ ***Work Orders***, including proof of payment if you are seeking reimbursement.

☐ Any other relevant documents, such as notice(s) sent to the manufacturer, along with any confirmation(s) of receipt (Please do <u>not</u> send photographs or video/audio recordings).

<u>Please do not send originals</u>. We are not able to return documents to you. You may wish to make a complete set of copies for your file before mailing.

Paper clip (do not staple) your documents to the signed ***CCF***. Please do not fold your documents.

**IMPORTANT NOTE: We may request your vehicle loan or lease account number for purposes of completing a repurchase or replacement transaction. We will <u>never</u> request your Social Security Number or other sensitive financial information (e.g., bank account numbers). For your security, please redact (black out) any such information from your documents before sending.**

**3.** Mail, fax or upload all your documents to the address below:

**BBB AUTO LINE**
**1676 International Drive, Suite 550**
**McLean VA, 22102**
**Fax: 703-247-9700**

**QUESTIONS?  We're here to help.**
**Call (800) 955-5100**

# Perlman-DePetris Consumer Law

**1926 GREENTREE ROAD, SUITE 100, CHERRY HILL, NEW JERSEY 08003**
**Telephone (856) 446-9797 - Facsimile (888) 635-5933**
**www.newjerseylemons.com**

| | |
|---|---|
| **LEE M. PERLMAN**<br>**Member, NJ bar**<br>**lperlman@newjerseylemons.com** | **PAUL DEPETRIS**<br>**Member, NJ & PA bars**<br>**info@newjerseylemons.com** |

**VIA FAX (703-247-9700), CERTIFIED MAIL RRR & FIRST CLASS MAIL**

January 11, 2021

BBB Autoline
1676 International Dr., Ste. 550
McLean, VA 22102

Re:

| Case caption: | Ilu.Lily Designs, LLC and Candace Nejat v. Jaguar Land Rover North America, LLC |
|---|---|
| Case no.: | LRV2110260 |
| Consumers: | Ilu.Lily Designs, LLC and Candace Nejat |
| Vehicle: | 2017 Land Rover Range Rover Sport; Vin # SALWR2FKXHA693677 |
| Purchase/lease date: | 12-22-17 |

Dear Sir/Miss/Counsel:

In the above matter, my office represents the above referenced claimants relative to the purchase of the above referenced vehicle. Kindly direct all future correspondence or calls about this matter to my office.

Enclosed please find the enclosed completed BBB claim form with the following documentation related to the vehicle:

1. Repair history summary.
2. Sales agreement/purchase contract or lease agreement.
3. Current vehicle registration.
4. Work orders.

Claimants seek relief New Jersey Uniform Commercial Code, N.J.S.A. 12A:1-101, et seq. (UCC) and the Magnuson-Moss Warranty- Federal Trade Improvement Act, 15 U.S.C. § 2301, et seq. (MMWA). At present, claimants are not seeking relief through the BBB for any claims brought under an act concerning new motor vehicle warranties and repealing P.L. 1983, c. 215 and making an appropriation, N.J.S.A. 56:12-29, et seq. a/k/a the New Jersey New Car Lemon Law (NCLL).  This is because that law doesn't require the consumer to use the BBB before filing suit against the manufacturer for relief.  **Please don't mistakenly handle this case as a NCLL claim.**  Thank you for your attention to this matter.

Best Regards,
/s/ PAUL DEPETRIS
PAUL DEPETRIS

cc:     Clients (via email)

Page 1 of 1

## Perlman-DePetris Consumer Law

**1926 GREENTREE ROAD, SUITE 100, CHERRY HILL, NEW JERSEY 08003**
**Telephone (856) 446-9797 - Facsimile (888) 635-5933**
**www.newjerseylemons.com**

LEE M. PERLMAN
Member, NJ bar
lperlman@newjerseylemons.com

PAUL DEPETRIS
Member, NJ & PA bars
info@newjerseylemons.com

**VIA FAX (703-247-9700), CERTIFIED MAIL RRR & FIRST CLASS MAIL**

January 11, 2021

BBB Autoline
1676 International Dr., Ste. 550
McLean, VA 22102

Re:

| Case caption: | Ilu.Lily Designs, LLC and Candace Nejat v. Jaguar Land Rover North America, LLC |
|---|---|
| Case no.: | LRV2110260 |
| Consumers: | Ilu.Lily Designs, LLC and Candace Nejat |
| Vehicle: | 2017 Land Rover Range Rover Sport; Vin # SALWR2FKXHA693677 |
| Purchase/lease date: | 12-22-17 |

Dear Sir/Miss/Counsel:

In the above matter, my office represents the above referenced claimants relative to the purchase of the above referenced vehicle. Kindly direct all future correspondence or calls about this matter to my office.

Enclosed please find the enclosed completed BBB claim form with the following documentation related to the vehicle:

1. Repair history summary.
2. Sales agreement/purchase contract or lease agreement.
3. Current vehicle registration.
4. Work orders.

Claimants seek relief New Jersey Uniform Commercial Code, N.J.S.A. 12A:1-101, et seq. (UCC) and the Magnuson-Moss Warranty- Federal Trade Improvement Act, 15 U.S.C. § 2301, et seq. (MMWA). At present, claimants are not seeking relief through the BBB for any claims brought under an act concerning new motor vehicle warranties and repealing P.L. 1983, c. 215 and making an appropriation, N.J.S.A. 56:12-29, et seq. a/k/a the New Jersey New Car Lemon Law (NCLL). This is because that law doesn't require the consumer to use the BBB before filing suit against the manufacturer for relief. **Please don't mistakenly handle this case as a NCLL claim.** Thank you for your attention to this matter.

Best Regards,
/s/ PAUL DEPETRIS
PAUL DEPETRIS

cc:  Clients (via email)

Page 1 of 1

# BBB application 001

## BBB AUTO LINE
## Customer Claim Form

Case number: LRV2110260
Contact Date: 01/06/21
Start Date:

**Please make any necessary corrections to the information below, <u>print</u> or verify your VIN number and lienholder/leasing company information at the bottom of this page, and complete the missing information in Section 4 on the next page (attach additional sheets as needed).**

### SECTION 1: CUSTOMER INFORMATION

Titled owner:  ☒ Ilu.Lily  Designs LLC  and CANDACE NEJAT C/O Paul Depetris

Mailing address:  PERLMAN DEPETRIS CONSUMER LAW, 1926 Greentree Rd Suite #100

City:  Cherry Hill                                State:  NJ        Zip code:  08003

Day phone: (856) 446-9797         Evening phone: (856) 446-9797      Cell phone:

Fax:                              E mail address: info@newjerseylemons.com

### SECTION 2: VEHICLE INFORMATION

Make: Land Rover            Model:  Range Rover Sport Year: 2017       Current mileage: 41,076 approx.

Name(s) that appears on the vehicle title:   Ilu.Lily Designs LLC

**Selling** dealer/city/state:        LAND ROVER CHERRY HILL, CHERRY HILL NJ

**Primary Servicing** dealer/city/state:  , LAND ROVER CHERRY HILL, CHERRY HILL NJ

Acquired as  ☒ new  ☐ used  ☐ demo  ☐ leased    Is your vehicle Certified Pre Owned?  ☐ yes  ☒ no

Purchase/lease date:  12/22/17              Mileage at purchase/lease:      22

First repair attempt date:      4-11-18        First repair attempt mileage:    7,581

How often is the vehicle used            Number of vehicles owned        Is the vehicle in your possession?
for business purposes (percentage): 10    %   or leased by the business:    1      ☒ yes  ☐ no

Has the vehicle been in an accident/had body damage?  ☐ yes  ☒ no       Date of accident:

Description of damage:

### SECTION 3: DESIRED OUTCOME (Describe what you want done to resolve your concern)

Repurchase pursuant to the New Jersey Uniform Commercial Code (UCC), specifically N.J.S.A. 12A:2-608

and per the Magnuson-Moss Warranty- Federal Trade Improvement Act, 15 U.S.C. § 2301

Claimants don't seek relief under the New Jersey Used Car Lemon Law,
N.J.S.A. 56:12-29, et seq. because that law doesn't require participation in BBB
Autoline.

**Please complete the missing information in the box below and on page 2.**

**VEHICLE INDENTIFICATION NUMBER**  SALWR2FKXHA693677 __ __ __ __ __ __ __ __

## BBB application 002

CCF

Case Number: LRV2110260

## SECTION 4: VEHICLE PROBLEMS (List primary problem first)

| Problem | Servicing dealer(s) | # of repair attempts | List the date, mileage, and days out of service for each repair attempt | Does the problem exist now? |
|---|---|---|---|---|
| **Example:**<br>**A/C won't cool properly** | **Any Dealer, Inc.** | **2** | **4/23/06  3,500 miles  5 days**<br>**6/10/07  12,700 miles 1 day** | **yes** |
| SEE ATTACHED REPAIR | HISTORY SUMMARY | ------ | ----------------------------------------- | yes |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Total days out of service for all problems: ____23 days____

Signature of Titled Owner(s) _____   Date 1/7/2021

Printed Name of Titled Owner(s) George Petit + Hability designs

I am submitting this dispute for resolution in the BBB AUTO LINE program, and I agree to arbitrate the dispute under the BBB AUTO LINE Arbitration Rules.

**Please mail or fax this completed form with <u>copies</u> of all available repair orders, your vehicle registration, your sales agreement or lease agreement, and any other relevant documents (e.g., written correspondence with the manufacturer, etc.) to:**

<div align="center">

**BBB AUTO LINE**
**1676 International Drive, Suite 550**
**McLean VA, 22102**
**Fax: 703-247-9700**
Page 2

</div>

# BBB application 003

## REPAIR HISTORY SUMMARY

| Date In & Out & # Of Days Vehicle At Dealer | Miles In & Out Of Dealer | Invoice # | Customer Complaint AND/OR Repair Attempt and/or Diagnosis Reported by Dealer |
|---|---|---|---|
| 4-11-18 1 DAY | 7,581 TO 7,583 | 95210 | A COMPLETE LUBRICATION SERVICE LUBE COMPLETE LUBRICATION AND FILTER CHANGE |
| | | | B PERFORM COURTESY INSPECTION CI PERFORM COURTESY INSPECTION |
| | | | C PROVIDED LAND ROVER LOANER COURTESY VEHICLE M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE |
| | | | D COMPLETE EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | D TOP OFF DIESEL EXHAUST FLUID MISC TOP OFF FLUID |
| | | | E PROVIDED LAND ROVER LOANER COURTESY VEHICLE M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE |
| | | | F COMPLETE EXTERIOR WASH AND. INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR. VACUUM |
| | | | H CLIENT STATES THAT THERE IS A PLASTIC REAR TRIM THAT IS LOOSE MISC SECURE PANEL |

# BBB application 004

| 4-29-19 TO 5-2-19 4 DAYS | 24,175 TO 24,182 | 102761 | A 16,000 MILES/ 26,000 KM OR 12 MONTHS SERVICE<br>CORRECTION: 101016 16,000 MILES/ 26,000 KM OR 12 MONTHS SERVICE<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>FLUID INSPECT AND CORRECT FLUID LEVELS AS NEEDED<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>BATT TEST BATTERY AND PROVIDE RESULTS<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>HISS CORRECT TIRE PRESSURES AS NECESSARY<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>I INSPECT SUSPENSION, BRAKES, TIRES, WEAR ITEMS, AND FOR EXTERNAL FLUID LEAKS<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>VF REPLACE POLLEN FILTER<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>ROTATE ROTATE (SIC) TIRES FRONT TO REAR<br>TECH NUMBER: 88 LABOR TYPE: CPM<br>RESET RESET (SIC) SERVICE COUNTER<br>TECH NUMBER: 88 LABOR TYPE: CPM |
| | | | B PERFORM COMPLETE INTERIOR AND EXTERIOR DETAIL<br>CAUSE:<br>CORRECTION: DETAIL PERFORM COMPLETE INTERIOR AND EXTERIOR DETAIL |
| | | | C PERFORM COURTESY INSPECTION<br>CAUSE:<br>CORRECTION: CI PERFORM COURTESY INSPECTION<br>TECH NUMBER: 88 LABOR TYPE: INT |
| | | | D PROVIDED LAND ROVER LOANER COURTESY VEHICLE<br>CAUSE:<br>CORRECTION: M013 PROVIDED LAND ROVER LOANER COURTESY VEHICLE<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | E CLIENT STATES WHEN TRAVELING OVER 70MPH THERE IS A RATTLE FROM THE RIGHT FRONT PASSENGER AREA OF THE VEHICLE<br>CAUSE:<br>CORRECTION: 10 RIGHT FRONT WHEEL IS BENT, REPAIRED BY ALLOY WHEEL<br>TECH NUMBER: 99 LABOR TYPE: INT |

**BBB application 005**

| | | | |
|---|---|---|---|
| | | | F CLIENT STATES THERE IS A NAIL PUNCTURE IN THE RIGHT FRONT TIRE<br>CAUSE: IAS AUTH#JM143599-1597489 FAX#5122574777<br>CORRECTION: MT2 MOUNT AND BALANCE TWO TIRES.CORRECT TIRE PRESSURES WHEN<br>COMPLETED.<br>TECH NUMBER: 88 LABOR TYPE: WCEXT |
| | | | H (SIC) INSPECT FOR DOOR DINGS<br>CAUSE:<br>CORRECTION: 10 NONE PRESENT<br>TECH NUMBER: 99 LABOR TYPE: INT |
| | | | J REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE<br>CAUSE:<br>CORRECTION: M15R REPLACE WORN REAR BRAKE PADS AND SENSORS WHEN APPLICABLE<br>TECH NUMBER: 88 LABOR TYPE: CPM |
| | | | K PERFORM N120<br>CAUSE: PERFROM N120B<br>CORRECTION: 889003 INSTRUMENT CLUSTER - SYSTEM DIAGNOSIS - INCLUDES CONFIGURATION<br>OF NEW ECU<br>TECH NUMBER: 88 LABOR TYPE: WTY |
| | | | L PERFORM N241<br>CAUSE: PERRFOM N241A<br>CORRECTION: 189090 POWERTRAIN CONTROL MODULE (PCM) - SOFTWARE UPDATE<br>TECH NUMBER: 88 LABOR TYPE: WTY |
| 9-4-19<br>TO<br>9-5-19<br>2 DAYS | 30,007<br>30,010 | 105861 | A CLIENT STATES CHIP IN WINDSHIELD<br>CAUSE: IAS-AUTH#DW5837531655930<br>10 STATES HAS WINDHIELD CHIP |
| 3-3-20<br>TO<br>3-6-20<br>4 DAYS | 37,929<br>TO<br>37,938 | 110620 | A CUSTOMER STATES VEHICLE SAYS EXH FILTER FULL<br>CAUSE:<br>DIESEL PARTICULATE FILTER CLOGGED. CONNECT PATHFINDER AND RETRIEVE DTCS. FOUND P2463 STORED WITH IN  (SIC) PCM. CHECK AND TOP UP EXHAUST FLUID LEVEL (16 LITERS). RESET DOSING FACTOR USING PATHFINDER, RUN EGR AND AIR PATH CHECK FOR INTAKE LEAKS. PERFORM |

**BBB application 006**

| | | | |
|---|---|---|---|
| | | | REGENERATION DRIVE CYCLE WITH PATHFINDER ATTACHED. PERFORM DYNAMIC REGENERATION PROCEDURE USING PATHFINDER (FAILED). DIESEL PARTICULATE FILTER BEYOND REGENERATION CAPABILITIES. REMOVE AND REPLACE PARTICULATE FILTER CONNECT PATHFINDER PERFORM FILTER REPLACEMENT PROCEDURE. CLEAR |
| | | | B PERFORM COURTESY INSPECTION CAUSE: CORRECTION: CI PERFORM COURTESY INSPECTION TECH NUMBER: 46 LABOR TYPE: INT |
| | | | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM CAUSE: CORRECTION: WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM TECH NUMBER: 99 LABOR TYPE: INT |
| | | | D PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE CAUSE: CORRECTION: M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE TECH NUMBER: 99 LABOR TYPE: INT |
| | | | E CUSTOMER STATES DIESEL FLUID IS LOW CAUSE: CORRECTION: C/S CUSTOMER STATES DIESEL FLUID IS LOW TECH NUMBER: 46 LABOR TYPE: INT |
| 5-5-20 TO 5-20-20 16 DAYS | 38,313 TO 38,316 | 111366 | A PERFORM COURTESY INSPECTION CI PERFORM COURTESY INSPECTION |
| | | | B COMPLETE EXTERIOR WASH AND INTERIOR VACUUM WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | C CUSTOMER STATES RIGHT FRONT TIRE LOSING AIR CAUSE: IAS MTL MOUNT AND BALANCE ONE "TIRE. CORRECT TIRE PRESSURE WHEN COMPLETED |

BBB application 007

| | | | D** FRONT RIGHT TIRE WAS DRIVEN ON FLAT, THERE IS A BOLT IN THE TIRE THAT IS PLUGGABLE BUT·I WOULD; RECOMMEND REPDACING THE TIRE SINCE THE SIDEWALL WAS COMPROMISED GOODYEAR EAGLE FL 255/55R20 110Y |
|---|---|---|---|
| 9-16-20 TO 9-23-20 11 DAYS | 39,587 39,623 | 114696 | A CUSTOMER STATES VEHICLE SAYS EXHAUST FILTER FULL<br>CAUSE:<br>851806 READ AND CLEAR FAULT CODES 39623 FOUND MALFUNCTION ON DASH. FOUND P2463 AND P246B IN PCM. DROVE VEHICLE 18 MILES (39587-39605) DURING A REGEN ATTEMPT TO CLEAR THE EXHAUST FILTER. WENT FROM 30.5 GRAMS OF SOOT WITH A TARGET OF 6 GRAMS. VEHICLE WENT DOWN TO 14.2 G AND THEN STARTED RISING AGAIN. OPENED<br>TA CASE. 3046785. REMOVED ENGINE AIR FILTER, EGR TUBE AND VALVE, AND PIPE TO THROTTLE VALVE TO TAKE PHOTOS OF ALL COMPONENTS TO SEND TO TA TO CHECK FOR EXCESSIVE:SOOT/OIL CONTAMINATION BUILD UP IN ENGINE. ADVISED BY TA TO REMOVE DPF DIFFERENTIAL PRESSURE SENSOR & LINES AND CHECK FOR CLOGS OR CONTAMINATION. NONE FOUND. PHOTOS TAKEN AND SENT TO TA. TA CALLED AND ADVISED HABITS ARE LARGEST CONCERN. VEHICLE NEEDS TO BE DRIVEN MORE AND ON LONGER HIGHWAY TRIPS. REQUESTSTED REGEN 173 TIMES AND ONLY WAS ABLE TO PERFORM IT 3 TIMES. REMOVED OIL SEPARATOR AND REPLACED DUE TO OIL INTRUSION, ADVISED BY TA. WAS ABLE TO UPDATE PCM FURTHER WITH UPDATED PATHFINDER. RE-RAN REGEN RUN ON HIGHWAY. (39605-39623) WAS ABLE TO GET SOOT LEVEL UNDER 6GRAMS (SIC) AND WITIN SPEC. VEHICLE NO LONGER HAS FAULTS ON DASH AND HAS FULL POWER BACK TO VEHICLE |
| | | | B PERFORM COURTESY INSPECTION CI PERFORM COURTESY INSPECTION |
| | | | C COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |

**BBB application 008**

| | | | |
|---|---|---|---|
| | | | WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | D 16,000 MILE FACTORY MAINTENANCE SERVICE<br>16K 16,000 MILE FACTORY MAINTENANCE SERVICE |
| | | | E** PRICE FOR 5. 5 LITERS OF DEF FLUID<br>MISC PRICE FOR 5. 5 LITERS OF DEF FLUID |
| | | | F** WIPERS<br>WIPER REPLACE WIPER BLADES |
| | | | G**ENGINE AIR FILTERS<br>AUR REPLACE ENGINE AIR FILTER ELEMENT |
| | | | H** CLIENT STATES THAT THERE ARE DENTS ON LEFT REAR DOOR AND RIGHT FENDER CAUSE: CLAIMS@IASDIRECT.COM AUTH#ER6011911798444 TOTAL $180 SUBLET PDR- INV#151319 |
| 10-17-20 TO 10-20-20 4 DAYS | 39,917 TO 39,937 | 115440 | A COMPLETE- EXTERIOR WASH AND INTERIOR VACUUM<br>WASH COMPLETE EXTERIOR WASH AND INTERIOR VACUUM |
| | | | B CUSTOMER STATES DIESEL EXHAUST FULL MESSAGE IS ON<br>129016 READ AND CLEAR FAULT CODES<br>C/S DPF CLOGGED LIGHT ON DASH. VERIFIED. FOUND P2463 STORED IN PCM. TRIED RUNNING REGEN ON VEHICLE ON HIGHWAY. NO DIFFERENCE MADE.<br>WOULD NO (SIC) LOWER SOOT LEVELS. RAN BG EXHAUST, FUEL, AND OIL ADDITIVE CLEANING SERVICE FOR 45 MIN THRU VEHICLE AT HIGH- EXHAUST TEMPS IN AN EFFORT TO CLEAN SYSTEM AND FORCE REGEN THROUGH EXHAUST TEMPS. CHANGED OIL AFTER SERVICE COMPLETE. SOOT LEVELS TOO HIGH FOR REGEN. REPLACED DPF IN EXHAUST AND REST ADAPTIONS AND DPF LIFE TIME. CHECK ENGINE LIGHT<br>NO LONGER ON DASH. WARNING LIGHT NO LONGER ON DASH. POWER RETURNED TO VEHICLE. |
| | | | C PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE |

**BBB application 009**

| | | | M013 PROVIDED JAGUAR / LAND ROVER LOANER COURTESY VEHICLE |
| | | | VEHICLE MUST BE DRIVEN AT HIGHWAY SPEEDS FOR DI STANCE (SIC) IN ORDER TO KEEP FILTER FROM GETTING CLO GGED (SIC)/ FAILURE TO PERFORM THIS ACTION WILL LEAD T O (SIC) CONDITION RETURNING WHICH MAY NOT BE A MATTER OF WARRANTY AT THAT TIME |

➢ Minimum number of days that the vehicle was at dealerships for repair attempts performed for a diesel exhaust full light/message problem starting from the vehicle's delivery = 23 days.

➢ Total minimum number of repair attempts performed upon vehicle since delivery for a diesel exhaust full light/message problem = 4.

# BBB application 010



# BBB AUTO LINE

January 28, 2021

M ILU LILY DESIGNS LLC C/O PAUL DEPETRIS
1926 GREENTREE RD SUITE #100
CHERRY HILL NJ 08003

Re: LRV2110260 Designs LLC vs Land Rover North America
SALWR2FKXKA693677

Dear M. Ilu.Lily Designs LLC C/O Paul Depetris:

I would like to thank you for your interest in the BBB AUTO LINE program.
Unfortunately, after carefully reviewing your claim and the program eligibility
standards set out in the *Program Summary*, I have determined that your vehicle
exceeds the age requirement for filing with the BBB AUTO LINE program.

I regret we will not be able to help you.

Sincerely,

Mary Ann Khalifeh at Extension 5271

CC: Maria Romero